James H. Fischer
*Pro Se Plaintiff*
PO Box 287048
New York, NY 10128
(917) 628-4052

JUDGE ENGELMAYER

14 CV 1304

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

JAMES H. FISCHER                              )
                                             )   Civil Action No. _____
                                             )
            Plaintiff                        )   **COMPLAINT**
                                             )
      v.                                     )   **JURY TRIAL DEMANDED**
                                             )
STEPHEN T. FORREST,                          )
                                             )
            Defendant                        )

-------------------------------------------------------------------------x

FILED
U.S. DISTRICT COURT
S.D. OF N.Y.
2014 FEB 27 PM 2:19

Plaintiff James H. Fischer (hereinafter "Plaintiff"), for his complaint against Defendant

Stephen Taylor Forrest (hereinafter "Defendant") alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.  This is an action for: (1) copyright infringement, unfair competition, and trademark

    infringement under Federal law; and (2) unfair business practices, unjust enrichment, and

    breach of contract under the common law and statutes of the State of New York.  This action

    arises from Defendant's breach of a dealership agreement, marketing of an unauthorized

    knock-off of Fischer's product, and his willful, deliberate, and systematic misappropriation

    of Fischer's intellectual property in his marketing of the unauthorized knock-off.

2.  For years, Defendant was an Authorized Dealer for Fischer's product. Defendant unilaterally

    breached this dealership agreement by marketing a knock-off of the product. Defendant's

    illegal use of Plaintiff's intellectual property was intended to create the false impression that

    Defendant is now manufacturing and/or still selling Fischer's product. Defendant's conduct

constitutes a bad faith attempt to trade upon and profit from the goodwill associated with the distinctive trademarks, copyrights, trade dress, slogans, and advertising copy created by Fischer to promote his product.

3. On April 5, 2011, Fischer demanded in writing that Defendant cease and desist the infringement and reminding Defendant of Fischer's registered trademark, and registered copyrights.  Defendant refused, deliberately, knowingly, and willfully continuing his multiple infringements of Fischer's exclusive rights.

4. Defendant has caused Fischer lost sales and profits, done irreparable harm to his intellectual property, caused an incalculable loss of goodwill, caused loss of market share, caused market confusion, and will continue to do so unless enjoined. Fischer seeks permanent injunctions halting all infringing activities. Fischer also seeks statutory damages, monetary damages, punitive damages, costs, and attorney's fees.

## THE PARTIES

5. Plaintiff, James H. Fischer ("Plaintiff"), is an individual residing in New York and is the inventor and supplier of "Fischer's Bee-Quick®," a product developed for the purpose of facilitating honey harvesting. Plaintiff's copyrights and trademark are registered at PO Box 1528, New York, NY 10021. Additionally, Plaintiff is the Director of Education for The Honey Bee Conservancy, a nonprofit organization with 501(c)(3) status , and Defendant teaches the "Absolutely Free Beekeeping Course" to the 1500-member co-op New York City Beekeeping (NYCB) and to other groups internationally.

6. Upon information and belief, Defendant Stephen Taylor Forrest ('Defendant") is President and a principal shareholder of Brushy Mountain Bee Farm, Inc. with its principal place of business at 610 Bethany Church Road, Moravian Falls, NC 28564, with additional

manufacturing/warehouse operations in New Columbia, PA, and Wilkesboro, NC.  Mr.
Forrest exerts direct day-to-day control over all Brushy activities. He has a direct and
obvious financial interest in Brushy. He has personal liability as an individual for claims of
copyright infringement, trademark infringement, unfair competition, DCMA violations, and
fraudulent misrepresentation, and is personally liable for damages, costs, and attorney's fees.

## JURISDICTION AND VENUE

7.  This is a civil action seeking injunctive relief and damages for copyright infringement under
    the Copyright Act, 17 U.S.C. § 101 *et seq.*, trademark infringement under the Lanham Act,
    15 U.S.C. § 1051 *et seq.*, unfair competition and breaching the terms of dealership.

8.  This court has original subject matter jurisdiction over the Copyright Act claims pursuant to
    28 U.S.C. §§ 1331, 1332, and 1338.

9.  This court has original subject matter jurisdiction over the trademark claims pursuant to the
    Lanham Act, §15 U.S.C. § 1051, *et seq.*, and the statutory and common laws of the State of
    New York.  This court has supplemental jurisdiction over the related state and common law
    claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), since these claims are joined with
    substantial and related claims brought under federal law.

10. This Court has personal jurisdiction over Defendant pursuant to N.Y. Civ. Prac. L. & R.
    ("CPLR") §§ 301 and 302(a), because Defendant has (i) regularly transacted business within
    the state (CPLR § 302(a)(l)); (ii) conducted a tortious act within the state by delivering and
    offering to deliver products sold with infringing promotional materials  to residents of New
    York (CPLR § 302(a)(2)); and/or (iii) committed a tortious act without the state causing
    injury to Plaintiff resident of New York; and (a) regularly does or solicits business, or
    engages in any other persistent course of conduct, in the state (CPLR § 302(a)(3)(i)) or (b)

expects or should reasonably expect the act to have consequences in the state and derives

substantial revenue from interstate commerce (CPLR § 302(a)(3)(ii)). Upon information and

belief, Defendant continuously solicits business from New York residents over the internet

via a website, e-mail solicitations, via phone, via catalog mailings, by accepting payment

from New York residents, and by delivering and offering to deliver materials bearing

counterfeit and/or infringing trademarks and copyrights to residents of New York.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a

substantial part of the actions and wrongful conduct underlying these claims occurred in this

District.

### FACTUAL ALLEGATIONS RELATING TO ALL CLAIMS

12. In 1999, Plaintiff invented a new honey harvesting aid for beekeepers named "Fischer's Bee-

Quick®." Plaintiff has earned significant commercial goodwill and earned a reputation as a

supplier of a unique product: a food-safe, non-toxic, not foul-smelling, and effective

substance that beekeepers can trust to use with their honey and their bees. Prior products

were based on Butyric Anhydride, a highly toxic foul-smelling substance rated as a

"Hazardous Materials" by shipping companies and not approved for food-use by the FDA

(being neither "Generally Recognized As Safe", nor "Food-Grade").

13. The commercial success of his products led Plaintiff to promote and advertise his products in

commerce worldwide with specific illustrative phrases and qualitative representations in print

ads, websites, printed flyers, brochures, and in Authorized Dealer catalogs. Each of these

copyrighted advertising works surrounding Plaintiff's products are unique and highly

valuable advertising assets and distinct creative works. The brochure and flyers included

proper copyright notice per 17 U.S.C. §401, and were included as downloadable documents

on Plaintiff's website (www.bee-quick.com) in 2000, which was duly registered with the US Copyright Office.

14. Plaintiff created the four unique works (*see* Exhibits B-E) and used them in brochures, advertising, and flyers. Each work had an independent economic value and life as the focus of several separate works of advertising and promotion. Each work became a valuable advertising asset, achieving notoriety among beekeepers and acquiring secondary meaning uniquely associated with Plaintiff, and his product "Bee-Quick®". Humor had never been used to sell beekeeping products before, thus significant notoriety was directly gained.

15. Plaintiff created a brochure in 2000 (*see* Exhibit A), explaining the advantages of Plaintiff's products. Its copyright was duly registered. The brochure included each of the uniquely creative copyrighted works (*see* Exhibits B-E).

16. Plaintiff created other materials to promote sales of his product, including ads, sales flyers, a product label, and a website. Each copyrighted creative work was featured in one or more ads or sales flyers (*see* Exhibits B-E).

17. Each copyrighted creative work was and is a separate copyrighted work, as each has proven to have significant tangible commercial value alone.

18. Defendant become an Authorized Dealer of "Fischer's Bee-Quick" in 2002 and requested brochures, sales flyers, a point-of-sale display, artwork, photos, and descriptive text for their use as an authorized Bee-Quick dealer. In the following years, several thousand brochures and flyers were requested by Defendant, and supplied at no charge by Plaintiff. Every brochure and flyer included proper copyright notice, (*see* Exhibits A and C)

19. After several years of sales, Defendant specifically requested permission to use Plaintiff's copyrighted works (Exhibits B-E) on their website. Plaintiff gave explicit permission

allowing Defendant to use Plaintiff's individual copyrighted works, copyrighted photos, trademarks, and trade dress solely in connection with Defendant's efforts as an Authorized Dealer for Plaintiff's products.

20. On December 10 2010, Defendant abruptly and unilaterally Plaintiff of Defendant's intent to "discontinuing Bee-Quick in our 2011 catalog", in the e-mail of 12/10/2010 to Plaintiff. (*see* Exhibit F)

21. In March 2011, Defendant willfully and knowingly misappropriated Plaintiff's uniquely original copyrighted creative works (Exhibits B-E) in interstate commerce in their 2011 online ordering website to sell an unauthorized knock-off of Plaintiff's product, infringing upon Plaintiff's rights (*see* Exhibits G and L). Four such specific examples of infringement included:

a.) The text of Defendant's web page says: " [...] Are you tired of your spouse making you sleep in the garage [...]?" This text was copied word-for-word by Defendant from the copyrighted work in the brochure provided by Plaintiff to Defendant (*see* Exhibit B).

b.) The text of Defendant's web page says: " [...] Are you tired of using a hazardous product on the bees you love?" This text was copied word-for-word by Defendant from the copyrighted work in the brochure provided by Plaintiff to Defendant (*see* Exhibit C).

c.) The text of Defendant's web page promotes Defendant's product by referring to it as a: " [...] safe, gentle, and pleasant way to harvest your honey." This text was copied word-for-word by Defendant from the copyrighted work in the brochure provided by Plaintiff to Defendant (*see* Exhibit D).

d.) The text of Defendant's web page refers to Defendant's product as: "[...] a natural, non-toxic blend of oils and herbal extracts [...]" This text was copied word-for-word by

Defendant from the copyrighted work in the brochure provided by Plaintiff to Defendant (*see* Exhibit E).

22. Plaintiff created a product package and label, and made photographs of the product, which he used in print ads and on his website. (*see* Exhibit H).

23. After breaching the Authorized Dealer relationship with Plaintiff, Defendant continued to willfully and knowingly publish and use Plaintiff's copyrighted images of Plaintiff's product in interstate commerce on Defendant's 2011 online ordering website, adding Defendant's logo as a watermark overlaying the image, thus infringing upon Plaintiff's copyright (*see* Exhibits I and J).

24. The Bee-Quick® trademark, continuously used in commerce since 1999, was duly registered with the US Patent and Trademark Office on the Principal Trademark Register on Dec 11, 2001 as USPTO Registration #2517553, and recently renewed as Registration #4019052. The symbol ® has been properly and consistently displayed on Plaintiff's product label, ads, website, and flyers per 15 U.S.C. § 1111, giving notice of trademark registration for more than a decade. Plaintiff's mark is suggestive in nature, and thus inherently distinctive.

25. As Plaintiff sells only through Authorized Dealers, Plaintiff's primary assets are his intellectual property, his trade secrets, his good name, his reputation, the reputation of his products, and the significant goodwill each has earned in the marketplace. Defendant misappropriated Plaintiff's trade secrets to make an unauthorized knock-off product, and illegally utilized Plaintiff's intellectual property to promote the knock-off, and to confuse it with Plaintiff's product thus diluting the value of Plaintiff's product.

## 1st Complaint - Copyright Infringement (17 U.S.C. § 501)

26. Plaintiff incorporates the statements in the preceding paragraphs as if fully set forth herein.

27. The copyright owner's particular unique expressions of ideas covered by Copyright are duplicated verbatim and used by Defendant to compete directly with the product of Plaintiff, the Copyright holder. Attached for reference are sections of Defendant's 2005, 2006, 2009, and 2010 catalog pages showing prior authorized use of the copyrighted phrases to describe and sell Plaintiff's product, during the period when Defendant was Plaintiff's Authorized Dealer, comparing with the infringing text in Defendant's 2011 online ordering website . (*see* Exhibit L).

28. Furthermore, after breaching the Authorized Dealer relationship with Plaintiff, Defendant continued to willfully and knowingly publish and use Plaintiff's copyrighted image of Plaintiff's product in interstate commerce. (*see* Exhibits I, J, N, O.)

29. The infringement of Plaintiff's rights in each of his copyrighted works constitutes a separate and distinct act of infringement. Additionally, each instance that Defendant used Plaintiff's copyrighted image of Plaintiff's product constitutes a separate and distinct act of infringement.

30. Defendant's acts are willful, intentional and purposeful, in knowing disregard of, and indifferent to the rights of Plaintiff.  Defendant willfully infringed Plaintiff's copyrighted photographic images to fraudulently attract online, mail, and telephone orders from customers wanting to buy Plaintiff's products.

31. As a direct and proximate result of Defendant's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), for each work infringed (*see* Exhibits B-E and I-O), or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Plaintiff's

election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

32. Plaintiff is entitled to his costs, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

33. Defendant's conduct is causing and -- unless enjoined by this Court -- will continue to cause Plaintiff great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiff's copyrights and exclusive rights under copyright.

**2nd Complaint – Removal of Copyright Management Information 17 U.S.C. § 1202**

34. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

35. At Defendant's request, Plaintiff provided Defendant with "layout-ready artwork" consisting of jpg-format images of brochures, flyers and other sales materials, each image with imbedded EXIF metadata including appropriate copyright notices per 17 U.S.C. §1202(c)(3). The images also included visible text copyright notices, visible on the face of each image. All text was also accompanied by appropriate copyright notice in text.

36. Defendant infringed upon Plaintiff's rights by copying word-for-word from Plaintiff's copyrighted works to describe Defendant's knock-off product as detailed in Plaintiff's first Complaint, intentionally removing both Plaintiff's copyright notices from each of the infringed works in violation of 17 U.S.C. § 1202(b)(1), and exactly copying images, again, intentionally removing both Plaintiff's copyright notices.

37. Defendant intentionally distributed thousands of copies of the infringing works via Defendant's 2011 online ordering website, knowing that copyright management information

had been removed or altered without authority of the copyright owner, knowing that it would conceal an infringement of rights under 17 U.S.C. § 1202(b)(3), or, having reasonable grounds to know.

38. As a result of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

## 3rd Complaint - Use of Counterfeit Mark In Commerce and in Multiple Website URLs (15 U.S.C. § 1114)

39. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

40. Defendant willfully continued to list "Fischer's Bee-Quick®" in interstate commerce on Defendant's 2011 online ordering website as a product for sale after unilateral termination of the Authorized Dealer relationship and after liquidation of all dealer inventory. While Defendant strived to appear to continue to accept orders for Plaintiff's product, the only such product Defendant could actually sell was Defendant's own unauthorized knock-off product, offered in direct competition with Plaintiff (*see* Exhibits I, J, N, O.) This willful misuse of Plaintiff's mark in connection with the sale, offering for sale, and distribution of goods other than those made by Plaintiff is a use of a Counterfeit Mark under 15 U.S.C. § 1114.

41. Furthermore, Defendant willfully continued to utilize Plaintiff's registered trademark specifically in 2011 online ordering website URLs (*see* Exhibit P.)  These separate and distinct infringements each constitute use of a Counterfeit Mark in a website URL under 15 U.S.C. § 1114.

42. As a result of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

## 4th Complaint - Federal Unfair Competition under 15 U.S.C. § 1125(a)

43. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

44. Defendant's use in interstate commerce of a willfully counterfeited mark (Fischer's Bee-Quick® mark) in connection with Defendant's directly competing knock-off goods constitutes a false designation of origin and/or a false or misleading description or representation of fact, which is likely to cause confusion, cause mistake, or deceive as to affiliation, connection, or association with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's products or other commercial activities by Defendants. This is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45. By using Fischer's Bee-Quick® trademark with the knowledge that Plaintiff owns, has used, and continues to use, his registered trademark in commerce in and across the United States, Defendant has willfully intended to cause confusion, cause mistake, and deceive consumers.

46. As a direct and proximate result of such unfair competition, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to his business, reputation, and goodwill. The injury to Plaintiff is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate Plaintiff for his injuries and Plaintiff lacks an adequate remedy at law.

47. Plaintiff is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages, disgorgement of profits; and costs and attorney's fees.

## 5th Complaint - Federal Trademark Infringement Under Section 32 of the Lanham Act, 15 U.S.C. § 1114)

48. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

49. The unauthorized use of Plaintiff's registered mark "Bee-Quick®" constitutes trademark infringement, with consequent damages to Plaintiff and the substantial business and goodwill symbolized by Plaintiff's mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

50. As a proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer great damage to its business, goodwill, reputation, profits and the strength of his trademarks. The injury to Plaintiff is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate Plaintiff for his injuries and Plaintiff seeks an adequate remedy at law.

51. The foregoing acts of infringement have been and continue to be deliberate, willful, and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

52. Plaintiff is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages, disgorgement of profits; and costs and attorney's fees.

### 7th Complaint – Breach of Contract

53. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

54. Prior to 2010, Defendant was permitted use of Plaintiff's intellectual property only in the sales of Plaintiff's goods as an authorized dealer. Defendant breached this agreement by attempting to cancel a Purchase Order after accepting receipt of the shipment and further, by utilizing Plaintiff's intellectual property to market a substituted 'knock-off' product. Defendant was notified of this breach, and did not cure the breach.

55. As a result of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

**8th Complaint – Unfair Business Practices Under NY State Law N.Y. Gen. Bus. Law § 349**

56. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

57. Defendant's act of attempting to pass off its own products as Plaintiff's products was aimed at the ultimate consumer -- the beekeeper -- and constitutes a deceptive act or practice in the conduct of defendant's business, trade or commerce, and in the furnishing of services to consumers and therefore a violation of N.Y. Gen Bus. Law § 349 *et seq.*

58. In the environment of mail-order, phone-order, and internet-order sales, the product deceptively sold cannot be meaningfully inspected by the buyer until after the purchase.  As the Defendant is engaged in passing off non-Plaintiff products under color of Plaintiff's trademark, copyrights, and trade dress, they are perpetrating a fraud on the public.

59. As a result of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

**9th Complaint – Unjust Enrichment**

60. By reason of the foregoing, Defendant has infringed and continues to infringe Plaintiff's rights and Defendant is greatly enriched by such acts of infringement. Defendant's unlawful conduct has been and will continue to be willful, as Defendant has had clear knowledge of Plaintiff's rights, demonstrating clear knowledge of Plaintiff's exclusive rights during Defendant's term as an Authorized Dealer.

61. Defendant's infringement is purely commercial and for the personal profit of Defendant.

62. As a result of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For a declaration that Defendant has willfully infringed Plaintiff's copyrights both directly and secondarily, and the infringement constitutes unfair competition and other violations of New York state law.

2. For a permanent injunction requiring that Defendant cease directly or indirectly infringing, or causing the infringement of Plaintiff's copyrights or exclusive rights protected by the Copyright Act or common law.

3. For statutory damages pursuant to 17 U.S.C. § 504(c), 15 U.S.C. §1114, 15 U.S.C. § 1125(a), and 17 U.S.C. § 1202 in such amounts as may be found or established at trial, arising from Defendant's violations of Plaintiff's rights under the applicable statutes. Alternatively, at Plaintiff's election, pursuant to 10 U.S.C. § 504(b), Plaintiff shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

4. For compensatory and punitive damages in such amounts as may be found or established at trial arising from Defendant's willful and wanton violations of New York state law.

5. For Plaintiff's costs, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1114, 15 U.S.C. § 1125, and 17 U.S.C. § 1202, as well as under New York law.

6. For prejudgment interest according to law.

7. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: New York, New York

February 25, 2014                    Respectfully submitted,

                                     JAMES FISCHER

                                     *Pro Se Plaintiff*

# EXHIBIT A

# Fischer's Bee-Quick

**Clears supers fast
without foul odors or
harsh chemicals**

**A Natural, Non-Toxic Blend Of
Oils and Herbal Extracts**

**Full refund if not satisfied**

Are you tired of your spouse making you sleep in the garage after using Butyric Anhydride?

Are your bees more aggressive when blown at 100 mph by leaf blowers?
Are you tired of messing with jamming or useless bee-escapes?

Are you tired of using a hazardous product on the bees you love?

Are you terrorizing and killing bees trying to shake and brush them?

Fischer's Bee-Quick is a safe, gentle, and pleasant way to harvest your honey.  Safe for you, honey, & bees.

- No bees are harmed
- No hive chaos - no "bee clouds"
- No foul odor – smells nice!
- No noisy machines to lug around
- No extra lifting of supers

## Where Can I Buy Bee-Quick?

Every time we print a list, new dealers sign up, so we have given up trying to keep a list anywhere but on our website.

If your favorite catalog does not list Fischer's Bee-Quick, it is probably our fault for not getting artwork to them before they printed it.  Ask them about it.

We think that it is simplest to say:

*Available from all fine purveyors
of beekeeping supplies*

**www.bee-quick.com**

**bee-quick@bee-quick.com**

Copyright (c) 2000, James H. Fischer
All Rights Reserved

12/2000

## Is That It?
### Will ALL The Bees Leave?

Yes, that's it.  No, not all the bees will leave with *any* fume-board product.  (We are at least  honest about it.)  There will always be a few "stubborn" bees left in the super, and they can  be shaken off, brushed off, or allowed to leave as you move supers into your honey house.

With only a few bees left on the combs, one can brush them off quickly and without harming any of them.  You can shake/brush one super while Bee-Quick is working on the next, and things go smoothly.
Brush *upwards*, not downwards.

## What Is *In* Bee-Quick?
That would be telling, wouldn't it?

We will certify that it contains natural ingredients, is completely safe, and produces vapors that are non-toxic to both bees and humans.  All ingredients are USP food grade, and we use a USDA and FDA-approved bottling plant that bottles only food.

There is nothing in Bee-Quick that can harm you or your bees.

## How Do I Store Bee-Quick?

Close the cap tightly.  Store it on a shelf.
Ignore the label about "refigerate".

## I Have More Questions...
Check out our website at
***www.bee-quick.com***
where we have more room than this to tell you about our product.  Or, you can send us an e-mail, or call your Dealer.

**Exhibit A – Fischer's Product Brochure (Tri-fold Front Side)**

## But I Like The Butyric Stuff!

Does your spouse? To us it smells worse than an elephant's outhouse, and even a tiny drop on your hand means that you will be sleeping in the garage tonight. It won't wash off! Expect even the smell goes away for a few days until the smell goes away.

More seriously, their label is full of warnings, and all the bee catalogs say it must be shipped as "Hazardous Materials". Why? Because it IS hazardous material! If it is not safe for humans, how can it be safe near our honey or bees?

## What About Cherry-Scent Butyric?

Do you think the cherry smell helped? Spill some on your clothes, and you will soon be burning them.

## What? Don't Use A Bee Brush?

Everyone should have one! We simply feel that, if used as the sole bee removal method, shaking/brushing is too slow, and disrupts the hive too much. It also carries the risk of killing or maiming large numbers of house bees on full frames.

## What About Bee Escapes?

With bee escapes, you need to lift off all your supers, insert your bee escapes, wait a day or two, and then remove the supers again. This is simply too much heavy lifting and waiting, even if the bee escape works.

Bees can become caught in the "Porter" type of escape, the "maze" type escapes are often outwitted by the bees, and the cone type escapes assume that all bees are the same size, when they clearly are not.

We have yet to find anyone who keeps bees for a living using bee escapes, so we suspect that they know something we don't.

## I Have A Leaf Blower...

Great! Use it on dead things, like leaves, since they won't care if they are suddenly battered about by 100 mile-per-hour winds.

Think we are exaggerating? Have a friend operate the blower, and watch the bees in the super. Unless the frames are heavily propolized, the lighter frames will slap back and forth, killing bees. Watch the "stubborn" bees that somehow "hang on" to the comb. Watch their wings get damaged by the high-velocity airflow. Is this beekeeping, or bee killing?

## What About Benzaldehyde?

If you can't even pronounce it, do you really want it anywhere near your honey?

Just as with Butyric, the EPA, DOT, UPS, Fed-X, and the Post Office all classify it as a Hazardous Material. We don't think they are joking.

## What's A Fume Board?

It is an item that costs under $10 at any bee supply house. If you own a few hand tools, you can make one in a few minutes. It is nothing but a wooden frame that holds cloth in contact with a metal top. The idea is that the metal top heats up in the sun, and heats the cloth, increasing the amount of fumes being generated.

## How Do I Use Bee-Quick?

Screw on the spray cap, or use a spray bottle. Place the fume board in the sun, cloth side down, allowing it to heat up. (Smart folks paint their fume boards black.) Smoke the hive entrance.

Spray Bee-Quick onto the cloth of the fume board or breeze board, in lines or using a zigzag pattern. Think of the spacing of your frames, and recall that you need only spray on the fume pad above the spaces between frames. Be sure to remember the spaces between the outermost frames and the supers. *Don't spray too much.*

Remove outer and inner covers. Smoke the bees on the top bars. Place the fume board on the top super, insuring that no large gaps result.

Best results will be obtained on a sunny day, when the sun can heat the fume board. The super should be clear in from 2 to 5 minutes.

Repeat as required for more supers, only spraying more Bee-Quick when you notice that the fumes have subsided. Use more Bee-Quick when you wish to evacuate a brood chamber, since bees are very reluctant to abandon brood. If bees come pouring out of the entrance, you have sprayed too much Bee-Quick or left the fume board on too long, and should remove the fume board more quickly.

**Exhibit A – Fischer's Product Brochure (Tri-fold Back Side)**

**EXHIBIT B**





Exhibit B – Fischer's ads using Copyrighted Work A

**EXHIBIT C**

# Are You Tired of Using a Hazardous Product On the Bees You Love?

## Butyric Anhydride Products



**Fischer's Bee-Quick®**

Clears supers fast
without foul odors or
chemical residues

A natural, non-toxic blend
of oils & herbal extracts

No Alcohol

Full refund if not satisfied

FISCHER ALCHEMY
FARMAGEDDON, VA
www.bee-quick.com

Now in 1 & 5 Gal

Copyright (c) 2000, James Fischer
All Rights Reserved

**DANGER:** KEEP OUT OF REACH OF CHILDREN. CORROSIVE, CAUSES EYE DAMAGE AND SKIN IRRITATION. DO NOT GET IN EYES, ON SKIN, OR ON CLOTHING. WEAR GOGGLES OR FACE SHIELD AND RUBBER GLOVES WHEN HANDLING. HARMFUL OR FATAL IF SWALLOWED. AVOID CONTAMINATION OF FOOD.
**FIRST AID:** IN CASE OF CONTACT, IMMEDIATELY FLUSH EYES OR SKIN WITH PLENTY OF WATER FOR AT LEAST 15 MINUTES. FOR EYES, CALL A PHYSICIAN. REMOVE AND WASH CONTAMINATED CLOTHING BEFORE RE-USE. IF SWALLOWED, DRINK PROMPTLY A LARGE QUANTITY OF MILK, EGG WHITES, GELATIN SOLUTION, OR IF THEY ARE NOT AVAILABLE, DRINK LARGE QUANTITIES OF WATER. AVOID ALCOHOL. CALL A PHYSICIAN IMMEDIATELY.
**NOTE TO PHYSICIAN:** PROBABLE MUCOSAL DAMAGE MAY CONTRAINDICATE THE USE OF GASTRIC LAVAGE. MEASURES AGAINST CIRCULATORY SHOCK, RESPIRATORY DEPRESSION AND CONVULSION MAY BE NEEDED.
Apply this product only as specified on this label. Keep out of lakes, streams, or ponds. Do not contaminate water by cleaning of equipment or disposal of wastes. Do not reuse container. Destroy when empty.
**Active Ingredient - BUTYRIC ANHYDRIDE**

**Translations:**
**Danger** – These are the minimum warnings required by law.
**Corrosive** – It eats through skin, clothes, and lots more.
**Eye Damage** – It can blind you.
**Skin Irritation** – Yes, it is irritating when your skin burns off.
**Wear Goggles** – Under, or on top of the bee veil?
**Rubber Gloves** – Just like workers at the toxic waste facility.
**Harmful or Fatal If Swallowed** – Its a deadly poison.
**Avoid Contamination of Food** – It can poison your honey.
**Call Physician Immediately** – Physician? Immediately? Call 911.
**Immediately Flush Eyes** – It could blind you.
**Mucosal Damage** – It will burn soft tissues.
**Gastric Lavage** – Stomach pumping.
**Circulatory Shock** – It stops your cells from getting oxygen.
**Respitory Depression** – You can't breathe, either.
**Convulsion** – And you might thrash uncontrollably on the floor.
**Keep Out of Lakes** – It kills lots of things that live in water.
**Do Not Contaminate Water** – It contaminates the groundwater.
**Do Not Reuse Container** – Even tiny trace amounts are dangerous.
**Destroy When Empty** – How? Launch it into the sun?
**Butyric Anhydride** – It's so nasty, the name alone is a warning.

**Exhibit C – Fischer's Trade Show Flyer using Copyrighted Work B**

# EXHIBIT D

**If this was a *Scratch-N-Sniff* ad,
we wouldn't have to say a word**



**Fischer's Bee Quick is a safe, gentle,
and pleasant way to harvest your honey.**

**Exhibit D - Fischer's Trade Show Flyer using Copyrighted Work C**

**EXHIBIT E**



**Fischer's Bee-Quick®**

Clears supers fast
without foul odors or
chemical residues

A natural, non-toxic blend
of oils & herbal extracts

No Alcohol

**Full refund if not satisfied**

FISCHER ALCHEMY
FARMAGEDDON, VA
www.bee-quick.com

NET 7 FL OZ (.207L)

Refrigerate After Opening



**Fischer's Bee-Quick®**

Clears supers fast
without foul odors
or toxic chemicals

A natural, non-toxic blend
of oils & herbal extracts

Your Money's Worth
Or Your Money Back

Fischer Alchemy
Farmageddon, VA

bee-quick.com

8 fl oz  (236 ml)

**Exhibit E – Fischer's Product Label in 1999 (left) and at present (right) using Copyrighted Work D**

# EXHIBIT F

From:  Betsy [betsy@brushymountainbeefarm.com]
Sent:  Tuesday, November 30, 2010 2:07 PM
To:    James Fischer [james.fischer@gmail.com]
Subject:       Add Gallons

Hi Jim,

Please add this to my order emailed at the very end of July:
4 CASES (16 EACH)  GALLON BEE-QUICK

Any idea when you may be bottling?
Also, and very importantly, we are pricing our new 2011 catalog. Please
provide 2011 pricing for BEE-QUICK 7 ounce and gallons.

Thanks,
Betsy

---

From:  Betsy [betsy@brushymountainbeefarm.com]
Sent:  Friday, December 10, 2010 10:45 AM
To:    James Fischer [james.fischer@gmail.com]
Subject:       Bee-Quick Return

Hi Jim,

Regretfully, I am the messenger informing you (per Steve & Shane)that we are
returning the BEE QUICK (7oz and Gallon). We sent out customer backorders and
are returning the remainder to you.

I was not informed that we were discontinuing Bee-Quick in our 2011 catalog,
nor previously  requested to cancel my order with you.

Please provide the address you need to have the Bee-Quick sent to.

Thanks,
Betsy

**Exhibit F – Defendant's E-mails, first adding to an order, and then breaching the dealer
relationship without warning after delivery of the order was accepted**

# EXHIBIT G



**Exhibit G – Defendant's Infringing Web Page**

**http://www.BrushyMountainBeeFarm.com/Natural-Honey-Harvester/productinf**

# EXHIBITS H, I, J





**Exhibit H – Fischer's copyrighted Product Image**

**Exhibit I – Defendant's Infringing Image**
**With Brushy Watermark**
**www.BrushyMountainBeeFarm.com/images/779fischers.jpg**



**Exhibit J – Defendant's 2nd Infringing Image With Brushy Watermark**
**www.BrushyMountainBeeFarm.com/images/779fischerssm.jpg**

# EXHIBIT K DELETED

# EXHIBIT L

**Detailed Description**

The ordered we have received at the web site of the doctor's product is attract honey but attract the ability of such a product to attract honey bees. Thus far we have received at the web site of the doctor's product is attract honey but attract the safety of such a product. Natural honey Harvester is to come out without ever. This is not a safe, gentle, and pleasant way to ..........

**Defendant's Infringing 2011 Sales Website Text For "Natural Honey Harvester"**

## Fischer's Bee Quick™

This 100% Natural, non-toxic blend of oils and herb extracts works just like Bee Go® and it smells good! Fischer's Bee Quick™ is a safe, gentle, and pleasant way to harvest your honey. Are you tired of your spouse making you sleep in the garage after using Bee Go®? Are you tired of using a hazardous products on the bees you love? Then this is the product for you!



Catalog # 779   Fischer's Bee Quick™ (7 oz.)Ship. Wt. 1 lb.......$12.95
Catalog # 779G Fischer's Bee Quick™ (1 Gallon)Ship. Wt. 15 lbs.$69.95

**Defendant's 2010 Catalog Section For Fischer's Bee-Quick**

## Fischer's Bee Quick™

This 100% Natural, non-toxic blend of oils and herb extracts works just like Bee Go® and it smells good! Fischer's Bee Quick™ is a safe, gentle, and pleasant way to harvest your honey. Are you tired of your spouse making you sleep in the garage after using Bee Go®? Are you tired of using a hazardous product on the bees you love? Then this is the product for you!

Catalog # 779      Fischer's Bee Quick™ (8 oz.)
                    Shp. Wt. 1 lb.............................$12.95
Catalog # 779G   Fischer's Bee Quick™ (1 Gallon)
                    Shp. Wt. 15 lbs..........................$68.00

**Defendant's 2009 Catalog Section For Fischer's Bee-Quick**

**Defendant's Infringing 2011 Website Text and Prior Authorized Text**

**Exhibit L – Side-By-Side Comparison of Defendant's Infringing 2011 Website Text and Prior Authorized Text**



# Fischer's Bee Quick™

This 100% Natural, non-toxic blend of oils and herb extracts works just like Bee Go® and it smells good! Fischer's Bee Quick™ is a safe, gentle, and pleasant way to harvest your honey. Are you tired of your spouse making you sleep in the garage after using Bee Go®? Are you tired of using a hazardous product on the bees you love? Then this is the product for you!

| | | | |
|---|---|---|---|
| Catalog #779 | Fischer's Bee Quick™ (7 oz.) | Shp. Wt. 1 lb. | $12.75 |
| Catalog #779G | Fischer's Bee Quick™ (1 Gallon) | Shp. Wt. 15 lbs. | $63.50 |

**Exhibit L (Continued) – Defendant's 2006 Catalog Section For Fischer's Bee-Quick**



# Fischer's Bee Quick™

This 100% Natural, non-toxic blend of oils and herb extracts works just like Bee Go® and Honey Robber® and it smells good! Fischer's Bee Quick™ is a safe, gentle, and pleasant way to harvest your honey. Are you tired of your spouse making you sleep in the garage after using Bee Go® or Honey Robber®? Are you tired of using a hazardous product on the bees you love? Then this is the product for you!

| | | | |
|---|---|---|---|
| Catalog #779 | Fischer's Bee Quick™ (7 oz.) | Shp. Wt. 1 lb. | $12.75 |
| Catalog #779G | Fischer's Bee Quick™ (1 Gallon) | Shp. Wt. 15 lbs. | $63.50 |

**Exhibit L (Continued) – Defendant's 2005 Catalog Section For Fischer's Bee-Quick**

**EXHIBIT M Deleted**

# EXHIBIT N



Exhibit N – Defendant's Infringing Web Page Published After Breach and Termination Of Authorized Dealer Relationship

# EXHIBIT O



**Exhibit O - Defendant's Infringing Product Index Page Published After Breach Of Authorized Dealer Relationship**

# EXHIBIT P

http://www.brushymountainbeefarm.com/8-Frame-Fume-Pad-w_Fischers-Bee-Quick/productinfo/254FPQ/



**Exhibit P –Defendant's First URL Counterfiting Fischer's Trademark "Bee-Quick" To Sell their Knock-off Product "Honey Harvester"**

http://www.brushymountainbeefarm.com/Fischers-Bee-Quick-8-oz/productinfo/779/

**Exhibit P – Defendant's Second URL Counterfiting Fischer's Trademark "Bee-Quick" To Sell their Knock-off Product "Honey Harvester"**