UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x     Docket No. 14 CV 1307
JAMES H. FISCHER,                                                 (PAE)

                Plaintiff,

    -- against --

STEPHEN T. FORREST,

               Defendant.
------------------------------------------------------------x     Docket No. 14 CV 1304
JAMES H. FISCHER,                                                 (PAE)

                Plaintiff,

    -- against --

STEPHEN T. FORREST and SANDRA F.
FORREST,

               Defendants.
------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**

LAW OFFICES OF CAHN & CAHN, P.C.
*Attorneys for Defendant(s)*
Office and P.O. Address
22 High Street, Suite #3
Huntington, NY 11743
(631) 752-1600

# TABLE OF CONTENTS

Preliminary Statement.................................................................................................................1

Standard on Rule 12(b)(6) Motion to Dismiss............................................................................1

SECTION I (14cv1307) – Complaint Filed on February 27, 2014 ...............................................3

Point I:  Plaintiff has Failed to Properly Plead and Allege a Legally Cognizable Claim for
Copyright Infringement ..............................................................................................................3

Point II:  Plaintiff Fails to Properly Allege that Defendant Removed Copyright
Management Information to Support the Second Cause of Action ...............................................9

Point III:  Plaintiff's Unfair Competition Claim is Only Cognizable Under Copyright Law........11

Point IV:  Plaintiffs "4th Complaint" Fails to Sufficiently Plead the Elements of
Breach of Contract .....................................................................................................................13

Point V:  Plaintiff's "5th Complaint" is Preempted by Section 32 of the Lanham Act,
15 USC § 1114, which Forms the Basis of Plaintiff's "3rd Complaint" .......................................16

Point VI:  Plaintiff's "5th Complaint" Fails to Sufficiently Allege Unfair Business
Practices Pursuant to NY General Business Law § 349 ...............................................................17

Point VII:  Plaintiff's "6th Complaint" Fails to Sufficiently Plead Facts Sufficient
To Sustain a Claim of Unjust Enrichment ...................................................................................19

SECTION II (14cv1304) – Amended Complaint Filed on May 27, 2014.....................................21

Point I:  Plaintiff's Phrases are Not Protectable Under U.S. Copyright Law ...............................21

Point II:  Plaintiff Fails to Properly Plead and Allege a Legally Cognizable
Claim for Copyright Infringement ..............................................................................................22

Point III:  Plaintiff Fails to Properly Allege That Defendant Removed
Copyright Management Information ...........................................................................................28

Point IV:  Plaintiff Has Failed to Properly Plead and Allege a Legally Cognizable Claim
For Trademark Infringement......................................................................................................29

Point V:  A Claim for Federal Right of Publicity Does Not Exist................................................32

Point VI:  Plaintiff Fails to State a Valid Claim under NY Civil Rights Law §§ 50, 51 .................................................................................................................33

Point VII:  Plaintiff Fails to State a Valid Claim for Common Law Unfair Competition ...............................................................................................35

Point VIII:  Plaintiff Fails to State a Valid Claim for False Advertising......................................35

Point IX:  Plaintiff Fails to State a Valid Claim for Breach of Contract (UCC-1) ...................................................................................................................36

Point X:  Plaintiff Fails to State a Valid Claim for Unjust Enrichment.......................................36

Conclusion .........................................................................................................................38

## TABLE OF AUTHORITIES

**Cases**

1.  *Agence France Press v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011) .................... 12

2.  *Albert v. Apex Fitness, Inc.,* No. 97 Civ. 1151(LAK), 1997 WL 323899, at *1 (S.D.N.Y. Jun.13, 1997).............................................................................. 32

3.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (May 18, 2009)......................................................................................................... 2

4.  *Balbuena v. IDR Realty LLC,* 6 N.Y.3d 338, 356, 812 N.Y.S.2d 416, 845 N.E.2d 1246 [2006] ............................................................................................ 17

5.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .................................................................................... 2

6.  *Bill Diodato Photography, LLC v. Kate Spade*, 388 F. Supp. 2d 382, 395 (S.D.N.Y. 2005) ..................................................................................... 11

7.  *Broughel v. Battery Conservancy*, 2009 WL 928280 (S.D.N.Y. 2009)........................ 8, 27

8.  *California Fed. Sav. & Loan Assn. v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 [1987] ............................................................. 16

9.  *Calloway v. The Marvel Entertainment Group*, 1983 WL 1141, *3 (S.D.N.Y. 1983) ..................................................................................... 3, 6

10. *City of Syracuse v. R.A.C. Holding*, 258 AD2d 905, 906, 685 N.Y.S.2d 381 [4th Dept. 1999] .......................................................................................... 36

11. *C.J.L Construction, Inc v. Galaxy General Contracting Corp.,* 2009 N.Y. Misc. LEXIS 4486; 2009 NY Slip Op 32935(U) (Supreme Ct. Nassau Co. 2009 ......................................................................................... 37

12. *Conan Properties, Inc. v. Mattel, Inc.,* 601 F.Supp. 1179, 1182 (S.D.N.Y.1984) ................................................................................ 26

13. *Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 205 (2d Cir.1979)* ................................................................................. 30

14. *Cruz v. McAneney*, 31 AD3d 54, 59, 816 N.Y.S.2d 486 (2nd Dept. 2006) .................... 37

15.  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) ................................................................................ 11, 12

16.  *Dee v. Rakower,* 112 A.D.3d 204, 976 N.Y.S.2d 470, 474 (2d Dept. 2013) ................... 13

17.  *Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2nd Cir. 2006)......................................................................................... 27

18.  *Electric Ins. Co. v. Travelers Ins. Co.,* 124 AD2d 431, 432, 507 N.Y.S.2d 531 (3rd Dept. 1986) ....................................................................... 37

19.  *Estate of Presley v. Russen,* 513 F.Supp. 1339, 1362 (D.N.J.1981) ................................ 30

20.  *ETW Corp. v. Jierh Pub., Inc.,* 332 F.3d 915, 925 (6th Cir.2003) ................................... 32

21.  *Franklin Electronic Publishers v. Unisonic Prod. Corp.*, 763 F.Supp. 1, 4 (S.D.N.Y. 1991) .................................................................................. 3

22.  *Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259, 263 S.D.N.Y. 2005).......................................................................................... 12

23.  *Gaidon v. Guardian Life Ins. Co. of Am.,* 94 NY2d 330, 704 NYS2d 177, 725 NE2d 598 (1999) ........................................................................ 19, 20

24.  *Gee v CBS, Inc.*, 471 F.Supp. 600, 643 (E.D.Pa.), *aff'd*, 612 F.2d 572 (3d Cir. 1979)........................................................................................ 3

25.  *Georgia Malone & Co. v. Rieder,* 19 NY3d 511, 950 N.Y.S.2d 333, 973 N.E.2d 743 (2012) ........................................................................... 19, 20

26.  *Goshen v. Mutual Life Ins. Co. of New York,* 98 NY2d 314, 746 NYS2d 858, 774 NE2d 1190 (2002) ................................................................ 17, 18

27.  *Graham v. James,* 144 F.3d 229, 236 (2d Cir. 1988)........................................................ 7

28.  *Guice v. Charles Schwab & Co.,* 89 N.Y.2d 31, 39, 651 N.Y.S.2d 352, 674 N.E.2d 282 [1996], cert. denied 520 U.S. 1118, 117 S.Ct. 1250, 137 L.Ed.2d 331 [1997] . .................................................................... 16

29.  *Holsey v. Collins,* 90 F.R.D. 122, 128 (D.Md.1981).......................................................... 1

30.  *Hudson v. Universal Studios, Inc.*, 2008 WL 4701488, at *8 (S.D.N.Y. 2008), *aff'd*, 369 F. App'x 291 (2d Cir. 2010)................................................. 12

31.  *IQ Group, Ltd. v. Wiesner Pub., LLC* , 409 F.Supp.2d 587, 596
     (D.N.J. 2006) ............................................................................................. 10

32.  *Jeffrey v. Malcolm*, 353 F.Supp. 395, 399 (S.D.N.Y.1973) ............................. 1-2

33.  *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.,* 478 F.Supp.2d
     340, 356 (E.D.N.Y.2007) ................................................................................. 30

34.  *Karlin  v. IVF Am.,* 93 NY2d 282, 690 MYS2d 495, 712 NE2d 662 (1999) ................. 19

35.  *Kaye v. Grossman,* 202 F.3d 611, 615-616 (2nd Cir. 2000) ............................. 36

36.  *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992) ........................ 3, 8, 23, 26, 27

37.  *Landham v. Lewis Galoob Toys, Inc.,* 227 F.3d 619, 626 (6th Cir.2000)) ....................... 33

38.  *Louis Vuitton Malletier S.A. v. Warner Brothers Entertainment Inc.,*
     11 Civ.  9436  (ALC) (HBP) (S.D.N.Y. June  15, 2012) ................................................. 29

39.  *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 119 (2d
     Cir. 2006) ................................................................................................. 29

40.  *Marvullo v. Gruner & Juhr,* 105 F.Supp2d 225, 230 (S.D.N.Y. 2000) ........................... 1

41.  *Matter of People v. Applied Card Sys., Inc.,* 11 N.Y.3d 105, 113, 863
     N.Y.S.2d 615, 894 N.E.2d 1 [2008] .................................................................. 16

42.  *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d
     700 [1996] .............................................................................................. 16

43.  *NEC Elecs. v. Cal Circuit Abco,* 810 F.2d 1506, 1509 (9th Cir.1987) ........................... 31

44.  *Novelty, Inc. v. Mountain View Marketing,* 2008 WL 2954984 (S.D. Ind.,
     July 29, 2008) .......................................................................................... 25

45.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85
     NY2d 20, 25, 623 NYS2d 529, 647 NE2d 741 [1995] ...................................... 18

46.  *Paramount Film Distributing Corp. v. State,* 30 NY2d 415, 421, 285
     N.E.2d 695, 334 N.Y.S.2d 388 [1972] ............................................................ 36-37

47.  *Parks v. La Face Records,* 329 F.3d 437, 447 (6th Cir.2003) ......................................... 33

48.  *People ex. Rel. Cuomo v. First American Corp.,* 18 NY3d 173, 179, 937
     NYS2d 136, 960 NE2d 927 (2011) .......................................................... 16, 17, 19

49.   *Pirone v. MacMillan, Inc.,* 894 F.2d 579, 581 (2d Cir.1990) ..................................... 30, 31

50.   *Polymer Tech. Corp. v. Mimran,* 975 F.2d 58, 61 (2d Cir.1992).................................... 31

51.   *RDF Media Ltd. v. Fox Broad. Co.,* 372 F. Supp. 2d 556, 562-64 (C.D. Cal. 2005) .......................................................................................................... 12

52.   *Salinger v. Random House, Inc.,* 811 F.2d 90, 98 (2d Cir.) *reh'g denied,* 818 F.2d 252 (2d Cir.), *cert. denied,* 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987) ............................................................................................. 22

53.   *Samiento v. World Yacht Inc.,* 38 AD3d 328, 329, 833 N.Y.S.2d 2 (1st Dept. 2007).......................................................................................................... 36

54.   *Software for Moving, Inc. v. Frid,* 09 CIV 4341 DLC, 2010 WL  2143670 (S.D.N.Y. May 27, 2010) .................................................................................. 2

55.   *Stark v. City of New York,* 31 A.D.3d 530, 531, 818 N.Y.S.2d 281 (2nd Dept. 2006).......................................................................................................... 36

56.   *Tegg Corp. v. Beckstrom Elec. Co.,* 2008 WL 2682602 (W.D. Pa. 2008)...................... 25

57.   *Time, Inc. v. Petersen Publ'g Co.,* 173 F.3d 113, 117 (2d Cir.1999) ............................. 30

58.   *White v. Samsung Elecs. Am., Inc.,* 971 F.2d 1395, 1400 (9th Cir.1992) ....................... 33

59.   *Whitman Group Realty, Inc. v. Galano,* 41 AD3d 590, 593, 838 N.Y.S.2d 585 [2nd Dept. 2007].......................................................................................... 36

60.   *Williams v. Giglio,* 1989 WL 151251, *2 (S.D.N.Y.1989) ................................................ 1

61.   *Zacchini v. Scripps–Howard Broad. Co.,* 433 U.S. 562, 566, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) .............................................................................. 32

## Preliminary Statement

This Memorandum of Law is respectfully submitted by the Defendant, Stephen T. Forrest, in support of this motion to dismiss both the Complaint in 14cv1307 filed on February 27, 2014, and the Amended Complaint in 14cv1304 filed on May 27, 2014, for failure to state claims upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Memorandum is divided into two main sections: the first addressing the Complaint in 14cv1307, and the second addressing the Amended Complaint in 14cv1304.[1]

## Standard on Rule 12(b)(6) Motion to Dismiss

The standard on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is well known. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. This rule does not require detailed factual allegations, but a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. The Plaintiff must plead with some specificity those acts by defendant that are infringing. Broad sweeping allegations without supporting factual assertions have been held to be insufficient. *See Marvullo v. Gruner & Juhr*, 105 F.Supp2d 225, 230 (S.D.N.Y. 2000). Although the court reads *pro se* complaints as broadly as possible to find a valid claim, the complaint, nonetheless, must satisfy the minimum pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. *Williams v. Giglio,* 1989 WL 151251, *2 (S.D.N.Y.1989); *Holsey v. Collins,* 90 F.R.D. 122, 128 (D.Md.1981); *Jeffrey v.*

---

[1] We have attempted to eliminate duplication of arguments that apply with equal force to both actions. However, Plaintiff's 71-page Amended Complaint in 14cv1304 contains 20 claims (as compared with 43 pages and 8 claims in the original complaint), meaning that the two active pleadings in the two actions are no longer as similar as they were previously. In light of the numerous claims and allegations from both actions that are addressed in this Memorandum, and in the interests of judicial economy, we would respectfully request that the Court temporarily suspend its 25-page limit on memoranda of law and allow the submission of this 38-page memorandum on a one-time basis only.

*Malcolm,* 353 F.Supp. 395, 399 (S.D.N.Y.1973).

A trial court considering a Rule 12(b)(6) motion accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the defendant's favor. To survive dismissal, a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level. In other words, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the defendant pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Applying the facial plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Software for Moving, Inc. v. Frid,* 09 CIV 4341 DLC, 2010 WL 2143670 (S.D.N.Y. May 27, 2010) (internal quotations and citations omitted). Under the standard of facial plausibility, "factual allegations must be enough to raise a right to relief above a speculative level." *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). While this standard does not impose a probability requirement on the plaintiff at the pleading stage, it does require that the plaintiff demonstrate something more than the mere possibility of recovery. *Id.* at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (May 18, 2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 129 S.Ct. at 1949 (internal citations omitted). In the instant case, Plaintiff's causes of action do not satisfy the facial plausibility standard required by *Twombly* nor the pleading standards as required by Rule 8 of the Federal Rules of Civil Procedure.

2

## SECTION I (14cv1307)
## COMPLAINT FILED ON FEBRUARY 27, 2014

The Complaint in 14cv1307 contains a total of six (6) claims, three of which are federal claims and three of which are New York state law claims. A copy of the Complaint in 14cv1307 is annexed as Exhibit A to the accompanying Notice of Motion and appears as Document No. 2 on the Court's Docket.

### Point I

### Plaintiff has Failed to Properly Plead and Allege a Legally Cognizable Claim for Copyright Infringement

Plaintiff's copyright causes of action, consisting of the first and second "complaint", do not comply with the pleading requirements of Rule 8, and even if they did, the causes of action are facially implausible. It is well settled law in this jurisdiction that "[a] properly plead copyright infringement claim must allege 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992) (*citing Franklin Electronic Publishers v. Unisonic Prod. Corp.*, 763 F.Supp. 1, 4 (S.D.N.Y. 1991); *Calloway v. The Marvel Entertainment Group*, 1983 WL 1141, *3 (S.D.N.Y. 1983); *Gee v CBS, Inc.*, 471 F.Supp. 600, 643 (E.D.Pa.), *aff'd*, 612 F.2d 572 (3d Cir. 1979). Plaintiff has failed to satisfy all four of these elements in his complaint.

1.   Plaintiff fails to completely plead specific works and ownership.

Plaintiff has failed to sufficiently plead which works are subject to the copyright claim, and has failed to allege any original works. Plaintiff ambiguously and vaguely alleges that brochures and flyers are copyrighted advertising works, (Compl. ¶ 13). It is impossible to

3

discern what Plaintiff is claiming is subject to copyright protection, but it is clear Plaintiff has not alleged an original work as required by the first element in *Kelly*. This element is based upon the statutory provisions of the U.S. Copyright Act, 17 U.S.C. § 102(a), stating "[c]opyright protection subsists, in accordance with this title, in original works of authorship...." Plaintiff has failed to plead the most basic tenet of the Copyright Act, and arguably, the most important aspect of element 1 as required under *Kelly*.

Plaintiff claims in paragraph 13 of the Complaint that "[t]he brochures and flyers included proper copyright notice per 17 U.S.C. §401, and were included as downloadable documents on Plaintiff's website (www.bee-quick.com) in 2000, which was duly registered with the U.S. Copyright Office." However, Plaintiff did not indicate he attached the brochures and flyers he references in paragraph 13 as Exhibits and fails to indicate if these brochures and flyers are the copyrighted words he claims Defendant infringes. Plaintiff fails to indicate whether Plaintiff was the owner of any alleged copyright on the website. Paragraph 15 is just as incomprehensible and confusing. This paragraph avers "[p]laintiff created a brochure in 2000 (see Exhibit A)... Its copyright was duly registered. The brochure included each of the uniquely creative copyrighted works (see Exhibits B-E)." Plaintiff claims the brochure attached as Exhibit A includes "each of the uniquely creative copyrighted works (see Exhibits B-E)." Based on a short, cursory review and comparison of Exhibits A and Exhibits B-E, one can easily conclude that Exhibits B-E are not included within Exhibit A as alleged by Plaintiff. Additionally, Plaintiff claims Exhibit A was "duly registered," and therefore, one can infer that Exhibits B-E were not registered, since there is no affirmation that these Exhibits are the subject of a U.S. Copyright Registration.

In Paragraph 20, Plaintiff claims Defendant copied a mere phrase found in Exhibits B-E on Defendant's website.  Plaintiff provides four examples of alleged copyrighted phrases and claims these phrases are reproduced on Defendant's website reproduced in Exhibits G and L. (Compl. ¶ 20).  In paragraph 18, Plaintiff admits he gave "explicit permission for Defendant to use Plaintiff's individual copyrighted works…"

Plaintiff's phrases are not protectable under U.S. Copyright law as claimed by Plaintiff.  It is well known and clearly set forth by the U.S. Copyright Office that a "[c]opyright does not protect names, titles, slogans, or short phrases."[2]  The general legal doctrine of *de minimis non curat lex* bars copyright protection where the material for which protection is claimed fails to embody a minimal quantum of creative authorship. 2 Patry on Copyright § 4:2 (March 2014).  In applying the *de minimis* doctrine, the Copyright Office refuses registration for "[w]ords and short phrases such as names, titles, and slogan…." 2 Patry on Copyright § 4:2 (March 2014).  Copyright protects a "sequence of creative expression" but not an ordinary phrase in isolation. *Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir.) *reh'g denied,* 818 F.2d 252 (2d Cir.), *cert. denied,* 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987).

Plaintiff's complaint is vague and extremely confusing.  He has failed to specify the copyrights he claims have been infringed.  Under the first *Kelly* element, Plaintiff must allege which specific <u>original works</u> are the subject of the copyright claim.  He has failed to allege any original works or offer any proof whatsoever that Defendant infringed any alleged copyrights.  As such, Plaintiff has failed to sufficiently plead which original works are subject to the copyright claim.

---

[2]United States Copyright Office, What Does Copyright Protect?, available at http://www.copyright.gov/help/faq/faq-protect.html (last visited July 7, 2014).

2.      <u>Plaintiff fails to allege he owns and properly registered the copyrighted works.</u>

Plaintiff's complaint has failed to plead with sufficient clarity that he owns whatever copyrighted works he claims Defendant infringed.  Paragraph 13 claims unknown brochures and flyers were included on downloadable documents on Plaintiff's website "which was duly registered with the U.S. Copyright Office."  Plaintiff has failed to allege that he is the owner of any copyrighted works registered with the U.S. Copyright Office.  Plaintiff claims the brochure of Exhibit A "was duly registered."  If "duly registered" is meant to imply Exhibit A is registered with the U.S. Copyright Office, Plaintiff fails to allege he is the owner of the copyright on Exhibit A.

The complaint is even more seriously defective in its failure to allege whether and when the alleged copyrights on any of the works were registered pursuant to statutory requirements.  Clearly, Plaintiff has not provided any registration numbers and failed to allege each alleged copyrighted work is suitably registered pursuant to statutory requirements.  This Court has rejected a complaint that failed to specify registration numbers in *Calloway v. The Marvel Entertainment Group*, 1983 WL 1141 (S.D.N.Y. 1983).  In *Calloway*, the complaint failed to specify the registration numbers of the alleged copyrighted works and plaintiff's papers contained two conflicting certificates of registration; consequently the Court dismissed the Complaint for its failure to comply with the requirements of Rule 8.  Similarly, Plaintiff's complaint has failed to meet the requirements of Rule 8 by failing to allege that he owns the alleged copyrighted works, that his copyrighted works have been registered pursuant to statutory requirements, and by providing registration numbers of the alleged copyrighted works.

3.  <u>Plaintiff Fails to Specify any Dates and Specific Acts of Infringement By Defendant.</u>

Plaintiff's complaint fails to specify the dates on which any actual alleged infringing acts occurred and the specific acts of infringement.  Such allegations are crucial in the present case.  The vague and confusing nature of Plaintiff's complaint and Plaintiff's admission that he gave permission for use of the copyrighted works mandates that Plaintiff specify the exact dates of infringement and the specific acts of infringement to place Defendant on notice of the claims.

Plaintiff claims he "gave explicit permission allowing Defendant to use Plaintiff's individual copyrighted works, but Plaintiff fails to claim he ever revoked his explicit permission for use of the copyrighted works."  "A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1988).  As such, Plaintiff fails to allege any specific acts of infringement.  In a single instance, Plaintiff claims in paragraph 23 that "[t]he copyright owner's particular unique expressions of ideas covered by Copyright are duplicated verbatim and used by Defendant to compete directly with the product of Plaintiff,…", but Plaintiff has failed to allege the ideas are copyrighted pursuant to statutory provisions, that Plaintiff owns the copyright, if any exists, or that the ideas were utilized after a license was revoked or a take-down notice issued.  This allegation fails the facial plausibility standard, because Defendant was a dealer of Plaintiff's products and was advertising and selling Plaintiff's products.  Defendant was given express permission to utilize the copyrights, and Defendant was utilizing the copyright to sell Plaintiff's product.

Plaintiff has also failed to provide any dates or specific acts of infringement for any brochure and flyers as discussed in paragraphs 13, 14, and 15, if Plaintiff in fact alleges infringement of these items.

To satisfy the pleading requirements of F.R.C.P. Rule 8, Plaintiff's allegations must be sufficiently precise to put each defendant on notice of his or her allegedly infringing conduct. *See Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2nd Cir. 2006). "Therefore, it is axiomatic that a plaintiff's claims cannot rest on inchoate and conclusory accusations of unauthorized copying. Rather, in articulating her cause of action, plaintiff must identify, with specificity, the original works that are the subject of her copyright claim and which acts committed by defendants constitute infringement of her rights." *Broughel v. Battery Conservancy*, 2009 WL 928280 (S.D.N.Y. 2009) (failure to allege how other defendants, other than Conservancy, infringed her copyrights was fatal to claim for infringement against the other defendants); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2nd Cir. 1994). Here, as in *Broughel*, Plaintiff generally alleges copyright infringement against the individual defendant. (*Broughel* differs slightly from the present case, because in *Broughel* the corporate entity was also named). Plaintiff does not, however, set forth any allegations with respect to any individual acts by Mr. Forrest. Why Mr. Forrest is personally liable for alleged infringement is not addressed or plead anywhere in Plaintiff's Complaint.

The catalog produced by Plaintiff in Exhibit H is not Defendant's catalog. In fact, and as Plaintiff is well aware, the catalog is owned by and maintained by Brushy Mountain Bee Farm, Inc., as prominently indicated on the cover. As such, Defendant Mr. Forrest, in his individual capacity, has not reproduced anything on the Brushy Mountain Bee Farm, Inc. website.

Plaintiff has failed to comply with Rule 8 and properly plead his copyright claims in accordance with the elements set forth in *Kelly* for any actionable claim of copyright infringement.  Copyright infringement is not possible since Defendant did not reproduce the alleged copyrighted works on its website as alleged by Plaintiff, and Plaintiff's sentences are not subject to copyright protection.  Accordingly, the first cause of action should be dismissed.

**Point II**

**Plaintiff Fails To Properly Allege That Defendant Removed Copyright Management Information To Support The Second Cause Of Action**

Plaintiff's second "complaint" for removal of copyright management information is the epitome of a broad, sweeping allegation that does not come close to complying with Rule 8.  17 U.S.C. § 1202 is part of the Digital Millennium Copyright Act ("DMCA") that protects the integrity of copyright management information (CMI) placed by a copyright's owner. Subsection (b), relied upon by Plaintiff in the Complaint, prohibits the intentional removal or alteration of CMI with reasonable grounds to know the removal or alteration will aid infringement.[3]

Plaintiff claims Defendant "intentionally [removed] all of Plaintiff's copyright notices from each of the infringed works in violation of 17 U.S.C. §1202(b)(1)."  (Compl. ¶ 31). The copyright notices that Plaintiff claims were removed from the undefined copyrighted works does not fall within the definition of "copyright management information" of the DMCA.

---

[3] "No person shall, without the authority of the copyright owner or the law— (1) intentionally remove or alter any copyright management information, (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. §1202(b).

9

Although the text of section 1202 appears to define CMI quite broadly, courts have interpreted it narrowly to only include "automated copyright management systems functioning within a computer network environment." *IQ Group, Ltd. v. Wiesner Pub., LLC* , 409 F.Supp.2d 587, 596 (D.N.J. 2006). The IQ Group court examined the legislative history and extrinsic sources and found that the "statute should be subject to a narrowing interpretation." *IQ Group, Ltd.*, 409 F.Supp.2d at 593. The IQ Group court explained:

> Congress intended the DMCA to modernize copyright protection as a response to the development of new technologies which both enabled new forms of copyright protection as well as new forms of copyright infringement. Traditionally, the rights of authors have been managed by people, who have controlled access and reproduction. Through scientific advances, we now have technological measures that can control access and reproduction of works, and thereby manage the rights of copyright owners and users. Section 1202 operates to protect copyright by protecting a key component of some of these technological measures. It should not be construed to cover copyright management performed by people, which is covered by the Copyright Act, as it preceded the DMCA; it should be construed to protect copyright management performed by the technological measures of automated systems.

*IQ Group, Ltd.*, 409 F.Supp.2d at 597.

In *IQ Group*, the plaintiff created and distributed advertisements for distribution by email that included a logo and a hyperlink that when clicked directed the recipient to the plaintiff's website. *Id.* at 589. The defendant distributed those copyrighted advertisements, but first removed the plaintiff's logo and hyperlink. *Id.* The plaintiff sued defendant, for among other things, violation of the DMCA. *Id.* On a motion for summary judgment, the *IQ Group* court held in favor of defendant, finding that neither the logo nor the hyperlink fell within the definition of CMI because they did not function as a component of an automated copyright protection or management system. *Id.* at 597-598.

10

There was no evidence that "an automated system would use the logo or hyperlink to manage copyrights, nor that the logo or hyperlink performed such a function." *Id.*

Plaintiff, in his complaint, has not pleaded that the copyright notice would function as a component of an automated copyright protection or management system. Plaintiff has also failed to plead that an automated system would use the [copyright notice] to manage copyrights, or that the [copyright notices] performed such a function, and as such, copyright notices are not CMI under the DMCA.

In addition to this cause of action failing to satisfy the requirements for a cause of action under 17 U.S.C. §1202 and the facial plausibility standard, the Plaintiff makes only broad sweeping allegations without supporting factual assertions. Plaintiff has failed to define the "layout-ready artwork" serving as the basis for the claim, except to broadly define as brochures, flyers, and other sales materials. (Compl. ¶30). The use of "other sales materials" in paragraph 30 is imprecise, vague, and ambiguous. Such imprecise, vague, and sweeping pleading does not comply with Rule 8, and thus, dismissal of this cause of action is the only appropriate action.

## Point III

### Plaintiff's Unfair Competition Claim is Only Cognizable Under Copyright Law

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "prohibits false designation of the origin of goods in interstate commerce and protects only 'the producer of the *tangible goods* that are offered for sale, and *not [ ] the author* of any idea, concept or communication embodied in those goods.'" *Bill Diodato Photography, LLC v. Kate Spade*, 388 F. Supp. 2d 382, 395 (S.D.N.Y. 2005) (emphasis added) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003)).

11

Plaintiff's Lanham Act claim is based on the same conduct as his copyright claim – namely, that Defendants misappropriated Plaintiff's copyrighted works. (Compl. ¶35). But, the Supreme Court has made clear that such conduct is governed only by copyright laws, not the Lanham Act. *See Dastar*, 539 U.S. at 31 (rejecting claim that "in marketing and selling [a video] as its own product without acknowledging its nearly wholesale reliance on the Crusade television series, *Dastar* has made a 'false designation of origin'"). The Court held that "as used in the Lanham Act, the phrase 'origin of goods' is . . . incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain," *Id.* at 32, and thus allowing a claim similar to Plaintiff's here "would create a species of mutant copyright law." *Id.* at 34. "Since *Dastar*, Lanham Act claims arising from the alleged copying of creative work have been clearly foreclosed." *Hudson v. Universal Studios, Inc.*, 2008 WL 4701488, at *8 (S.D.N.Y. 2008), *aff'd*, 369 F. App'x 291 (2d Cir. 2010); *see also, e.g., Agence France Press v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011) ("In *Dastar*, the Supreme Court admonished that section 43(a) of the Lanham Act . . . cannot be invoked as an end run around copyright laws or to add another layer of protection to copyright holders"); *Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259, 263 S.D.N.Y. 2005) ("The right to copy creative works, with or without attribution, is the domain of copyright, not of trademark or unfair competition."); *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 562-64 (C.D. Cal. 2005) (relying on *Dastar* to reject trade dress protection for "total image and appearance" of party's work). Notwithstanding that, as demonstrated above, Plaintiff does not have a viable copyright claim, as a matter of well-established law, a Copyright Act claim cannot be morphed into a claim for unfair competition, and this claim must be dismissed.

### Point IV

### Plaintiff's "4th Complaint" Fails to Sufficiently
### Plead the Elements of a Breach of Contract

Under New York law, it is well settled that the essential elements of a cause of

action to recover damages for breach of contract are (1) the existence of a contract, (2) the

plaintiff's performance pursuant to the contract, (3) the defendant's breach of his or her

contractual obligations, and (4) damages resulting from the breach. *Dee v. Rakower,* 112 A.D.3d

204, 976 N.Y.S.2d 470, 474 (2d Dept. 2013) (internal citations omitted).

In the Plaintiff's breach of contract claim, denominated as the "4th Complaint",

Plaintiff states, at ¶ 42, that "Defendant was permitted use of Plaintiff's intellectual property only

in the sale of Plaintiff's goods as an authorized dealer." Nowhere in the complaint does the

Plaintiff allege that there existed a contract between him and the Defendant, or between him and

the Defendant's company. In ¶ 17 of the Complaint, Plaintiff alleges, among other things, that

"Defendant became an Authorized Dealer of 'Fischer's Bee-Quick' in 2002". In ¶ 18 Plaintiff

alleges that "Defendant specifically requested permission to use Plaintiff's copyrighted works

(Exhibits B-E) on their website. Plaintiff gave explicit permission allowing Defendant to use

Plaintiff's individual copyrighted works, copyrighted photos, trademarks, and trade dress solely

in connection with Defendant's efforts as an Authorized Dealer for Plaintiff's products."

However, Plaintiff does not specify whether the purported agreement between

him and the Defendant or Defendant's company (the latter of which, incidentally, should have

been named as the proper party defendant) was oral or written, and does not refer to the length of

time that the agreement was to remain in effect. If the agreement were oral and could not by its

terms be performed within one year of its making, the oral contract would be void under the

statute of frauds. *See,* NY General Obligations Law § 5-701. Plaintiff also does not refer to or

attach a copy of any writing which he claims to be the 'agreement' referred to in the Complaint.

Plaintiff also does not specify whether the Defendant's status as an "Authorized Dealer" for Plaintiff's products was by virtue of an oral or written agreement, and does not refer to or attach a copy of any writing purporting to be such an agreement.

Finally, and as previously noted, Plaintiff does not specify whether the alleged 'agreement', if it existed at all, was between him and the Defendant, or between him and the Defendant's company which was not named as a defendant in this action.

Under the foregoing circumstances, Plaintiff has not sufficiently pleaded the first element of a breach of contract claim under New York law, i.e., the existence of a contract between him and the Defendant. Thus, the breach of contract claim should be dismissed for failure to state a valid claim.

Plaintiff also fails to sufficiently plead the second element of a breach of contract claim, i.e., that he performed his obligations under the contract. While Plaintiff alleges that over a period of years he supplied several thousand brochures and flyers to the Defendant at no charge in response to the Defendant's request for same (*see,* Complaint at ¶ 17), nowhere does the Plaintiff allege that his supplying of brochures and flyers to the Defendant was one of the agreed terms of the alleged contract between Plaintiff and Defendant, or that by supplying those brochures and flyers, the Plaintiff had fully performed his obligations under the alleged contract.

Plaintiff also fails to sufficiently plead the third element of a breach of contract claim, i.e., that the Defendant breached the alleged contract. In ¶ 19 of the Complaint, Plaintiff alleges that on "December 10, 2010, Defendant abruptly and unilaterally [advised] Plaintiff of Defendant's intent to 'discontinuing Bee-Quick in our 2011 catalog' in the email of 12/10/2010 to Plaintiff. (*see* Exhibit F)". Assuming the truth of this allegation, as the Court must on a Rule

12(b)(6) motion, the Plaintiff does not even allege that Defendant was obligated under the alleged contract to continue advertising Plaintiff's product in its 2011 catalog, or that Defendant's decision to stop offering Plaintiff's product in its catalog was a breach of the alleged agreement with the Plaintiff.

In ¶ 42 of the Complaint, the Plaintiff alleges that Defendant breached the alleged agreement "by attempting to cancel a Purchase Order after accepting receipt of the shipment and further, by utilizing Plaintiff's intellectual property to market a substituted 'knock-off' product" and that "Defendant was notified of this breach, and did not cure the breach." However, because Plaintiff does not allege what the Defendant's obligations were under the purported agreement with the Plaintiff, the allegation that Defendant "attempt[ed]" to cancel a purchase order after receipt of a shipment does not sufficiently state how this constituted a breach by Defendant.

Even if Plaintiff had alleged that the Defendant actually canceled a purchase order after receipt of a shipment (as opposed to "attempting" to cancel it), this would still be insufficient to sustain the third element of a breach of contract claim because the Plaintiff does not allege what the contract required the Defendant to do, or how the cancellation of a purchase order under the facts set forth in the Complaint violated the purported agreement.

Finally, Plaintiff does not sufficiently plead the fourth element of a breach of contract claim, i.e., damages resulting from the alleged breach by Defendant. While the Plaintiff repeatedly alleges that he "has been damaged in an amount to be proven at trial" (*see*, Complaint at ¶¶ 33, 43, 47, 50), he does not provide any basis for determining that he did, in fact, suffer any damages whatsoever. While he generally alleges that Defendant "misappropriated Plaintiff's trade secrets to make an unauthorized knock-off product, and illegally utilized Plaintiff's intellectual property to promote the knock-off, and to confuse it with Plaintiff's product thus

diluting the value of Plaintiff's product" (*see*, Complaint at ¶ 21), Plaintiff fails to specifically allege that his product had commercial value or what that value was both before and after the Defendant allegedly 'diluted' it.

If the Court finds that Plaintiff has sufficiently pleaded damages by alleging simply that he "has been damaged in an amount to be proven at trial", the Plaintiff nonetheless fails to satisfy the first three elements of a breach of contract claim under New York State law, and therefore the Plaintiff's "4th Complaint" for breach of contract should, respectfully, be dismissed for failure to state a claim upon which relief can be granted.

### Point V

### Plaintiff's "5th Complaint" is Preempted by Section 32 of the Lanham Act, 15 USC § 1114, which Forms the Basis of Plaintiff's "3rd Complaint"

The New York Court of Appeals recently set out the standard on federal preemption of state statutes in *People ex. Rel. Cuomo v. First American Corp.,* 18 NY3d 173, 179, 937 NYS2d 136, 960 NE2d 927 (2011):

> Preemption analysis begins, as always, with reference to the well-familiar Supremacy Clause of the United States Constitution, which provides that federal laws "shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding" (U.S. Const., art. VI, cl. 2). Indeed, the Supremacy Clause "vests in Congress the power to supersede not only State statutory or regulatory law but common law as well" (*Guice v. Charles Schwab & Co.,* 89 N.Y.2d 31, 39, 651 N.Y.S.2d 352, 674 N.E.2d 282 [1996], cert. denied 520 U.S. 1118, 117 S.Ct. 1250, 137 L.Ed.2d 331 [1997] ). In determining whether federal law preempts state law, the United States Supreme Court has instructed that a court's "sole task is to ascertain the intent of Congress" (*California Fed. Sav. & Loan Assn. v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 [1987]; *see also Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 [1996] ["(T)he purpose of Congress is the ultimate touchstone in every pre-emption case"] [internal quotation marks omitted]; *Matter of People v. Applied Card Sys., Inc.,* 11 N.Y.3d

> 105, 113, 863 N.Y.S.2d 615, 894 N.E.2d 1 [2008] ). Of course,
> "[p]reemption can arise by: (i) express statutory provision, (ii)
> implication, or (iii) an irreconcilable conflict between federal and
> state law" (*Applied Card Sys.*, 11 N.Y.3d at 113, 863 N.Y.S.2d
> 615, 894 N.E.2d 1, citing *Balbuena v. IDR Realty LLC*, 6 N.Y.3d
> 338, 356, 812 N.Y.S.2d 416, 845 N.E.2d 1246 [2006] ).

*People ex. Rel. Cuomo,* 18 NY3d at 179.

In the instant case, it is clear that preemption of NY GBL § 349(a) by Section 32

of the Lanham Act, 15 USC § 1114, applies by implication, as the standard under GBL § 349(a)

is virtually identical to the standard on the federal claim (e.g., the federal claim requires that an

"ordinarily prudent person" be misled by the defendant's acts, while the state law claim uses a

"reasonable consumer" standard).

Hypothetically, if the Plaintiff were to survive the motion to dismiss and

ultimately prove by competent evidence that the Defendant or his company had violated Section

32 of the Lanham Act, 15 USC § 1114, then almost by definition, he would have also satisfied

the elements of a claim under NY GBL § 349. Since Plaintiff's federal claims afford Plaintiff

the relief he is seeking in his state law GBL § 349 claim, the state law claim is preempted by

implication, and should be dismissed on that ground alone. *People ex. Rel. Cuomo,* 18 NY3d at

179.

### Point VI

### Plaintiff's "5th Complaint" Fails to Sufficiently Allege Unfair Business Practices Pursuant to NY General Business Law § 349

New York General Business Law § 349 provides that "deceptive acts or practices

in the conduct of any business, trade or commerce or in the furnishing of any service in this state

are hereby declared unlawful." General Business Law § 349(a).[4] In *Goshen v. Mutual Life Ins.*

---

[4] While a KeyCite reference under GBL § 349 indicates that the statute has received severe negative treatment, a review of the three federal cases (two in the EDNY and one in the SDNY) reveals that all three

*Co. of New York,* 98 NY2d 314, 746 NYS2d 858, 774 NE2d 1190 (2002), the New York Court

of Appeals set out the standard on a private cause of action under the statute:

> Under General Business Law § 349(h) "a prima facie case
> requires…a showing that defendant is engaging in an act or
> practice that is deceptive or misleading in a material way and that
> plaintiff has been injured by reason thereof (*Oswego Laborers'*
> *Local 214 Pension Fund v. Marine Midland Bank,* 85 NY2d 20,
> 25, 623 NYS2d 529, 647 NE2d 741 [1995]).  Additionally, the
> allegedly deceptive acts, representations, or omissions must be
> misleading to 'a reasonable consumer' (*Oswego,* 85 NY2d at 26,
> 623 NYS2d 529, 647 NE2d 741; *see also, Karlin  v. IVF Am.,* 93
> NY2d 282, 690 MYS2d 495, 712 NE2d 662 (1999); *Gaidon v.*
> *Guardian Life Ins. Co. of Am.,* 94 NY2d 330, 704 NYS2d 177, 725
> NE2d 598 (1999).

*Goshen,* 98 NY2d at 324, 746 NYS2d 858, 774 NE2d 1190.  As the Court of Appeals noted in

*Goshen,* "to qualify as a prohibited act under the statute, the deception of a consumer must occur

in New York." *Goshen,* 98 NY2d at 325.

> Importantly, the Court in *Goshen* also noted that
>
> the origin of any advertising or promotional conduct is irrelevant if
> the deception itself – that is, the advertisement or promotional
> package – did not result in a transaction in which the consumer
> was harmed.  In *Oswego,* we required '[p]roof that defendant's acts
> are directed to consumers' in order to maintain a claim under
> section 349 (*Oswego,* 85 NY2d at 25, 623 NYS2d 529, 647 NE2d
> 741).  Again in *Gaidon* our analysis involved transactions with
> consumers (94 NY2d 330, 704 NYS2d 177, 725 NE2d 598).

*Goshen,* 98 NY2d at 326.

> First, it should be noted that Plaintiff does not articulate in the complaint how the

Defendant engaged in any deceptive conduct, other than to allege in a conclusory fashion that

Defendant attempted to pass off his own products as Plaintiff's products and thereby perpetrated

---

decisions limited application of GBL § 349 on federal preemption grounds.  Regardless of whether this Court
determines that Plaintiff's "5[th] Complaint" alleging Unfair Business Practices under NY GBL § 349 is preempted by
one or more of his federal claims, Plaintiff has nonetheless failed to sufficiently plead the elements of a claim under
GBL § 349.

a fraud on the general public. (*See,* Complaint at ¶¶ 45-46).

Secondly, Plaintiff does not state where the deceptive conduct took place. Since the Plaintiff fails to allege that the deceptive acts took place in New York, this claim is insufficiently pleaded to sustain a motion to dismiss.

Furthermore, while NY GBL § 349 was intended to protect consumers, the Plaintiff does not identify himself as a consumer for purposes of his claims against the Defendant. Rather, he identifies himself as the owner of protected intellectual property which was purportedly used by the Defendant to perpetrate a fraud on the public and thereby caused some unidentified harm to the Plaintiff. This raises questions about whether the Plaintiff even has standing to assert a claim on behalf of consumers when he is not acting in the role of a consumer.

Moreover, Plaintiff fails to allege that any New York consumers were actually harmed, and therefore he fails to satisfy one of the required elements of a GBL § 349 claim. *People ex. Rel. Cuomo,* 18 NY3d at 179.

For all of the foregoing reasons, if the Court finds that Plaintiff's "5th Complaint" under New York GBL § 349 is not preempted by one or more of his federal claims, then the Court should dismiss the claim for failure to sufficiently plead the elements of that claim.

### Point VII

### Plaintiff's "6[th] Complaint" Fails to Sufficiently Plead Facts Sufficient to Sustain a Claim of Unjust Enrichment

In the recent case of *Georgia Malone & Co. v. Rieder,* 19 NY3d 511, 950 N.Y.S.2d 333, 973 N.E.2d 743 (2012), the New York Court of Appeals reiterated the standard on a state law claim for unjust enrichment:

> As we have stated on several occasions, " '[t]he theory of unjust enrichment lies as a quasi-contract claim' " and contemplates "an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties" ... An unjust enrichment claim is rooted in "the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another" ... Thus, in order to adequately plead such a claim, the plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered".

*Georgia Malone & Co.,* 19 NY3d at 516 [internal citations omitted].

In the case at bar, the Plaintiff baldly asserts that the Defendant was enriched by the alleged acts of infringement (*see,* Complaint at ¶ 48), but he does not state how the Defendant was enriched, other than to state that the "Defendant's infringement is purely commercial and for the personal profit of Defendant." (Complaint at ¶ 49). Even if this bare assertion satisfies the requirement that Plaintiff allege that Defendant was enriched, Plaintiff has utterly failed to allege that such enrichment was at his expense, or that it would be against equity and good conscience to permit the Defendant to retain what is sought to be recovered.

Based on the foregoing, the Court should, respectfully, dismiss the Plaintiff's state law claim for unjust enrichment for failure to sufficiently the required elements of the claim.

## SECTION II (14CV1304)
## AMENDED COMPLAINT FILED ON MAY 27, 2014

The Amended Complaint in 14cv1304 filed on May 27, 2014 contains a total of twenty (20) claims[5], including 14 federal claims and 6 state law claims.  A copy of the Amended Complaint in 14cv1307 is annexed as Exhibit B to the accompanying Notice of Motion and appears as Document No. 23 on the Court's Docket for this action.

### Point I

### Plaintiff's Phrases Are Not Protectable Under U.S. Copyright Law

Plaintiff's phrases are not protectable under U.S. Copyright law as claimed by Plaintiff.  Plaintiff claims he has copyright protection for the following short phrases individually, as set forth in paragraph 40 of the Amended Complaint:

      a.)      "Are you tired of your spouse making you sleep in the garage"?

      b.)      "Are you tired of using a hazardous product on the bees you love"?

      c.)      "A safe, gentle, and pleasant way to harvest your honey"

      d.)      "A natural, non-toxic blend of oils and herbal extracts"

It is well known and clearly set forth by the U.S. Copyright Office that a "[c]opyright does not protect names, titles, slogans, or short phrases."[6]  The general legal doctrine of *de minimis non curat lex* bars copyright protection where the material for which protection is claimed fails to embody a minimal quantum of creative authorship.  2 Patry on Copyright § 4:2 (March 2014).  In applying the *de minimis* doctrine, the Copyright Office refuses registration for "[w]ords and short phrases such as names, titles, and slogan...." 2 Patry on

---

[5] Plaintiff's Amended Complaint contains an "8th complaint" and a "10th Complaint", but there is no "9th Complaint" denominated as such.  Thus, the "10th Complaint" is actually the 9th claim, and so on, continuing to the "21st Complaint", which is actually the 20th and final claim pleaded.

[6] *See,* footnote 2, supra.

Copyright § 4:2 (March 2014).  Copyright protects a "sequence of creative expression" but not an ordinary phrase in isolation. *Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir.) *reh'g denied,* 818 F.2d 252 (2d Cir.), *cert. denied,* 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987).

Plaintiff's copyright registration indicates he does not have a copyright on each of these individual short phrases.  Instead, the copyright registration describes the work as "text and images of Bee-Quick.com website."  Additionally, the registration certificate indicates the copyright is for "text, photograph(s), compilation, editing, artwork."  In accordance with copyright office policy, Mr. Fischer does not have a copyright on each individual phrase as he alleges.  The registration submitted by Plaintiff is conclusive proof, and contrary to the allegations in the complaint that are against long standing legal principles of copyright law. Applying the holding of *Salinger* to the present case, Plaintiff presumably has a copyright registration for the editing of the "sequence of creative expression" found on the Bee-Quick website, but not these ordinary phrases in isolation as alleged.

Since the ordinary phrases as set forth in paragraph 40 of the Amended Complaint are not protectable in isolation and not the subject of the copyright registration as claimed by Plaintiff, Plaintiff's copyright allegations of copyright infringement fail as a matter of law.

## Point II

### Plaintiff Fails to Properly Plead and Allege a Legally Cognizable Claim for Copyright Infringement

Plaintiff's copyright causes of action, consisting of the first through fifth "complaint", do not comply with the pleading requirements of Rule 8, and even if they did, the causes of action are facially implausible.  It is well settled law in this jurisdiction that "[a] properly plead copyright infringement claim must allege 1) which specific original works are the

subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, <u>supra</u> [internal citations omitted]. Plaintiff has failed to properly satisfy elements 2, 3, and 4.

      1.    <u>Plaintiff Fails to Allege Ownership of Federally Registered Copyrighted Works</u>

      Plaintiff has failed to satisfy elements 2 and 3 of *Kelly*. Plaintiff has not identified with specificity the works covered by the copyright registration, and Plaintiff's allegations actually indicate the alleged copyrighted works are not covered by the registration certificate attached as Exhibit 4.

      Plaintiff has produced a copyright registration as Exhibit 4 titled "text and images of Bee-Quick.com website", and the copyright registration indicates Plaintiff created the "text, photograph(s), compilation, editing, artwork" in the copyrighted works. However, Plaintiff has failed to include a copy of the text and images subject to the copyright registration.

      Consequently, neither Defendants nor the Court have any notice of the allegedly infringing works covered under the copyright registration other than a vague description of "text and images of Bee-Quick.com website" and "text, photograph(s), compilation, editing, artwork."

      It cannot be determined from Plaintiff's Amended Complaint what, if any, of the unspecified, indeterminate "text" or "photograph(s)" or "compilation" or "editing" or "artwork" included is actually protected. Plaintiff's registration makes clear that not all, if any, of the alleged copyrighted works are protected by the copyright registration. Plaintiff's attachment of the registration certificate to the Amended Complaint only heightens the insufficiency of his allegations. Indeed, the certificate renders Plaintiff's allegations of copyright infringement indecipherable.

The registration certificate makes clear that only a portion of the works submitted with the copyright application are protected by the registration, but those protected portions are entirely unknown. Specifically, the copyright registration indicates the copyright covers, among others, "editing." The Copyright Office defines "editing" as "consists of adding, revising, and/or deleting <u>preexisting text</u>."[7]  17 U.S.C. §103(b) states:

> "The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the <u>preexisting material</u> employed in the work, and does not imply any exclusive right in the <u>preexisting material</u>. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the <u>preexisting material</u>."

Therefore, Plaintiff would have no exclusive right in this registration to preexisting material, and Plaintiff has failed to provide notice as to this preexisting material, and whether the preexisting material is the copyrighted works Plaintiff alleges were infringed in the Amended Complaint.

The copyright registration states the date of completion of this version of the copyrighted works is 2000, but Plaintiff claims in paragraph 36 of the Amended Complaint that the copyrighted works giving rise to the copyright infringement allegations were created in 1999. The registration submitted as Exhibit 4 covers copyrighted works completed in 2000 and not the copyrighted works complained of in the Amended Complaint, which by Plaintiff's own admission were created in 1999.   Plaintiff has failed to provide a registration certificate covering the works created in 1999. At the very least, the copyright allegations are indecipherable and vague, thus failing to provide Defendants or the Court notice that the works alleged to have been infringed are actually the subject of a federal copyright registration.

---

[7] United States Copyright Office, Help: Author, available at http://www.copyright.gov/eco/help-author.html (last visited July 7, 2014).

Pleading ownership of a copyright and then representing in a conclusory fashion that defendants have infringed the same, without sufficiently alleging what material is protected by the identified copyrights or how Defendants allegedly infringed them, is insufficient. *Tegg Corp. v. Beckstrom Elec. Co.*, 2008 WL 2682602 (W.D. Pa. 2008).

In *Tegg*, the plaintiff alleged infringement of eleven copyrights relating to its computer software system. *Id.* In addition to finding that plaintiff's allegations regarding ownership of the alleged copyrights were deficient under Rule 12(b)(1), the court also concluded that plaintiff had failed to state a claim for infringement under Rule 12(b)(6) because the plaintiff had failed to specify what software or components of the software were protected by its eleven copyright registrations, and what conduct of defendants had infringed each of the respective copyrights. *Id.* The court granted defendant's Rule 12(b)(6) motion because it simply "could not discern from the pleadings what original works of the plaintiff were protected by which of the registered copyrights or if the allegations of the Amended Complaint were sufficient to state a claim for infringement of said registered copyrights." *Id.* at *9.

Similarly, in *Novelty, Inc. v. Mountain View Marketing*, 2008 WL 2954984 (S.D. Ind., July 29, 2008), the Southern District of Indiana found that the plaintiff failed to state a claim for copyright infringement because it did not identify which of its allegedly original products were protected by its registered copyrights, which of the defendants' products allegedly infringed upon those copyrights, and what conduct of the defendants had infringed those copyrights. *Id.* at *3. Because its complaint left defendants to guess at how its products infringed plaintiff's copyrights, the plaintiff failed to state a claim for copyright infringement. The court found the factual detail alleged was "so sketchy that the complaint does not provide the type of notice of the claim to which defendant is entitled under F.R.C.P. Rule 8." *Id.* (citation omitted).

The fifth "complaint" alleges that Defendants infringed Plaintiff's "hi-key product photo" that "enjoyed a valuable and economic life as a separate and independent Work from Plaintiff's other Works at issue in this matter." (Amend. Compl. ¶ 87). Plaintiff has not alleged the "hi-key product photo" is covered by the attached registration certificate or any registration certificate. Instead, the "hi-key product photo" is a separate and independent work not covered by the registration certificate attached as Exhibit 4.

The Copyright Act provides: "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Thus, "[i]n order to proceed in [a] copyright infringement action, plaintiff is required to comply with the statutory requirement that all copyrights be registered." *Conan Properties, Inc. v. Mattel, Inc.,* 601 F.Supp. 1179, 1182 (S.D.N.Y.1984) (citation omitted); *see also Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y.1992), *aff'd without op.,* 23 F.3d 398 (2d Cir.1994), *cert. denied,* 513 U.S. 950, 115 S.Ct. 365, 130 L.Ed.2d 318 (1994). Since Plaintiff does not have a registration for his "hi-key product photo", he cannot maintain a copyright infringement action as to the fifth "complaint."

Plaintiff's copyright allegations are indecipherable and vague, thus failing to provide Defendants or the Court notice that the works alleged to have been infringed are actually the subject of a federal copyright registration. Plaintiff has failed to show he owns a copyright in the works asserted and the works are registered in accordance with the statute, as required by elements 2 and 3.

2.    <u>Plaintiff Has Failed To State Any Acts of Copyright Infringement Against Either Defendant – Stephen T. Forrest or Sandra F. Forrest – In Their Individual Capacities</u>

To satisfy the pleading requirements of F.R.C.P. Rule 8, Plaintiff's allegations must be sufficiently precise to put each defendant on notice of his or her allegedly infringing conduct. *See Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2nd Cir. 2006). "Therefore, it is axiomatic that a plaintiff's claims cannot rest on inchoate and conclusory accusations of unauthorized copying. Rather, in articulating her cause of action, plaintiff must identify, with specificity, the original works that are the subject of her copyright claim and which acts committed by defendants constitute infringement of her rights." *Broughel v. Battery Conservancy*, 2009 WL 928280 (S.D.N.Y. 2009) (failure to allege how other defendants, other than Conservancy, infringed her copyrights was fatal to claim for infringement against the other defendants); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2nd Cir. 1994). Here, as in *Broughel*, Plaintiff generally alleges copyright infringement against individual defendants. (*Broughel* differs slightly from the present case, because in *Broughel* the corporate entity was also named). Plaintiff does not, however, set forth any allegations with respect to any individual acts by either Mr. Forrest or his wife, Mrs. Forrest. Why either of these individuals is personally liable for alleged infringement is neither addressed nor pleaded anywhere in the Amended Complaint.

Plaintiff attempts to provide evidence to support his allegations through the use of Exhibits. These Exhibits (Exhibits 6-8) do not evidence a personal website of Defendants using the alleged copyrighted works. Instead, the website is owned by, operated by, and maintained by Brushy Mountain Bee Farm, Inc. as prominently indicated on each webpage. Plaintiff acknowledges "Defendant Stephen Taylor Forrest is President and a principal shareholder of

Brushy Mountain Bee Farm, Inc." (Amend. Compl. ¶ 8) and "Defendant Sandra Fincher Forrest

is Secretary/Treasurer and a principal shareholder of Brushy Mountain Bee Farm, Inc." (Amend.

Compl. ¶ 9).  As such, neither Defendant Mr. Forrest nor Mrs. Forrest, in their individual

capacities, has reproduced anything on the Brushy Mountain Bee Farm, Inc. website.

      Accordingly, Plaintiff has not complied with the notice pleading requirements of

F.R.C.P. Rule 8 with respect to Defendants Mr. Forrest and Mrs. Forrest or alleged any plausible

copyright infringement claims against these two defendants in their individual capacity.  As

such, Plaintiff's claims against each of them must be dismissed for failing to satisfy element 4 of

*Kelly*.

### Point III

### Plaintiff Fails to Properly Allege That Defendant Removed Copyright Management Information

      Plaintiff's 6th through 10th "complaint" for removal of copyright management

information is the epitome of a broad, sweeping allegation that does not come close to complying

with Rule 8 or presenting a facially plausible claim.  17 U.S.C. § 1202 is part of the Digital

Millennium Copyright Act ("DMCA") that protects the integrity of copyright management

information (CMI) placed by a copyright's owner.  Subsection (b), relied upon by Plaintiff in the

Complaint, prohibits the intentional removal or alteration of CMI with reasonable grounds to

know the removal or alteration will aid infringement.[8]

      Plaintiff claims Defendant "infringed upon Plaintiff's rights by ordering,

overseeing, participating in, and approving of the verbatim display of Plaintiff's copyrighted

Works to describe Defendants' cheap knock-off product" and "additionally ordering, overseeing,

---

[8] *See,* footnote 3, <u>supra</u>.

participating in, and approving of the intentional removal of all of Plaintiff's copyright notices from each of the infringed works." (Amend. Compl. ¶ 91). The copyright notices that Plaintiff claims were removed from the undefined copyrighted works does not fall within the definition of "copyright management information" ("CMI") of the DMCA.

[To avoid unnecessary repetition, we respectfully refer the Court to the arguments appearing at Section I, top of page 10 to the end of Point II on page 11, which apply with equal force here].

## Point IV

### Plaintiff has Failed to Properly Plead and Allege a Legally Cognizable Claim for Trademark Infringement

This Court will not hesitate to dismiss facially implausible trademark infringement claims, such as the ones at bar, on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See, e.g., Louis Vuitton Malletier S.A. v. Warner Brothers Entertainment Inc.*, 11 Civ. 9436 (ALC) (HBP) (S.D.N.Y. June 15, 2012). As demonstrated below, Plaintiff cannot meet the standard for pleading a plausible cause of action for trademark infringement or unfair competition here. The Lanham Act is found in Title 15 of the U.S. Code and contains the federal statutes governing trademark law in the United States. Plaintiff has repetitively alleged in the 11th through 14th "complaint' that Defendant has engaged in Federal Trademark Infringement and the use of a counterfeit trademark under 15 U.S.C. § 1114. The Lanham Act is found in Title 15 of the U.S. Code and contains the federal statutes governing trademark law in the United States. The 15th "complaint" alleges violation of a "Federal Right of Publicity" and possibly Section 43(a) of the Lanham Act. Federal courts applying New York law analyze claims under New York's unfair competition statutes similarly to how they analyze claims under the Lanham Act. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 119 (2d Cir. 2006).

To prevail on a statutory trademark infringement claim under 15 U.S.C. § 1114, a plaintiff must demonstrate an infringement of his trademark, i.e., his right to a word or symbol indicating the origin or source of his product. *Pirone v. MacMillan, Inc.,* 894 F.2d 579, 581 (2d Cir.1990). He must "establish that the symbols in which this property right is asserted are valid, legally protectible trademarks; that they are owned by plaintiff; and that defendant's subsequent use of similar marks is likely to create confusion as to origin of the goods." *Id.* at 581–82 (*citing Estate of Presley v. Russen,* 513 F.Supp. 1339, 1362 (D.N.J.1981), and cases cited therein).

Moreover, "[i]t is well settled that the crucial determinant in an action for trademark infringement" is "whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Pirone,* 894 F.2d at 584 (citations omitted). In order to be confused, a consumer need not believe that the defendant actually produced the item bearing the plaintiff's trademark. *Id.* The required element of confusion is satisfied if the public believes "that the mark's owner sponsored or otherwise approved the use of the trademark." *Id.* (citing *Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 205 (2d Cir.1979)).

To prevail on a claim under Section 43(a) as alleged in the 11th through 14th "complaint", a plaintiff must show that (1) it has a valid trademark entitled to protection, and (2) the defendant's mark infringes on the plaintiff's mark by causing a likelihood of confusion among consumers as to the origin or sponsorship of its product." *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.,* 478 F.Supp.2d 340, 356 (E.D.N.Y.2007) (*citing Time, Inc. v. Petersen Publ'g Co.,* 173 F.3d 113, 117 (2d Cir.1999)).

First and foremost, Plaintiff has failed to allege that Defendants engaged in any action that would violate the Lanham Act. Plaintiff alleges he registered the "BEE-QUICK"

trademark in 2001. This mark was subsequently cancelled as indicated in Exhibit A. Plaintiff

filed a new trademark registration for "BEE-QUICK" that was registered on August 30, 2011

(U.S. Reg. No. 4019052). Plaintiff fails to allege Defendants sold any products under the "BEE-

QUICK" trademark that were not purchased from Plaintiff. "As a general rule, trademark law

does not reach the sale of genuine goods bearing a true mark even though the sale is not

authorized by the mark owner." *Polymer Tech. Corp. v. Mimran,* 975 F.2d 58, 61 (2d Cir.1992)

(citing *NEC Elecs. v. Cal Circuit Abco,* 810 F.2d 1506, 1509 (9th Cir.1987)).

Defendants began selling a product named "NATURAL HONEY HARVESTOR"

(Amend. Compl. ¶53). As is readily apparent, the name "NATURAL HONEY HARVESTOR"

is not remotely similar to Plaintiff's trademark "BEE-QUICK" and one cannot plausibly

determine there is a likelihood of confusion under the elements in *Jewish Sephardic Yellow*

*Pages, Ltd.* Furthermore, Plaintiff has not alleged Defendants were selling a product not

purchased from Plaintiff with the name "BEE-QUICK" that could potentially give rise to a

trademark infringement claim. Instead, Plaintiff alleges Defendants committed trademark

infringement by selling a competing product named "NATURAL HONEY HARVESTOR" that

is not remotely similar to the trademark "BEE-QUICK."

Plaintiff is required to plead "defendant's subsequent use of similar marks is likely

to create confusion as to origin of the goods" as set forth in *Pirone*. Plaintiff has failed to meet

this burden. The complaint does not allege Defendants produced a product and advertised this

product as "BEE-QUICK" or a confusingly similar mark that is likely to create confusion as to

the origin of goods. Plaintiff has failed to satisfy the pleading requirement for the 11th through

14th "complaint." These allegations under the Lanham Act are not within the realm of

supporting such a claim.

31

Point V

**A Claim for Federal Right of Publicity Does Not Exist**

Plaintiff has brought a "Federal Rights of Publicity Claim" in his 15th "complaint." However, there is no Federal Right of Publicity. Instead, an action based on the right of publicity is entirely a state-law claim. *See Zacchini v. Scripps–Howard Broad. Co.,* 433 U.S. 562, 566, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977).

Plaintiff's "Federal Rights of Publicity Claim" is misplaced. However, he does cite Section 43(a) of the Lanham Act in the heading. If Plaintiff is attempting to bring a 15th "complaint" based upon Section 43(a) of the Lanham Act, this cause of action also fails. Section 43(a) of the Lanham Act creates liability for "[a]ny person who, on or in connection with any goods or services, ... uses in commerce ... false or misleading representation of fact, which is likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1). This provision of the Lanham Act "is an appropriate vehicle for the assertion of claims of falsely implying the endorsement of a product or service by a real person." *Albert v. Apex Fitness, Inc.,* No. 97 Civ. 1151(LAK), 1997 WL 323899, at *1 (S.D.N.Y. Jun.13, 1997) (quoting J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 28:15 (4th ed.1996)).

If Plaintiff is attempting to bring a false endorsement claim under Section 43(a) of the Lanham Act, this claim, as set forth in *Albert,* requires "falsely implying the endorsement of a product or service by a real person." "Courts have recognized false endorsement claims under § 43(a) of the Lanham Act where a celebrity's image or persona is used in association with a product so as to imply that the celebrity endorses the product." *ETW Corp. v. Jierh Pub., Inc.,* 332 F.3d 915, 925 (6th Cir.2003). "The 'mark' at issue is the plaintiff's identity." *Id.* at 926

32

(quoting *Landham v. Lewis Galoob Toys, Inc.,* 227 F.3d 619, 626 (6th Cir.2000)). *See also Parks v. La Face Records,* 329 F.3d 437, 447 (6th Cir.2003) ("[C]ourts routinely recognize a property right in celebrity identity akin to that of a trademark holder under § 43(a)."); *White v. Samsung Elecs. Am., Inc.,* 971 F.2d 1395, 1400 (9th Cir.1992) ("In cases involving confusion over endorsement by a celebrity plaintiff, 'mark' means the celebrity's persona."); 5 J. Thomas McCarthy on Trademarks and Unfair Competition § 28:15 (4th ed.2011).

Plaintiff is not a celebrity and has not alleged Defendants are using his human persona or identify to sell their products.  Instead, it appears Plaintiff is claiming his "valuable name" is the "BEE-QUICK" trademark.  A claim under Section 43(a) for false endorsement requires the identity of a real person, and there is simply no allegation that Defendants have used Plaintiff to falsely endorse any goods or services.

### Point VI

### Plaintiff Fails to State a Valid Claim Under NY Civil Rights Law §§ 50, 51

New York Civil Rights Law § 50 states as follows:

> A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.

The key phrase here is "the name, portrait, or picture <u>of any living person</u>..." (emphasis added).  In his "16th Complaint", Plaintiff alleges that "Defendants have used Plaintiff's valuable name within the State of New York for advertising purposes or for the purpose of trade without Plaintiff's consent."  *See,* Amended Complaint at ¶ 190.  However, nowhere does the Plaintiff allege, nor could he truthfully do so, that the Defendants have used his personal name, i.e., the name of a living person, as opposed to the name of his product.  In fact,

Plaintiff does not even identify what "valuable name" was used by Defendants.  Clearly, the allegations of this claim on their face are insufficient to support a claim under Civil Rights Law § 50.

Section 51 of the Civil Rights Law, entitled "Action for injunction and for damages", states as follows:

> Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait, picture or voice, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages. But nothing contained in this article shall be so construed as to prevent any person, firm or corporation from selling or otherwise transferring any material containing such name, portrait, picture or voice in whatever medium to any user of such name, portrait, picture or voice, or to any third party for sale or transfer directly or indirectly to such a user, for use in a manner lawful under this article; nothing contained in this article shall be so construed as to prevent any person, firm or corporation, practicing the profession of photography, from exhibiting in or about his or its establishment specimens of the work of such establishment, unless the same is continued by such person, firm or corporation after written notice objecting thereto has been given by the person portrayed; and nothing contained in this article shall be so construed as to prevent any person, firm or corporation from using the name, portrait, picture or voice of any manufacturer or dealer in connection with the goods, wares and merchandise manufactured, produced or dealt in by him which he has sold or disposed of with such name, portrait, picture or voice used in connection therewith; or from using the name, portrait, picture or voice of any author, composer or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait, picture or voice used in connection therewith. Nothing contained in this section shall be construed to prohibit the copyright owner of a sound recording from disposing of, dealing in, licensing or selling that sound recording to any party, if the

right to dispose of, deal in, license or sell such sound recording has been conferred by contract or other written document by such living person or the holder of such right. Nothing contained in the foregoing sentence shall be deemed to abrogate or otherwise limit any rights or remedies otherwise conferred by federal law or state law.

Once again, the allegation that Defendants used Plaintiff's "valuable name" is insufficient, under the circumstances herein, to state a valid claim against Defendants under Civil Rights Law § 51. Nowhere does Plaintiff allege that the Defendants ever used his personal name, or his portrait or picture, for any purpose whatsoever.

For the foregoing reasons, the Plaintiff's "16[th] Complaint" pursuant to NY Civil Rights Law §§ 50 and 51 fails to state a claim for which relief can be granted.

## Point VII

### Plaintiff Fails to State a Valid Claim for Common Law Unfair Competition

Plaintiff's "17th Complaint" in the Amended Complaint alleging common law unfair competition is duplicative of his 3rd and 5th claims asserted in the Complaint in 14cv1307. Defendants respectfully refer the Court to the arguments contained herein at Section I, Points III, V, and VI, supra, which, we respectfully submit, apply with equal force to support dismissal of the Plaintiff's "17th Complaint" in the Amended Complaint in 14cv1304.

## Point VIII

### Plaintiff Fails to State a Valid Claim for False Advertising

Plaintiff's "18[th] Complaint" alleging false advertising is essentially the same claim as Plaintiff's "3[rd] Complaint" in the complaint in 14cv1307, which is addressed in this Memorandum at Section I, Point III, supra.  Those arguments will not be restated herein.

35

## Point IX

### Plaintiff Fails to State a Valid Claim for Breach of Contract (UCC-1)

Plaintiff's "20th Complaint" alleges, in part, that "Plaintiff and Defendant engaged in a very amicable and uninterrupted 'Contract of Indefinite Duration' under the Uniform Commercial Code." *See,* Amended Complaint at ¶ 232.  Notably, however, Plaintiff does not specify whether the purported contract was written or oral, and he does not attach a copy of any writing purporting to be said contract.  Moreover, Plaintiff does not define what the contract terms were, or what the parties were required to do in order to perform their obligations under the purported contract.

For these reasons, as well as those stated in Section I, Point IV of this Memorandum, Plaintiff fails to state a valid claim for breach of contract or any provisions of the UCC.

## Point X

### Plaintiff Fails to State a Valid Claim for Unjust Enrichment

It is well settled that in order to prevail on a claim of unjust enrichment, a Plaintiff must establish

> that the Defendant benefitted at the Plaintiff's expense and that equity and good conscience require restitution (*Whitman Group Realty, Inc. v. Galano,* 41 AD3d 590, 593, 838 N.Y.S.2d 585 [2nd Dept. 2007]), *citing Kaye v. Grossman,* 202 F.3d 611, 615-616 [2nd Cir. 2000]); *City of Syracuse v. R.A.C. Holding,* 258 AD2d 905, 906, 685 N.Y.S.2d 381 [4th Dept. 1999]). However, "[r]ecovery for unjust enrichment is barred by a valid and enforceable contract" (*Whitman Group Realty, Inc. v. Galano,* supra, *citing Samiento v. World Yacht Inc.,* 38 AD3d 328, 329, 833 N.Y.S.2d 2 [1st Dept. 2007]); *Stark v. City of New York,* 31 A.D.3d 530, 531, 818 N.Y.S.2d 281 [2nd Dept. 2006]). The  [*9] essential inquiry in any action for unjust enrichment or restitution is whether "it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (*Paramount Film*

36

*Distributing Corp. v. State,* 30 NY2d 415, 421, 285 N.E.2d 695, 334 N.Y.S.2d 388 [1972]). The plaintiff "must show that (1) the [defendant] was enriched, (2) at [the plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered" (*Cruz v. McAneney,* 31 AD3d 54, 59, 816 N.Y.S.2d 486 [2nd Dept. 2006]). A person receives a benefit "where his debt is satisfied or where he is saved an expense or loss" (*Electric Ins. Co. v. Travelers Ins. Co.,* 124 AD3d 431, 432, 507 N.Y.S.2d 531 [3rd Dept. 1986]).

*C.J.L Construction, Inc v. Galaxy General Contracting Corp.,* 2009 N.Y. Misc. LEXIS 4486; 2009 NY Slip Op 32935(U) (Supreme Ct. Nassau Co. 2009).

In the Amended Complaint, Plaintiff pleads breach of contract in his "20th Complaint". Thus, Plaintiff's "21st Complaint", to the extent that it sounds in unjust enrichment, is palpably insufficient. Plaintiff has not shown, nor even alleged, how the defendants have been "enriched" and how this purported unjust enrichment was "at the plaintiff's expense." There is no allegation that defendant received a benefit because his debt was satisfied or he was saved any expense or loss (*Electric Ins. Co. v. Travelers Ins. Co.,* supra).

Moreover, Plaintiff fails to identify any specific transactions where the named defendants, Stephen Forrest and/or Sandra Forrest, in their individual capacities, were greatly enriched at the expense of the Plaintiff. As previously noted, even if it were true, hypothetically, that Defendant's corporation, Brushy Mountain Bee Farm, Inc., had transacted business with consumers in a manner that enriched the Defendants' company at the expense of the Plaintiff, he still fails to state a valid claim against the individual Defendants named in this action, and Plaintiff has failed and/or refused to name the Defendant's corporation as a party defendant.

Based on the foregoing, Plaintiff's allegations are insufficient to sustain a claim for unjust enrichment against the defendants in their individual capacities.

<u>Conclusion</u>

For all of the foregoing reasons, the Plaintiff's Complaint, and each and every

cause of action contained therein, should be dismissed pursuant to FRCP 12(b)(6) for failure to

state claims upon which relief can be granted.

Dated:        July 9, 2014
                Huntington, New York

                                      LAW OFFICES OF CAHN & CAHN, P.C.
                                      *Attorneys for Defendant*

                                      By:     */s/ Daniel K. Cahn*
                                                Daniel K. Cahn, Esq. (DC9791)
                                      Office and P.O. Address
                                      22 High Street, Suite #3
                                      Huntington, NY 11743
                                      (631) 752-1600

                                              – and –

                                      CLEMENTS BERNARD[9]
                                      *Co-counsel for Defendant*
                                      Office and P.O. Address
                                      1901 Roxborough Road, Suite 250
                                      Charlotte, NC 28211
                                      (704) 790-3600

---

[9] This firm once again acknowledges and appreciates the significant contributions to this Memorandum of Law by Defendant's North Carolina counsel, Seth Hudson, Esq., partner at the firm of Clements Bernard.