UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
:
JAMES H. FISCHER,
:
                               Plaintiff,
:
:
              -v-
:
:
STEPHEN T. FORREST and SANDRA F. FORREST,
:
:
                           Defendants.
:
:
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/13/2015

14 Civ. 1304 (PAE)

14 Civ. 1307 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

      Plaintiff James H. Fischer ("Fischer"), proceeding *pro se*, filed these two nearly identical actions against Stephen T. Forrest and Sandra F. Forrest (collectively, "Forrest"). Fischer, the creator of a popular honey harvesting product called Fischer's Bee-Quick, alleges that Forrest used his proprietary text, images, and names to sell a knock-off product, thereby violating the federal Copyright Act, 17 U.S.C. § 101 *et seq.*; the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*; and the Lanham Act, 15 U.S.C. § 1051 *et seq.* Fischer also brings claims under New York state law—for violation of his right of publicity, unfair competition, unfair business practices, breach of contract, and unjust enrichment. Forrest now moves to dismiss both complaints in their entirety. For the following reasons, the Court denies Forrest's motion.

I.     **Background**

A.     **Factual Background**[1]

In 1999, Fischer invented and began producing "a new honey harvesting aid for beekeepers" that he named Fischer's Bee-Quick.  Am. Compl. I ¶ 24; Am. Compl. II ¶ 35. Fischer promoted his product as "unique" in that it is "a food-safe, non-toxic, not foul-smelling, and effective substance that beekeepers can trust to use with their honey and their bees."  Am. Compl. I ¶ 24; Am. Compl. II ¶ 35; *see also, e.g.*, Am. Compl. I Ex. 5 (Bee-Quick brochure); Am. Compl. II Ex. 5 (same).  Fischer's Bee-Quick "quickly became one of the most in-demand products in beekeeping."  Am. Compl. I ¶ 26; Am. Compl. II ¶ 40.  On December 11, 2001, Fischer formally registered the "Bee-Quick" mark with the U.S. Patent and Trademark Office. Am. Compl. I ¶ 28, Ex. 2 (trademark registration certificate).

In 2002, Fischer authorized Brushy Mountain Bee Farm—a mail-order business owned and operated by Stephen and Sandra Forrest—to sell Bee-Quick.  Am. Compl. I ¶¶ 8–10, 30; Am. Compl. II ¶¶ 7–9, 42.  In connection with this agreement, Fischer authorized Brushy Mountain to use the trademarked name of his product, images he had created, and text he had written to sell Bee-Quick through Brushy Mountain's website and print catalogues.  Am. Compl. I ¶¶ 31, 46; Am. Compl. II ¶¶ 21, 43, 63–67.

On December 10, 2010, Brushy Mountain unilaterally terminated the parties' business relationship.  Am. Compl. I ¶ 32; Am. Compl. II ¶ 23.  Specifically, a Brushy Mountain employee sent Fischer an email that stated:

---

[1] These facts are drawn from the Amended Complaints filed in these two cases and the exhibits attached thereto.  *See* 14 Civ. 1304, Dkt. 23 ("Am. Compl. I"); 14 Civ. 1307, Dkt. 50 ("Am. Compl. II").  For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

> Regretfully, I am the messenger informing you (per Steve [Forrest] & Shane [Gebauer]) that we are returning the BEE QUICK . . . . I was not informed that we were discontinuing the Bee-Quick in our 2011 catalog, nor previously requested to cancel my order with you.  Please provide the address you need to have the Bee-Quick sent to.

Am. Compl. I Ex. 3(b); Am. Compl. II Ex. 3(b).

Soon after, on February 7, 2011, Fischer registered the text and images displayed on his website with the U.S. Copyright Office.  Am. Compl. I ¶¶ 39, 121, Ex. 4 (copyright registration certificate); Am. Compl. II ¶¶ 37, 61, Ex. 4 (same).  He also renewed his trademark registration for the Bee-Quick mark.  Am. Compl. I ¶ 29, Ex. 2 (trademark registration certificate).

At some point in early 2011, Brushy Mountain began selling a "knock-off product" called Natural Honey Harvester.  Am. Compl. I ¶ 53; Am. Compl. II ¶ 24.  In connection with sales of that product, Brushy Mountain used text and images that Fischer had created to promote Bee-Quick.  Am. Compl. I ¶¶ 53–58; Am. Compl. II ¶¶ 73–77.  For example, until 2010, Brushy Mountain had, with Fischer's authorization, used the following text to describe Bee-Quick:

> This 100% natural, non-toxic blend of oils and herb extracts works just like Bee Go and it smells good!  Fischer's Bee Quick is a safe, gentle, and pleasant way to harvest your honey.  Are you tired of your spouse making you sleep in the garage after using Bee Go?  Are you tired of using a hazardous product on the bees you love?  Then this is the product for you!

Am. Compl. I Ex. 7 (2010 website); Am. Compl. II Ex. 20 (2005, 2006, 2009, and 2010 catalogues).  This description was excerpted from a longer text that originally appeared on Fischer's website.[2]  Am. Compl. II ¶ 67.  Starting in 2011, Brushy Mountain used much of this text, verbatim, to describe Natural Honey Harvester.  Both the website and print catalogue stated:

> For years we have promoted the use of a natural product to harvest honey but an unreliable supply of such a product has forced us to come out with our own.  **This 100% natural, non-toxic blend of oils and herb extracts works just like Bee Go and it smells good!**  Natural Honey Harvester **is a safe, gentle, and pleasant way**

---

[2] Fischer's website is http://bee-quick.com.

> **to harvest your honey.  Are you tired of your spouse making you sleep in the garage after using Bee Go?  Are you tired of using a hazardous product on the bees you love?  Then this is the product for you!**

Am. Compl. I Ex. 8 (2011 website) (emphasis added); Am. Compl. II Ex. 20 (2011 through 2014 catalogues) (emphasis added).  Brushy Mountain's actions led other dealers of beekeeping products to use identical text to describe Natural Honey Harvester on their websites.  *See* Am. Compl. I ¶ 72; Am. Compl. II ¶¶ 32, 49–57, 82–89, Ex. 21 (The Honey Hole website), Ex. 22 (C&T Bee Supply website).

Brushy Mountain also used a photograph of a Bee-Quick bottle on a webpage on which consumers could purchase Natural Honey Harvester.  Am. Compl. I Ex. 11, Ex. 12.  In the image, the words "Fischer's Bee-Quick" are legible, and distinctive elements of the Bee-Quick trade dress—including the bottle shape, cartoon bee mascot, and red text—are visible.  Am. Compl. I ¶ 144.  Both the text quoted above and this image were stripped of the copyright management information ("CMI") that had previously accompanied them.  Am. Compl. I ¶¶ 90–92; Am. Compl. II ¶¶ 119–21.

Brushy Mountain also retained the name "Fischer's Bee-Quick" in the URL for a Natural Honey Harvester product page.  Am. Compl. I Ex. 12, Ex. 13.  As a result, consumers who searched for Fischer's Bee-Quick through internet search engines may have been misdirected to a webpage selling Natural Honey Harvester.  Am. Compl. I ¶ 136.

Fischer never authorized Brushy Mountain's use of his copyrighted works and protected mark to sell a competing, knock-off product.  Am. Compl. I ¶¶ 33, 59; Am. Compl. II ¶¶ 25, 71, 78.  Accordingly, on April 5, 2011, Fischer sent Forrest a cease-and-desist letter, which notified Forrest of Fischer's registered copyright and trademark and demanded that Forrest terminate use of the name Bee-Quick, Fischer's copyrighted works, and the trade secrets disclosed in the

4

course of the parties' business relationship.  Am. Compl. I ¶ 70, Ex. 15; Am. Compl. II ¶ 33, Ex.

15.  In response, Brushy Mountain's General Manager Shane Gebauer sent Fischer a letter

asserting that "[a]fter careful review by our attorney, there does not seem to [be] grounds for

your request."  Am. Compl. I Ex. 16; Am. Compl. II Ex. 16.  As recently as May 21, 2014, the

Brushy Mountain website continued to feature Fischer's proprietary text, images, and mark on a

webpage selling Natural Honey Harvester.  Am. Compl. I ¶¶ 133, 144, 151, 158.

### B.   Procedural History

On February 27, 2014, Fischer filed two actions against Stephen Forrest.  14 Civ. 1304,

Dkt. 1 ("Compl. I"); 14 Civ. 1307, Dkt. 2 ("Compl. II").  On April 11, 2014, Forrest moved to

dismiss the first complaint.  14 Civ. 1304, Dkt. 8.  In response, on May 27, 2014, Fischer filed an

Amended Complaint against both Stephen and Sandra Forrest.  *Id.* Dkt. 23 ("Am. Compl. I").

Initially, Forrest did not appear in the second action or answer the second complaint.  In

early April 2014, Fischer obtained a clerk's certificate of default and moved for default judgment

in the second action.  14 Civ. 1307, Dkt. 5–10.  Pursuant to orders issued by the Court, Forrest

appeared on April 17, 2014, *id.* Dkt. 12, and responded to Fischer's motion on April 25, 2014, *id.*

Dkt. 19–24.  On June 16, 2014, after full briefing, the Court denied Fischer's motion for default

judgment and granted Forrest's motion to vacate the entry of default.  *Id.* Dkt. 35.  The Court

held that the default was not willful, that denying the motion for default judgment would not

prejudice Fischer, and that Forrest had potentially meritorious defenses.  *See id.*

On June 19, 2014, the Court informed the parties that it was inclined to consolidate the

two actions and directed the parties to notify the Court if they objected to consolidation.  *Id.* Dkt.

37.  Forrest did not object.  *Id.* Dkt. 40.  Fischer, by contrast, argued that consolidation would

prejudice him by preventing him from recovering statutory damages for both direct and

secondary infringement. *Id.* Dkt. 41.  The Court therefore agreed to maintain two separate

actions, at least for the time being, but it set a unified schedule for briefing Forrest's anticipated

motion to dismiss. *Id.* Dkt. 44.

On July 9, 2014, Forrest moved to dismiss the second complaint. *Id.* Dkt. 45.  In

response, on August 3, 2014, Fischer filed an Amended Complaint against both Stephen and

Sandra Forrest. *Id.* Dkt. 50 ("Am. Compl. II").  On August 25, 2014, the two defendants jointly

filed a motion to dismiss both Amended Complaints, 14 Civ. 1304, Dkt. 30; 14 Civ. 1307, Dkt.

51, along with a supporting memorandum of law, 14 Civ. 1304, Dkt. 32; 14 Civ. 1307, Dkt. 53

("Def. Br.").  On September 23, 2014, Fischer submitted his opposition.  14 Civ. 1304, Dkt. 34,

35; 14 Civ. 1307, Dkt. 54, 55 ("Pl. Br.").  On October 6, 2014, defendants filed their reply.  14

Civ. 1304, Dkt. 36, 37; 14 Civ. 1307, Dkt. 56, 57 ("Def. Reply").  On October 8, 2014, Fischer

sought leave to file a sur-reply and attached a proposed brief.  14 Civ. 1304, Dkt. 38, 39; 14 Civ.

1307, Dkt. 58, 59 ("Pl. Sur-Reply").  On October 15, 2014, the Court agreed to consider the sur-

reply to the extent it is consistent with Fischer's prior submission.  14 Civ. 1304, Dkt. 42; 14

Civ. 1307, Dkt. 62.

## II.     Discussion

### A.     Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly

dismissed where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Although a district court must

accept as true all well-pled factual allegations in the complaint and draw all reasonable

inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014),

that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

 *Pro se* complaints "'must be construed liberally and interpreted to raise the strongest

arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro*

*se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." (citations omitted)).  Courts may not, however, read into *pro se*

submissions claims inconsistent with the *pro se* litigant's allegations, *see Phillips v. Girdich*, 408

F.3d 124, 127 (2d Cir. 2005), or arguments that the submissions themselves do not suggest,

*Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (citation omitted).  *Pro se* status "does not

exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth*

*v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

## B. Individual Liability

 As a threshold matter, Forrest argues that the allegedly infringing catalogue and website

at issue are not owned by Stephen and Sandra Forrest individually, but are "owned and

maintained by Brushy Mountain Bee Farm, Inc." Def. Br. 8.  Because Fischer has not "set forth

any allegations with respect to any individual acts," Forrest argues, Stephen and Sandra Forrest

cannot be held personally liable for any infringing material that may have appeared on Brushy

Mountain's website or in its catalogues. *Id.*

It is well-settled that "[a]ll persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers." *Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985) (citing *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 308–09 (2d Cir. 1963)); *see also, e.g.*, *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 437 (S.D.N.Y. 2011) (same). The allegations in the Amended Complaints—taken as true, as they must be in resolving a motion to dismiss—are more than sufficient to support a finding of individual liability. Fischer alleges that Stephen and Sandra Forrest are "the sole officers and shareholders" of Brushy Mountain; they therefore "exert[] extensive direct day-to day control over all Brushy activities" and have "a direct and obvious financial interest in Brushy." Am. Compl. I ¶¶ 8–10; Am. Compl. II ¶¶ 7–9; *see also* Am. Compl. I ¶¶ 16–19, 67, 131; Am. Compl. II ¶¶ 14–19. Discovery will reveal whether one or both of the individual defendants personally created or were otherwise responsible for the infringing webpages and catalogue entries. Either way, the Amended Complaints clearly allege that Stephen and Sandra Forrest had control over Brushy Mountain's publications and personally benefited from sales of Brushy Mountain's products, including Natural Honey Harvester.

The allegations in Amended Complaints undoubtedly state claims against Brushy Mountain as well as the individual defendants. *See Sygma Photo News, Inc.*, 778 F.2d at 92. But Fischer, as the "master of his complaint," has the right to choose which persons or corporations to name as defendants. *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 498 F. App'x 98, 102 (2d Cir. 2012) (summary order). His decision to name only Stephen and Sandra Forrest, and not also Brushy Mountain, although strategically curious, does not prevent him from pursuing claims against the two individuals.

## C.      Copyright Infringement

Fischer brings five counts of direct copyright infringement, *see* Am. Compl. I ¶¶ 74–88, and four counts of secondary copyright infringement, *see* Am. Compl. II ¶¶ 90–117.  In brief, Fischer alleges that the Brushy Mountain website and print catalogues misappropriated text and images that Fischer had created and copyrighted to promote Bee-Quick in order to instead promote Brushy Mountain's competing, knock-off product, Natural Honey Harvester.  *See, e.g.,* Am. Compl. II Ex. 20 (text); Am. Compl. I Ex. 10–12 (photo).  Fischer also alleges that Brushy Mountain's conduct led to further, *i.e.*, secondary infringement by other sellers of beekeeping products, who posted the same description of Natural Honey Harvester on their websites.  *See, e.g.*, Am. Compl. II Ex. 21–22.

Specifically, the first four counts of direct infringement allege that Forrest displayed Fischer's copyrighted written work "verbatim and without any permission" on the Brushy Mountain website.  Am. Compl. I ¶¶ 74–85.  Each of these four counts pertains to a different phrase.[3]  The four counts of secondary infringement parallel the first four counts of direct infringement:  They allege that Forrest deliberately induced and/or profited from third-party dealers' infringement of the same four phrases.  *See* Am. Compl. II ¶¶ 90–117.  The fifth and final count of direct infringement alleges that Forrest displayed Fischer's copyrighted photograph of a bottle of Bee-Quick on the Brushy Mountain website, again "verbatim and without any permission."  Am. Compl. I ¶¶ 86–88.

---

[3] The four phrases are: (1) "[a]re you tired of your spouse making you sleep in the garage?," Am. Compl. I ¶ 75; (2) "[a]re you tired of using a hazardous product on the bees you love?," *id.* ¶ 78; (3) "[a] safe, gentle, and pleasant way to harvest your honey," *id.* ¶ 81; and (4) "[a] natural, non-toxic blend of oils and herbal extracts," *id.* ¶ 84.

9

### 1.    Fischer Has Adequately Alleged Possession of a Valid Copyright

Fischer has a registered copyright for the "text and images of the Bee-Quick.com website." Am. Compl. I, Ex. 4 (copyright registration).  As alleged in the Amended Complaints, this copyright covers the four phrases and the image that Brushy Mountain used without permission.  *See* Am. Compl. II ¶ 67 (text); Am. Compl. I, Ex. 10–12 (photo).

Forrest argues that Fischer's text is not protectable under the copyright laws because it consists of "short phrases" that "fail[] to embody a minimal quantum of creative authorship." Def. Br. 5.  Fischer's response is thorough and conclusive.  *See* Pl. Br. 14–22.  The dozen cases cited in Fischer's brief establish that brevity does not preclude copyright protection.  *See, e.g., Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 796–97 (6th Cir. 2005) (unauthorized sampling of a single chord could be actionable); *Life Music, Inc. v. Wonderland Music Co.*, 241 F. Supp. 653, 656 (S.D.N.Y. 1965) (unauthorized copying of a single neologism could be actionable).  Although "a cliché or an ordinary word-combination" may not qualify for copyright protection, *Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir.) *opinion supplemented on denial of reh'g,* 818 F.2d 252 (2d Cir. 1987), the text at issue here is not by any means commonplace.  Forrest appears to have copied a 66-word passage that includes a unique combination of descriptive terms, carefully phrased assurances, and an idiosyncratic joke.  It is safe to assume that no earlier marketing material has asked readers if they are "tired of your spouse making you sleep in the garage after using Bee Go."  Fischer's work, though relatively brief, is therefore protectable.  *See Heim v. Universal Pictures Co.*, 154 F.2d 480, 488 n.8 (2d Cir. 1946) ("There may be wrongful copying, though small quantitatively," for example, "if someone were to copy the words, 'Euclid alone has looked on Beauty bare,' or 'Twas brillig and the slithy toves.'").

To be sure, Forrest's motion to dismiss may point to a separate limitation on Fischer's ability to recover, that Fischer may recover only one award of statutory damages per work infringed. *See Twin Peaks Prods., Inc. v. Publ'n Int'l, Ltd.*, 996 F.2d 1366, 1381 (2d Cir. 1993). It is by no means clear that Fischer's copyrighted phrases and photograph qualify as more than one work and, therefore, whether multiple copyright claims arise from the infringement alleged in the Amended Complaints. *See, e.g.*, *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 141 & n.6 (2d Cir. 2010) (citing, with approval, cases holding that only a single award of statutory damages was warranted where infringement was of a music album with multiple songs, a software package containing many pieces of clip art, and a catalogue featuring various separately copyrighted photographs).  The Court has no occasion now to resolve this issue, which the parties have not briefed.  The Court will invite briefing on it following discovery, at the summary judgment stage.

### 2. Fischer Has Adequately Alleged Direct Copyright Infringement

"In order to establish a claim of copyright infringement, 'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's.'" *Peter F. Gaito Architecture v. Simone Dev.*, 602 F.3d 57, 63 (2d Cir. 2010) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)).  As to the first element, "[i]n the absence of direct evidence, 'a plaintiff may establish copying circumstantially by demonstrating that the person who composed the defendant's work had access to the copyrighted material, and that there are similarities between the two works that are probative of copying.'" *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 440 (S.D.N.Y. 2011) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003)).

Although Fischer has not submitted direct evidence of copying, such as a "smoking gun" email confessing to the misdeed, the circumstantial evidence, as alleged in the Amended Complaints, is compelling:  Forrest had access to Fischer's publicly available website and to brochures and flyers Fischer had provided during the parties' eight-year business relationship. *See, e.g.*, Am. Compl. I ¶ 30.  The exhibits attached to the Amended Complaints strongly support the inference that, after terminating Brushy Mountain's agreement with Fischer in December 2010, Forrest retained the text and image used to sell Bee-Quick but swapped out the product name so as to promote Natural Honey Harvester instead.  *See, e.g.*, Am. Compl. II Ex. 20 (text); Am. Compl. I Ex. 10–12 (photo).  And Forrest's work is not merely "substantially similar" to Fischer's.  Apart from the name of the product being marketed, the text and image in Brushy Mountain's website and catalogue are literally identical to the text and image in Fischer's protected work.  *See, e.g.*, *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 980 (2d Cir. 1980) ("A verbatim reproduction of another work, of course, even in the realm of nonfiction, is actionable as copyright infringement.").  Accordingly, the Amended Complaint in the first action states a claim for direct copyright infringement.

Forrest argues that he was explicitly authorized to use Fischer's copyrighted work, and Fischer never revoked that permission.  Def. Br. 5, 7.  Fischer acknowledges that he had allowed Forrest to use the text and image at issue in Forrest's capacity as an authorized Bee-Quick vendor.  Am. Compl. I ¶¶ 31, 46; Am. Compl. II ¶¶ 21, 43, 63–67.  Fischer alleges, however, that "such use was permitted solely in the selling of Plaintiff's product."  Am. Compl. I ¶ 33; *see also* Am. Compl. II ¶¶ 25, 71, 78.  That allegation, at the motion to dismiss stage, is enough to sustain Fischer's claim.  In any event, the inference that Forrest asks the Court to draw—that Fischer allowed a competitor to repurpose original works he had created, copyrighted, and continued to

use to promote and sell his own product—is highly improbable.  Forrest is, of course, at liberty

to seek in discovery to adduce evidence that Fischer permitted his competitor to replicate his

marketing materials so as to undercut his business.  But based on the facts alleged in the

Amended Complaints, a plausible inference is that Forrest brazenly exceeded the scope of

Fischer's authorization when he used the copyrighted materials to sell a competing, knock-off

product.  And "[i]t is black-letter law that a claim for copyright infringement lies when a party's

use of copyrighted material exceeds the scope of its license." *John Wiley & Sons, Inc. v. DRK

Photo*, 998 F. Supp. 2d 262, 287 (S.D.N.Y. 2014) (citation omitted).

### 3.    Fischer Has Adequately Alleged Secondary Copyright Infringement

To establish a claim of secondary copyright infringement, a plaintiff must prove that "a

defendant contributed to or benefitted from a third party's infringement such that it is 'just' to

hold the defendant accountable for the infringing activity." *Capitol Records, LLC v. ReDigi Inc.*,

934 F. Supp. 2d 640, 656 (S.D.N.Y. 2013) (quoting *Sony Corp. of Am. v. Universal City Studios,

Inc.*, 464 U.S. 417, 435 (1984)).  Here, Fischer alleges, at least two non-party companies, The

Honey Hole and C & T Bee Supply, included the same allegedly infringing text as Brushy

Mountain on their webpages that sold Natural Honey Harvester.  *See* Am. Compl. II Ex. 21–22.

The Amended Complaint in the second action alleges that Forrest owns Brushy Mountain and

profits from sales of Brushy Mountain products by other dealers.  This supplies a viable basis for

holding defendants liable for secondary infringement.  *See* Am. Compl. II ¶¶ 7–9.  Alternatively,

the facts alleged permit the plausible inference that Forrest contributed to the third-party

infringement, such as by making the copyrighted material available to those companies or asking

them to use Fischer's text to promote Natural Honey Harvester.  *See* Am. Compl. II ¶¶ 32, 49–

57, 82–89.  On either theory, the Amended Complaint in the second action therefore adequately

alleges that Forrest benefited from or contributed to infringing conduct by at least two third parties. As such, it states a claim for secondary copyright infringement.

###### D.   Removal of Copyright Management Information ("CMI")

Fischer brings nine counts under the DMCA—five in the first action, *see* Am. Compl. I ¶¶ 94–118, and four in the second, *see* Am. Compl. II ¶¶ 124–55. These claims parallel the nine claims of copyright infringement in that they pertain to the four phrases and one photograph used by Brushy Mountain, and the four phrases used by third parties.

"The DMCA prohibits, among other things, 'intentionally remov[ing] or alter[ing] any copyright management information,' such as the familiar © copyright notice." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 107 (2d Cir. 2014) (quoting 17 U.S.C. § 1202(b)) (alteration in the original). CMI includes "[t]he title and other information identifying the work," and "[t]he name of, and other identifying information about, the author of a work." 17 U.S.C. § 1202(c).[4]  To state a claim for removal of CMI, Fischer must adequately allege "(1) the existence of CMI on the [materials at issue]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010).

---

[4] Forrest argues that CMI includes only "automated copyright management systems functioning within a computer network environment." Def. Br. 10. To support this claim, Forrest cites one District of New Jersey case, *IQ Group Ltd. V. Wiesner Pub. LLC*, 409 F. Supp 587 (D.N.J. 2006), which was later rejected by the Third Circuit, *see Murphy v. Millennium Radio Grp.*, 650 F.3d 295, 305 (3d Cir. 2011). Other judges in this District have also declined to follow the narrow construction of the DMCA adopted in *IQ Group*. *See Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 306 (S.D.N.Y. 2011); *Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 461–62 (S.D.N.Y. 2009). The Court agrees that *IQ Group*'s crimped definition of CMI "is directly at odds with the broad definition set forth in the statutory text itself," *Agence France Presse*, 769 F. Supp. 2d at 306, and that "'[w]hen a statute's language is clear, our only role is to enforce that language according to its terms," *Associated Press*, 608 F. Supp. 2d at 461 (quoting *Arciniaga v. General Motors Corp.*, 460 F.3d 231, 235 (2d Cir. 2006)).

As to the first element, the Amended Complaints indicate that the copyrighted materials contained three forms of CMI. First, the Bee-Quick brochure attached to the complaints states "copyright (c) 2000, James H. Fischer, All Rights Reserved." Am. Compl. I Ex. 5; Am. Compl. II Ex. 5.[5] Second, the original text at issue contained the name "Fischer." Am. Compl. II Ex. 20. Specifically, it stated that "Fischer's Bee-Quick™ is a safe, gentle, and pleasant way to harvest your honey." *Id.* Fischer's name, although used to describe the product, also serves to identify the author of the work and therefore qualifies as CMI under the statute. *See* 17 U.S.C. § 1202(c) (defining CMI to include "[t]he name of . . . the author of a work"); *see also, e.g., Murphy*, 650 F.3d at 305 (holding that plaintiff's name constitutes CMI); *Agence France Presse*, 769 F. Supp. 2d at 306 (same). Third, Fischer alleges that the flyers and brochures he provided to Forrest in the course of their business relationship contained embedded metadata that included copyright notices. Am. Compl. I ¶ 90; Am. Compl. II ¶ 119. Forrest is at liberty to test that claim in discovery, but, for the purpose of resolving the motion to dismiss, the Court must accept it as true. *See Koch*, 699 F.3d at 145. The metadata therefore provides a third source of CMI. *See, e.g., Gardner v. CafePress Inc.*, No. 13 Civ. 1108 (GPC) (JLB), 2014 WL 4792958, at *6 (S.D. Cal. Sept. 25, 2014) (finding viable DCMA claim based on copyright notices contained in metadata); *McClatchey v. The Associated Press*, No. 05 Civ. 145 (TFM), 2007 WL 776103, at *5 (W.D. Pa. Mar. 9, 2007) (same).

As to the second element, the exhibits attached to the Amended Complaints reflect that Brushy Mountain's website and catalogues omitted the copyright notice that Fischer had included in his brochure and on his website. *See* Am. Compl. I Ex. 8 (2011 Brushy Mountain

---

[5] The Bee-Quick website, similarly, states "Entire Website Copyright © 2000–2011 James Fischer, All Rights Reserved."

website); Am. Compl. II Ex. 20 (2011 through 2014 Brushy Mountain catalogues).  Moreover, these exhibits show that Brushy Mountain replaced the textual reference to "Fischer's Bee-Quick" with the words "Natural Honey Harvester." *See id.*  The exhibits therefore supply ample basis to state a claim under the DMCA. *Cf. BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 610 (S.D.N.Y. 2010) (denying motion to dismiss DMCA claim where plaintiff provided "an actual example of the allegedly infringing ad" with altered CMI).  In any event, Fischer also alleges that Forrest removed the CMI embedded in the metadata, Am. Compl. I ¶ 91; Am. Compl. II ¶ 121, which supplies an alternative basis for liability.

Finally, as to the third element, Fischer asserts that Forrest intentionally removed the CMI to facilitate his acts of copyright infringement.  Am. Compl. I ¶ 92; Am. Compl. II ¶ 121. Specifically, Forrest is alleged to have removed multiple forms of CMI from Fischer's documents and repeatedly published materials stripped of CMI, both online and in print, over a period of more than three years.  This conduct continued even after Forrest received Fischer's cease-and-desist letter in March 2011.  Am. Compl. I Ex. 15–16; Am. Compl. II Ex. 15–16. Further, as alleged, Forrest removed Fischer's CMI to enable him to use Fischer's copyrighted work to sell his own competing, knock-off product. *See, e.g.*, Am. Compl. I ¶ 53; Am. Compl. II ¶ 73.  These allegations supply a solid basis on which to infer that Forrest removed the CMI intentionally. *See Agence France Presse*, 769 F. Supp. 2d at 306 (quoting *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009) ("[C]ourts must be 'lenient in allowing scienter issues . . . to survive motions to dismiss.'")).

**E.     Lanham Act Claims**

Fischer's first complaint asserts six claims under the Lanham Act.  Counts Eleven, Twelve, Thirteen, and Fourteen allege that Forrest used a counterfeit mark in three photographs

and two URLs that appeared on the Brushy Mountain website, in violation of Section 32 of the

Lanham Act. *See* Am. Compl. I ¶¶ 138–61. Count Fifteen alleges that Forrest used Fischer's

protected mark to falsely suggest that Fischer endorsed or was affiliated with Forrest's product in

violation of Section 43(a) of the Lanham Act. *Id.* ¶¶ 179–88. Finally, Count Eighteen alleges

that Forrest engaged in false advertising by, *inter alia*, disparaging Fischer's product, violating

Section 43(a). *Id.* ¶¶ 207–20.

Forrest argues that Fischer's Lanham Act claims duplicate his copyright claims in that

each is based on the claim that Forrest misappropriated Fischer's copyrighted words. Def. Br.

12. It is correct that "Lanham Act claims arising from the alleged copying of creative work" are

"clearly foreclosed." *Hudson v. Universal Studios, Inc.*, No. 04 Civ. 6997 (GEL), 2008 WL

4701488, at *8 (S.D.N.Y. 2008), *aff'd* 369 F. App'x 291 (2d Cir. 2010) (citation omitted); *see*

*also Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2009). Here, however,

Fischer's claims are distinct: The Court understands his copyright claims to arise from the

alleged copying of his original text and photograph, and his Lanham Act claims to arise from the

alleged unauthorized use of his trademarked brand name. These claims are distinct and may

permissibly co-exist. *See, e.g., Twin Peaks Prods.*, 996 F.2d at 1370 (copyright claims did not

preclude trademark claims despite common factual basis).

### 1. Counts Eleven Through Fourteen: Section 32

"Under Section 32 of the Lanham Act, the owner of a mark registered with the Patent and

Trademark Office can seek civil damages against a party who uses the mark without the owner's

consent in a manner 'likely to cause confusion, or to cause mistake, or to deceive.'" *Louis*

*Vuitton Malletier S.A. v. LY USA, Inc.*, 472 F. App'x 19, 21 (2d Cir. 2012) (summary order)

(quoting 15 U.S.C. § 1114(1)(a)). "We analyze such a claim under a familiar two-prong test.

The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010) (citation omitted).

Fischer's mark, "Bee-Quick," is protected by a valid trademark issued by the Patent and Trademark Office. Am. Compl. I Ex. 2 (trademark registration certificate). Forrest concedes as much. *See* Def. Br. 31. Accordingly, the decisive issue is whether Fischer has adequately alleged that Forrest used his mark in a way that was likely to cause consumer confusion.

To evaluate whether plaintiffs have shown a likelihood of confusion, courts in this Circuit consider the eight factors set out in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). *See, e.g., Kelly–Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013) (discussing the "*Polaroid* factors").[6] In resolving a motion to dismiss, however, it is unnecessary to undertake that fact-intensive analysis. *See, e.g., Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) (citing *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)); *Hearts on Fire Co., v. L C Int'l Corp.*, No. 04 Civ. 2536 (LTS) (MHD), 2004 WL 1724932, at *4 (S.D.N.Y. July 30, 2004) (citing *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 213 (2d Cir. 2003)). A complaint can survive a motion to dismiss as long as it alleges, in general terms, that defendants' infringing conduct caused consumer confusion. *See, e.g., Merck*, 425 F. Supp. 2d at 412 (allegation that "[p]urchasers and potential purchasers are likely to believe in error that such

---

[6] Those factors are: "'(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may bridge the gap by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Kelly-Brown*, 717 F.3d at 307 (quoting *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009)).

products . . . are approved by or are distributed by or under the authorization or sponsorship of Merck" was sufficient to plead consumer confusion).

Here, Fischer alleges that Forrest "used the counterfeit marks in a manner likely to confuse consumers," Am. Compl. I ¶ 135, "create[d] initial interest confusion for customers," *id.* ¶ 132, and is "still actively creating actual confusion," *id.* ¶ 133. These allegations alone suffice to state a claim under Section 32. And Fischer goes beyond what is required by articulating a highly plausible theory of consumer confusion: He alleges that Forrest's use of the Bee-Quick name in URLs would make consumers "victims of a bait-and-switch" by leading individuals searching for Bee-Quick to a webpage selling Natural Honey Harvester. *Id.* ¶ 136. Forrest further confused consumers, according to Fischer, by using a photograph of Fischer's Bee-Quick bottle, including a label with the words "Fischer's Bee-Quick," on a webpage selling the competing, knock-off product. *Id.* ¶¶ 139–41, 144–46. Fischer has, therefore, stated a claim for trademark infringement under the Lanham Act.

### 2.    Counts Fifteen and Eighteen: Section 43(a)

"'Section 43(a) is a broad federal unfair competition provision.'" *Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, No. 12 Civ. 5423 (HB), 2014 WL 47465, at *21 (S.D.N.Y. Jan. 6, 2014) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). It creates a federal cause of action against:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125. As the case law reflects, Section 43(a) may be violated by a range of conduct.

*See, e.g.*, *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 780 (2d Cir. 1994) ("passing off"

one person's goods as another's); *Villeroy & Boch Keramische Werke K.G. v. THC Sys., Inc.*,

999 F.2d 619, 620 (2d Cir. 1993) (trade dress infringement); *Beastie Boys v. Monster Energy*

*Co.*, No. 12 Civ. 6065 (PAE), 2014 WL 6845860, at *20–21 (S.D.N.Y. Dec. 4, 2014) (false

endorsement); *Gordon & Breach Sci. Publishers, S.A. v. American Inst. of Physics*, 859 F. Supp.

1521, 1530 (S.D.N.Y. 1994) (trade libel and product disparagement).

Fischer styles Count Fifteen as a false endorsement claim. *See* Am. Compl. I ¶¶ 179–88.

To state a claim for false endorsement, a plaintiff must adequately allege that "the defendant,

(1) in commerce, (2) made a false or misleading representation of fact (3) in connection with

goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or

approval of the goods or services." *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 455 (S.D.N.Y.

2008). As alleged, Forrest used the phrase "Fischer's Bee-Quick" on a webpage selling Natural

Honey Harvester, thereby falsely implying that Fischer endorsed or was somehow associated

with Brushy Mountain's product. *Cf., e.g.*, *Parks v. LaFace Records*, 329 F.3d 437, 447 (6th

Cir. 2003) (use of civil rights icon's name in a rap song could suggest association); *Abdul–*

*Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 409–10 (9th Cir. 1996) (use of professional

basketball player's name in car commercials could suggest association). This purportedly

misleading representation of fact appeared in commerce in connection with goods, again, on a

webpage that promotes and sells Natural Honey Harvester. And, for the reasons set out earlier,

Fischer has adequately alleged a likelihood of consumer confusion as to the origin or sponsorship of Forrest's goods.

Fischer characterizes Count Eighteen as a false advertising claim. Am. Compl. I ¶¶ 207–20. "Two different theories of recovery are available to a plaintiff who brings a false advertising action under § 43(a) of the Lanham Act. First, the plaintiff can demonstrate that the challenged advertisement is literally false, *i.e.*, false on its face. . . . Alternatively, a plaintiff can show that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). As noted, Fischer has adequately alleged that Forrest's advertisement contained a misrepresentation that was likely to mislead consumers. Fischer also alleges that Forrest's advertisement contained a literal falsity: It stated that "[f]or years we have promoted the use of a natural product to harvest honey but an unreliable supply of such a product has forced us to come out with our own." Am. Compl. I Ex. 8 (2011 website); Am. Compl. II Ex. 20 (2011 through 2014 catalogues). In fact, the Amended Complaint I alleges that Bee-Quick was reliably produced quarterly, and "defendants merely needed to pre-pay to get delivery at any time they pleased." *Id.* ¶ 208. This allegation, if proven, would make Forrest's description of Fischer's supply false. Under either theory, then, Fischer has stated a claim for false advertising under the Lanham Act.

### F.    State-Law Claims

Counts Sixteen, Seventeen, and Nineteen through Twenty-One of Amended Complaint I assert state-law causes of action. *See* Am. Compl. I ¶¶ 189–206, 221–46. Forrest contends that the Lanham Act preempts some of these claims. Def. Br. 16–17. That is wrong. The Lanham Act, unlike the Copyright Act, does not preempt state law. *See, e.g.*, *Transcience Corp. v. Big Time Toys, LLC*, No. 13 Civ. 6642 (ER), 2014 WL 4827878, at *7 (S.D.N.Y. Sept. 23, 2014);

*Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 619 & n.164 (S.D.N.Y. 2012).

Accordingly, to the extent these claims rely on allegations of trademark infringement, they are

not preempted.  The Court now turns to the merits of each state-law claim.

### 1.   Count Sixteen: Right of Publicity

The New York Civil Rights Law ("NYCRL") provides a private right of action for "[a]ny

person whose name, portrait, picture, or voice is used within this state for advertising purposes or

for the purposes of trade without . . . written consent first obtained."  NYCRL § 51.  To state a

claim under this section, a plaintiff must adequately allege that the defendant: "(1) used her

name, portrait, picture, or voice, (2) for advertising or trade purposes, (3) without her written

consent."  *Allison v. Clos-ette Too, LLC*, No. 14 Civ. 1618 (LAK) (JCF), 2014 WL 4996358, at

*11 (S.D.N.Y. Sept. 15, 2014).  Fischer alleges that Forrest used his personal name for

advertising or trade purposes without his consent.  Am. Compl. I. ¶ 190.  The exhibits Fischer

provided support this allegation:  They reproduce Brushy Mountain webpages promoting and

selling Natural Honey Harvester, with Fischer's name appearing in the URL and in a photograph.

*See* Am. Compl. I Exs. 12–13 (URL), Exs. 10–12 (photo).  Fischer has therefore stated a claim

under Section 51.[7]

### 2.   Count Seventeen: Unfair Competition

The elements of an unfair competition claim under New York common law "closely

parallel the elements of unfair competition under the Lanham Act."  *Medisim*, 910 F. Supp. 2d at

606.  To state a claim under the Lanham Act, a plaintiff must adequately allege that the

---

[7] Forrest contends that "plaintiff does not even identify what 'valuable name' was used by
defendants."  Def. Br. 33–35.  The Court understands Fischer to base this claim on Forrest's use
of his last name, "Fischer," as opposed to the trademarked name of his product, "Bee-Quick,"
and sustains Fischer's claim on that premise.

defendant "'(1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services.'" *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 516 (S.D.N.Y. 2012) (quoting *Burck*, 571 F. Supp. 2d at 455. For the reasons discussed at pages 17–20, *supra*, Fischer has satisfied all of these elements.

To prevail on an unfair competition claim under New York common law, a plaintiff must also make "'some showing of bad faith' on the part of the defendants." *Medisim*, 910 F. Supp. 2d at 606 (quoting *Sly Magazine, LLC v. Weider Publ'ns LLC*, 346 F. App'x 721, 723 (2d Cir. 2009) (summary order)); *see also, e.g., C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 244 (S.D.N.Y. 2013) ("An unfair competition claim under New York common law requires all the elements of a Lanham Act unfair competition claim plus a showing of bad faith."). Forrest's bad faith is readily inferred from Fischer's allegations that Forrest intentionally copied his protected mark in order to sell a competing product, Am. Compl. I ¶ 53; that in the course of promoting the knock-off product, Forrest disparaged Fischer by implying that he was "unreliable," *id.* Ex. 8; and that Forrest persisted in this course of conduct even after receiving Fischer's cease-and-desist letter, *id.* Ex. 15. *Cf., e.g., Int'l Diamond Imps., Inc. v. Oriental Gemco (N.Y.), Inc.*, No. 14 Civ. 3506 (SAS), 2014 WL 6682622, at *16 (S.D.N.Y. Nov. 24, 2014) (plaintiffs adequately pled bad faith where they alleged that defendants knowingly used plaintiffs' trade dress to sell knock-off jewelry). Fischer has therefore stated a claim for unfair competition under New York law.

### 3.    Count Nineteen: Unfair Business Practices

To state a claim under New York General Business Law § 349, "a plaintiff 'must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it

was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)). A deceptive act alone does not suffice; it must have "a broader impact on consumers at large." *Int'l Diamond Imps.*, 2014 WL 6682622, at *10 (quoting *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000)); *see also, e.g.*, *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) ("[C]orporate competitors now have standing to bring a claim under this [statute] . . . so long as some harm to the public at large is at issue."). It must "threaten the public interest, such as potential danger to public health or safety." *Int'l Diamond Imps.*, 2014 WL 6682622, at *10; *see also id.* at *10 n.132–33 (collecting cases).

Although the gravamen of Fischer's complaint is private harm, he provides sufficient allegations of a potential public impact to survive a motion to dismis. *See* Am. Compl. I ¶¶ 221–30. Fischer alleges that a beekeeper duped into purchasing Natural Honey Harvester—believing it to be Bee-Quick, or associated with Bee-Quick, or interchangeable with Bee-Quick—could face "drastic consequences" including: (a) health problems resulting from use of a product made with an "unknown mix of chemicals having unknown vaporization/evaporation/volatility properties," (b) "inedible and unsalable" honey harvests caused by use of a product that is not food safe or FDA approved, and (c) loss of organic certification from using a product that is not organic. *Id.* Consumers, in turn, could be misled into purchasing substandard or tainted honey. *Id.* ¶ 224. These claims plausibly allege the necessary adverse impact on the public.

Fischer has also adequately pled the other two elements of a Section 349 claim. Forrest's alleged use of Fischer's personal and trademarked names on a webpage selling Natural Honey Harvester, as alleged, was misleading in a material way because it would tend to mislead

consumers to mistake Natural Honey Harvester for Bee-Quick or to believe that the two products were associated. *See* pages 19–20, *supra*. Fischer has also alleged injury to himself as a producer, who would suffer if consumers lost trust in his "food safe" and "organic" labels, and also as a consumer, in the event he inadvertently purchased substandard honey. *See* Am. Compl. I ¶ 227. Fischer has therefore stated a claim for unfair business practices.

### 4.   Count Twenty: Breach of Contract

"To state a claim for breach of contract under New York law, a plaintiff must allege '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Hudson & Broad, Inc. v. J.C. Penney Corp.*, 553 F. App'x 37, 38 (2d Cir. 2014) (summary order) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). Fischer has clearly pled the first, second, and fourth elements:  He alleges that the parties had an agreement under which Brushy Mountain was an authorized dealer of Bee-Quick, Am. Compl. I ¶¶ 8–10, 30, that he performed his obligations under that agreement, *see id.* ¶¶ 31, 208, and that he suffered harm after the agreement ceased to be in force, including spoiled product and lost profits, *see id.* ¶ 234.

As to the third element, breach, the Amended Complaint is far less clear.  It supplies little information about the substance of the parties' agreement, and it does not clearly state what conduct by Forrest constituted a breach.  Nevertheless, drawing every inference in Fischer's favor, as the Court must at this stage, and construing his *pro se* claims liberally, the Court reads Fischer to allege that Forrest breached the parties' agreement in three ways:  First, Fischer alleges that Forrest failed to provide reasonable notice before terminating the contract, *id.* ¶¶ 232–33; the Court infers that the parties, either expressly or by implication through the UCC,

agreed to provide such notice before terminating the agreement.[8] *See* UCC § 2-309 ("Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party."). Second, Fischer alleges that Forrest cancelled an order after accepting shipment and opening the goods, Am. Compl. I ¶ 234; the Court infers that this action breached an express or implied provision of the parties' agreement. *See* UCC § 2-607 ("Acceptance of goods by the buyer precludes rejection of the goods accepted."). Third, Fischer alleges that he authorized Forrest to use his copyrighted text and photograph and his trademarked name for the sole purpose of selling Bee-Quick. Am. Compl. I ¶¶ 31, 33, 46, 59. The Court can therefore reasonably infer that Forrest's use of those materials to sell Natural Honey Harvester violated either the sales contract or a separate licensing agreement that existed between the parties.[9] Accordingly, this count, too, states a claim under New York law.

### 5.   Count Twenty-One: Unjust Enrichment

"Under New York law, an unjust enrichment claim lies when 'the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff.'" *Rose v. Rahfco Mgmt. Grp., LLC*, No. 13 Civ. 5804 (VB), 2014 WL 7389900, at *7 (S.D.N.Y. Dec. 15, 2014) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)). "A claim for unjust enrichment requires that the '(1) defendant was enriched, (2) at plaintiff's expense, and

---

[8] Because Fischer alleges that the contract was terminable at will, Am. Compl. I ¶ 232, the Court cannot reasonably infer that the termination itself breached the parties' contract.

[9] Conceivably, the parties' contract included an exclusivity or non-compete agreement and was therefore breached when Forrest introduced his "directly competing cheap knock-off product," Am. Compl. I ¶ 235. The complaint, however, does not allege or imply that the agreement included such a provision. The Court, therefore, does not sustain the breach of contract claim on this theory of breach.

(3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" *Prickett v. N.Y. Life Ins. Co.*, 896 F. Supp. 2d 236, 249 (S.D.N.Y. 2012) (quoting *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011)). Because "unjust enrichment is an alternative to [a] contract claim," it "requires the absence of an enforceable agreement." *Podlin v. Ghermezian*, No. 13 Civ. 4117 (WHP), 2014 WL 2601416, at *6 (S.D.N.Y. May 28, 2014) (citing *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005)).

Fischer alleges that Forrest was enriched through sales of Natural Honey Harvester. *See* Am. Compl. I ¶¶ 8–9. Fischer also alleges that these profits were garnered at his expense, to wit, by using his trademarked brand name and personal name to trick buyers into mistaking Natural Honey Harvester for Bee-Quick. *Id.* ¶ 136. For the purpose of resolving the motion to dismiss, the Court assumes that it would be unjust to permit Forrest to retain the deceitfully obtained proceeds from Natural Honey Harvester sales. Accordingly, if Fischer's breach of contract claim fails, he may pursue an unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, Forrest's motion to dismiss is denied in its entirety. An order regarding next steps in this litigation will issue shortly.

The Clerk of Court is directed to terminate the motions pending at 14 Civ. 1304, Dkt. 30; 14 Civ. 1307, Dkt. 45; and 14 Civ. 1307, Dkt. 51.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: January 13, 2015
       New York, New York