UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JAMES H. FISCHER,                                        :

               Plaintiff,                      :
                                  14 Civ. 1304 (PAE) (AJP)
         -against-                       :       14 Civ. 1307 (PAE) (AJP)

STEPHEN T. FORREST, JR., SANDRA F.        :       **REPORT & RECOMMENDATION**
FORREST, SHANE R. GEBAUER, and
BRUSHY MOUNTAIN BEE FARM, INC.,           :

              Defendants.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge.**

**To the Honorable Paul A. Engelmayer, United States District Judge:**

         Plaintiff James Fischer brought these two related copyright and trademark

infringement actions against defendants.  Presently before the Court are defendants' motions to

dismiss certain claims in Fischer's Third Amended Complaint in both actions.  (14 Civ. 1304, Dkt.

Nos. 102, 105, 108; 14 Civ. 1307, Dkt. Nos. 123, 126.)  For the reasons set forth below, the motions

should be granted as to Fischer's trademark counterfeiting and New York right of publicity claims,

but otherwise denied.

### FACTS

**Background**

   Fischer's Third Amended Complaint alleges the following[1]:

   Fischer "is the inventor and supplier of 'Fischer's Bee-Quick®,' a product developed for the purpose of facilitating honey harvesting." (14 Civ. 1304, Dkt. No. 89: 3d Am. Compl. ¶ 7.) Defendants Stephen Forrest, Sandra Forrest and Shane Gebauer are, respectively, the president, secretary/treasurer and general manager/principal shareholder of defendant Brushy Mountain Bee Farm, Inc. ("Brushy Mountain"). (Id. ¶¶ 8-9.a.) From 2002 to 2010, defendants were an authorized dealer of Fischer's Bee-Quick product and permitted to use Fischer's copyrighted works on their sales website and catalog. (Id. ¶¶ 2, 32-33, 48.) On December 10, 2010, defendants "breached the Dealership agreement" with Fischer "and also announced their immediate termination of the already-breached agreement." (Id. ¶¶ 2, 34.) "At that point, Defendants immediately lost any right, license, or permission to use any of Plaintiff's intellectual property, as all such use was permitted solely in the selling of Plaintiff's product." (Id. ¶ 35.) Defendants thereafter had three months to update their website accordingly. (Id. ¶ 63.)

   According to Fischer, however, "[i]n March 2011, Defendants began marketing an unauthorized knock-off of Plaintiff's product" called "'Natural Honey Harvester'" in their printed

---

[1]  The majority of the following allegations are derived from Fischer's Third Amended Complaint in 14 Civ. 1304, which includes trademark and state law claims absent from Fischer's Third Amended Complaint in 14 Civ. 1307 that pleads copyright claims only. (Compare 14 Civ. 1304, Dkt. No. 89, with 14 Civ. 1307, Dkt. No. 111.) However, most of the general background allegations (such as the details regarding the dealership arrangement between Fischer and defendants, and defendants' copyright infringement beginning in March 2011) are substantially the same in both complaints. The relevant allegations in Fischer's Third Amended Complaint in 14 Civ. 1307 that vary from those in 14 Civ. 1304 are indicated below.

catalog and website.  (<u>Id.</u> ¶¶ 4, 55, 60; 14 Civ. 1307, Dkt. No. 111: 3d Am. Compl. ¶ 27.)  Natural Honey Harvester's product description "include[d] word-for-word verbatim copies of [Fischer's] copyrighted [w]orks," and "also misappropriated Plaintiff's trademark . . . in multiple places on the same website."  (14 Civ. 1304, 3d Am. Compl. ¶¶ 4, 42, 55-56, 60, 125.)  Also in March 2011, defendants allegedly violated Fischer's right of publicity by including his name in Brushy Mountain's website URLs.  (<u>Id.</u> ¶¶ 169-72.)  Fischer claims that the URLs "were intended to exploit [his] name to provide false cachet for Defendants, create confusion, and imply falsely that Plaintiff endorses Defendants and their products."  (<u>Id.</u> ¶ 172.)

On April 5, 2011, Fischer wrote to Stephen Forrest and demanded that defendants cease their alleged copyright and trademark infringement, but defendants refused "and continued their infringement."  (<u>Id.</u> ¶¶ 6, 72; 14 Civ. 1304, Dkt. No. 50: Ex. 15 at 1-2.)  In an April 14, 2011 response letter, defendant Shane Gebauer, Brushy Mountain's General Manager, wrote:  "After careful review by our attorney, there does not seem to [be] grounds for your request.  If you would like to provide more specific information as to how you believe we may be infringing on your Copyrights or Trademark, we will certainly review that information.  However, at this point we shall consider this matter closed."  (14 Civ. 1304, Dkt. No. 50: Ex. 16 at 1.)

By "late November, 2011," defendants "partially complied" with Fischer's demand by removing the Bee-Quick product from their website.  (14 Civ. 1304, 3d Am. Compl. ¶¶ 126-27.)  However, "[i]n March and April 2012, [Fischer] discovered that Defendants had willfully and deliberately ordered the creation and display of multiple new Counterfeit Marks infringing [Fischer's] trademark on Defendants' 2012 online ordering website."  (<u>Id.</u> ¶ 129.)  Defendants allegedly continued infringing on Fischer's trademark through at least May 20, 2014 (<u>id.</u> ¶ 135), and Fischer alleges that defendants continue to use his name in Brushy Mountain's website URLs (<u>id.</u>

¶¶ 186, 188, 195-96).

It is not clear from Fischer's Third Amended Complaint in 14 Civ. 1304 when the copyright infringement ended, or if it is alleged to be ongoing.  (E.g., id. ¶ 72 ("In April 2011, [Fischer] demanded in writing that Defendants cease and desist . . . but Defendants refused, and continued their infringement." (record citation omitted)); ¶ 78 ("Defendants displayed this Work verbatim . . . on their website in 2011, starting in March" (emphasis added)).)  Fischer's Third Amended Complaint in 14 Civ. 1307, however, references the same copyrighted phrases (compare 14 Civ. 1304, 3d Am. Compl. ¶ 42, with 14 Civ. 1307, Dkt. No. 111: 3d Am. Compl. ¶ 60), that defendants allegedly used "to promote their own knock-off product from 2011 to the present," and includes as exhibits defendants' website URLs and advertisement excerpts as proof that the infringement occurred as late as 2014.  (14 Civ. 1307, Dkt. No. 111: 3d Am. Compl. ¶¶ 75-76; 14 Civ. 1307, Dkt. No. 70: 2d Am. Compl. Ex. 20.)

**Procedural History**

Fischer filed both actions pro se on February 27, 2014, with one defendant, Stephen Forrest.  (14 Civ. 1304 & 14 Civ. 1307, Dkt. No. 1.)  Forrest moved to dismiss each complaint (on April 11, 2014 in 14 Civ. 1304 and July 9, 2014 in 14 Civ. 1307), arguing that he was not individually liable for the content of Brushy Mountain's website or catalog.  (14 Civ. 1304, Dkt. No. 11 at 5; 14 Civ. 1307, Dkt. No. 47 at 8.)  Forrest argued that, "as Plaintiff is well aware," Brushy Mountain's website and catalog are "owned by and maintained by Brushy Mountain Bee Farm, Inc. as prominently indicated on each . . . .  As such, Defendant Mr. Forrest, in his individual capacity, has not reproduced anything on the Brushy Mountain Bee Farm, Inc. website."  (14 Civ. 1304, Dkt. No. 11 at 5; 14 Civ. 1307, Dkt. No. 47 at 8.)

In response, Fischer amended his complaints in 14 Civ. 1304 and 14 Civ. 1307 (on

May 27, 2014 and August 3, 2014, respectively), to add Sandra Forrest as a defendant.  (14 Civ. 1304, Dkt. No. 23; 14 Civ. 1307, Dkt. No. 50.)  Fischer alleged that "Mr. and Mrs. Forrest . . . have been listed as the sole officers and shareholders [of Brushy Mountain] on every [North Carolina] corporate filing" since the company's inception.  (14 Civ. 1304, Dkt. No. 23: Am. Compl. ¶ 10; 14 Civ. 1307, Dkt. No. 50: Am. Compl. ¶ 9.)  Fischer's amended complaint in 14 Civ. 1307 (but not the amended complaint in 14 Civ. 1304) included the following footnote:

> The Court is asked to note that "inequitable results if the acts in question are treated as those of the corporation alone" would include endangering the livelihoods of the Defendants' many innocent and honest employees.  Defendants' business is under-capitalized, over-extended, and lacks professional credentialed management.  A judgment against the corporate entity would endanger the income of employees who had no part in the illegal acts of Defendants, or had to obey Defendants' orders.  Defendants have extracted significant personal wealth from the business, and their extensive assets include shares in the business that can be sold to satisfy a judgment, without putting any employees or employee families at risk.

(14 Civ. 1307, Dkt. No. 50: Am. Compl. ¶ 15 n.4.)

Stephen and Sandra Forrest moved to dismiss the amended complaints (14 Civ. 1304, Dkt. No. 30; 14 Civ. 1307, Dkt. No. 51), reiterating that, "curiously[,] [Fischer] does not name the corporate entity as a Defendant" (14 Civ. 1304, Dkt. No. 36: Reply Br. at 1; 14 Civ. 1307, Dkt. No. 56: Reply Br. at 1).  The Forrests also stated that they were "not sole shareholders" of Brushy Mountain.  (14 Civ. 1304, Dkt. No. 36: Reply Br. at 2; 14 Civ. 1307, Dkt. No. 56: Reply Br. at 2.)  Fischer countered that, "[i]f [the Forrests] are suddenly not the 'sole' shareholders, they presumably still are majority shareholders, which combined with their hands-on direct day-to-day management, is all the Court needs to confirm joint and several liability for both Defendants." (14 Civ. 1304, Dkt. No. 39: Surreply ¶ 3; 14 Civ. 1307, Dkt. No. 59: Surreply ¶ 3.)  On January 13, 2015, Judge Engelmayer denied the Forrests' motions to dismiss and held that Fischer's "decision to name only Stephen and Sandra Forrest, and not also Brushy Mountain, although strategically curious, does not

prevent him from pursuing claims against the two individuals." (14 Civ. 1304, Dkt. No. 45: 1/13/15 Opinion at 8; 14 Civ. 1307, Dkt. No. 65: 1/13/15 Opinion at 8.)

Fischer subsequently wrote to Judge Engelmayer on January 16, 2015 enclosing an article from Bee Culture magazine. (14 Civ. 1304, Dkt. No. 47; 14 Civ. 1307, Dkt. No. 67.) Fischer asked the Court to "appoint a receiver or attach defendants' assets" because the Forrests had allegedly "'handed over'" Brushy Mountain "to a third party, Shane Gebauer." (14 Civ. 1304, Dkt. No. 47 at 1; 14 Civ. 1307, Dkt. No. 67 at 1.) Judge Engelmayer responded that "[t]he [Bee Culture] article reports that Gebauer began working as the General Manager of Brushy Mountain in 2007, and 'part of the agreement was that he would slowly gain more of an ownership role in the business,'" which led to the formal transfer of the company to Gebauer in September 2014. (14 Civ. 1304, Dkt. No. 47 at 2; 14 Civ. 1307, Dkt. No. 67 at 2.) Judge Engelmayer specifically noted that "the transfer of assets began several years before Fischer commenced this action in February 2014, and was completed in accordance with a longstanding plan a few months before the Court denied defendants' motion to dismiss in January 2015." (14 Civ. 1304, Dkt. No. 47 at 2; 14 Civ. 1307, Dkt. No. 67 at 2.) Accordingly, Judge Engelmayer denied Fischer's request as there was no evidence that the transfer was fraudulent. (14 Civ. 1304, Dkt. No. 47 at 3; 14 Civ. 1307, Dkt. No. 67 at 3.)

Fischer sought, and was granted, leave to amend his complaint to add Gebauer as a defendant. (14 Civ. 1304, Dkt. Nos. 48-50; 14 Civ. 1307, Dkt. Nos. 68-70.) Fischer alleged that Gebauer's role as president of Brushy Mountain "and his 'gain[ing] more of an ownership role in the business' were first announced in the Dec 2014 'Bee Culture' magazine article . . . . Mr. Gebauer knew or should have known that the actions 14cv1304 and 14cv1307 would have properly named him as a co-defendant but for the deliberate concealment of his agreement(s) with Mr. and Mrs. Forrest . . . ." (14 Civ. 1304, Dkt. No. 50: 2d Am. Compl. ¶ 10; 14 Civ. 1307, Dkt. No. 70: 2d Am.

Compl. ¶ 9.)  Fischer stated that but for the Forrests' comment that they were "not sole shareholders" (see page 5 above), "both Plaintiff and the Court would have remained misled as to the actual owners and officers of this privately-held, closely-held legal fiction."  (14 Civ. 1304, Dkt. No. 48 at 2 n.1; 14 Civ. 1307, Dkt. No. 68 at 2 n.1.)

On October 29, 2015, Fischer retained counsel in both actions.  (14 Civ. 1304, Dkt. No. 77; 14 Civ. 1307, Dkt. No. 97.)  On December 28, 2015, Fischer amended the complaints for the third time, for the first time naming Brushy Mountain as a defendant.  (14 Civ. 1304, Dkt. No. 89: 3d Am. Compl.; 14 Civ. 1307, Dkt. No. 111: 3d Am. Compl.)

Fischer's Third Amended Complaint in 14 Civ. 1307 alleges eight causes of action sounding in copyright.  (14 Civ. 1307, Dkt. No. 111: 3d Am. Compl. ¶¶ 90-146.)  It does not assert any claims for trademark infringement or under state law.  Fischer's Third Amended Complaint in 14 Civ. 1304 is more comprehensive–it includes ten copyright infringement claims (14 Civ. 1304, Dkt. No. 89: 3d Am. Compl. ¶¶ 76-120), four claims of trademark counterfeiting (id. ¶¶ 140-63) (but no trademark infringement claims), and claims for right of publicity under federal law (id. ¶¶ 181-90) and New York Civil Rights Law § 51 (3d Am. Compl. ¶¶ 191-200), as well as five other state law claims (id. ¶¶ 201-46).

Defendants Brushy Mountain and Gebauer moved to dismiss certain claims in the Third Amended Complaint in both actions (14 Civ. 1304, Dkt. Nos. 102, 105; 14 Civ. 1307, Dkt. Nos. 123, 126), as have Stephen and Sandra Forrest in 14 Civ. 1304 (14 Civ. 1304, Dkt. No. 108). The motions challenge the timeliness of Fischer's copyright and New York right of publicity claims, and argue that Fischer has failed to allege the required elements of a trademark counterfeiting claim. The Court heard oral argument on the motions on January 13, 2017.

## ANALYSIS

### I.   LEGAL STANDARDS

####   A.   The Standard Pursuant to Fed. R. Civ. P. 12(b)(6)

#####     1.   The Twombly-Iqbal "Plausibility" Standard

In the <u>Twombly</u> and <u>Iqbal</u> decisions in 2007 and 2009, the Supreme Court significantly clarified the standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in <u>Twombly</u>, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it <u>demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation</u>.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, <u>a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."</u>  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
>
> Two working principles underlie our decision in <u>Twombly</u>.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  <u>Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice</u>.  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  <u>Second, only a complaint that states a plausible claim for relief survives a motion to dismiss</u>.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—that the pleader is entitled to relief."
>
> In keeping with these principles a court considering a motion to dismiss can

> choose to begin by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.  While legal conclusions can
> provide the framework of a complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court should assume their veracity
> and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted &
emphasis added, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955,
1965-66, 1974 (2007) (retiring the Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957),
pleading standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond
doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to
relief")).[2]

 Even after Twombly and Iqbal, the Court's role in deciding a motion to dismiss "is
merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which
might be offered in support thereof."  Bison Capital Corp. v. ATP Oil & Gas Corp., 10 Civ. 0714,
2010 WL 2697121 at *5 (S.D.N.Y. June 24, 2010) (Peck, M.J.) (quotations omitted), R. & R.
adopted, 2010 WL 3733927 (S.D.N.Y. Sept. 16, 2010).[3]

---

[2]  Accord, e.g., Affinity LLC v. GfK Mediamark Research & Intelligence, LLC, 547 F. App'x
54, 55-56 (2d Cir. 2013); Massena v. Bronstein, 545 F. App'x 53, 55 (2d Cir. 2013); Cancel
v. Home Depot, 488 F. App'x 520, 520 (2d Cir. 2012); Spataro v. Glenwood Supply, 479 F.
App'x 403, 404 (2d Cir. 2012); Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir.
2010), cert. denied, 562 U.S. 1168, 131 S. Ct. 901 (2011); Harris v. Mills, 572 F.3d 66, 71-
72 (2d Cir. 2009); Scerba v. Allied Pilots Ass'n, 13 Civ. 3694, 2013 WL 6481583 at *6-7
(S.D.N.Y. Dec. 10, 2013) (Peck, M.J.), aff'd, 589 F. App'x 554 (2d Cir. 2014), cert. denied,
135 S. Ct. 2313 (2015); Florio v. Canty, 954 F. Supp. 2d 227, 229-30 (S.D.N.Y. 2013) (Peck,
M.J.) (citing cases); Mahoney v. Sony Music Entm't, 12 Civ. 5045, 2013 WL 491526 at *4-5
(S.D.N.Y. Feb. 11, 2013) (Peck, M.J.); Toto, Inc. v. Sony Music Entm't, 12 Civ. 1434, 2012
WL 6136365 at *5 (S.D.N.Y. Dec. 11, 2012) (Peck, M.J.), R. & R. adopted, 2013 WL
163826 (S.D.N.Y. Jan. 15, 2013).

[3]  Accord, e.g., Florio v. Canty, 954 F. Supp. 2d at 230-31; Tasini v. AOL, Inc., 851 F. Supp.
2d 734, 737 (S.D.N.Y.) ("The Court's function on a motion to dismiss is 'not to weigh the
(continued...)

### 2.      Consideration of Documents Attached to the Amended Complaint

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading.  Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint."  Vassilatos v. Ceram Tech Int'l, Ltd., 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing Kopec v. Coughlin, 922 F.2d 152, 154-55 (2d Cir. 1991)).[4/]  The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  E.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a

---

[3/]      (...continued)
evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'"), aff'd, 505 F. App'x 45 (2d Cir. 2012); Saunders v. Coughlin, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).

[4/]      Accord, e.g., Grant v. Cty. of Erie, 542 F. App'x 21, 23 & n.1 (2d Cir. 2013); Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006); Aniero Concrete Co. v. N.Y.C. Constr. Auth., 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(b); Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000); Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988).

complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . .").[5/]

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  Faulkner v. Beer, 463 F.3d at 134 (citations omitted).  In this case, the documents that Fischer incorporated by reference in the amended complaints may be considered on the motions to dismiss, subject to the Faulkner v. Beer proviso.

## II.   FISCHER'S COPYRIGHT INFRINGEMENT CLAIMS

### A.   The Limitations Period For Copyright Claims

The Copyright Act imposes a three-year limitations period for infringement claims. 17 U.S.C. § 507(b);[6/] accord, e.g., Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962, 1968-69 (2014) (quoting § 507(b)); Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 124 (2d Cir. 2014) ("Civil actions for copyright infringement must be 'commenced within three years after the claim

---

[5/]   See also, e.g., Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561 (1992)); Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Florio v. Canty, 954 F. Supp. 2d 227, 231-32 (S.D.N.Y. 2013) (Peck, M.J.); In re Lehman Bros. Sec. & ERISA Litig., 903 F. Supp. 2d 152, 168-69 (S.D.N.Y. 2012) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d at 98); Drum Major Music Entm't Inc. v. Young Money Entm't, LLC, 11 Civ. 1980, 2012 WL 423350 at *2 (S.D.N.Y. Feb. 7, 2012); Maniolos v. United States, 741 F. Supp. 2d 555, 560 (S.D.N.Y. 2010) (Peck, M.J.), aff'd, 469 F. App'x 56 (2d Cir. 2012).

[6/]   Section 507(b) provides: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."

accrued.'").  The Second Circuit, like "every Circuit to have considered the issue of claim accrual in the context of infringement claims," follows the "discovery rule," under which "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement."  Psihoyos v. John Wiley & Sons, Inc., 748 F.3d at 124-25 & n.3 (collecting cases); 1 Nimmer on Copyright § 12.05[B][2][b] (2014) ("To date, all Courts of Appeals have adopted the discovery rule . . . ."); 6 Patry on Copyright § 20:19 & n.1 (2013) ("The overwhelming majority of courts use discovery accrual in copyright cases." (citing cases)).

Moreover, according to the Supreme Court:

It is widely recognized that the separate-accrual rule attends the copyright statute of limitations.  Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation.  Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs.  In short, each infringing act starts a new limitations period.

Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence.  And the infringer is insulated from liability for earlier infringements of the same work.  Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e., acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.

In sum, Congress provided two controlling time prescriptions: the copyright term, which endures for decades, and may pass from one generation to another; and § 507(b)'s limitations period, which allows plaintiffs during that lengthy term to gain retrospective relief running only three years back from the date the complaint was filed.

Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. at 1969-70 (citations & fns. omitted); see also, e.g., Stone v. Williams, 970 F.2d 1043, 1049-50 (2d Cir. 1992) ("Each act of infringement is a distinct harm giving rise to an independent claim for relief. . . .  Recovery is allowed only for those acts occurring within three years of suit, and is disallowed for earlier infringing acts."), cert. denied,

508 U.S. 906, 113 S. Ct. 2331 (1993); 1 Nimmer on Copyright § 12.05[B][1][b] ("If infringement occurred within three years prior to filing, the action will not be barred even if prior infringements by the same party as to the same work are barred because they occurred more than three years previously.").

**B.**     **Some of Fischer's Copyright Claims Are Timely**

Defendants Brushy Mountain and Gebauer argue that Fischer's copyright claims are time barred because "[t]he Third Amended Complaint alleges that the relevant infringement occurred in March 2011, when Brushy Mountain Bee Farm allegedly published Fischer's copyrighted works on its website and in its catalog." (14 Civ. 1304, Dkt. No. 103: Brushy Mtn. Br. at 9; Dkt. No. 106: Gebauer Br. at 8.)[7]  Because Brushy Mountain and Gebauer were added as defendants in 2015, they argue that Fischer's copyright claims asserted against them are untimely. (Brushy Mtn. Br. at 9-10; Gebauer Br. at 8.)[8]

At least some of Fischer's copyright infringement claims are timely in both actions. Defendants ignore that "when a defendant commits successive violations, the statute of limitations

---

[7]     Defendants do not further distinguish among Fischer's various copyright claims, including the alleged Digital Millennium Copyright Act violations.  Since defendants only argue that the "relevant infringement" writ large "occurred in March 2011" and therefore is time barred, the Court declines to parse through each allegation in the complaint to determine its timeliness.  The Court's holding below reflects the determination that some, but perhaps not all, of Fischer's copyright claims are timely.

[8]     Unless otherwise noted, references to the parties' briefs throughout this Order are to those filed in 14 Civ. 1304.  Specifically in regard to Fischer's copyright infringement claims, the parties have raised identical arguments in each action, and filed substantively identical briefs.  (Compare 14 Civ. 1304, Brushy Mtn. Br. at 8-10; Gebauer Br. at 7-8; Dkt. No. 113: Fischer Opp. Br. at 3; Dkt. No. 115: Fischer Opp. Br. at 3, with 14 Civ. 1307, Dkt. No. 124: Brushy Mtn. Br. at 4-5; Dkt. No. 127: Gebauer Br. at 4-5; Dkt. No. 131: Fischer Opp. Br. at 2-3; Dkt. No. 132: Fischer Opp. Br. at 2-3.)  The Court's analysis and ultimate holdings with respect to the statute of limitations and relation back issues discussed below, however, apply equally to the copyright claims at issue in 14 Civ. 1307.

runs separately from each violation." Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962, 1969 (2014). The complaint in 14 Civ. 1304 alleges that Fischer asked defendants to cease their infringement in April 2011, "but Defendants refused, and continued their infringement" by displaying Fischer's copyrighted works online. (See page 4 above.) Fischer has plausibly alleged that the infringement "starting in" March 2011 (see id.) was the beginning of a longer course of action by defendants that has not ended. Fischer's complaint in 14 Civ. 1307 more specifically references the same copyrighted phrases that defendants allegedly used "to promote their own knock-off product from 2011 to the present," and includes website links and supporting exhibits as proof that the infringement occurred as late as 2014. (See id.)

Defendants therefore cannot establish from the face of either complaint that all of the allegedly infringing acts occurred outside the limitations period such as to warrant complete dismissal of Fischer's claims. See, e.g., Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015) ("'Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when a defendant raises a statutory bar,' such as lack of timeliness, 'as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"); United States v. Livecchi, 711 F.3d 345, 352 (2d Cir.) (a "statute of limitations argument is an affirmative defense for which [the defendant] bears the burden of proof"), cert. denied, 134 S. Ct. 303 (2013); Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) ("'[B]ecause the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run.'"). Brushy Mountain's and Gebauer's motions to dismiss Fischer's copyright claims on statute of

limitations grounds thus should be <u>DENIED</u>.[9]

### C.   Fischer's Complaints Naming Brushy Mountain and Gebauer Do Not Relate Back

The Court noted above that while defendants are not entitled to wholesale dismissal of Fischer's claims, some claims falling outside the limitations period may nonetheless be barred.

---

[9]   The Court notes, however, that "[s]eparately accruing harm should not be confused with harm from past violations that are continuing," an issue no party addressed. <u>Petrella</u> v. <u>Metro-Goldwyn-Mayer, Inc.</u>, 134 S. Ct. at 1969 n.6. In the Second Circuit, "[a]pplication of the continuous wrong doctrine generally has been rejected in the infringement context." <u>Stone</u> v. <u>Williams</u>, 970 F.2d 1043, 1050 (2d Cir. 1992); <u>see also</u>, <u>e.g.</u>, <u>Petrella</u> v. <u>Metro-Goldwyn-Mayer, Inc.</u>, 134 S. Ct. at 1969 ("[A]n infringement is actionable within three years, <u>and only three years</u>, of its occurrence" (emphasis added)); <u>Kregos</u> v. <u>Associated Press</u>, 3 F.3d 656, 662 (2d Cir. 1993) (noting "the disfavor that the continuing-infringement doctrine has received in the copyright-infringement context," and that the "continuing-infringement presence . . . [is] unavailable in this circuit."), <u>cert. denied</u>, 510 U.S. 1112 , 114 S. Ct. 1056 (1994); <u>Voiceone Commc'ns, LLC</u> v. <u>Google Inc.</u>, 12 Civ. 9433, 2014 WL 10936546 at *7 (S.D.N.Y. Mar. 31, 2014) ("[R]ecovery is allowed only for those acts occurring within three years of suit." (quotations omitted)).   It is not clear whether Fischer's claims stem from a series of discrete infringing acts, or a single past violation that continued.   <u>See</u>, <u>e.g.</u>, <u>Wolf</u> v. <u>Travolta</u>, 167 F. Supp. 3d 1077, 1099 n.13 (C.D. Cal. 2016) ("The fact that the allegedly infringing document–published in 2010, outside the relevant three-year window–<u>remained</u> on defendant's website through 2014 does not give rise to a discrete claim accruing within the three-year window. . . .   [T]he allegedly infringing document's continued presence on defendants' website through 2014 at best constitutes 'harm from [a] past violation[ ] that [was] continuing' through 2014, and not a 'new wrong' that gave rise to '[s]eparately accruing harm' within the limitations period." (quoting <u>Petrella</u> v. <u>Metro-Goldwyn-Mayer, Inc.</u>, 134 S. Ct. at 1969 n.6)).   Regardless, the Court declines to address an issue not raised by defendants, and who have not met their burden of showing that the statute of limitations applies.   If discovery proves that some discrete infringing acts have occurred within the three year limitations periods applicable to Gebauer or Brushy Mountain, Fischer's actionable claims would be limited accordingly (as he acknowledges). (14 Civ. 1304, Dkt. No. 115: Fischer Opp. Br. at 3; 14 Civ. 1307, Dkt. No. 131: Fischer Opp. Br. at 3); <u>see</u>, <u>e.g.</u>, <u>Stone</u> v. <u>Williams</u>, 970 F.2d at 1049-50 ("Each act of infringement is a distinct harm giving rise to an independent claim for relief.   This does not mean that when infringements occur during the limitations period recovery may be had for past infringements.   Recovery is allowed only for those acts occurring within three years of suit, and is disallowed for earlier infringing acts."); <u>Sadhu Singh Hamdad Trust</u> v. <u>Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.</u>, 503 F. Supp. 2d 577, 585 (E.D.N.Y. 2007); <u>Roberts</u> v. <u>Keith</u>, 04 Civ. 10079, 2006 WL 547252 at *4 n.2 (S.D.N.Y. Mar. 7, 2006).

Apparently acknowledging this, Fischer argues that none of the claims against Brushy Mountain and Gebauer are barred because under Federal Rule of Civil Procedure 15(c)(1)(C), the complaints filed against them relate back to the February 2014 complaint filed solely against defendant Stephen Forrest.  (Dkt. No. 113: Fischer Opp. Br. at 8-9; Dkt. No. 115: Fischer Opp. Br. at 8-9.)  For the reasons discussed below, Fischer's complaints against Brushy Mountain and Gebauer do not relate back to the date of the original pleading.

Rule 15(c)(1)(C) provides that "[a]n amendment to a pleading" that adds a new party "relates back to the date of the original pleading when":

> (B) the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(B)-(C).[10/]  The "mistake" provision contained in "Rule 15(c)(1)(C)(ii) asks what the prospective <u>defendant</u> knew or should have known during the Rule 4(m) period, not what the <u>plaintiff</u> knew or should have known at the time of filing her original complaint."  <u>Krupski</u> v. <u>Costa Crociere S. p. A.</u>, 560 U.S. 538, 548, 130 S. Ct. 2485, 2493 (2010) (emphasis in original).  Thus, "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's

---

[10/]   Prior to December 1, 2015, Federal Rule of Civil Procedure 4(m) stated, in relevant part: "If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

understanding of whether the plaintiff made a mistake regarding the proper party's identity.  For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake."  Krupski v. Costa Crociere S. p. A., 560 U.S. at 548, 130 S. Ct. at 2493-94.

It is not disputed that the amendments adding Brushy Mountain and Gebauer assert claims "that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading," and it is highly likely that both defendants, by virtue of Fischer's allegations in earlier complaints implicating Brushy Mountain, and Gebauer's role with the company by 2014 (see pages 4-6 above), received notice of the action and will not be prejudiced in their defense. Defendants' briefs focus entirely on the "mistake" element of Rule 15(c) (Dkt. No. 116: Brushy Mtn. Reply Br. at 4-6; Dkt. No. 118: Gebauer Reply Br. at 4-6), which the Court addresses in the context of this case's procedural history.

### 1.   **Brushy Mountain**

Some evidence suggests that the Forrests, as the corporate representatives of Brushy Mountain, might have been aware that Fischer was mistaken.  The Forrests clearly found it strange that Fischer had not sued Brushy Mountain, and Stephen Forrest argued within the Rule 4(m) period in 14 Civ. 1304 that he could not be held personally liable for the corporation's actions (an argument later echoed by Sandra Forrest).  (See pages 4-5 above.)  This argument, taken at face value, might suggest that Brushy Mountain (via Stephen Forrest) "knew or should have known that the action would have been brought against it, but for [Fischer's] mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).  Fischer moreover submitted an affidavit stating, "At the time of my original filing, I believed that I was required to prove actionable conduct on the part of a human being prior to being able to obtain a judgment against a corporate entity.  At the time of filing, I believed that a corporate entity could not be held liable on its own until some individuals

had been found liable." (14 Civ. 1304, Dkt. No. 112: Fischer Aff. ¶ 9; 14 Civ. 1307, Dkt. No. 130: Fischer Aff. ¶ 9.)

But Fischer was not <u>mistaken</u>.  In his August 2014 amended complaint in 14 Civ. 1307 that added Sandra Forrest, but not Brushy Mountain, Fischer expressed his fear that "[a] judgment against the corporate entity would endanger the income of employees who had no part in the illegal acts of Defendants, or had to obey Defendants' orders." (<u>See</u> page 5 above.)  Fischer went on to state that "Defendants have extracted significant personal wealth from the business, and their extensive assets include shares in the business that can be sold to satisfy a judgment, without putting any employees or employee families at risk." (<u>See</u> <u>id.</u>)  Fischer wanted no part in "endangering the livelihoods of the Defendants' many innocent and honest employees," which contradicts his instant claim that he did not think that the corporation could be held liable. (<u>See</u> <u>id.</u>)

This case is not factually analogous to <u>Krupski</u> v. <u>Costa Crociere S. p. A.</u>, 560 U.S. 538, 541, 130 S. Ct. 2485, 2489 (2010), cited by Fischer. (Dkt. No. 115: Fischer Opp. Br. at 8.)  In <u>Krupski</u>, the plaintiff was injured aboard a cruise ship and sued the wrong entity, "Costa Cruise Lines," instead of its related corporate entity, "Costa Crociere S. p. A." <u>Krupski</u> v. <u>Costa Crociere S. p. A.</u>, 560 U.S. at 541-44, 130 S. Ct. at 2490-91.  After the statute of limitations had expired, Krupski filed an amended complaint naming Costa Crociere, and "the District Court issued an order dismissing Costa Cruise from the case pursuant to the parties' joint stipulation, Krupski apparently having concluded that Costa Cruise was correct that it bore no responsibility for her injuries." <u>Krupski</u> v. <u>Costa Crociere S. p. A.</u>, 560 U.S. at 544, 130 S. Ct. at 2491.  The district court held that the amended complaint did not relate back. <u>Krupski</u> v. <u>Costa Crociere S. p. A.</u>, 560 U.S. at 544-45, 130 S. Ct. at 2491.  "Because Costa Cruise informed Krupski that Costa Crociere was the proper defendant in its answer, corporate disclosure statement, and motion for summary judgment, and yet

Krupski delayed for months in moving to amend and then in filing an amended complaint, the court concluded that Krupski knew of the proper defendant and made no mistake." Krupski v. Costa Crociere S. p. a., 560 U.S. at 545-46, 130 S. Ct. at 2492.

The Supreme Court reversed.  It first held that

> Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint.
>
> Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity.  For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake. . . .  That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity.  A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B.  Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim.  If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties.  The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.

Krupski v. Costa Crociere S. p. A., 560 U.S. at 548-49, 130 S. Ct. at 2493-94 (fn. omitted).

The Supreme Court summarized relation back as follows: "When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." Krupski v. Costa Crociere S. p. A., 560 U.S. at 552, 130 S. Ct. at 2496.  "[T]he complaint made clear that Krupski meant to sue the company that 'owned, operated, managed, supervised and controlled' the ship on which she was injured, and also indicated (mistakenly) that Costa Cruise performed those roles." Krupski v. Costa Crociere S. p. A., 560 U.S. at 554, 130 S. Ct. at 2497.

(record citations omitted). Thus, the Court held that "Costa Crociere should have known, within the Rule 4(m) period, that it was not named as a defendant in that complaint only because of Krupski's misunderstanding about which 'Costa' entity was in charge of the ship—clearly a 'mistake concerning the proper party's identity.'" Krupski v. Costa Crociere S. p. A., 560 U.S. at 554-55, 130 S. Ct. at 2497.

Krupski addressed the relevance of the information in the plaintiff's possession within the confines Rule 15(c)(1)(C)(ii), which assumes that a mistake has been made, and asks whether the defendant should have known about it.  Unlike the Krupski plaintiff, however, Fischer was not merely aware that Brushy Mountain existed while "misunderst[anding] a crucial fact about [its] identity." Krupski v. Costa Crociere S. p. A., 560 U.S. at 550, 130 S. Ct. at 2494.  Rather, Fischer explicitly stated in his amended complaint that he wanted to avoid a judgment against the corporation so "the Defendants' many innocent and honest employees" would not be at risk.  (See page 5 above.)  See, e.g., Krupski v. Costa Crociere S. p. A., 560 U.S. at 549, 130 S. Ct. at 2494 ("We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity.").  Fischer thus deliberately omitted Brushy Mountain as a defendant, fully aware of its potential liability and role in this dispute.

Moreover, even if Fischer was unaware that Brushy Mountain as a corporation could be sued (an error of law not fact), relation back still would be inappropriate because Fischer never named an improper party to begin with.  See Fed. R. Civ. P. 15(c)(1)(C)(ii) (discussing a "mistake concerning the proper party's identity" (emphasis added).)  Fischer did not sue the wrong party because Judge Engelmayer held that Fischer's "decision to name only Stephen and Sandra Forrest, and not also Brushy Mountain, although strategically curious, does not prevent him from pursuing

claims against the two individuals." (See pages 5-6 above.)  In contrast, it was undisputed that the

Krupski plaintiff sued the wrong party because Costa Cruise Lines was not legally responsible for

her injuries. (See page 18 above.)  The Court is persuaded by Judge Cogan's analysis:

> The holding in Krupski was that it doesn't matter what a plaintiff knows or should know about the proposed defendant–it is what that defendant knows that counts– and that, therefore, even a plaintiff who makes a carefully considered but ultimately wrong choice about who to sue can avail himself of Rule 15(c)(1)(C).  Because Krupski spent so much analysis considering the proposed new defendant's knowledge that it was the party that should have been sued (and discounting the significance of the plaintiff's knowledge), it is easy to slide into the belief . . . that all that matters is what the proposed new party knows.  However, the starting point for Krupski was a suit against the wrong party, and all of its discussion of knowledge must be seen in that context.  Where a plaintiff has not mistakenly sued the wrong party, a court need not consider what a defendant knows and when the defendant knew it; the threshold requirement for Rule 15(c)(1)(C)–a 'mistake concerning the proper party's identity'–has not been met.

In re Vitamin C Antitrust Litig., 995 F. Supp. 2d 125, 130-31 (E.D.N.Y. 2014).  Fischer's choice to

sue the Forrests personally and not to sue Brushy Mountain is not the kind of "mistake" that Rule

15 contemplates.  See, e.g., In re Vitamin C Antitrust Litig., 995 F. Supp. 2d at 129 ("In an

'additional party' case like this one, there generally will be no 'mistake concerning' the proper party's

'identity.'  The plaintiff has sued the right defendant, and simply neglected to sue another defendant

who might also be liable.  If the drafters of Rule 15 had meant to allow relation back in this

situation, they could have easily done so.").[11/]

---

[11/]   Accord, e.g., Cornwell v. Robinson, 23 F.3d 694, 705 (2d Cir. 1994) (Plaintiff "does not allege that she would have named the individual appellants as defendants in her original complaint but for a mistake concerning identity.  Nor, in light of the record in the present case, would such an assertion be tenable.  Plainly she knew the identities of the [newly added defendants] . . . .  [Plaintiff] was not required to sue them, and her failure to do so in the original complaint, in light of her obvious knowledge . . . must be considered a matter of choice, not mistake."); Pikos v. Liberty Maint., Inc., No. 09-CV-4031, 2015 WL 6830670 at *3 (E.D.N.Y. Nov. 6, 2015) ("Courts in this Circuit have held relation back is only permitted where plaintiff named the wrong party in the original complaint, and not where
(continued...)

Fischer's decision not to sue Brushy Mountain until the Third Amended Complaint reflected his strategy ("although strategically curious," <u>see</u> page 5 above), and not a mistake as to the correct defendant.  Rule 15(c)(1)(C) does not allow relation back.

    **2.**    **<u>Gebauer</u>**

The complaint against Gebauer does not relate back either.  "Gebauer began working as the General Manager of Brushy Mountain in 2007, and 'part of the agreement was that he would slowly gain more of an ownership role in the business,'" which led to the formal transfer of the company to Gebauer in September 2014.  (<u>See</u> page 6 above.)  Unlike Brushy Mountain, Fischer alleges that the Forrests misled him as to the company's "actual owners and officers," and that Gebauer's role as president of Brushy Mountain "and his 'gain[ing] more of an ownership role in the business' were first announced in the Dec 2014 'Bee Culture' magazine article." (<u>See</u> <u>id.</u>)  According to Fischer, "Mr. Gebauer knew or should have known that the actions 14cv1304 and 14cv1307 would have properly named him as a co-defendant but for the deliberate concealment of his agreement(s) with Mr. and Mrs. Forrest."  (<u>See</u> <u>id.</u>)  Judge Engelmayer, however, noted that the "transfer of assets began several years before Fischer commenced this action in February 2014," and found no evidence that the arrangement was fraudulent.  (<u>See</u> <u>id.</u>)

Fischer may not have known about the ownership transfer, but he knew that Gebauer was Brushy Mountain's General Manager as early as April 2011 when Gebauer's response to Fischer's cease and desist letter indicated his management role with Brushy Mountain.  (<u>See</u> page

---

11/    (...continued)
plaintiff named one but not all of the right defendants."); <u>Hahn</u> v. <u>Office & Prof'l Emps. Int'l Union</u>, 107 F. Supp. 3d 379, 385 (S.D.N.Y. 2015) ("Rather than suing the <u>wrong</u> party, as in <u>Krupski</u>, '[t]he plaintiff has sued [what he believes is] the right defendant, and simply neglected to sue another defendant who might also be liable.'").

3 above.)  However, "[t]hat a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity.  A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B."  <u>Krupski</u> v. <u>Costa Crociere S. p. A.</u>, 560 U.S. 538, 549, 130 S. Ct. 2485, 2494 (2010).  That is not the case here.  There may be a distinction between the roles of "General Manager" and business owner; but Fischer does not argue, with regard to any theory proffered in the complaint, that Gebauer's liability turns on his formal title or ownership role in the company.  Nor could he given Judge Engelmayer's holding with respect to the Forrests' individual liability.  (<u>See</u> pages 5-6 above.) Rather, either Gebauer was involved in the alleged violations or he wasn't.  Nothing in the <u>Bee Culture</u> article could have illuminated Fischer on that issue, and nothing in Gebauer's title, or the presence or absence of an ownership transfer agreement, is alleged to alter his individual liability. "The plaintiff has sued the right defendant[s], and simply neglected to sue another defendant who might also be liable."  <u>In re Vitamin C Antitrust Litig.</u>, 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014); <u>see also</u> cases cited on page 21 n.11 above.  There was no "mistake" as Rule 15(c) defines it.

\* \* \*

Fischer conceded at oral argument that if relation back did not apply, the copyright claims against Brushy Mountain and Gebauer that accrued over three years before each defendant was sued would be time barred.  Therefore, Fischer's copyright claims against Brushy Mountain that accrued before December 28, 2012 are time barred (14 Civ. 1304, Dkt. No. 88: 12/28/15 3d Am. Compl.; 14 Civ. 1307, Dkt. No. 111: 12/28/15 3d Am. Compl.), as are Fischer's copyright claims against Gebauer that accrued before February 3, 2012 (14 Civ. 1304, Dkt. No. 50: 2/3/15 2d Am. Compl.; 14 Civ. 1307, Dkt. No. 70: 2/3/15 2d Am. Compl.).

## III.     FISCHER'S TRADEMARK COUNTERFEITING CLAIMS

### A.     Legal Standards Governing Trademark Counterfeiting Claims

The Lanham Act defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  The Act imposes liability on any person who:

> (a)     use[s] in commerce any . . . counterfeit . . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b)     . . . counterfeit[s] . . . a registered mark and appl[ies] such . . . counterfeit . . . to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1).

Traditional trademark infringement claims are analyzed under a two-prong test that first asks whether the allegedly infringed mark "'is entitled to protection'" and, if so, "whether use of the allegedly infringing mark 'is likely to cause consumers confusion as to the origin or sponsorship' of the products to which it is attached."  Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 168 (2d Cir. 2016); see also, e.g., Denimafia Inc. v. New Balance Athletic Shoe, Inc., 12 Civ. 4112, 2014 WL 814532 at *9 (S.D.N.Y. Mar. 3, 2014) (Peck, M.J.), appeal dismissed (May 19, 2014).

In the Second Circuit, "likelihood of confusion" is "analyzed with reference to the eight factors first articulated in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961), one of which is 'the degree of similarity between the two marks.'"  Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d at 168; accord, e.g., Int'l Info. Sys. Sec. Certification Consortium,

Inc. v. Sec. Univ., LLC, 823 F.3d 153, 160 (2d Cir. 2016), cert. denied, --- U.S. ---- (2017);

Denimafia Inc. v. New Balance Athletic Shoe, Inc., 2014 WL 814532 at *10.  "However, where

items are counterfeit, 'the Court need not undertake a factor-by-factor analysis under Polaroid

because counterfeits, by their very nature, cause confusion.'"  Coach, Inc. v. Horizon Trading USA

Inc., 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (Engelmayer, D.J.).

       While there is no statutory definition of "substantially indistinguishable," courts in

this Circuit have uniformly held that the counterfeiting standard requires more than a mere similarity

between the marks or a "colorable imitation."  See, e.g., Louis Vuitton Malletier S.A. v. Sunny

Merch. Corp., 97 F. Supp. 3d 485, 499 (S.D.N.Y. 2015) ("To be substantially indistinguishable, two

marks must be 'nearly identical . . . with only minor differences which would not be apparent to an

unwary observer.'").[12/]  The same is true for the term "spurious," which also refers to a close copy

of the protected item.  See, e.g., Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing

Co.,12 Civ. 1416, 2015 WL 4468083 at *3 (S.D.N.Y. July 8, 2015) ("Although 'spurious' is not a

statutorily defined term under the Lanham Act, some courts in this Circuit have relied on the

definition provided in Black's Law Dictionary: '[d]eceptively suggesting an erroneous origin;

fake.'"); Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc., 2015 WL 150756 at *2; GMA

---

[12/]    See also, e.g., Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.,12 Civ. 5423, 2015
WL 150756 at *2 (S.D.N.Y. Jan. 12, 2015) ("The essence of counterfeiting is that the use
of the infringing mark 'seeks to trick the consumer into believing he or she is getting the
genuine article, rather than a "colorable imitation."'"); GMA Accessories, Inc. v. BOP, LLC,
765 F. Supp. 2d 457, 471 (S.D.N.Y. 2011) ("[T]here is 'a dearth of case law' exploring
exactly what constitutes substantially indistinguishable.  However, it must, at the very least,
. . . be closer than the traditional standard for infringement, 'colorable imitation.'"), aff'd, 558
F. App'x 116 (2d Cir. 2014); Gucci America, Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 242
(S.D.N.Y. 2012) ("[C]ounterfeiting is the 'hard core' or 'first degree' of trademark
infringement . . . .  For this reason, courts have uniformly applied this provision to products
that are stitch-for-stitch copies of those of another brand.").

Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d at 472.  The terms "substantially indistinguishable" and "spurious" reflect the element of outright duplication absent from the "colorable imitation" inquiry.  See, e.g., Montres Rolex, S.A. v. Snyder, 718 F.2d 524, 528 (2d Cir. 1983) (distinguishing those "marks which are merely infringements" and "those marks which not only infringe but in addition are such close copies that they amount to counterfeits"), cert. denied, 465 U.S. 1100 , 104 S. Ct. 1594 (1984).

When comparing marks, a court asks whether an average purchaser would find the allegedly counterfeit mark to be "substantially indistinguishable" from the registered mark as it appears on the actual merchandise.  See, e.g., Montres Rolex, S.A. v. Snyder, 718 F.2d at 531; Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., 2015 WL 4468083 at *2 ("When comparing the alleged counterfeit mark with the registered mark, one must not view the marks in the abstract.  Rather, the alleged counterfeit mark 'must be compared with the registered mark as it appears on actual merchandise to an average purchaser.'" (citation omitted)); Coach, Inc. v. Zhen Zhen Weng, 13 Civ. 445, 2014 WL 2604032 at *13 (S.D.N.Y. June 9, 2014); GTFM, Inc. v. Solid Clothing Inc., 01 Civ. 2629, 2002 WL 1933729 at *2 (S.D.N.Y. Aug. 21, 2002) ("There is nothing in the Act . . . which states that to determine whether a defendant is engaged in counterfeiting, one compares plaintiff's and defendant's marks in the abstract, without considering how they appear to consumers in the marketplace.").  A side-by-side comparison of the items' distinct visual characteristics is important.  See, e.g., Montres Rolex, S.A. v. Snyder, 718 F.2d at 533 ("We examined the actual bracelets at oral argument and found the Grand Jewels samples to be the spitting image of the Rolex merchandise.").  "[I]n the case of a word mark," for example, "it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to font, color, typeface, or context."  GMA Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d at 472; see also,

e.g., Kelly-Brown v. Winfrey, 717 F.3d 295, 315 (2d Cir. 2013) ("As the District Court noted, the font, color, and capitalization of [plaintiff's] mark differed from the offending uses made by defendants.").

### B.    Fischer Has Not Plausibly Alleged A Trademark Counterfeiting Claim

The Forrests, Brushy Mountain and Gebauer argue in 14 Civ. 1304 that Fischer fails to allege the required elements of a trademark counterfeiting claim because "Natural Honey Harvester" is distinguishable from Fischer's registered "Bee-Quick" mark.  (Dkt. No. 103: Brushy Mtn. Br. at 11-12; Dkt. No. 106: Gebauer Br. at 9-11; Dkt. No. 109: Forrest Br. at 7-8.)  The Court agrees that "Natural Honey Harvester" is not a counterfeit of "Bee-Quick" as a matter of law, without regard to font or color, because the two phrases are completely different.  Fischer's Third Amended Complaint, however, alleges a bait and switch scheme: defendants displayed the actual Bee-Quick bottle on Brushy Mountain's website, but if a consumer ordered the product, they would be shipped a bottle of Natural Honey Harvester instead.  (E.g., 14 Civ. 1304, Dkt. No. 89: 3d Am. Compl. ¶¶ 141-43, 146-47, 152.)  Defendants appear to argue that the counterfeiting analysis should be applied to the actual product delivered to consumers (Honey Harvester), rather than the item displayed online, Bee-Quick.  (See Brushy Mtn. Br. at 12; Gebauer Br. at 10-11; Forrest Br. at 8.)

Defendants' argument aside, Fischer's counterfeit claims fail because the Bee-Quick bottle used on Brushy Mountain's website is not a "counterfeit," it is the genuine product.  The definition of "counterfeit" refers to "a spurious mark," which courts have interpreted to mean "'[d]eceptively suggesting an erroneous origin; fake.'"  Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.,12 Civ. 1416, 2015 WL 4468083 at *3 (S.D.N.Y. July 8, 2015).  The mark at issue here is not "spurious" because it is the genuine Bee-Quick mark, which is not alleged to have been altered in any way by defendants.  See, e.g., United States v. Cone, 714 F.3d 197, 207 (4th Cir.

2013) ("The requirement of a spurious mark is problematic for the government's 'material alteration' theory that [defendants] obtained a genuine Cisco product bearing a genuine mark; modified the product, but not the mark; then sold the modified product bearing the genuine mark."). Thus, whatever other liability defendants may face for alleged improper use of the Bee-Quick mark, Fischer cannot establish a counterfeiting claim.[13/]   Defendants' motions to dismiss Fischer's counterfeiting claims should be GRANTED.[14/]

---

[13/]   The Court also notes that Fischer's thirteenth and fourteenth claims (14 Civ. 1304, 3d Am. Compl. ¶¶ 150-63) assert that defendants' website URLs linked to their own products, but included the phrase "Bee-Quick," such as:   http://brushymountainbeefarm.com/8-Frame-Fume-Pad-w_**Fischers-Bee-Quick**/productinfo/254FPQ/.   (Id. ¶ 158 (bolding added).) Unlike Fischer's other counterfeit claims that allege use of the actual Bee-Quick bottle image, these allegations claim trademark counterfeiting solely based on the use of the words "Bee Quick" in Brushy Mountain's URLs.   (See id. ¶¶ 150-63.)   Viewed in context, defendants' use of the word mark–unformatted and embedded in a URL–cannot support a counterfeiting claim.   The use of the mark simply is not "substantially indistinguishable" from the registered mark as it would normally appear to consumers in the marketplace.   See, e.g., GTFM, Inc. v. Solid Clothing Inc., 01 Civ. 2629, 2002 WL 1933729 at *2 (S.D.N.Y. Aug. 21, 2002) ("There is nothing in the Act . . . which states that to determine whether a defendant is engaged in counterfeiting, one compares plaintiff's and defendant's marks in the abstract, without considering how they appear to consumers in the marketplace.").   Fischer may have some other Lanham Act or unfair competition cause of action, but he has not asserted such a claim, and trademark counterfeiting simply is inapplicable.   (See also fn. 14 below.)

[14/]   Fischer's first amended complaint contained trademark counterfeiting allegations nearly identical to those at issue here.   (Compare 14 Civ. 1304, 3d Am. Compl. ¶¶ 121-63, with 14 Civ. 1304, Dkt. No. 23: Am. Compl. ¶¶ 119-61.)   The Forrests moved to dismiss the amended complaint's trademark counterfeiting allegations but, unlike in their present motion, argued more generally that Fischer could not satisfy the traditional "likelihood of confusion" test.   (14 Civ. 1304, Dkt. No. 32: Fischer Br. at 29-31.)   Judge Engelmayer denied the motion and held that the use of Fischer's name in Brushy Mountain's website URLs and the image of the Bee-Quick bottle could cause consumer confusion.   (14 Civ. 1304, Dkt. No. 45: 1/13/15 Order at 19.)   Judge Engelmayer, however, was not called upon to address the precise question presented here, whether the URL links or the use of the Bee-Quick bottle amounted to counterfeit marks.   Fischer may have intended to bring a trademark infringement claim against defendants, but his Third Amended Complaint, drafted and filed by counsel, specifically references defendants' use of "counterfeit" marks.   The

(continued...)

## IV.    FISCHER'S RIGHT OF PUBLICITY CLAIM

### A.    Legal Standards Governing Right Of Publicity Claims

Under New York Law, "[a]ny person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without . . . written consent . . . may . . . sue and recover damages for any injuries sustained by reason of such use . . . ."  N.Y. Civ. Rights Law § 51.  To establish a right of publicity claim, a "plaintiff must demonstrate each of four elements: (i) usage of plaintiff's name, portrait, picture, or voice, (ii) within the State of New York, (iii) for purposes of advertising or trade, (iv) without plaintiff's written consent."  Molina v. Phoenix Sound Inc., 297 A.D.2d 595, 597, 747 N.Y.S.2d 227, 230 (1st Dep't 2002); see also, e.g., Comolli v. Huntington Learning Ctrs., Inc., 117 F. Supp. 3d 343, 348-49 (S.D.N.Y. 2015).

An action for a violation of the right of publicity must be commenced within one year.  N.Y.C.P.L.R. § 215(3).  The New York Court of Appeals has "formulated the single publication rule, which states that a cause of action . . . accrues on the date the offending material is first published."  Nussenzweig v. diCorcia, 9 N.Y.3d 184, 188, 848 N.Y.S.2d 7, 8 (2007) ("[W]e therefore hold that the single publication rule applies to claims brought pursuant to Civil Rights Law §§ 50 and 51.");  accord, e.g., Comolli v. Huntington Learning Ctrs., Inc., 117 F. Supp. 3d at 349. "[T]he publication of a defamatory statement," for example, "in a single issue of a newspaper, or a single issue of a magazine, although such publication consists of thousands of copies widely distributed, is, in legal effect, one publication which gives rise to one cause of action and . . . the applicable Statute of Limitation runs from the date of that publication."  Gregoire v. G. P. Putnam's

---

14/    (...continued)
trademark "counterfeit" claims cannot survive, and Fischer has not sought further leave to amend.

Sons, 298 N.Y. 119, 123, 81 N.E.2d 45, 47 (1948).  "This rule applies to publications on the Internet, so continuous access to an article posted via hyperlinks to a website is not a republication."  Martin v. Daily News L.P., 121 A.D.3d 90, 103, 990 N.Y.S.2d 473, 483 (1st Dep't) (citation omitted), leave to appeal denied, 24 N.Y.3d 908, 997 N.Y.S.2d 117 (2014); see also, e.g., Cooksey v. Global Grind Digital, 14 Civ. 7146, 2016 WL 5108199 at *5 (S.D.N.Y. Sept. 20, 2016) ("'Under New York's single publication rule, it is irrelevant, for statute of limitation purposes, that a story remains online after its publication.'").

There is, however, an exception to this general rule if the offending material is republished, which triggers a new limitations period.  "Republication, retriggering the period of limitations, occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original edition.'"  Firth v. State, 98 N.Y.2d 365, 371, 747 N.Y.S.2d 69, 72 (2002); accord, e.g., Comolli v. Huntington Learning Ctrs., Inc., 117 F. Supp. 3d at 349; Hoesten v. Best, 34 A.D.3d 143, 150, 821 N.Y.S.2d 40, 46 (1st Dep't 2006).  To determine whether an item has been republished, relevant considerations include: (1) whether "'the subsequent publication is intended to and actually reaches a new audience'"; (2) "whether the second publication is made on an occasion distinct from the initial one"; (3) "whether the republished statement has been modified in form or in content"; and (4) "whether the defendant has control over the decision to republish."  Hoesten v. Best, 34 A.D.3d at 150-51, 821 N.Y.S.2d at 46; see also, e.g., Firth v. State, 98 N.Y.2d at 371, 747 N.Y.S.2d at 72 ("The justification for this exception to the single publication rule is that the subsequent publication is intended to and actually reaches a new audience."); Goldman v. Barrett, 15 Civ. 9223, 2016 WL 5942529 at *10 (S.D.N.Y. Aug. 24, 2016) ("'Republication occurs when a subsequent publication: (1) is intended for and reaches a new audience, or (2) materially changes or modifies the original.'"); Giuffre v. DiLeo, 90 A.D.3d 602,

603-04, 934 N.Y.S.2d 449, 451 (2d Dep't 2011) ("[T]he plaintiff raised a triable issue of fact as to whether a re-posting of the original post was either through a posting of a modified version of the post or through posting of the post on another Web site.").

### B.      Fischer's Right Of Publicity Claim Is Untimely

Fischer alleges that when "Defendants were an Authorized Dealer for Plaintiff's product, Defendants were inherently permitted to use Plaintiff's name, but only as a nominative designation for Plaintiff's product, (i.e. 'Fischer's Bee-Quick', rather than merely 'Bee-Quick'.)." (14 Civ. 1304, Dkt. No. 89: 3d Am. Compl. ¶ 169.)  Defendants lost their right to use Fischer's name in December 2010 when the Bee-Quick distribution agreement was terminated.  (Id.; see page 2 above.)  However, in March 2011, defendants allegedly "misappropriated" Fischer's "family name in multiple places" on the Brushy Mountain website.  (14 Civ. 1304, 3d Am. Compl. ¶¶ 4, 171.)  At that time, "Defendants ordered the creation of the website URLs" that contained Fischer's name, e.g., "'Fume-Pad-w_-Fischers-Bee-Quick/productinfo/777F/.'"  (Id. ¶ 171.)   Defendants "ignored" Fischer's April 2011 cease and desist letter and continued using his name in the URLs.  (Id. ¶ 180; see page 3 above.)

Fischer initiated this action on February 27, 2014 and, therefore, defendants argue that any right of publicity claim that accrued in March 2011 is untimely.  (Dkt. No. 103: Brushy Mtn. Br. at 12-13; Dkt. No. 106: Gebauer Br. at 11; Dkt. No. 109: Forrest Br. at 9.)  Fischer argues "that the use of his name was 'continuous'" which thus "constitute[s] a republication for the purposes of the statute of limitations."  (Dkt. Nos. 113-15: Fischer Opp. Brs. at 6-7.)  "Fischer alleges that defendants have continued, without Fischer's consent, 'to intentionally ignore Plaintiff's legal rights and to profit therefrom.'"  (Id.)

Fischer has not alleged that defendants republished any of the offending material

within the statute of limitations.  Fischer's only claim is that defendants posted his name in URLs in March 2011 that remained "continuously" online.  There is no allegation that defendants altered the URLs, created new URLs at another time that contained Fischer's name, or used his name in some other fashion on the website or in catalogs at a different point.[15/]  Cf. Giuffre v. DiLeo, 90 A.D.3d 602, 603-04, 934 N.Y.S.2d 449, 451 (2d Dep't 2011).  "[C]ontinuous access to" the material at issue "via hyperlinks to a website is not a republication." Martin v. Daily News L.P., 121 A.D.3d 90, 103, 990 N.Y.S.2d 473, 483 (1st Dep't 2014); see also, e.g., Haefner v. N.Y. Media, LLC, 82 A.D.3d 481, 482, 918 N.Y.S.2d 103, 104 (1st Dep't 2011) ("[T]he continuous access to a web article via links on [defendant's] website was not a republication . . . ."); Etheredge-Brown v. Am. Media, Inc., 13 F. Supp. 3d 303, 306 (S.D.N.Y. 2014) ("Of course, courts have overwhelmingly held . . . that the mere continued availability of material on a website does not constitute an ongoing 'republication.'"); Biro v. Conde Nast, 963 F. Supp. 2d 255, 267 (S.D.N.Y. 2013) ("[T]he fact that an article can still be accessed online does not mean that it has been republished."), aff'd, 807 F.3d 541 (2d Cir. 2015), & aff'd, 622 F. App'x 67 (2d Cir. 2015).  Therefore, because Fischer has not plausibly alleged that defendants republished any use of his name at any point within the one year

---

[15/]   Fischer's trademark claims also reference URLs containing his name that he discovered "[i]n March and April 2012" when defendants allegedly "ordered the creation and display of multiple new Counterfeit Marks infringing Plaintiff's trademark on [their] 2012 online ordering website."  (14 Civ. 1304, Dkt. No. 89: 3d Am. Compl. ¶ 129.)  Assuming these allegations suggest republication around April 2012, Fischer's right of publicity claim still would be untimely.  The Court further notes that, unlike Fischer's copyright infringement claim where there was at least some suggestion in the Third Amended Complaint that defendants continued to use Fischer's copyrighted phrases in different versions of their advertisements from 2011 through 2014 (see pages 4, 14 above; 14 Civ. 1307, Dkt. No. 70: 2d Am. Compl. ¶ 76 & Ex. 20), there are no similar allegations, in connection with the right of publicity claim, that defendants used Fischer's name over time in any other discrete way aside from the URLs he references.  And indeed, Fischer has conceded that the use was "continuous," thus not triggering a new limitations period.

limitations period, defendants' motion to dismiss Fischer's New York Civil Rights Law § 51 right of publicity claim should be <u>GRANTED</u>.[16/]

---

[16/]    Fischer argues that he "should, at minimum, be allowed to commence discovery, to obtain information regarding the use of his name to establish [defendants'] 'republication.'"  (Dkt. No. 113: Fischer Opp. Br. at 8; Dkt. No. 114: Fischer Opp. Br. at 6; Dkt. No. 115: Fischer Opp. Br. at 7.)  "It has been observed that '[w]hether a particular event constitutes a reissue or republication so as to give rise to a new cause of action with a new period of limitations is frequently difficult to determine, depending on the facts of each particular case.'"  <u>Zoll</u> v. <u>Jordache Enters., Inc.</u>, 01 Civ. 1339, 2002 WL 31873461 at *9 (S.D.N.Y. Dec. 24, 2002); <u>see also</u>, <u>e.g.</u>, <u>Etheredge-Brown</u> v. <u>Am. Media, Inc.</u>, 13 F. Supp. 3d at 307 n.2 ("The question whether the initial Internet publication of the allegedly defamatory article constitutes a republication is a question of fact, at least in part.").  While courts may defer ruling on a motion for summary judgment where a party "advises the court that it needs discovery to be able to present facts needed to defend the motion," <u>Miller</u> v. <u>Wolpoff & Abramson, L.L.P.</u>, 321 F.3d 292, 303 (2d Cir.), <u>cert. denied</u>, 540 U.S. 823 , 124 S. Ct. 153 (2003), that does not apply to a motion to dismiss.  Fischer's Third Amended Complaint, on its face, fails to state a claim for which relief can be granted.  "Rule 8 [of the Federal Rules of Civil Procedure] marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . .  [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1950 (2009).  Thus, "[b]ecause [Fischer's] complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."  <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. at 686, 129 S. Ct. at 1954.

## CONCLUSION

For the reasons discussed above, defendants' motions to dismiss (14 Civ. 1304, Dkt. Nos. 102, 105, 108; 14 Civ. 1307, Dkt. Nos. 123, 126) should be granted in part as follows:

(1)     Defendants Brushy Mountain and Gebauer's motions to dismiss Fischer's copyright infringement claims in 14 Civ. 1304 and 14 Civ. 1307 should be DENIED.   However, because the complaints do not relate back, Fischer's copyright infringement claims against Brushy Mountain that accrued before December 28, 2012 are time barred, as are Fischer's copyright claims against Gebauer that accrued before February 3, 2012;

(2)     Defendants Stephen Forrest, Sandra Forrest, Brushy Mountain, and Gebauer's motions to dismiss Fischer's trademark counterfeiting claims in 14 Civ. 1304 should be GRANTED; and

(3)     Defendants Stephen Forrest, Sandra Forrest, Brushy Mountain, and Gebauer's motions to dismiss Fischer's right of publicity claim under New York Civil Rights Law § 51 in 14 Civ. 1304 should be GRANTED.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.   See also Fed. R. Civ. P. 6.   Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer, 40 Foley Square, Room 2201, and to my chambers, 500 Pearl Street, Room 1370.   Any requests for an extension of time for filing objections must be directed to Judge Engelmayer (with a courtesy copy to my chambers).   Failure to file objections will result in a waiver

35

of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985);

Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann,

9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson,

968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of

Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55,

57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:        New York, New York
              January 13, 2017

                                   Respectfully submitted,

                                   _____
                                   **Andrew J. Peck**
                                   United States Magistrate Judge


Copies to:    Counsel (ECF)
              Judge Engelmayer