OSCAR MICHELEN (OM5199)
CUOMO LLC
Attorney for Plaintiff James Fischer
200 Old Country Road
Suite 2 South
Mineola NY 11501
516-741-3222(phone)
516-741-3223(fax)
omichelen@cuomollc.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
JAMES H. FISCHER

                         Plaintiff          **OBJECTIONS
TO MAGISTRATE'S
REPORT AND
RECOMMENDATION**

    -against-

                                                      Case No.:
                                                      CV 14-1304
STEPHEN T. FORREST, JR., SANDRA F.     CV 14-1307
FORREST SHANE R. GEBAUER, BRUSHY
MOUNTAIN BEE FARM., INC.
                          Defendants.
-----------------------------------------------------------------------x

        Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 72.1, plaintiff James H. Fischer objects to the Magistrate Judge's report and recommendation (R&R) (Doc. 38) filed February 28, 2012. The Magistrate Judge erred in recommending that the Court grant in part defendants' motion for dismissal of the Third Amended Complaint (Doc. 23) by:

        I.       Finding that the allegations of the Third Amended Complaint do not relate back to Defendant Shane Gebauer and Brushy Mountain Bee Farm Inc.;

        II.      Finding that the allegations of the Third Amended Complaint do not set forth a valid trademark infringement/trademark counterfeiting claim;

    III.    Finding that the republication of the alleged infringing material was not a new separate infringement but a continuing violation which did not start a new limitations period for purposes of Plaintiff's Right of Publicity claim and copyright claim.

## ARGUMENT

**I.    The allegations of the complaint should relate back to both Defendant Gebauer and Brushy Mountain Bee Farm, Inc. as the Magistrate Judge incorrectly held that pro se Fisher's decision to not name them in the original complaint was a "fully informed" decision and by restricting FRCP 15(c)(1) relation back to cases where a new part y is sought to be substituted for a wrongly named party**

In finding that the Third Amended Complaint did not relate back to the Gebauer and Brushy Mountain defendants, the Magistrate Judge found that Plaintiff had met all the elements required under FRCP Rule 15(c)(1) except for the "mistake" provision contained in Rule 15(c)(1)(C)(ii). See Report and Recommendation of Magistrate Judge Andrew Peck, dated January 13, 2017 at page 17(hereafter all references to this document will be referenced as "Report at p.___").

In doing so as to defendant Brushy Mountain, Magistrate Judge Peck held so for two reasons: (1) Relying on *Krupski v. Costa Crociere S.P.A.* 560 U.S.548 (2010), the court distinguished Plaintiff's not naming these defendants as a "fully informed decision" rather than a mere mistake as to identity of the proper party. Report at pp.18-19; (2) the court held Rule 15(c) inapplicable because Plaintiff "never named an improper party to begin with" rendering Rule 15(c) inapplicable. Report at page 20.

While *pro se* plaintiffs are "not exempt from compliance with relevant rules of procedural and substantive law" *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983), they are

2

given somewhat broader latitude in the area of pleading errors and omissions. *See*, *Ericson v. Pardus*, 551 U.S. 89, 94 (2007)(*pro se* complaint held to less stringent standards). Here, the nature of Plaintiff's mistake in failing to name Brushy originally displays a clear lack of understanding of the facts and circumstances surrounding naming a corporate defendant.  For example, the Magistrate Judge cited Plaintiff's concern over the "many innocent and honest" employees of Brushy Mountain and Plaintiff's mistake in thinking that individuals had to be named as opposed to a corporate entity. Report at pages 18, 20.  These errors clearly indicate that Plaintiff lacked the knowledge of a corporation's responsibility and erroneously believed that he had to proceed against individuals.  Acting *pro se*, Plaintiff should not be held to account for such a clear misunderstanding particularly where the proposed defendant had such direct knowledge of its involvement and likelihood of being named as an appropriate party.  There is also no prejudice to the proposed parties as they will be insured under the same policy of insurance as the current defendants and will have the same counsel as well so that they will not be required to catch up to speed on the case or engage in separate discovery.  Finally, as the *Krpuski* case indicates, the relevant analysis is whether the proposed new party reasonably believed that they were not added as a conscious choice as opposed to as a result of an error of the plaintiff. *See*, *Krupski*, at 560 U.S. at p. 549.  Here, defendants offered no evidence that they thought in good faith that Plaintiff consciously chose not to name them and the Magistrate Judge cited no evidence of defendants' belief to that effect.

   While Rule 15(c) does on the face of its language seem to apply only to situations where a new party is sought to be substituted for with a new party, it has been used to

allow addition of a new party without replacement of an old party. For example, in *Abdell v. City of New York*, 759 F.Supp.2d 450 (SDNY 2010), plaintiffs brought an action against the City of New York, its mayor, and its police department and various police officials, alleging Constitutional violations arising from their arrests during protests held in connection with a political convention held in city. The plaintiff then moved to amend their complaint to add a police inspector as a defendant on their state law claims.

Initially, the *Abdell* court noted – that like plaintiff in this case – plaintiffs made an error in misunderstanding the police inspector's role in the arrest-decision-making process and noted that this type of "mistake" is one contemplated under Rule 15(c). *Abdell*, 759 F.Supp2d at 457.  The court then went on to grant the addition of the police inspector as a new party to the complaint due to the lack of prejudice to the inspector and due to the likelihood that the inspector believed he had been omitted due to a mistake of plaintiff. *Id.* at 458.

The *Abdell* court specifically addressed and rejected the argument that Rule 15(c) does not allow the addition of a new party but merely the replacement of an improperly named old party. In so holding it quoted form Krupski and stated:

> Careful review of the *Krupski* opinion, however, belies this narrow understanding of a Rule 15(c) "mistake." The Supreme Court expressly contemplated relation back where a plaintiff knows the existence of a prospective defendant but lacks knowledge of that defendant's liability at the time of filing:
>
> That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties. *Krupski,* 130 S.Ct. at 2494.

4

> After *Krupski,* it is clear that a mistake "concerning the proper party's identity" under Rule 15(c) includes lack of knowledge regarding the conduct or liability of that party. Fed.R.Civ.P. 15(c)(1)(C)(ii); *see Berry,* 2010 WL 3932289 at *5.

*Id.* at 457. That is precisely what occurred here. Plaintiff made an error as to the the role, conduct and liability of defendant Brushy Mountain.

In denying relation back to apply to claims against defendant Gebauer, the Magistrate Judge only offered one reason for the holding: that Plaintiff knew that Gebauer was the "General Manager" of Brushy Mountain before the statute of limitations had expired. Report at pages 22-23 (The plaintiff has sued the right defendant[s], and simply neglected to sue another defendant who might also be liable." *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014). But the court overlooked the language of *In re Vitamin C* which acknowledges that "Rule 15(c) can be satisfied where the plaintiff '[lacked] knowledge regarding the conduct or liability' of the newly added party, even where the originally named party was proper." There was simply no proof before the Magistrate Judge that Plaintiff knew of Gebauer's role, conduct or liability with respect to the claims in the complaint.

Therefore as (1) the Magistrate Judge narrowly construed *Krupski* to hold that Rule 15(c) is inapplicable to situation where a party wants to add a new party and as that holding is in direct contravention to this court's holding in *Abdell*; (2) there was no evidence that either of the proposed new parties believed they were not added due to a conscious decision of the Plaintiff as opposed to his error; and (3) Plaintiff did not understand or know the roles Brushy Mountain and Gebauer played in his infringement claims, it is respectfully submitted that the District Court should reject Magistrate Judge Peck's recommendation as to this portion of his Report. Plaintiff did not know of the

5

liability of Brushy Mountain, and did not know of the conduct or the responsibilities of Mr. Gebauer.

### II. As this Court found in its earlier decision on Defendant's first motion for dismissal of the complaint, Plaintiff's Third Amended Complaint sets forth a valid trademark Counterfeiting and Infringement Claim

In dismissing the Plaintiff's causes of action that relate to Trademark Infringement and Counterfeiting, the Magistrate Judge misconstrued Plaintiff's claims, finding that the marks "Bee-Quick" and "Natural Honey Harvester" are distinguishable. Of course they are, but that is not the basis of Plaintiff's trademark claim against defendants. Rather Plaintiff's Third Amended Complaint Plaintiff's 3rd Amended Complaint begins "*This is an action for… trademark infringement…*" and the specific complaint is described as "*trademark infringement*" repeatedly and states, in pertinent part:

129   In March and April 2012, Plaintiff discovered that Defendants had willfully and deliberately ordered the creation and display of multiple new Counterfeit Marks infringing Plaintiff's trademark on Defendants' 2012 online ordering website.

130.   Each of the Counterfeit Marks ordered by Defendants' to be added to their online ordering website in 2012 was intended to willfully mislead customers as to the source and origin of the products offered and sold by Defendants and to sell multiple types of goods in interstate commerce.

Those alleged "counterfeit marks" that defendants used to infringe on plaintiff's marks alleged were not "Natural Honey Harvester" but rather (1) image files of "Plaintiff's product, overlaid with a watermark logo for Defendants' company, "Brushy

6

Mountain Bee Farm" (*see* Exhibit 10).  These photos each include a clearly-legible copy of Plaintiff's trademark on the bottle label" (Third Amended Complaint at paragraph 141); (2) an image file "of a 10-frame fume board and a bottle of Plaintiff's product Bee-Quick, with its original distinctive bottle shape, red text, mascot bee,  pump-spray top, and Trademark on the label, "Bee-Quick".  (*see* Exhibit 11) This photo includes a clearly-legible image of Plaintiff's trademark on the bottle label." (Third Amended Complaint at paragraph 146); (3) The URL for the web page: http://brushymountainbeefarm.com/Fume-Pad-w_-Fischers-Bee-Quick/productinfo/777F includes the Plaintiff's Trademark "Bee-Quick", as well as the possessive modifier "Fischer's" (*see* Exhibit 12)(paragraph151 of the Third Amended Complaint); and (4) The URL for the web page:

http://brushymountainbeefarm.com/8-Frame-Fume-Pad-w_Fischers-Bee-Quick/productinfo/254FPQ/

includes the Plaintiff's Trademark "Bee-Quick", as well as the possessive modifier "Fischer's". (*see* Exhibit 13)(paragraph 158 of the Third Amended Complaint).

> 15 USC § 1114 states:
> *"(1) Any person who shall, without the consent of the registrant—*
> *(a) use in commerce any reproduction, __counterfeit__, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or*
> *(b) reproduce, __counterfeit__, copy, or colorably imitate a registered mark and apply such reproduction, __counterfeit__, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided"*

The Plaintiff alleges that defendants infringed on his trademark by using a counterfeit of his trademark in its URLs, catalogs and webpages.

In *Choice Hotels International, Inc. v. Pennave Associates*, 159 F. Supp. 2d 780 (E.D. Pa. 2001), aff'd, 43 F. App'x 517 (3d Cir. 2002), the district court examined an analogous issue of whether a former franchisee's use of a franchisor's registered mark constituted trademark counterfeiting. The court found that the franchisee's use of the franchisor's mark constituted "counterfeiting" and that the franchisor was entitled to pursue an award of statutory damages under 15 USC § 1117(c).

Defendants in this case, like those in *Choice Hotels* only had the inherent right of nominative use of Plaintiff's registered trademark "Bee-Quick" and the same nominative use of Plaintiff's unregistered mark for his brand name, "Fischer's". Once they stopped selling Plaintiff's product, any right they had to use Plaintiff's marks in any way was revoked, and their use of Plaintiff's marks in the sale of the same type of goods is "counterfeiting" and similarly entitles Plaintiff to demand statutory damages under 15 USC § 1117(c).

In *Hospitality International, Inc. v. Mahtani*, Civ. A. No. 2:97CV87, 1998 Westlaw 35296447 (M.D. N.C. Aug. 3, 1998), Hospitality and Mahtani entered into a franchise agreement that was terminated as a result of Mahtani failing to pay certain amounts to Hospitality including monthly franchise fees. Hospitality sued and included a count for trademark counterfeiting. The court found that Mahtani's use of the franchisor's federally registered mark after termination was the use of a counterfeit mark as defined by the Lanham Act:

> "*the totally unauthorized use of a registrant's service mark by a former licensee must be the use of a counterfeit mark.*"

Further, because Mahtani did not plead any "extenuating circumstances", the court held that it "must" award Hospitality treble profits and attorneys' fees.

More importantly, the District Court in this case already held that Plaintiff's allegations that defendants "used the counterfeiting marks in manner likely to confuse consumers". . . and is still actively creating actual confusion…" These allegations alone suffice to state a claim under section 32." See, Decision of Judge Paul A. Engelmayer, dated January 13, 2015, at page 19.  The Magistrate Judge rejected the applicability of the District Court's opinion:

> Judge Engelmayer, however, was not called upon to address the precise question presented here, whether the URL links or the use of Bee-Quick bottle amounted to <u>counterfeit</u> marks. Fischer may have intended to bring a trademark infringement claim against defendants, but the Third Amended Complaint, drafted and filed by counsel, specifically references defendants' use of "counterfeit" marks.

Report at page 28 fn.14 (emphasis in original). First of all, the District Court was asked to examine the use of Plaintiff's mark in the URL and Bee-Quick bottle as a counterfeit mark and the court specifically used that language. Second of all, the Third Amended Complaint does clearly state it is a complaint for Trademark Infringement.

  To non-suit the Plaintiff at this stage because he and his counsel chose to refer to the infringement as use of a counterfeit mark would be to essentially reverse the District Court's earlier holding that a valid trademark claim was properly alleged and plead.

9

> III. **The Right to Publicity claim should survive because the Third Amended Complaint alleges that the defendants updated their websites and catalogs annually which qualifies as republication.**

The Magistrate Judge dismissed the Right to Publicity claim because the 2014 filing of the original complaint was more than one year after the first use and publication of plaintiff's name in defendant website's URLs. Report at pages 32-33. While the Magistrate Judge properly distinguished continuous publication from republication, the Third Amended Complaint does sufficiently allege republication for a new tolling period to occur every year by virtue of the website's annual republication.

For example, the Third Amended Complaint states:

49. The descriptions used on each of Defendants' annual sales websites were assembled from word-for-word verbatim copies of each of the copyrighted works (a) - (d) displayed on Plaintiff's website, as these works were considered by Defendants to be the most effective marketing possible.
50. As each year's website was created, changes would be made, and each year's website would use one or more of Plaintiff's copyrighted Works.

While this only refers to Plaintiff's copyrighted works, it does allege that changes would be made to the catalog annually and then those changes would be copied on the defendants' sales website. See Third Amended Complaint 14 cv 1304 at paragraphs 49 & 50). Similarly in the other action, 14 cv 1307, the Third Amended Complaint alleges:

112. The descriptions used on each of Defendants' annual sales websites and print catalogs were assembled using word-for-word verbatim copies of each of the copyrighted works (a) - (d) displayed on Plaintiff's website, as these works were agreed by Defendants and Plaintiff to be the most effective marketing possible.

These paragraphs are incorporated by reference into the Right to Publicity claim by the lead paragraph of each Right to Publicity Claim. As with all mail order businesses, Brushy made material changes annually, at the very least incorporating pricing changes.

10

The Magistrate Judge recognized that the print catalogs were in fact republished each year, but overlooked that the website was similarly republished every year when it was updated when each annual catalog was distributed. Courts have held that moving an article to a different internet address constitutes republication. *Firth v. State,* 306 A.D.2d 666, 667, (3d Dep't 2003). Here, the allegations that the website content was changed annually along with the print catalogs should have been sufficient for the Right of Publicity claim to have survived the dismissal motion.

## CONCLUSION

For the foregoing reasons, the Court should reject the Magistrate Judge's Report and Recommendation and deny the defendants' dismissal motion in accordance with arguments set forth above.

Dated: January 27, 2017

/s/ Oscar Michelen /s/
_____
OSCAR MICHELEN (OM 5199)