H1D3FISC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

JAMES H. FISCHER,

                    Plaintiff,

          v.                              14 CV 1307 (PAE)(AJP)

STEPHEN T. FORREST, JR., et
al.,

                    Defendants.

------------------------------x

                                          New York, N.Y.
                                          January 13, 2017
                                          9:45 a.m.

Before:

                    HON. ANDREW J. PECK,

                                          Magistrate Judge

                         APPEARANCES

CUOMO LLC
     Attorneys for Plaintiff
BY:  OSCAR MICHELEN

CLEMENTS BERNARD PLLC
     Attorneys for Defendants
BY:  SETH HUDSON

H1D3FISC

1          THE COURT:  Good morning.  Let me first ask you to

2     fill me in on where you are in discovery and then we'll talk

3     about the motions.  Mr. Michelen?

4          MR. MICHELEN:  Judge, we've done some documentary --

5     we've done most of the documents exchanged, we have a -- we

6     deposed Shane Gebauer who was deposed both as an individual

7     defendant and as the initial corporate representative.  We had

8     dates scheduled in January for the Forrest defendants, and

9     we're scheduling a date for Mr. Fischer's deposition.

10         The only issue that we had with respect to discovery

11    was that Mr. Hudson informed us that he does have documents

12    that are responsive to our requests, but invited us to come to

13    North Carolina to view them, and we would rather he put them on

14    a disc and send them to us rather than make us go to North

15    Carolina to view them.

16         Other than that, I would say we have been working

17    cooperatively to try to get through these depositions.

18    Certainly by the end of January I think we could have gotten

19    all of the remaining depositions done, and then there would be

20    some non-parties we would want to do after that.

21         THE COURT:  All right.  Mr. Hudson.

22         MR. HUDSON:  I would agree with what Mr. Michelen

23    says.  That's kind of where we stand with discovery.  As with

24    respect to the documents, we are producing those in the

25    ordinary course.  They involve some AR information and some

H1D3FISC

1 | invoices --

2 |      THE COURT:  AR meaning?

3 |      MR. HUDSON:  Accounts receivable.  Excuse me.  These

4 | are documents that are -- they're not electronic, they're paper

5 | documents, they are in numerous banker boxes, not organized by

6 | any specific individual or entity.  They are in a banker box as

7 | per date and year, they're shrink wrapped, they're stuck in a

8 | warehouse.  The burden of my client going through all these

9 | banker boxes and picking out the documents is great, and that's

10 | why we're making every document in those banker boxes available

11 | to the plaintiff.

12 |      THE COURT:  What is it they purport to show?

13 |      MR. HUDSON:  I think -- Mr. Michelen can correct me --

14 | but I think they purport to show the orders from defendant for

15 | the plaintiff's product, and also the shipment from the

16 | plaintiff to the defendant of the product.

17 |      MR. MICHELEN:  I would also ask them for prior

18 | catalogs, advertising material.

19 |      THE COURT:  One thing at a time.

20 |      MR. MICHELEN:  Sorry.

21 |      THE COURT:  Do you really want all of these documents,

22 | regardless of location of production as opposed to, assuming

23 | the company has it, a computerized summary or some other

24 | summary when we're talking about the purchase of plaintiff's

25 | products by the defendant, which frankly, I'm not sure why

1    that's even relevant.

2              MR. MICHELEN:  Yes, your Honor.  I think you're right

3    that we can limit that scope based upon -- we can at least wait

4    until the deposition of the Forrests, who were the initial

5    owners of the company.

6              Initially, part of a claim was that they had claimed

7    we had had issues with shipment.  I don't think that's as

8    relevant as it was initially.  And I think that we would be

9    willing to stop any inquiry into that.  I don't think that's

10   much of an issue anymore.  So, I would be more than willing to

11   hold off on the production of those documents, the shipment

12   records.

13             The thing I also want to alert the Court is

14   Mr. Fischer lost his set of that documents due to Hurricane

15   Sandy.  That's why he can't simply say here are my records.

16   That was the initial concern.  But I don't think the defendants

17   are even contesting that there was an ongoing business

18   relationship when they distribute the plaintiff's product, so

19   we'll hold off until the depositions for that portion.

20             THE COURT:  All right.  So let's talk about the

21   motions.  Let's do the motion to dismiss first and the transfer

22   motion second.

23             Mr. Hudson, it's your motion, so why don't you begin.

24             MR. HUDSON:  Right.

25             THE COURT:  We'll do one motion at a time, so limit

1    yourself to the motion for partial dismissal.

2            MR. HUDSON:  Yes, your Honor.  Your Honor, I'll start

3    off with the counterfeit claim.  I think that's the most

4    straightforward one.  And for a trademark to be counterfeit, it

5    has to be identical or substantially indistinguishable.  In

6    this case, the marks are not identical, the marks are not

7    substantially indistinguishable.  We're dealing with a mark for

8    Bee-Quick, which is plaintiff's product, and the defendant's

9    product is Natural Honey Harvester.  There is nothing identical

10   or substantially indistinguishable about those types of

11   products or those two trademarks.

12            And in this court and other courts, a good example is

13   the Louis Vuitton case where Louis Vuitton sued a company

14   because they were using a handbag that had Chouis Vuitton for

15   doll toys.  They were using -- Louis Vuitton had an LV, Chouis

16   Vuitton had a CV, the Court held that was not counterfeit.

17            THE COURT:  Hold that thought for one minute.  Is

18   plaintiff challenging natural honey as a counterfeit mark or is

19   it because of the use of the Bee-Quick bottle in the ads, etc.?

20            MR. MICHELEN:  Well, it's not that the term Natural

21   Honey Harvester itself is a counterfeit of the plaintiff's

22   mark.  It's that the nature of the way it's marketed is going

23   to make a consumer initially believe --

24            THE COURT:  How is that a counterfeit?  You may have a

25   valid unasserted Lanham Act unfair competition or something

H1D3FISC

1      claim.  But, the pleadings are based on what you have pled.

2      How is this covered under the statute for counterfeiting?

3              MR. MICHELEN:  Because as the complaint alleges, your

4      Honor, if I were to type in in my Google search Fischer's

5      Bee-Quick, I would get the Natural Honey Harvester page at that

6      particular time, because in the URL they had Fischer's

7      Bee-Quick.  So I would see Fischer's Bee-Quick on the

8      defendant's home page.  And then I would see their product

9      using the exact same slogans.

10             THE COURT:  Which is the counterfeit?

11             MR. MICHELEN:  And I would say that is counterfeiting.

12     To have your home page with my product's name on it so when a

13     consumer would be initially confused to believe that this is

14     the same product.  It's made worse by them stealing our

15     copyrighted and trademarked language, certainly, and it was

16     made even worse when there was the picture of Fisher's

17     Bee-Quick on there, but that's counterfeiting when you're going

18     to make a consumer believe.

19             THE COURT:  What's your best case of all the cases

20     you've cited that the URL is what makes this a counterfeit?

21             MR. MICHELEN:  There's never been -- we didn't find

22     any case, Judge.  I didn't find any case that has a URL leading

23     to that page.  This is a very unique set of facts, but it falls

24     in line with all the other -- the Victoria Secrets case which

25     was a Third Circuit case that we cite, 237 F.3d 198, and it is

H1D3FISC

1  in line with the --

2          THE COURT:  All right.  What is it you're citing the

3  Victoria Secret case for?

4          MR. MICHELEN:  Just that the use of the mark in that

5  fashion is likely to lead consumers to believe it is the same.

6          THE COURT:  Was Victoria Secret a counterfeiting case

7  or a trademark or unfair competition case?

8          MR. MICHELEN:  It was a counterfeiting claim.  And it

9  set forth the elements, if you will, of a counterfeiting claim

10  and we do argue that --

11          THE COURT:  I'm asking what the holding of the case

12  was.

13          MR. MICHELEN:  Again, the only cite we use it for,

14  Judge, is if it is going to initially confuse the consumer by

15  using a trademarks, it can also be a counterfeiting claim as

16  well as a trademark case.  And I think --

17          THE COURT:  Is there a reason you didn't bring a

18  trademark --

19          MR. MICHELEN:  I think the amended complaint makes out

20  a general trademark allegation.

21          THE COURT:  Which paragraph or which section?  Because

22  you all have approached this as, and let's use the complaint

23  in --

24          MR. MICHELEN:  If you look in the third amended

25  complaint, which I think is exhibit --

H1D3FISC

1        THE COURT:  I've got it.

2        MR. MICHELEN:  Paragraph 121 through 129.

3        THE COURT:  I know.  But when you read the actual

4   claims, starting with the 11th complaint on page 28, paragraph

5   140, heading use of a counterfeit mark in commerce.  Then the

6   12th complaint, use of a counterfeit mark in commerce.  13th

7   complaint, use of a counterfeit mark in commerce website URL.

8   14th complaint, use of a counterfeit mark in commerce second

9   URL.

10        Where is there a plain vanilla trademark case?

11        MR. MICHELEN:  Yeah, I don't see that in that

12   language.

13        THE COURT:  Okay.  Let me go back to Mr. Hudson on

14   this.

15        MR. HUDSON:  Your Honor, the standard is how an

16   ordinary customer would look at the two products.  Ordinary

17   customer look at one product and see Bee-Quick or look at Honey

18   Natural Harvester.  They're not the same.

19        THE COURT:  Move on to any other claims.

20        MR. HUDSON:  Yes, your Honor.  The next claims are the

21   counterfeit claims and the right of publicity claims.  As the

22   Court is aware a counterfeit claim --

23        THE COURT:  Counterfeit or copyright?

24        MR. HUDSON:  Copyright claim has a three-year statute

25   of limitations and the right of publicity has a one-year

1    statute of limitations.

2              THE COURT:  Take them separately.

3              MR. HUDSON:  Okay.  Let's start off with the

4    copyright.  In the complaint, Mr. Fischer makes clear that he

5    became aware of the alleged copyright infringement in March of

6    2011.  He filed his complaint naming Mr. Gebauer in February 3

7    of 2015.  And then on December 28 of 2015, he named Brushy

8    Mountain Bee Farm.  They're well after the three-year statute

9    of limitations had run in this case.

10             Plaintiffs make the argument about that there is

11   republication.  I don't think there is any allegations of

12   republication in the complaints.  But, in all honesty --

13             THE COURT:  Don't they say that some subsequent online

14   catalog going through at least 2014 used the language, in which

15   case they're timely?

16             MR. HUDSON:  They make that allegation, your Honor,

17   but --

18             THE COURT:  This is a motion to dismiss, not a motion

19   for summary judgment.  Do you really wish to pursue the statute

20   of limitations on the copyright claim?  The third amended

21   complaints may not be the most artfully drafted.

22             MR. HUDSON:  At the very least, your Honor, I think

23   that the copyright claims prior to December 28, 2012, for

24   Brushy Mountain and prior to February 3, 2012, for Gebauer

25   should be dismissed.

H1D3FISC

1          THE COURT:  Let me ask the plaintiff if they agree.

2     Let me put it this way.  I know you're going to make an

3     argument about relation back.  Holding that, if there is no

4     relation back, do you agree that the claims prior to three

5     years before each complaint are barred by the statute of

6     limitations?

7          MR. MICHELEN:  Yes.

8          THE COURT:  Then you're the movant so to speak on the

9     relation back.

10          MR. MICHELEN:  I think it is very clear that when the

11     pro se plaintiff filed his initial complaints, he was unaware

12     of Mr. Gebauer's role and control in the company.

13          THE COURT:  Let me ask the question.  He was certainly

14     aware that Brushy Mountain was the corporate entity.  He had a

15     contract.

16          MR. MICHELEN:  You're correct, your Honor, and he made

17     a decision --

18          THE COURT:  Are you dropping the relation back

19     argument as to Brushy?

20          MR. MICHELEN:  No, because I think that the relevant

21     argument is whether the corporation is prejudiced by being

22     brought in at this time.

23          THE COURT:  Isn't the threshold question whether

24     Mr. Fischer and you, when you came in the picture, but Fischer

25     as a joint entity there, made a mistake?  If he made a mistake

H1D3FISC

1   of fact, then the issue is should the new defendant have known

2   there was a mistake.  À la that cruise ship case that everybody

3   has cited.

4           MR. MICHELEN:  Correct.  That's where we were going,

5   Judge, and here the corporate defendant, by virtue of its

6   principals being named and knowing the relationship with the

7   plaintiff, had to have known that the corporation was just left

8   off and should have been added.

9           THE COURT:  Except for the fact that Mr. Fischer was

10  very candid and stated in I believe it was the first or second

11  amended complaint that he purposely didn't sue the corporation

12  because he didn't want non-liable employees, etc., to suffer.

13  That seems to me a strategic choice, not a mistake.

14          MR. MICHELEN:  It may be a mistake in law.

15          THE COURT:  There is no such thing as a mistake of law

16  in the case, it is always a mistake of fact, for the relation

17  back doctrine.

18          MR. MICHELEN:  I understand that.  All I can ask the

19  Court is to consider that he was unrepresented at that time,

20  and that when the third amended complaint was filed by us --

21          THE COURT:  He was represented at the time in the

22  second amended complaint.  Right?

23          MR. MICHELEN:  No, he was not, your Honor.  He was

24  only represented at the time of the third amended complaint.

25          THE COURT:  Is there any case that says under Rule 15

1    for relation back, despite the typical sympathy and leeway

2    given to a pro se, that a pro se who intentionally doesn't

3    serve and name a defendant, just because he's pro se, gets

4    relation back?

5            MR. MICHELEN:  Not that I am aware of, Judge.

6            THE COURT:  So why should I allow relation back as to

7    Brushy?

8            MR. MICHELEN:  Again, I think here only because of the

9    lack of prejudice to the defendant.  The fact that the

10   principals are named.

11           THE COURT:  That's not the standard.

12           MR. MICHELEN:  That's all I can argue at this point.

13           THE COURT:  I'm not asking you to fall on your sword.

14   And you were in the midst of arguing on Gebauer when I moved

15   you to Brushy.

16           MR. MICHELEN:  Gebauer, certainly, Judge.  Plaintiff

17   was unaware of his role, as we were saying, and he was aware of

18   the nature of the allegations, all of the relevant facts.  He

19   suffers no prejudice by having this relate back to him.  He was

20   the first corporate representative that was designated to be

21   deposed.  He certainly is familiar with all the facts and

22   circumstances of the allegations, and was so at the time that

23   the complaint was even filed against the Forrests.  So relation

24   back I would say applies to him.

25           THE COURT:  As far as back as April 2011 Mr. Fischer

 1    knew that Gebauer was the general manager of Brushy Mountain.

 2    Gebauer is the one who wrote a letter saying in April saying

 3    you don't have a claim against us, whatever, and signed it with

 4    the title general manager.

 5         MR. MICHELEN:  General manager might not -- I don't

 6    think is sufficient to necessarily alert him he was a corporate

 7    shareholder, that he was a principal in the company, and that

 8    he had control over the intellectual property decisions of the

 9    company.  It might have been a hint at first.

10         THE COURT:  Well, isn't the standard inquiry notice?

11         MR. MICHELEN:  Well, that Mr. Fischer should have made

12    a further inquiry at that time.  But at that time he also

13    already had the action pending.  So he thought that discovery,

14    you know --

15         THE COURT:  Where is there a case saying where you

16    know somebody has a role, you may not know how full the role

17    is, but your inquiry notice, which you otherwise would be on,

18    stops just because you've got a pending lawsuit against another

19    defendant?

20         MR. MICHELEN:  Well, at that time, Judge, if you

21    recall, Judge, from the history of the pleadings, Mr. Fischer

22    had just filed the second amended also and then had retained

23    counsel.  And then we brought Mr. Gebauer.  It was a very short

24    lapse there between the notice and the ability for him to

25    inquire.

H1D3FISC

1          THE COURT:  When was the second amended complaint?  I

2    think that's a lot later than 2011.

3          MR. MICHELEN:  I thought it was 2012, Judge.

4          MR. HUDSON:  Your Honor, if this helps, the amended

5    complaint filed naming Shane Gebauer was November 3, 2015.

6    Second amended complaint alleging Ms. Forrest, May 27, 2014.

7          MR. MICHELEN:  It was '14, Judge.

8          THE COURT:  Three years after he knew.

9          MR. MICHELEN:  It is.

10         THE COURT:  Finally, the New York right of publicity

11   claim.

12         MR. HUDSON:  Your Honor, as I said earlier, right of

13   publicity claim is one year.  Mr. Fischer has alleged in his

14   complaint that the URLs using his name are what constituted the

15   right of publicity claim or give rise to the right of publicity

16   claim.  He said he learned about these in March 2011.  He also

17   sent a cease and desist letter, this is what he alleges in his

18   complaint, he sent a cease and desist letter on April 5, 2011

19   to my clients alleging right of publicity.  And again, he

20   didn't bring the original lawsuit until February 27, 2014.  He

21   added, as I said earlier, he added Mrs. Forrest in May 27,

22   2014.  Your Honor, I'm just giving you the dates for the 1304

23   case.  There is a 1307 case.

24         THE COURT:  They're roughly parallel.

25         MR. HUDSON:  Right, yes, your Honor.  February 3, 2015

1    was naming Gebauer and December 28, 2015 named Brushy Mountain.

2              THE COURT:  All right.  Mr. Michelen.

3              MR. MICHELEN:  I think the arguments are the same with

4    respect to the republication and the same with respect to

5    relation --

6              THE COURT:  Except there is no allegation in the

7    complaint of a republication.  If anything, the allegation is

8    that the use of his name was "continuous."

9              MR. MICHELEN:  And I think that it also shows the

10   dates that it was continuous through the issuance of the

11   other --

12             THE COURT:  But the difference between the New York

13   case law and right of publicity and the copyright law is that

14   under New York law, there has to be a republication, not just

15   the continued use.  Which the continued use for the copyright

16   claim gives you a claim for that part of it that's within the

17   statute of limitations look back, but not before.  And the New

18   York right of publicity they look at a republication.  So if

19   the original publication remains out there, and no

20   republication, then the statute of limitations cuts off your

21   rights.

22             MR. MICHELEN:  I think our allegation, your Honor, is

23   that they annually published a new catalog every year --

24             THE COURT:  Except that's not in the complaint.

25             MR. MICHELEN:  Well, it is in the complaint, Judge, in

H1D3FISC

1    the sense that the republication -- I'm sorry, the right of

2    publicity incorporates the allegations before that, and I think

3    it is fairly sets out --

4            THE COURT:  Tell me which paragraph says that the

5    catalog has Mr. Fischer's name.

6            MR. MICHELEN:  That the catalog has Mr. Fischer's --

7            THE COURT:  The right of publicity is that the URLs on

8    the website include Fischer's Bee-Quick.

9            MR. MICHELEN:  Correct.

10           THE COURT:  The catalog talks about selling the

11   product and it doesn't talk about Mr. Fischer's name.

12           MR. MICHELEN:  Right.  But the catalog has the photos,

13   Judge that show Mr. Fischer's name on the product.

14           THE COURT:  This is a motion to dismiss.  Whatever the

15   facts may be, if they're not adequately alleged --

16           MR. MICHELEN:  I don't know that the paragraph, Judge,

17   in the portions that talks about civil rights specifically says

18   it.

19           What I was arguing is the paragraphs earlier in the

20   complaint as well as the exhibits to the complaint show that

21   the photographs containing Mr. Fischer's names was included.

22   That was the trademark -- that was the copyright as well as the

23   trademark allegations.  Show that Mr. Fischer's Bee-Quick

24   bottle and the use of the plaintiff's name in that and that

25   that was published every year in the catalog, but not the URL.

H1D3FISC

1           THE COURT:  I understand.  However, it does not appear

2      that -- and I'm looking, for example, at paragraph 52, 51, 52,

3      of the third amended complaint in 14 CV 1304 where you talk

4      about product web pages.  I assume that's the catalog.  But the

5      last one you've got is 2010.  That doesn't get you anywhere

6      close.  And then I guess paragraph 56 and thereabouts 57, 58,

7      gives you the 2011, either website or catalog, I don't see

8      anything thereafter.  So, help me out.

9           MR. MICHELEN:  No, there is nothing there, Judge, in

10     the complaint specifically that says that, other than we show

11     the annual republication of the print catalogs.

12          THE COURT:  Where?  That's what I'm asking.

13          MR. MICHELEN:  In the exhibits to the complaint.

14     Exhibits 20, 23A and 23B show the republications annually.  The

15     downloadable --

16          THE COURT:  Slow down.  23, 23A?

17          MR. MICHELEN:  Exhibit 20, 23A and 23B.

18          THE COURT:  Give me a minute for my clerks to try to

19     pull that out.  I should also note for whatever it's worth that

20     you never attached your exhibits to the filed copy of the third

21     amended complaint.  It is only in the second amended complaint.

22          MR. MICHELEN:  I apologize, I didn't realize that

23     error.  I can correct that this afternoon when I get back to

24     the office.  I think they are the same.  That was never brought

25     to my attention previously, Judge.  I apologize for that,

H1D3FISC

1    Judge.

2         THE COURT:  Unfortunately, I don't think this helps

3    you.  Because the last catalog -- well, let's go through it.

4    Exhibit 20 shows a 2010 authorized use that says Fischer's

5    Bee-Quick.  Then it shows a 2011 infringement and a 2012

6    infringement, none of which mention Mr. Fischer's name.

7    Correct?

8         MR. MICHELEN:  Yes.

9         THE COURT:  So, there's no proof there that his name

10   was used.  Similarly, the 2013 and 2014 infringement may have

11   your copyrighted language, spouse making sleep in the garage,

12   etc., but the only product named, the only product picture is

13   Natural Honey Harvester, with no reference to Mr. Fischer.

14   Agreed --

15        MR. MICHELEN:  Other than in the URL.

16        THE COURT:  But you don't give the URL.

17        MR. MICHELEN:  It's not in that exhibit, yes.

18        THE COURT:  Correct.  Then let's turn to 23A and B,

19   all of which is just a list of catalogs, PDF format, and all it

20   tells me substantively about it, you didn't attach the

21   catalogs, you didn't say "and they include a URL," all it says

22   is from 2011 to 2014, that they removed the CMI, copyright

23   management information.  Again, no allegation that

24   Mr. Fischer's name is included.

25        MR. MICHELEN:  Well, during that time the name would

1  only have been in the URL because --

2  THE COURT:  Okay.  But that's not alleged.  And you

3  live or die by the third amended complaint, in what is actually

4  fair game in the third amended complaint.

5  So, let me tell you what the Court's ruling is and

6  will be with an opinion to follow today or early next week, and

7  I'll do it in the same order that you all have discussed it.

8  The counterfeiting claim will be dismissed because this is not

9  a counterfeit.  It is perhaps the bait and switch that you

10  argue, but it is not a counterfeit, as the case law and statute

11  uses the term trademark counterfeit.  Even the URL is not a

12  counterfeit.  Again, it may be unfair competition, it may be a

13  trademark infringement, it is not a counterfeit because it is

14  the actual mark.  It is not like saying a Rolex instead of a

15  Rolax, Polarad instead of Polaroid.  Any of those types of

16  things.  It is either the actual mark when they showed the

17  picture of Fischer's Bee-Quick or even a URL saying Fischer's

18  Bee-Quick, but natural honey and Bee-Quick are not anywhere,

19  they are not even infringing in a trademark sense.  So, those

20  claims are all going to be dismissed.

21  As to the copyright claims, they survive for the

22  three-year lookback period only.  So anything prior to three

23  years before the filing of the complaints, each complaint, is

24  dismissed.  And the Court finds that there is no 15(c) lookback

25  because there was no mistake made here.  This is not like the

H1D3FISC

1   Costa Cruise Line where they named Costa A when they should

2   have named Costa B.  This is one where Mr. Fischer named the

3   Forrests, he learned about Mr. Gebauer in 2011, but didn't sue

4   Gebauer until 2015.  And certainly he knew about Brushy

5   Mountain from day one, and made a choice not to sue them.

6         Indeed, in ruling on the Fischer's original motion,

7   Judge Engelmayer made a comment that, and I don't have the

8   exact words in front of me and I'm not going to take the time

9   to look at it, but essentially he said, you know, a weird

10  strategic choice, or a questionable strategic choice, but one

11  that Mr. Fischer, as the master of his own pleadings, is

12  entitled to make.  So that takes care of the copyright claim.

13        With respect to the right of publicity claim, because

14  even reading the extra exhibits and extra paragraphs about the

15  copyright violation into the right of publicity claim, there is

16  no allegation of any republication as opposed to continuous use

17  of Mr. Fischer's name in the URLs or in using a picture of his

18  product.  Even if the picture and the product could somehow

19  violate a right of publicity, which it probably can't, but

20  certainly on the URL it is alleged to be a continuous use, and

21  therefore, does not reopen the one-year statute of limitations.

22  And all of the complaints, including the original, were well

23  past the one-year period.

24        So, in light of that, I guess the first question for

25  the defendant in particular is do you still wish to pursue the

1    transfer motion or do you wish to withdraw it?

2              MR. HUDSON:  Your Honor, especially how we've ordered

3    the motions, we'll withdraw the transfer motion.

4              THE COURT:  So you are amenable to the case staying

5    here, even though it may mean that, first of all, your

6    defendant witnesses will have to travel up here for trial, and

7    secondly, that your non-party witnesses may or may not show up?

8              MR. HUDSON:  Right, yes, your Honor.

9              THE COURT:  Any objection to that from the plaintiff?

10             MR. MICHELEN:  None, your Honor.  Thank you.

11             THE COURT:  All right.  So, next question.  Obviously

12   you have the right on the motion to dismiss to file objections

13   to Judge Engelmayer or alternatively, with or without a

14   carve-out for that purpose, the parties have the option

15   pursuant to 28 U.S. Code Section 636(c) to have the case in

16   front of me for all purposes with the same direct appeal rights

17   to the Second Circuit that you would have after a ruling by

18   Judge Engelmayer.  And there is a jury demand in the third

19   amended complaint, so there would be the same rights to jury

20   trial and the same people would be brought in by the clerk's

21   office for jury selection, whether that selection and trial is

22   going to be in front of Judge Engelmayer or me.

23             Are you all in a position to make a decision on that

24   now or do you want to sleep on it?

25             MR. MICHELEN:  I would need time to confer with my

H1D3FISC

1   client, Judge.

2           MR. HUDSON:  Same here, your Honor.

3           THE COURT:  Okay.  So what are our next steps?  You

4   have a January 31 discovery cutoff period.  It looks like you

5   are in the process of meeting it.

6           MR. HUDSON:  Can I address that, your Honor?

7           THE COURT:  Sure.

8           MR. HUDSON:  I should have thought about this more and

9   I don't know -- I know Mr. Michelen and I have talked about it.

10  Would it be possible to extend that at least a month or two?

11  My client just had knee surgery, and so we're not running up --

12          THE COURT:  Which client?

13          MR. HUDSON:  Excuse me.  Steve Forrest had knee

14  surgery and I believe Mr. Fischer's wife is having surgery next

15  week.

16          MR. MICHELEN:  Judge, Mr. Fischer's wife is ill.  But

17  I believe we can certainly at least do Mr. Fischer by the 31st

18  because he has more issues than his wife's illness into

19  February.  I have no problem with extending the time to

20  complete the defendants, but I'd like to keep a date set for

21  Mr. Fischer.

22          THE COURT:  I'm certainly not inclined to give a

23  lengthy extension.  This is for various reasons, mostly having

24  to do with Mr. Fischer's original status as a pro se, and

25  various motions to dismiss which lead us to where we are today,

H1D3FISC

1    and the fact that you have had several extensions in front of

2    my friend Judge Pitman, the last of which was fairly recently,

3    to wit, well, in October getting you to the end of January.

4    Other than the fact that these motions were hanging over your

5    heads, I'm not adverse to giving you a week or two into

6    February if that will make it easier.  And if Mr. Forrest can't

7    travel and needs to be deposed in North Carolina, you all

8    should work something out with respect to that.

9            So how about February 15.

10           MR. HUDSON:  That works for me.  Thank you.

11           MR. MICHELEN:  Sure, that's fine, your Honor.

12           THE COURT:  Are there any other discovery issues?

13   Mr. Michelen started mentioning some catalogs he wants from the

14   defendant.

15           MR. MICHELEN:  We got some of the catalogs directly

16   through the printer who printed the catalogs, I don't recall

17   whether Mr. Hudson gave us the name of the other printer for

18   the other years.  We can get them directly from the catalog

19   printer.

20           THE COURT:  These are paper catalogs?

21           MR. HUDSON:  Yes.  The issue is they've asked for the

22   entire catalog which is a bound catalog, someone's going to

23   have to manually sit there and go through every page, and I

24   don't think every page of the catalog is relevant in this case.

25           THE COURT:  The issue is you have the catalog, but you

H1D3FISC

1    only have one and it's big.

2              MR. HUDSON:  Right, your Honor.

3              THE COURT:  So why don't you just Xerox the cover and

4    whatever page has Bee-Quick or Natural Harvester.

5              MR. HUDSON:  We can do that.

6              MR. MICHELEN:  That's perfectly acceptable to us,

7    Judge.

8              THE COURT:  Get that done quickly.

9              MR. HUDSON:  The only discovery issue that the

10   defendants have is we had a discovery hearing back -- it was

11   the Friday before Memorial Day, and during that hearing the

12   plaintiff agreed to supplement numerous discovery and to also

13   provide some of the documents that were referenced in a zip

14   file, and that discovery we still haven't gotten that yet.

15             MR. MICHELEN:  I thought that all the documents have

16   been provided, but the issue was they wanted us to better

17   categorize where those documents matched up to the discovery

18   demands.  I don't think there is actual documents that are

19   outstanding as opposed to they want the response better

20   identified, and I said we'd do that in advance of Mr. Fischer's

21   deposition.

22             THE COURT:  So how soon can you do it?

23             MR. MICHELEN:  Perhaps the 23rd of January.

24             MR. HUDSON:  Yes, your Honor.  That's not the only

25   issue.  There is a zip file that's referenced in that

H1D3FISC

1    discovery, and I can shoot Mr. Michelen an e-mail about that

2    zip file.

3              MR. MICHELEN:  Yes.

4              MR. HUDSON:  But there is numerous other written

5    discovery responses they were going to clarify, like I believe

6    it was our third request or our third set of interrogatories, I

7    think they answered one and everything else was see above, see

8    above, see above, and those --

9              THE COURT:  What was the question or questions?

10             MR. HUDSON:  I'm sorry, your Honor, I can't even --

11             MR. MICHELEN:  That's not a problem, Judge.  We'll

12   clarify.  I wasn't aware he didn't receive the zip file.

13   That's not a problem, we can get that to him next week.

14             THE COURT:  Fix everything by the 23rd.

15             MR. MICHELEN:  Thank you.

16             THE COURT:  Where are we going after the close of

17   discovery?  Is there going to be a summary judgment motion

18   and/or are you ready to go to trial, subject to a settlement

19   issue which I'll raise after we talk?

20             MR. HUDSON:  As for defendants, we'll make a summary

21   judgment motion.

22             THE COURT:  What have you got to move on that the

23   facts are undisputed on that isn't taken care of by the motion

24   to dismiss?

25             MR. HUDSON:  We haven't taken the plaintiff's

H1D3FISC

1    deposition yet, but I am assuming.  It is all contingent on

2    what facts come out in that deposition.

3           THE COURT:  What facts would you need to have a

4    summary judgment motion?

5           MR. HUDSON:  It's kind of asking me to lay out my hand

6    a little bit.

7           THE COURT:  Let's put it this way.  We can defer it,

8    but whether because of Judge Engelmayer's rules or even if he

9    doesn't require it, having just spent a lot of time dealing

10   with your motion to dismiss, which is likely to be virtually

11   the same as any summary judgment motion, and you knocked out

12   two groups of claims, so what's left is the copyright claims

13   and some other state law claims.

14           MR. MICHELEN:  And the DMCA claims, right.

15           THE COURT:  That's part of the copyright.

16           MR. MICHELEN:  Yes.

17           THE COURT:  So I'm not quite sure that there is a

18   summary judgment motion there, and in any event, quite frankly,

19   I can't imagine how much each of your clients are selling, but

20   I've got to imagine, unless I'm way out of line in guessing

21   about the beekeeper industry, that you're spending more on

22   legal fees than either product at issue was worth, certainly

23   during the time period of the alleged infringements.

24           So, unless you can knock out the entire case, and I

25   don't think you can on summary judgment, might be more cost

H1D3FISC

1    effective to just go straight to trial and let's just get a

2    jury to decide all of this.

3           MR. HUDSON:  Yes.  I'm not one to file a questionable

4    summary judgment motion.  And I'll only do it if I believe that

5    we have the facts to support it.

6           THE COURT:  Okay.  We'll talk about it before your

7    requirement to make it.

8           MR. MICHELEN:  Judge, maybe a telephone conference

9    after Mr. Fischer's deposition.

10          THE COURT:  I think we're going to have one or more

11   conferences.  Let me set some more triggers.

12          By February 17 you'll write to me and Judge Engelmayer

13   as to whether you intend to move for summary judgment or not.

14   If there is no summary judgment motion, the pretrial order will

15   be due Friday, March 3.  If the Court allows a summary judgment

16   motion, it will be due March 3.  If the Court allows the

17   summary judgment motion, the pretrial order is automatically

18   postponed until 30 days after the Court, whether that's me or

19   Judge Engelmayer, I guess in the first instance it's me under

20   the division we have here.  So 30 days after I ruled on the

21   summary judgment motion, even if there were going to be an

22   appeal to Judge Engelmayer, the pretrial order is due.

23          Settlement.  Have there been any discussions?  Is

24   settlement possible?  What is it that you think we should be

25   doing in connection with that, and if you want to go -- I don't

1    want any numbers, I just want are you able, etc.  If you want

2    to go off the record for that, let me know and we'll go off the

3    record.

4              MR. MICHELEN:  I think we can do it on the record.  I

5    think that I've always amenable to a settlement conference

6    perhaps at some point after the close of the remaining parties'

7    depositions.  Notwithstanding the Court's decision today, these

8    are registered copyrights, so they're statutory violations.

9    There is a number of catalogs.  It's not necessarily related to

10   the amount of sales as the Court directed, but I always think

11   it would be prudent, particularly if the Court does not have a

12   summary judgment motion allowed here, for the parties to at

13   least take one stab at it.  We have not discussed it in any

14   way, shape or form previously, your Honor.

15             THE COURT:  Mr. Hudson?

16             MR. HUDSON:  Your Honor, I'm totally in agreement with

17   settlement.  As the Court may know, insurance company's

18   defending this, I'm representing Penn National Insurance, so

19   with any insurance case there is probably a chance of

20   settlement.  The initial demand from the plaintiff was way out

21   there.

22             THE COURT:  There is the possibility, depending on

23   what you all decide, that I will be the trial judge.  If,

24   despite that, because any trial would be with a jury, if you're

25   both willing to tell me what numbers have been bandied about

H1D3FISC

1   before so I can help think about where we're going, I'm willing

2   to hear it.  If you don't want to do that, while you are

3   deciding what to do with me, or about me, I can wait.

4            MR. MICHELEN:  I'd rather wait only because we didn't

5   make a demand, I frankly don't know what the plaintiff had said

6   previously.

7            THE COURT:  Let me put it to you this way then.  Make

8   a demand, a new demand.  Defendant to answer.  And then get

9   serious and do a second round.  The way I usually put it is

10  often in the first round the plaintiff asks for three times the

11  gross national product, and the defendant, if they weren't from

12  North Carolina and were local, would offer a $10 MetroCard.

13           So, let's get a little more serious than that and then

14  contact me when you're ready.  It is my practice to give

15  parties one and only one settlement conference, and it is

16  always also my practice to have principals in attendance.  So

17  Mr. Fischer and the insurance rep and/or whoever from Brushy

18  Mountain also has a say in settlement.  It's got to be in

19  person.  I don't care where the insurance rep is, settlement

20  conferences only work when everyone is here.

21           So think about that.  I am not going to stop any of

22  the deadlines for that purpose, so you will very to work it in.

23  And the sooner you get time on my calendar, the more likely it

24  is you'll get time that works for your schedule.  Generally I

25  give two hours to half a day for a settlement conference.

H1D3FISC

1          MR. HUDSON:  To that point, your Honor, I think -- and

2     Mr. Michelen and I can deal with our talking about settlement,

3     and then who do we contact to get on your calendar for

4     settlement conference?

5          THE COURT:  Jointly call my secretary.

6          MR. HUDSON:  Okay.

7          THE COURT:  Both of you have lots of dates from

8     yourself and your clients, and we'll see what then is available

9     on my calendar.

10          MR. HUDSON:  Okay, sure thing.  I'd like to get that

11     scheduled sooner rather than later.

12          THE COURT:  All right.  But, I agree with that on the

13     other hand, if the plaintiff's number is outrageously high,

14     and/or the defendant's number is outrageously low, I'm not a

15     miracle worker.  I have a very healthy ego, but you guys got to

16     think about the worth of this case, whether it's statutory

17     damages or anything else, and act accordingly.  In the

18     meantime, do you want a status conference?

19          MR. MICHELEN:  Yes, your Honor.

20          THE COURT:  When?

21          MR. MICHELEN:  I would think, well, if the letter is

22     not written until 2/17 we can't have a conference before that.

23          THE COURT:  The only purpose for a status conference

24     before February 15 is if you're having any discovery related

25     problems.  If you think you're going to muddle through to the

1    end working collegially and cooperatively, we can leave it that

2    with respect to that, that you will contact me by letter on ECF

3    if there are any problems, and then I'll set up a conference

4    either on the phone or in person almost immediately after I get

5    such a letter.

6         MR. MICHELEN:  In that case, your Honor, I don't think

7    we need one because we're supposed to write by 2/17 if there is

8    a request for summary judgment, and then 3/3 is either the

9    motion or the joint pretrial order.  And then we're also still

10   going to have an attempt to resolve the matter, so I don't

11   think that a status conference is necessary.

12        THE COURT:  All right.

13        MR. HUDSON:  That's fine, your Honor.

14        THE COURT:  We'll leave it that you will contact me if

15   there are any problems or contact me either via ECF or by

16   calling my secretary for the settlement conference.

17        How soon can you all collectively get back to me on

18   the 636(c) issue, that is the consent to have the case in front

19   of me for all purposes?

20        MR. MICHELEN:  Monday is a holiday but certainly by

21   Wednesday or Thursday.

22        MR. HUDSON:  Your Honor, the named defendants are very

23   easy to get in touch with.  It is the insurance adjustor that's

24   a little tougher.

25        THE COURT:  I'm not sure whether this is a lawyer's

H1D3FISC

1   call or a client's call, but why don't we leave it this way.

2   By January 20, you will jointly write to me saying either there

3   is consent, here's the form.  Option two, there is consent but

4   only after Judge Engelmayer reviews my decision on the motion

5   to dismiss.  Or two, there is no consent, thank you very much,

6   but no thanks.  Or option three, I'm still waiting to hear from

7   the insurance adjustor.

8          In that letter, whoever writes it on behalf of both

9   parties, it should not disclose that party A says yes, party B

10  says no.

11         MR. MICHELEN:  Of course.

12         THE COURT:  The rules say you're not supposed to tell

13  me that.  Frankly, I don't care.  But that's what the rules

14  say.

15         Usual -- well, you don't know my usual, so let me

16  rephrase that.  I'm going to require both parties to purchase

17  the transcript which gets you a 50-50 split so that it's of

18  record.  And as I say, the opinion will come out today or early

19  next week, depending on when I put the finishing touches on it.

20  All right.

21         MR. HUDSON:  Thank you, your Honor.

22                              o0o

23

24

25