USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3-21-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JAMES H. FISCHER,

        Plaintiff,

   -v-

STEPHEN T. FORREST, JR., SANDRA F. FORREST,
SHANE R. GEBAUER, and BRUSHY MOUNTAIN
BEE FARM, INC.,

        Defendants.

-------------------------------------------------------------------X

14 Civ. 1304 (PAE) (AJP)

14 Civ. 1307 (PAE) (AJP)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

  Plaintiff James H. Fischer, initially proceeding *pro se* but now represented by counsel, brought these two similar actions against defendants. Fischer, an apiarist, created a popular honey harvesting aid called Fischer's Bee-Quick; he alleges in these lawsuits that defendants used Fischer's proprietary text, images, and names to sell a knock-off product. He brings claims under the Copyright Act, 17 U.S.C. § 101 *et seq.*, the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*, along with claims under New York law for violation of his right of publicity, unfair competition, unfair business practices, breach of contract, and unjust enrichment.

  Defendants Stephen T. Forrest, Jr. and Sandra F. Forrest (the "Forrests") previously moved to dismiss these cases. The Court denied those motions in their entirety in a decision issued on January 13, 2015. 14 Civ. 1304, Dkt. 45; 14 Civ. 1307, Dkt. 65 (collectively, "First MTD Decision"). On December 28, 2015, Fischer filed a Third Amended Complaint ("TAC") in each action, *see* 14 Civ. 1304, Dkt. 89; 14 Civ. 1307, Dkt. 111. After defendants moved to

dismiss various claims in the TACs, *see* 14 Civ. 1304, Dkts. 102, 105, 108; 14 Civ. 1307, Dkts. 123, 126, the Court referred the motions to dismiss to Magistrate Judge Henry B. Pitman for a Report and Recommendation, having earlier referred the cases to Judge Pitman for general pretrial supervision. On December 15, 2016, these referrals were reassigned to Magistrate Judge Andrew J. Peck.

Before the Court is Judge Peck's detailed and persuasive January 13, 2017 Report and Recommendation. 14 Civ. 1304, Dkt. 132; 14 Civ. 1307, Dkt. 147 (the "Report"). The Report recommends granting the motions to dismiss Fischer's trademark counterfeiting claim and his right of publicity claim under New York law, but otherwise to deny the motions. It also recommends dismissing some of Fischer's copyright infringement claims against defendants Shane R. Gebauer and Brushy Mountain Bee Farm, Inc. ("BMBF"), on the grounds that Fischer's copyright infringement claims against these defendants do not relate back to the filing of the original complaint, making some of them untimely. On January 27, 2017, Fischer filed objections to the Report, 14 Civ. 1304, Dkt. 137; 14 Civ. 1307, Dkt. 150, and, on February 10, 2017, defendants filed responses to these objections, 14 Civ. 1304, Dkt. 141; 14 Civ. 1307, Dkt. 151.

For the following reasons, the Court adopts the Report in its entirety and therefore grants in part and denies in part defendants' motions to dismiss.

I.  **Standard of Review**

After a magistrate judge has issued a Report and Recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept the portions of a report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on

the face of the record." *Acevedo v. Lempke*, No. 10 Civ. 5285 (PAE) (HBP), 2014 WL 4651904, at *3 (S.D.N.Y. Sept. 17, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)). When a timely and specific objection has been made, the court is obligated to review the contested issues *de novo*. *See id.*; Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). But when the objections simply reiterate previous arguments or make only conclusory statements, the court should review the Report and Recommendation for clear error. *Dickerson v. Conway*, No. 08 Civ. 8024 (PAE) (FM), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *see also Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases). This is so even in the case of a *pro se* plaintiff. *Cf. Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Further, "[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (citation omitted); *see also Pan Am. World Airways v. Int'l Bhd. Of Teamsters*, 894 F.2d 36, 40 n.3 (2d Cir. 1990) ("A district judge is not required to hear or rehear any witness, and Pan Am had no right to present further testimony when it offered no justification for not offering the testimony at the hearing before the magistrate.").

**II.    Discussion**

The Court assumes familiarity with the underlying factual allegations and claims, and incorporates by reference both the Report and the Court's First MTD Decision, in which the Court denied defendants' earlier motions to dismiss. Whether reviewed *de novo* or for clear error, Judge Peck's Report is thorough and persuasive, and the Court adopts it in full.

Fischer makes three objections to the Report. The Court rejects each after *de novo* review.

### A. Relation Back of Copyright Claims Against BMBF and Gebauer

First, Fischer argues the Report erred by determining that the copyright claims against BMBF and Gebauer do not relate back to Fischer's original complaint, making some claims—those brought beyond the three-year statute of limitations for copyright actions—untimely. The statute of limitations for copyright claims is three years. 17 U.S.C. § 507(b). Judge Peck held that these claims are untimely unless they relate back to the filing of Fischer's original complaint. He explained that the TAC alleges the copyright infringement occurred in March 2011, when BMBF allegedly published Fischer's copyrighted information on its website and in its catalog, but that BMBF and Gebauer, BMBF's general manager, were added as defendants in 2015, more than three years later. Therefore, Judge Peck concluded, as to Gebauer, who was added on February 3, 2015, 14 Civ. 1304, Dkt. 50; 14 Civ. 1307, Dkt. 70, any copyright claim that accrued before February 3, 2012 was untimely absent relation back; and as to BMBF, which was added on December 28, 2015, 14 Civ. 1304, Dkt. 89; 14 Civ. 1307, Dkt. 111, any copyright claim that accrued before December 28, 2012 was similarly untimely.

In determining that the copyright infringement claims against Gebauer and BMBF do not relate back to the filing of Fischer's original complaints, Judge Peck found that when Fischer originally did not sue BMBF or Gebauer, Fischer had not made a "mistake concerning the proper party's identity," within the meaning of Federal Rule of Civil Procedure 15(c). Under that rule, an amended pleading relates back to the date of the original pleading when "the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). This rule "asks what the prospective *defendant* knew or should have known during

4

the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010) (emphasis in original). The information a plaintiff had in his or her possession is relevant only when it bears on the *defendant's* awareness of whether the plaintiff made a mistake regarding the proper party's identity; the plaintiff's knowledge of a party's existence does not rule out a mistake if the plaintiff sued a different party based on a misunderstanding of the respective parties' roles. *Id.* at 549. But, "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint or the amended complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* at 552.

Judge Peck correctly determined that, when he originally brought these lawsuits, Fischer had not made a mistake about the roles or potential liability of BMBF or Gebauer but instead had deliberately chosen not to sue either of them. As to BMBF, Judge Peck noted that Fischer's amended complaint in 14 Civ. 1307 explicitly explained his decision not to sue. In a section of the amended complaint explaining why the Forrests (BMBF's alleged corporate officers) were personally liable, Fischer stated there was no need to sue BMBF for the Forrests to be personally liable. *See* Amended Complaint ¶¶ 14–15, 14 Civ. 1307, Dkt. 50 (alleging that "'[p]iercing the corporate veil' is not a prerequisite to imposing personal liability upon corporate officer-owners for infringement of intellectual property"). Fischer added that "[a] judgment against the corporate entity would endanger the income of employees who had no part in the illegal acts of Defendants, or had to obey Defendants' orders. Defendants have extracted significant personal wealth from the business, and their extensive assets include shares in the business that can be sold to satisfy a judgment, without putting any employees or employee families at risk." *Id.* ¶ 14

5

n.4. In denying the Forrests' motion to dismiss the amended complaint, this Court commented on Fischer's choice. The Court stated that Fischer's "decision to name only Stephen and Sandra Forrest, and not also Brushy Mountain, although strategically curious, does not prevent him from pursuing claims against the two individuals." First MTD Decision at 8.

Judge Peck properly declined to credit Fischer's affidavits submitted in opposition to the instant motions to dismiss, which Fischer claimed demonstrate a mistake about BMBF's liability. *E.g.*, 14 Civ. 1304, Dkt. 112. Fischer there stated that he had believed at the time he filed the original complaints that, to obtain a judgment against a corporate entity, he was required to prove unlawful conduct by a real person, because "a corporate entity could not be held liable on its own until some individuals had been found liable." *Id.* ¶ 9. But, as noted, Fischer's amended complaint also eschewed suing BMBF on the grounds that he did not have to "pierc[e] the corporate veil" to "impos[e] liability upon corporate officer-owners for infringement of intellectual property," and that suing the corporation could yield "inequitable results" and "endanger[] the livelihoods of the [Forrests'] many innocent and honest employees." Amended Complaint ¶¶ 14–15, 14 n.4, 14 Civ. 1307, Dkt. 50. As Judge Peck rightly concluded, Fischer, in passing up the earlier opportunity to sue BMBF, therefore was not mistaken about the proper party's identity. Rather, he elected, for strategic and humane reasons, only to sue certain proper defendants while appreciating the factual and legal distinctions between them. In such an instance, relation back under Rule 15(c)(1)(C) is not available.

Fischer was also not mistaken about Gebauer's identity. Judge Peck correctly determined that Fischer knew as early as April 14, 2011 that Gebauer was BMBF's general manager. That day, Gebauer responded, on BMBF's behalf, to Fischer's cease and desist letter to Stephen

Forrest, stating there that he, Gebauer, was BMBF's general manager. Amended Complaint, Ex. 16, 14 Civ. 1307, Dkt. 50. Gebauer's letter response was written on BMBF letterhead. *Id.*

Fischer responds that he did not know whether, in addition to being general manager, Gebauer was an actual officer or owner of BMBF. This information, he says, first came to light in the December 2014 issue of *Bee Culture* magazine. Report at 22. Judge Peck properly rejected that argument, because Gebauer's liability does not turn—and Fischer does not allege that it turns—on whether Gebauer was an officer or owner, as opposed to the general manager, of BMBF. The information in the December 2014 issue of *Bee Culture* magazine, *see* 14 Civ. 1304, Dkt. 47 at 9, revealing, *inter alia*, Gebauer's ownership, did not materially alter Fischer's theory of Gebauer's liability. Fischer was therefore not mistaken about the nature of Gebauer's role when he forewent suing Gebauer until the Second Amended Complaint. Relation back therefore is unavailable to salvage Fischer's copyright claims against Gebauer.

The Court, on *de novo* review, therefore adopts Judge Peck's thorough and persuasive reasoning, which compels dismissal of Fischer's copyright claims against BMBF and Gebuaer to the extent they are untimely.

### B. Fischer's Trademark Counterfeiting Claims

Fischer next claims that Judge Peck errs in recommending the dismissal, for failure to state a claim, of his trademark counterfeiting claims. Having reviewed the issue *de novo*, the Court concludes, with Judge Peck, that Fischer has failed to state such a claim.[1]

---

[1] Fischer brings four claims for trademark counterfeiting in the TAC in 14 Civ. 1304, *see* ¶¶ 140–63, along with 10 claims for copyright infringement, *see id.* ¶¶ 76–120. The TAC in 14 Civ. 1304 also brings claims for right of publicity under federal law, *see id.* ¶¶ 181–90, along with right of publicity claims under New York Civil Rights Law § 51 and five other state-law claims, such as for false advertising. Although the TAC in 14 Civ. 1307 brings eight copyright claims, it does not bring any claims for trademark infringement or under state law. *See* TAC

In the Second Circuit, trademark infringement claims are analyzed using a two-step test. It asks, first, whether the allegedly infringing mark is "entitled to protection" and, second, whether the use of the allegedly infringing mark "is likely to cause consumers confusion as to the origin or sponsorship" of the products it is attached to. *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 168 (2d Cir. 2016) (citation omitted). When considering the likelihood of confusion, courts in the Second Circuit generally look to the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). But, "where items are counterfeit, 'the Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion.'" *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003)). The Lanham Act defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Judge Peck properly determined that Fischer's trademark counterfeiting claims fail to plead facts that would meet that statutory standard. Whatever the merits of Fischer's other trademark claims sounding in infringement, the name of the allegedly counterfeit product, "Natural Honey Harvester," is easily distinguished from Fischer's registered "Bee-Quick" mark, so as not to be fairly be called "counterfeit." As Judge Peck reasoned, "Natural Honey Harvester" is not a counterfeit of "Bee-Quick," regardless of the possibilities of similarity of font or color, because the two phrases are far from identical or substantially indistinguishable. Nor does defendants' allegedly wrongful use of "Bee-Quick" in URL links to their products on their

---

¶¶ 90–146, 14 Civ. 1307; *see also* Report at 7. Judge Peck recommends dismissing only Fischer's trademark counterfeiting claims.

website, *see* TAC ¶¶ 150–63, 14 Civ. 1304, constitute trademark counterfeiting. While potentially supporting other trademark claims of Fischer's, defendants' alleged misappropriation of that term in URL links does not make defendants' mark substantially indistinguishable from Fischer's.

Fischer's other theory of trademark counterfeiting also is legally deficient. Defendants are alleged to have displayed Fischer's Bee-Quick product on their website, but, in response to a customer order for this product, to have shipped instead Natural Honey Harvester. *See id.* ¶¶ 141–43, 146–47. This conduct does not constitute trademark counterfeiting because, as Judge Peck concluded, the mark that defendants allegedly used (Bee-Quick) was the actual mark, not a "spurious" mark designed to mask a false provenance. And, when defendants shipped Natural Honey Harvester, they shipped a clearly completely different product, as opposed to a counterfeit product or a product containing a counterfeit mark. *See United States v. Cone*, 714 F.3d 197, 207 (4th Cir. 2013) (rejecting claim that "the modification (the material alteration) of the . . . product to something other than the exact device . . . originally manufactured transforms not only the genuine product into a counterfeit product but also the genuine mark into a spurious mark").

Fischer's objections are unpersuasive. They repeat his arguments before Judge Peck. And Fischer cites to cases far afield. In one, a court found a defendant liable for trademark infringement and for willful use of a counterfeit mark when the defendant, a hotel owner and prospective franchisee of a hotel chain, used, without authorization, the hotel chain's marks and branding before the defendant had made certain improvements to the hotel to come into compliance with the requirements of the franchise agreement. *See Choice Hotels Int'l., Inc. v. Pennave Assocs.*, 159 F. Supp. 2d 780, 781–86 (E.D. Pa. 2001). The court there held that the franchisee's unauthorized use of a hotel's exact marks, such as in building signage, made the

9

marks substantially indistinguishable, and misled customers to think they were staying at the hotel of a particular brand. *Id.* In contrast, a product titled "Natural Honey Harvester" is not substantially indistinguishable from a product titled "Bee-Quick."

Finally, contrary to Fischer's objection, Judge Peck's determination that Fischer's trademark *counterfeiting* claims must be dismissed does not conflict with this Court's earlier holding that Fischer has stated a claim for trademark *infringement*. *See* First MTD Decision at 19. Although the allegations upheld in the amended complaint were nearly identical to those at issue here, the Court construed them as claims for trademark infringement and held that they stated a claim. Indeed, the Court held, Fischer "articulated a highly plausible theory of consumer confusion: [Fischer] alleges that Forrest's use of the Bee-Quick name in URLs would make consumers 'victims of a bait-and-switch' by leading individuals searching for Bee-Quick to a webpage selling Natural Honey Harvester. . . . Fischer has, therefore, stated a claim for trademark infringement under the Lanham Act." *Id.* In so holding, however, the Court did not did not address whether those allegations stated a claim for trademark *counterfeiting*.

Accordingly, the Court, after *de novo* review, holds, with Judge Peck, that Fischer's trademark counterfeiting claims in the TAC in 14 Civ. 1304 must be dismissed.

### C. Right of Publicity Claim Under New York Law

Finally, Fischer claims that Judge Peck erred in recommending dismissal of his state-law right of publicity claim in the TAC in 14 Civ. 1304, in which Fischer alleges his right of publicity was violated by the use of his name in URLs on defendants' website. Judge Peck determined that this claim was untimely, as Fischer alleged the relevant unlawful conduct occurred in March 2011 but did not bring the claim until he filed these lawsuits on February 27,

2014, beyond the one-year statute of limitations governing right of publicity claims under New York law.

Judge Peck's recommendation was correct. New York law provides for a one-year statute of limitations for right of publicity claims. N.Y. C.P.L.R. § 215(3). New York law applies the "single publication rule" to right of publicity claims, under which a cause of action "accrues on the date the offending material is first published." *Nussenzweig v. diCorcia*, 878 N.E.2d 589, 590 (N.Y. 2007). If the offending material is republished, the republication triggers a new one-year limitations period. *See Firth v. State*, 775 N.E.2d 463, 466 (N.Y. 2002). Whether an item has been republished is evaluated under a multi-factor test, *see Hoesten v. Best*, 34 A.D.3d 143, 150–51 (N.Y. App. Div. 1st Dept. 2006), and continuous access to material on a website does not constitute republication, *see Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303, 306 (S.D.N.Y. 2014) ("Of course, courts have overwhelmingly held . . . that the mere continued availability of material on a website does not constitute an ongoing 'republication.'" (citing *Firth*, 775 N.E.2d at 467)); *see also Firth*, 775 N.E.2d at 467 (rejecting the contention that "any modification to a Web site constitutes a republication of the defamatory communication itself").

In response, Fischer objects that his pleadings do allege republication, triggering new limitations periods. He points to ¶¶ 49–50 in the TAC in 14 Civ. 1304, in which, for example, he alleges, "As each year's website was created, changes would be made, and each year's website would use one or more of Plaintiff's copyrighted Works." TAC ¶ 50, 14 Civ. 1304. But these allegations do not allege changes to the URLs where Fischer's name was allegedly unlawfully used; they instead only allege changes to website content. As Judge Peck rightly summarized, "Fischer's only claim is that defendants posted his name in URLs in March 2011 that remained

11

'continuously' online. There is no allegation that defendants altered the URLs, created new URLs at another time that contained Fischer's name, or used his name in some other fashion on the website or in catalogs at a different point." Report at 32. This determination was correct.

Accordingly, the Court adopts the Report in its entirety. The Report is thorough, detailed, and quite persuasive.

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Peck's Report in its entirety, and grants in part and denies in part defendants' motion to dismiss. Specifically, the Court (1) denies the motion to dismiss the entirety of Fischer's copyright infringement claims, but grants the motion to dismiss those copyright infringement claims against BMBF that accrued before December 28, 2012 and those copyright infringement claims against Gebauer that accrued before February 3, 2012; (2) grants the motion to dismiss Fischer's trademark counterfeiting claims brought in 14 Civ. 1304; and (3) grants the motion to dismiss Fischer's state-law right of publicity claim in 14 Civ. 1304.

The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 102, 105, and 108, in 14 Civ. 1304, and at Dkts. 123 and 126, in 14 Civ. 1307.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 21, 2017
  New York, New York