```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JAMES H. FISCHER,

              Plaintiff,

         v.                          14 CV 1304 (PAE) (AJP)

SANDRA F. FORREST, et al.,

              Defendants.
------------------------------x
                                     New York, N.Y.
                                     February 22, 2017
                                     3:15 p.m.
Before:

                     HON. ANDREW J. PECK,

                                     Magistrate Judge

                          APPEARANCES

CUOMO LLC
     Attorneys for Plaintiff
OSCAR MICHELEN

CLEMENTS BERNARD PLLC
     Attorneys for Defendants
SETH HUDSON (VIA TELEPHONE)
```

1          THE COURT:  All right.  What are we doing here today?
2  What are the issues?  Let's start with plaintiff's counsel,
3  Mr. Michelen.
4          MR. MICHELEN:  Yes.  Good afternoon, your Honor.
5  Judge, we're here basically because we filed a motion for an
6  extension of discovery relating to some documentary discovery
7  that has not been turned over by the defendants, and part of
8  the issue is that, as you know, the whole case involves the
9  defendant's website and catalog.
10         We completed the depositions of all the named
11 defendants in the action -- Shane Gebauer, Stephen and Sandra
12 Forrest.  Mr. Gebauer, who is now the CEO and, at the time of
13 the filing of the complaint and at some of the relevant time in
14 the complaint, was general manager of the company, stated he
15 really had no knowledge as to who provided the content for the
16 website, how the website was developed, didn't remember who did
17 it, didn't remember what third-party vendor did it, etc.
18         When we deposed the Forrests, they both said that was
19 entirely in the control of Mr. Gebauer.  So in our initial
20 discovery demand we requested emails between the parties to
21 show the discussion Mr. Ficsher had with respect to how his
22 product may be described in the Brushy Mountain catalog, their
23 response, etc., as well as drafts, revisions, and amendments of
24 the catalog from 2008 to present.  We got a general objection
25 that the demand was overbroad, etc.

1           THE COURT:  Hand up the request.  Or if the response
2   includes the request, then I only need that.
3           MR. MICHELEN:  Yes, it does, Judge.  If you want to
4   see the individual demands, they're here.
5           THE COURT:  So which one are we fighting about?
6           MR. MICHELEN:  Right off the bat, with number one, all
7   emails, correspondences, letters, etc.  And, number two, all
8   draft provisions, amendments, and final versions.
9           THE COURT:  Let me stop you right here.
10          Mr. Hudson, you may have just given me the case I've
11  been waiting for to write an opinion waking the bar up to the
12  fact that Rule 34 was amended now a year and two or three
13  months ago.
14          Have you explained your responses in light of the
15  amendment to Rule 34 of the federal rules?
16          MR. HUDSON:  Yes, your Honor.  I don't believe -- it
17  certainly wasn't my intention.  Your Honor, with respect to
18  number one, we stand by --
19          THE COURT:  Answer my question first.  If you don't
20  know what I'm talking about, you can say that.
21          MR. HUDSON:  Your Honor, I'll have to look at Rule 34.
22          THE COURT:  Did you look at it before you signed the
23  discovery responses?
24          MR. HUDSON:  I believe I did look at the amendment
25  beforehand, your Honor.  These were initially sent November 17

1   of 2016.

2            MR. MICHELEN:  Judge, that's the amended response I
3   sent you, which was in February of this year.

4            THE COURT:  I understand.  Any time once we were
5   passed December 1, 2015, the new rules apply.  So let's sort of
6   cut to the chase.

7            MR. HUDSON:  Yes, your Honor.

8            THE COURT:  There is a strong likelihood, depending on
9   what my schedule is over the next week or two, that you are
10  going to get a published opinion that you're not going to like
11  because it is going to name you and serve as a wake-up call to
12  other lawyers to not make the same mistake you're making,
13  which, unfortunately, you're not alone in, and I've sort of
14  been waiting for the right case to come along and write an
15  opinion on.

16           Let's, however, get to the merits.  How much email or
17  other correspondence is there between the Brushy Mountain folks
18  and Mr. Fischer?

19           MR. HUDSON:  Your Honor, the answer is I'm not
20  100 percent sure.  The reason being is that during this time
21  period, a lot of time each individual person had their own
22  computer.

23           THE COURT:  Let me interrupt.  It's unduly burdensome
24  is one of the objections, and you've now just told me you don't
25  have a clue what's there.

1            How can it be burdensome if you don't even know what's
2    there?
3            MR. HUDSON:  Your Honor, this is a very, very, very
4    broad request.  Mr. Ficsher --
5            THE COURT:  How many emails are we talking about?
6            MR. HUDSON:  The emails that I saw, your Honor, just
7    relating to Bee-Quick from Mr. Shane Gebauer, we're dealing
8    with about 34.
9            THE COURT:  Oh, my God.  Thirty-four emails.  Note my
10   sarcasm, Mr. Hudson.  We're going to make this simple.  The
11   objections being in violation of Rule 34 with respect to
12   request number 1, and, therefore --
13           MR. HUDSON:  Your Honor, can I at least explain why we
14   think they're overly broad?  It's not really within the scope
15   of just Bee-Quick.  Mr. Ficsher purchased a bunch of products
16   from --
17           THE COURT:  Counsel, I understand that.  If you had
18   done this right, perhaps you would prevail and this would be
19   limited to Bee-Quick.  But when you don't follow the rules and
20   when you're telling me that Mr. Gebauer's emails totaled all of
21   34, I'm not really interested in wasting my time if you can't
22   follow rules.
23           The objections to number 1 are denied as frivolous and
24   violative of the rules, and therefore, you need to answer
25   request for production number one.

1          MR. HUDSON:  Yes, your Honor.

2          THE COURT:  Now, I am likely to similarly rule with a
3    lot of the rest of these.  So I'll give you a choice.  We can
4    continue down the road with me getting more and more annoyed
5    and, therefore, more and more of your objections being tossed
6    in their entirety, even if the request is overbroad, or --
7    today is Thursday -- by Monday you can serve amended responses
8    and agree with plaintiff's counsel on how soon you are going to
9    produce documents.

10         MR. HUDSON:  Yes, your Honor.  I'll do that.  Can we
11   at least talk about a couple of them, your Honor, especially
12   number 2.  We talked about that during our hearing in January.
13   Defendants have provided the catalogs.  We don't have any
14   revisions or amendments, but I'll make that clear in our
15   response to answer number 2.

16         THE COURT:  With all due respect, your actual response
17   says you haven't produced a catalog.  You produced a cover page
18   and the page for Bee-Quick or Natural Honey.

19         Are you now saying you're willing to produce the
20   entire catalog?  Or do you want to go with the issue of whether
21   your response complies with the rules or not?

22         MR. HUDSON:  Well, your Honor, when we were at the
23   hearing -- I think Mr. Michelen will agree -- we objected
24   because we hadn't produced the whole catalog, and we were
25   ordered to produce only the cover page and the page that had

1  the Bee-Quick or the Natural Honey Harvester on it.

2  THE COURT: You're one of 100 cases or whatever. I
3  don't remember absolutely everything. If that's what I
4  previously ruled, then I don't know why we're talking about
5  this request at all.

6  MR. MICHELEN: I'll tell you why, Judge. Because
7  since that time of the hearing, the Forrests have now testified
8  that they are the actual authors of the kind of witty remarks
9  that are the subject of this action. So some of the way the
10 rest of the products are described are now more relevant than
11 they were before.

12 We originally understood the primary defense to be
13 lack of originality and that it was not copyrightable and not
14 protectable. They now actually say that it was of actual
15 origin of theirs.

16 Our position, based upon that, is that that's the only
17 ad, if you will, that is of any wit or any similar content, and
18 we wanted to get some of the other ads to show that they're
19 provided either by the vendor or simply a simple description to
20 get a bigger picture of defendant's catalog overall.

21 THE COURT: Mr. Hudson, is there any reason, based on
22 that, that you shouldn't produce the entire catalogs?

23 MR. HUDSON: I think that our client came up with this
24 well before 2008. This was only limited to 2008.

25 THE COURT: You may have just opened yourself up to

1  your catalogs from day one on, but they didn't ask for that.
2  So so be it.
3              MR. HUDSON:  Your Honor, it's just going to take a lot
4  of manhours to copy them.  We don't have them in electronic
5  form.  They're only in paper form.
6              THE COURT:  Counsel, how many catalogs are we talking
7  about?  Was it one a year for the last six or seven years?
8              MR. HUDSON:  Yes, your Honor.
9              THE COURT:  Come on.  Counsel, with all due respect --
10 and I think we all know what it means when someone says "with
11 all due respect" -- take it to Kinko's.  Now, your 0 for 2.
12 Rule 37 says I should impose or may impose costs, fees,
13 whatever.
14             Do you want to go for the strikeout?  Or do you want
15 to try to work this out?
16             MR. HUDSON:  I'll try to work it out.  If we would
17 have had a meet-and-confer to start with under the rules, I
18 think that a lot of these issues could have been resolved.
19             THE COURT:  I suspect that's so.  Then the question
20 is:  Mr. Michelen, why wasn't there a meet-and-confer?
21             MR. MICHELEN:  Judge, it was after the deposition that
22 this other issue had come up, and we have had these discussions
23 with Mr. Hudson before with respect to the documents.
24             What brought this even to a quicker head was their
25 amended Rule 26 served in February, which said they're going to

1   use the exact documents that we demanded they had refused to
2   produce.
3            THE COURT:  Hand up the Rule 26.
4            MR. MICHELEN:  Let me just give you the date for the
5   record, your Honor.
6            THE COURT:  Yes.
7            MR. MICHELEN:  February 10.  If you look at page 4,
8   which I have the page turned to, that's what set this in
9   motion.  Frankly, with the deadline approaching, we asked for
10  the extension of discovery to address it.
11           THE COURT:  The description of the documents you're
12  going to use based on this, which are broad enough to drive a
13  truck through, certainly cover what the plaintiff is
14  requesting, which makes me even less happy.
15           MR. HUDSON:  Your Honor, I think that this Rule 26 on
16  page 4 aiai are documents that are in our possession, custody,
17  or control that would support plaintiff's contentions, not what
18  we're going to produce at trial.
19           THE COURT:  With all due respect, I think you need to
20  reread Rule 26(a), and to take the example of the simple
21  traffic accident and witnesses -- Rule 26(a) says it's the
22  stuff that's good for you that you will or may use because if
23  you don't list it, you can't use it.
24           In a traffic accident, if there are two witnesses, one
25  of whom says, the plaintiff ran the red light, which isn't very

1  good for the plaintiff, and the other one says, the plaintiff

2  was sideswiped by the defendant who was going 90 miles an hour

3  on a city street, the plaintiff only has to list on their 26(a)

4  that second witness.

5          Here you list the let's preserve all options, email

6  communications with plaintiff.  You don't say email

7  communications about Bee-Quick.  You don't say email

8  communications dated X, Y, Z dates but not others.

9          You've opened the door, to put it mildly, but you're

10 all wasting my time.  You're going to have another, if there

11 was one -- and if there wasn't one -- by telephone or in

12 person, probably with the location that exists here, it's going

13 to be by telephone, but not the nasty gram emails going back

14 and forth, I want this.  I'm not giving it to you, blah, blah,

15 blah.

16         There will be a revision on Monday, and we'll have a

17 conference on Tuesday, if that's what you think is necessary.

18 That's the only day next week after Monday that I'm available.

19 I'll squeeze you in.  If you want, I'll bring you in the week

20 of March 6 and give you a little more time to work it out, but

21 by that point, I would expect you to have produced all the

22 documents.

23         MR. HUDSON:  Your Honor, I will email Mr. Michelen and

24 ask him to set up a conference, and I am 100 percent confident

25 that we can get this issue resolved and we can work this out.

1            THE COURT:  Because you're out of time or almost out

2    of time on the discovery period, and I know that's probably the

3    last thing we'll take up.  Whatever you haven't produced that

4    you're going to have to produce, don't say to him, oh, I need

5    30 days to do it, let alone a longer time period, because even

6    if Mr. Michelen were to agree to that, I'm not.

7            MR. HUDSON:  Yes, your Honor.

8            THE COURT:  So I will expect to receive a letter from

9    all of you by close of business Monday, whether you have

10   resolved these issues or not.  And then depending on whether

11   you have or haven't will depend on whether -- most likely to

12   make it really work, I'll be setting a date for the week of

13   March 6.  So prepare for that.

14           What else do we need to do today from the plaintiff's

15   side?  Holding off on the when we're going to extend the

16   discovery cutoff.

17           MR. MICHELEN:  I believe that's it, as long as we wait

18   for the responses.  I guess we'll follow up, Judge.

19           THE COURT:  Mr. Hudson, any other issues from the

20   defense?

21           MR. HUDSON:  The only thing we have outstanding -- and

22   Mr. Michelen and I can talk about it tomorrow -- is that we're

23   still owed some discovery from the plaintiff back from a

24   discovery conference we had in front of Judge Pitman back in

25   May.

1        THE COURT:  I suggest you all work it out.  If you
2   waited from May to now to bring it to the Court's attention,
3   I'll leave three dots after that sentence.  Work it out, guys.
4        MR. HUDSON:  Yes, your Honor.
5        THE COURT:  The same Monday ruling, meaning by Monday
6   you're going to resolve things, or you're going to write a
7   letter telling me what's not resolved and attach whatever
8   documents I may need to resolve it, and we'll go from there.
9        So the cutoff, unless my notes are in worse shape than
10  I thought, passed a week ago.
11       MR. MICHELEN:  It was the day before I wrote the
12  letter.  So 2-16, your Honor, is my recollection.
13       THE COURT:  It was the 15th.  I won't quibble over the
14  day.  First of all, I know the objections to the R&R are still
15  pending.  I've got no control over the timing on that.
16       Is there going to be a summary judgment motion, or are
17  we able to go straight to trial?
18       MR. HUDSON:  Your Honor, we filed a letter brief in
19  accordance with the scheduling order on Friday indicating the
20  defendants are going to file a summary judgment motion.  We did
21  ask too that some of the issues on the summary judgment motion
22  are pending at the R&R -- if we could either wait until after
23  the R&R is ruled upon or at least have an extension from where
24  it is now, which is next Friday.
25       THE COURT:  Somehow I didn't see a copy of that.

1   Mr. Hudson, since you can't see what's going on, I'm just
2   pulling the letter off the computer.  As soon as I skim through
3   it, we'll deal with that a little further.
4              Mr. Michelen, what's your view?
5              MR. MICHELEN:  I don't oppose.  I leave it to the
6   Court's discretion, if they want to wait for a response on the
7   R&R rather than doing things twice.
8              THE COURT:  Remind me of one other thing, folks.  Is
9   this case a jury trial or a bench trial?
10             MR. MICHELEN:  I believe it's a jury trial.
11             MR. HUDSON:  Yes, your Honor.
12             THE COURT:  We are going to take an intermediate
13  approach.  So the summary judgment motion will now be due
14  April 3.  You might want to touch base, rather politely, of
15  course, with Judge Engelmayer, and see if he can give you any
16  clue as to when he'll get to the objections, and we'll go from
17  there.
18             With respect to the cutoff for discovery, only for the
19  outstanding discovery, I will say March 10.  Hopefully you'll
20  use less time than that.  I will consider the letter of
21  February 17 the request to make the summary judgment motion.
22  So you don't need further clearance.
23             So, as of now, the summary judgment motion is due
24  April 3.  I might kick it to the end of April.  After that at
25  some point, all bets are going to be off, and we're just going

1  to move the case, and whatever happens happens.

2  Does anyone have anything else?  Otherwise, I want to
3  talk with you all about settlement.

4  MR. MICHELEN:  Judge, only you might kick it meaning
5  only if the R&R hasn't come back?

6  THE COURT:  Correct.  Or if Judge Engelmayer decides
7  the motion on April 2.

8  MR. MICHELEN:  Nothing else from us, Judge.

9  THE COURT:  I would suggest, Mr. Hudson, in addition
10 to seeing what information, if any, you can get out of
11 Judge Engelmayer's chambers, that by, say, March 20 or
12 thereabouts or whenever you decide how much time you might need
13 to prepare the summary judgment motion, you don't cut it too
14 close, but you ask for a further extension, which I may or may
15 not grant.

16 MR. HUDSON:  Yes, your Honor.

17 THE COURT:  Is there anything from either side other
18 than settlement?

19 MR. MICHELEN:  No, your Honor.

20 THE COURT:  Mr. Hudson?

21 MR. HUDSON:  No, your Honor.

22 THE COURT:  I'll make the first statement on the
23 record, and then we can go off the record.  This case cries out
24 for settlement.  So my question that you can answer off the
25 record is why haven't you settled, what efforts have you had,

1    and what can I do to help you settle the case, because I cannot

2    imagine that the amount of damages Mr. Ficsher could win, even

3    if he prevails, are not going to be miniscule compared to

4    attorneys' fees that may or may not be awarded.

5            So, madam reporter, we're off.

6            (Recess)

7            THE COURT:  The parties should continue to talk

8    amongst themselves with respect to settlement and, more

9    importantly, should figure out what their availability is and

10   contact my secretary to see what works with my availability and

11   try to get it done sooner rather than later.

12           I'm not going to ask Judge Engelmayer not to rule

13   because that will just delay the case indefinitely.  If you

14   don't get in before he rules, you'll have the advantage or

15   disadvantage of having that.

16           I am going to assume that the letter I get from all of

17   you on Monday is going to say you have cured all your problems

18   and will tell me when you're each producing the missing

19   material to your adversary.  You do not give each other too

20   much extra time.

21           If there are disputes left over from that, we will

22   have a conference probably the week of March 6.  I'm going to

23   set the date.  Depending how complicated your remaining

24   problems are, for that, Mr. Hudson, you may have to be here in

25   person.

1           MR. HUDSON:  Yes, your Honor.

2           THE COURT:  Another incentive for you all to work
3  things out.

4           The usual drill.  The transcript is the Court's order.
5  As I say, depending on my schedule and how much time I want to
6  spend not for review but for the educational bar at large,
7  there may be a decision criticizing the noncompliance with
8  amended Rule 34.  If there is, there is.  If there isn't, there
9  isn't.  So be it.

10          Work very, very, very hard to resolve this case.
11 Normally in settlement conferences, in addition to clients
12 being here, I require the parties to send an ex parte, meaning
13 not to your adversary, settlement memo explaining why you think
14 the case should settle in the way you think it should settle
15 and including whatever you all had in discussion on the bid and
16 ask going forward.

17          Think about in this case whether it makes sense to do
18 that in two pieces:  One that talks about the DMCA and other
19 issues we were talking about off the record and exchange that
20 with each other so you'll each be better prepared and then a
21 copy to me of course.  Then a separate ex parte that says, we
22 are willing to settle for three times the gross national
23 product.  They offered us a $10 MetroCard.  Now our real
24 approximate range is X.  Just think about that.

25          MR. MICHELEN:  I think that would be very beneficial.

1                THE COURT:  The only question is I don't want -- and I
2    think we can say that it's under Rule 408, only for settlement
3    purposes, so you can do a little less pounding on the table and
4    a little more candor about, well, this case supports us, but
5    this other case can be read the other way, and we'll be candid
6    with our adversary and the Court with respect to that, not that
7    you shouldn't in a formal motion, but we're doing it for
8    settlement purposes.
9                So that's what I'll expect, unless you all do
10   something different, even though the order you will eventually
11   get will probably be the in-the-can order that says it's all ex
12   parte.
13               THE COURT:  Any follow-up questions from that?  Or are
14   we done?
15               MR. MICHELEN:  For the plaintiff, Judge, we're done.
16   Thank you very much.
17               THE COURT:  Mr. Hudson?
18               MR. HUDSON:  Your Honor, I do have one question as
19   related to the settlement conference.  This is a question that
20   came from my client.  If they had an independent adjustor with
21   settlement authority there, is that acceptable?  Or does
22   your Honor want someone from the National, which is the
23   insurance company, to be at the settlement conference?
24               THE COURT:  Whoever has authority to write a check for
25   the amount that plaintiff is asking for.

1               MR. HUDSON:  Okay.

2               THE COURT:  What I mean by that is I don't care
3    whether it is the person from National or the adjustor that
4    National has hired independently, but if that person is coming,
5    it's not going to be, you know, Judge, I'm tapped out at three
6    MetroCards because that's all the folks at headquarters who I
7    report to gave me, but I appear.  I have the pocketbook.  I
8    have full authority.  If convinced that the plaintiff is right,
9    I can authorize the writing of the check for the amount that
10   the plaintiff is asking for.  Got it?

11              MR. HUDSON:  Yes, sir.

12              THE COURT:  But I want somebody from your client
13   in-house as well.  It doesn't have to be all three of them,
14   whether it's Mr. Gebauer or one of the Fischers or even
15   somebody else, somebody who can represent the client in case --
16   by the way, think about whether, in addition to this money
17   changing hands, I know there is now probably bad blood among
18   the clients, but you used to do business together.

19              If the defendant is writing a check for X, then the
20   plaintiff is getting a check for X.  It's equally painful and
21   beneficial to the two.  If there is a business deal that can be
22   part of the settlement, we will sell your product, whatever,
23   each side might actually be getting some additional benefit
24   from that.

25              Think about that as well.  It may be that all that

1  would be doing is vying another lawsuit down the road.  If that
2  is possible, that's certainly a way to expand the pie in terms
3  of settlement availability.
4          The usual drill.  I'll require both sides to purchase
5  the transcript.  You know how to make arrangements either with
6  the reporter or online to order it.  With that, we are
7  adjourned.
8          MR. MICHELEN:  Thank you, your Honor.
9          MR. HUDSON:  Thank you, your Honor.
10         (Adjourned)