# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JAMES H. FISCHER,

                                    Plaintiff,

v.

STEPHEN T. FORREST, Jr., SANDRA F.
FORREST, SHANE R. GEBAUER, and
BRUSHY MOUNTAIN BEE FARM, INC.

                                    Defendants.

**CIVIL ACTION NO.:** 14-CV-1304
                                    14-CV-1307

**DEFENDANTS STEPHEN T. FORREST,
JR., SANDRA F. FORREST, SHANE R.
GEBAUER, AND BRUSHY MOUNTAIN
BEE FARM, INC.'S MEMORANDUM IN
SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Statement of Facts............................................................................................................5

Argument ..........................................................................................................................8

Fischer Has No Support For His Allegations Against the Individual Defendants...................8

Fischer Has No Evidence Supporting His Claims That Sandra Forrest Is Individually Liable......9

Fischer Has No Evidence Supporting His Claims That Stephen Forrest Is Individually Liable...11

Fischer Has No Evidence Supporting His Claims That Shane Gebauer Is Individually Liable…14

Fischer Has No Evidence of Passing-off His Product By Individual Defendants…..………...15

Fischer Does Not Have a Contract With Defendants Individually………..………………….15

The Individual Defendants Did Not Engage In A Bait-and-Switch Scheme……..…………....16

Copyright Infringement…………………………………………………………………………17

Statutory Damages Are Not Available For Fischer…………………………………………...17

Fischer Failed To Provide A Proper Deposit Copy Resulting In An Invalid Registration
Certificate…………………………………………………………………………………………19

Fischer Made Material Misrepresentations in His Copyright Application, Resulting In Its Invalidity…………………….............................................................................................21

No Evidence Of Copying Hi-Key Photo……………………………...………………………22

The Four Phrases Do Not contain an Appreciable Amount Of Original Text……...………........22

The Asserted Phrases Consist of Common Language That Can Only Be Expressed In A Limited Number of Ways, and Thus Is Not Protectable……………...…………………..………….24

Fischer's Asserted Copyright Registration Is Not For The Asserted Short Phrases, But The Entire Bee-Quick.comWebsite…………………………………………………………………….24

Defendants Have Not Engaged In Contributory Copyright Infringement………………………26

DMCA………………………………………………………………………………………...26

Fischer Did Not Allege A Claim for Trademark Infringement………..…...…………………29

Fischer Has No Evidence of Actual Confusion.  Therefore, Fischer's Right of Publicity Claim Brought Under 15 U.S.C. § 1125(a) Should Be Dismissed……………………..…………...29

Fischer Has No Evidence of Actual Confusion.  Therefore, Fischer's Right of False Advertising Claims Brought Under 15 U.S.C. § 1125(a) Should Be Dismissed……………...…………...31

Common Law Unfair Competition……………………………………………………………33

Unfair Business Practices……………………………………………………………………35

Breach of Contract……………………………………………………………………………36

Unjust Enrichment………………………………………………………………..………..37

Conclusion…………………………………………………………………………....…..38

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Argentto Sys., Inc. v. Subin Assocs., LLP*, No. 10-CV-8174, 2011 WL 2534896, at *2 (S.D.N.Y. June 24, 2011)……………………………………………………………………………17

*Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992)……………………………23

*Albert v. Apex Fitness, Inc.*, No. 97 Civ. 1151, 1997 WL 323899, at *1 (S.D.N.Y. June 13, 1997)………………………………………………………………………………………...…30

*Alberto-Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705, 711 (7th Cir. 1972)…………………23

*Banff Ltd. v. Limited, Inc.,* 869 F.Supp. 1103, 1333 (S.D.N.Y. 1994)……………………………26

*Banxcorp v. Costco Wholesale Corp.,* 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010)…………….28

*Bruce Lee Enter., LLC v. A.V.E.L.A., Inc.*, No. 10 Civ. 2333(KMW), 2013 WL 822173, at *19 (S.D.N.Y. Mar. 6, 2013)……………………………………………………………………………29

*Burck v. Mars, Inc.*, 571 F.Supp.2d 446,571 (S.D.N.Y. 2008)……………………………..……32,34

*Champagne v. Diblasi*, 36 Fed.Appx. 15, 17 (2d Cir. 2002)……………………………………30

*Craigslist, Inc. v. Meyer*, 2011 WL 1884555 (N.D. Cal. May 18, 2011)……………………...…27

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014)…………..………35

*Data General Corp. v. Grumman Systems Support Corp.,* 36 F.3d 1147, 1161–62 (1st Cir.1994)……………………………………………………………………………………………20

*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2003)………………………………..…..23

*ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 925-26 (6th Cir. 2003)…………………………...30

*Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F.Supp. 728, 735-36 (S.D.N.Y. 1996)………………………..17

*George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992)……………..………30

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)*...26

*Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)…………..…………………….……24,25

*Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)…………………………………………36

*Hudson & Broad, Inc. v. J.C. Penney Corp.*, 553 F. App'x 37, 38 (2d Cir. 2014)……..….……36

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 35 (2d Cir.1995)………..……34

*Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.,* 266 F. 2d 541 (2d Cir. 1959)…………………23

*Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1012 (2d Cir. 1995)……………..…………...17

Laureyssens v. Idea Group, Inc., 964 F.2d 131, 140 (2d Cir. 1992)……………..……………25

*Louis Vuitton Malletier v. Dooney & Bourke, Inc. (Vuitton I)*, 340 F.Supp.2d 425, 436 (S.D.N.Y. 2004)………………………………………………………………….………………34

*Lewinson v. Henry Holt and Co., LLC*, 659 F.Supp.2d 547, 564 (S.D.N.Y. 2009)…………….25

*Matthew Bender & C o., v. West Publ'g Cp., 158 F.3d 693, 706 (2d cir. 1998)*………………..26

*Medisim v. BestMed LLC*, 910 F.Supp.2d 591, 606 (S.D.N.Y. 2012)…………………………33

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir.1960)*……………25

*Peters v. West*, 776 F. Supp. 2d 742, 750 (N.D. Ill. 2011)………………………………………23

*Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*, 926 F.2d 134, 139 (2d Cir. 1991)…………………………………………………………………………………32

*Solid Oak Sketches, LLC v. 2k Games, Inc. et al.*, No. 16-CV-724, 2016 WL 4126543, at \*2 (S.D.N.Y. August 2, 2016)…………………………………………………………….……...17

*Stutman v. Chemical Bank*, 95 N.Y. 2d 24, 29 (2000)……………………………………...……35

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 111(2d Cir. 2003)………………………………………………………………………………………….25

*Walker v. Time Life Films, Inc.,* 784 F.2d 44 (2d Cir.1986)……………………………………..25

*Williams v. Crichton,* 84 F.3d 581 at 588 (2d Cir. 1996)……………………………………..25

**Statutes**

17 U.S.C. §1202……………………………………………………………………….……………22

17 U.S.C. §1202 (b)…………………………..……………………………………….…………27,28

17 U.S.C. § 408(a)………………………………………………………………………………20

17 U.S.C. § 408(b)…………………………………………………………………..…………21

17 U.S.C. § 412……………………………………………………………………………………17

**Other Authorities**

5 Patry on Copyright § 17:119…………………………………………………………...21

3 Patry on Copyright § 9:9…………………………………………………………………….…21

2 Nimmer on Copyright, § 7.20[A]……………………………………………………….……..22

Copyright Circular 34, U.S. Copyright Office (2012)…………………………………………...22

## STATEMENT OF FACTS

Brushy Mountain Bee is really a great American story.  The company was started by former school teachers, Stephen and Sandra Forrest.  Stephen Forrest had two hobbies-beekeeping and woodworking. He began making bee hives and offering them for sale to fellow beekeepers. He was able to sell the beehives as fast as he could make them, realizing there was a need for well-made beekeeping equipment around the western North Carolina area. Thereafter, he began constructing and selling other beekeeping equipment.  Steve and Sandy realized there was not a centralized location or catalog where a beekeeper could buy their beekeeping equipment.  On a part time basis, the Forrests started Brushy Mountain for selling beekeeping equipment.

Within a few years, the profits of Brushy Mountain surpassed the salary they made as school teachers, so they left the teaching profession to concentrate entirely on their new business venture.  Brushy Mountain eventually opened a retail location in Moravian Falls, NC and continued to expand rapidly.  While Brushy Mountain primarily manufactured and sold its own products, it began including products from others in their catalog.

The Forrests met Plaintiff Jim Fischer in the mid-to- late 90s at a beekeeping convention. It was a number of years later Fischer approached the Forrests about including his product, Bee-Quick, in their catalog.  In early 2002, Brushy Mountain began selling Fischer's Bee-Quick product. (Stephen Forrest Decl. ¶ 4). Brushy Mountain was not an "authorized dealer" or have a contract with Fischer as he claims in the complaint.  (Stephen Forrest Decl. ¶ 4). Instead, Brushy Mountain merely purchased product from Fischer and resold through its catalog and website. (Stephen Forrest Decl. ¶ 4).  When Brushy Mountain needed more product, it would buy it from

Fischer.  (Stephen Forrest Decl. ¶ 4).  The 2002 catalog was the first Brushy Mountain catalog

that included Bee-Quick, along with about 1000 other products.  (Stephen Forrest Decl. ¶ 5). In

preparing the ad for the catalog, Brushy Mountain hired a draftsman to make line drawings of the

product and Sandra Forrest designed the layout as shown below. (Sandra Forrest Decl. ¶¶ 3

and4).



**Fischer's Bee Quick™**

This 100% Natural, non-toxic blend of oils and herb extracts works just like Bee Go® and it smells good! Fischer's Bee Quick™ is a safe, gentle, and pleasant way to harvest your honey.  Are you tired of your spouse making you sleep in the garage after using Bee Go®?  Are you tired of using a hazardous product on the bees you love?  Then this is the product for you!

| | | | |
|---|---|---|---|
| Catalog #779 | Fischer's Bee Quick™ (7 oz.) ............................................Shp. Wt. 1 lb. | $12.75 |
| Catalog #779G | Fischer's Bee Quick™ (1 Gallon) ............................................Shp. Wt. 15 lbs. | $63.50 |

**Exhibit L (Continued) – Defendant's 2006 Catalog Section For Fischer's Bee-Quick**

A few years later, Brushy Mountain updated their catalog appearance, and instead of line

drawings of product, it included photographs of the products.  An employee of Brushy Mountain,

or a third party hired by Brushy Mountain, would photograph the products.  (Shane Gebauer

Decl. ¶ 6). As more people had transitioned to e-commerce, Brushy Mountain evolved and began

selling its products through a website, which was merely a copy of the information contained

within the catalog, including the photographs.

Around the beginning of 2007, Defendant Shane Gebauer was hired from another

beekeeping supply company.  (Hudson Aff. Ex. B, p. 6; lines 4-7).  As Steve and Sandy were

advancing in age, they needed someone younger to help manage the business, especially an

individual who is technically inclined to assist with the website.  (Hudson Aff., Ex. D, p. 26,

lines 3-14 and 23-25; p.27, lines 1-6).  During this same time period, Sandy Forrest began

transitioning out of the business and pursuing other interests.  (Hudson Aff., Ex. A, p. 17, lines 5-

25).  Steve Forrest was also beginning to take a lessor role within the management of the

business, including transitioning the design of the catalog and website to Shane Gebauer. (Hudson Aff., Ex. D, p. 26, lines 3-14 and 23-25; p.27, lines 1-6).

Brushy Mountain began having trouble obtaining Bee-Quick from Fischer.  (Hudson Aff., Ex. D, p. 19, lines 22-25; p. 20, lines 1-4; Ex. B. p. 52, lines 4-6).  When orders were placed, the product would trickle in.  (Hudson Aff., Ex. B, p. 39, lines 9-13).  Oftentimes, Fischer would not respond to repeated requests for updates on product shipment.  (Ex. 24).   It was not uncommon for Brushy Mountain not to have a supply of Bee-Quick for months at a time.  (Hudson Aff., Ex. D, p. 22, lines 16-25; p. 23, lines 1-21).

Since the supply of Bee-Quick became so unreliable, Brushy Mountain was left with no choice but to purchase another product that served the same function from another supplier and replace Bee-Quick.  (Hudson Aff., Ex. B, p. 54, lines 12-25; p. 55, lines 1-4).  This product was Natural Honey Harvester.  On December 10, 2010, an employee of Brushy Mountain informed Fischer, by email,  they were discontinuing his product.  (Ex. 3b Second Amended Compl.). Fischer has affirmatively stated in his Complaints that on December 10, 2010, the license he granted to Brushy Mountain for the use of his phrases was revoked "immediately." (1304 Third Amended Compl. ¶35).

Even though Fischer claims he authored the four phrases used by all Defendants, it was actually Sandra Forrest that developed most, if not all, of the phrases (Hudson Aff., Ex. D, p. 16, lines 22-25; p. 17, lines 1-25; Ex. C, p. 8, lines 21-25; p. 9, lines 1-24).  Fischer alleges he completed his copyrighted works in 2000, but it was not until February 7, 2011 that he filed a copyright application for "text and images of Bee-Quick.com website." (Ex. 4).  In the copyright application, he claimed to have created the text, photograph(s), compilation, editing, and artwork on the website.  (Ex. 4).  The timing of Fischer's copyright application is not coincidental.

Brushy Mountain's 2011 catalog introducing Natural Honey Harvester was shipped on January 21, 2011.  (Ex. 7) and a copy of the catalog was sent to Fischer.  (Gebauer Decl. ¶ 16).

Fischer made many allegations within his complaints about the roles and actions of the individual defendants.  Many of these allegations are quite serious.  He has alleged "Defendants personally ordered, participated in, and approved of all actions documented and alleged in the Complaint."  (1304 Third Amended Compl. ¶ 20).  "Defendants ordered the intentional display of the infringing [w]ork."  (1304 Third Amended Compl. ¶119).  "Defendants removed CMI, knowing that such removal would conceal their infringement of Plaintiff's exclusive rights."  (1304 Third Amended Compl. ¶93).   As shown below, these claims are false and unfounded.

## ARGUMENT

In light of overwhelming evidence submitted herein, Fischer cannot sustain his burden to show a disputed material issue of fact sufficient to defeat Defendants' Motions for Summary Judgment.[1]

### I.   Fischer Has No Support For His Allegations Against the Individual Defendants

---

[1] Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where the record establishes that there is no "genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where, as in this case, the movant is able to establish a prima facie basis for summary judgment, the burden then shifts to the opposing party who must produce evidence which establishes the existence of a material factual dispute that a reasonable jury could resolve in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996). The Court is required to view all of the facts "in the light most favorable" to the non-moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and must draw all reasonable inferences in that party's favor. *See Fincher v. Depository Trust & Clearing Corp*., 604 F.3d 712, 720 (2d Cir. 2010). To defeat summary judgment, the opposing party must demonstrate that a genuine issue of fact exists by "citing to particular parts of materials in the records" and "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). As the Supreme Court held in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), only disputes concerning "facts that might affect the outcome of the suit under governing law" will defeat a motion for summary judgment.

Case 1:14-cv-01304-PAE-AJP   Document 175   Filed 04/19/17   Page 9 of 38

Fischer's Complaints lodge many serious allegations against the individual Defendants. At the time of filing the Complaints and after the close of discovery, Fischer has no evidence to support these allegations.

## A.    Fischer Has No Evidence Supporting His Claims That Sandra Forrest Is Individually Liable

In an effort to support his allegations of personal liability against Defendant Sandra Forrest, Fischer falsely and maliciously alleges Sandra Forrest "personally ordered, participated in, and approved of all the actions documented and alleged in this Complaint." (1304 Third Amended Compl. ¶19). During his deposition, Fischer admitted this was not true. Fischer admitted during his deposition that he has no evidence Mrs. Forrest ordered someone to engage in copyright infringement. He admitted he had no evidence Mrs. Forrest participated in or approved of someone engaging in copyright infringement.

Q.      Do you have any proof that Sandra Forrest participated in or approved of copyright infringement?
A.      Only to the extent that she said that she assisted Shane with some of the website and catalog work after he took over doing it.   In other words, even though he was still responsible, I think she said that she worked with him on that occasionally.
Q.      Do you have any other evidence?
A.      No.
(Hudson Aff., Ex. A, p. 211, lines 14-24).

In her deposition, Mrs. Forrest stated the following:
Q.      Now, when Shane came onto the company, did you continue to work with him to, you know, work on the catalog and website together?
A.      I worked for two years after – on and off on a part-time kind of basis after Shane came.
Q.      You told us you started kind of reducing your duties at that point; correct?

A.      That's right, yes.
Q.      Okay. But whatever duties that you did continue to have, were they still related mostly to the catalog and website?
A.      No, they weren't.  I supervised construction of a new building that we put on the place, a new addition, and I took minutes at our weekly staff meeting.  And that's how I heard about the problem with Fischer.
Q.      So then your previous duties related to the catalog and the website were transferred over to Shane; is that fair to say?
A.      That's right because he had the most computer experience and we were moving in that direction and I didn't know anything about it.
(Hudson Aff., Ex. C, p. 17, lines 5-25).

Shane Gebauer started at Brushy Mountain in 2007 (Hudson Aff. Ex. B, p. 6; lines 4-7),

meaning Mrs. Forrest would have ceased working on the catalog and website in 2009, well before

the actions complained of in the present case began.

Fischer further alleges in his Third Amended Complaint that "[i]n March 2011, Defendants

infringed upon Plaintiff's rights by ordering, overseeing, participating in, and approving of the

verbatim display of Plaintiff's copyrighted Works." (1304 Third Amended Compl. ¶93). Again,

this allegation is completely false.  Fischer admitted he has no evidence Mrs. Forrest ordered,

oversaw, participated in or approved of the verbatim display of Plaintiff's copyrighted works.

Q.      Do you have any evidence that Sandra Forrest oversaw, participated in, or approved of the verbatim display of your copyrighted works?
A.      Other than her management of the company, no.   Management and ownership, I should add, for both Forrests.
(Hudson Aff., Ex. A, p. 143, lines 13-18).

Fischer continued his false allegations in paragraph 99 of the Third Amended Complaint,

wherein he alleges "[i]n March 2011, Defendants ordered the intentional display of the infringing

Work on Defendants' 2011 online ordering website, knowing the copyright management

information had been removed without authority of the copyright owner…." (1304 Third Amended

Compl. ¶99).

10

Q.    Do you have any evidence that Sandra Forrest ordered the verbatim display of your copyrighted works?

A.    No.

(Hudson Aff., Ex. A, p. 142, lines 1-5).

Q.    Do you have any evidence that Sandra Forrest removed any metadata from your photos?

A.    No. But it happened, and I'd like to know who, if not them, authorized it. Because that's just as bad as doing it.

(Hudson Aff., Ex. A, p. 138, lines 16-20).

Fischer alleges "Defendants' website uses Plaintiff's name in a manner that is intended solely to mislead and confuse both customers and web search engines."  (1304 Third Amended Compl. ¶ 204).  Again, this allegation is entirely untrue.  Sandra Forrest does not have a website (Sandra Forrest Aff. ¶5) and all Exhibits attached to Fischer's Complaint clearly evidence the website complained of is Brushy Mountain's website.

To support his False Advertising claim against Sandra Forrest, Fischer alleges "Defendants' statement on their 2011 web page…, created and displayed under the direct orders and personal supervision of Defendants…."  Again, this claim is completely false.  Sandra Forrest does not have a website (Sandra Forrest Aff. ¶5).  Exhibit 7 submitted by Fischer in his Second Amended Complaint clearly shows the webpage is Brushy Mountain's website and not that of Sandra Forrest (attached as Exhibit 3 hereto).  Sandra Forrest had no responsibility for the website in 2011 and did not write the text for the description of Natural Honey Harvester. (Hudson Aff., Ex. C, p. 17, lines 5-25; p. 19, lines 17-22; Sandra Forrest Aff. ¶6).

Fischer has no evidence Sandra Forrest is individually liable for any of the causes of action brought against her or that she engaged in any of the conduct alleged.  In fact, Fischer never interacted with Mrs. Forrest very much, and if they did interact, it was just socially.  (Hudson Aff., Ex. A, p. 183, lines 24-25; p. 184, lines 1-3).

**B.    Fischer Has No Evidence Supporting His Claims That Stephen Forrest Is Individually Liable**

Fischer falsely and maliciously alleges Stephen Forrest personally ordered, participated in, and approved of all the actions documented and alleged in this Complaint." (1304 Third Amended Compl. ¶19). During his deposition, Fischer admitted this was not true. Fischer admitted during his deposition that he has no evidence Mr. Forrest ordered someone to engage in copyright infringement. He admitted he had no evidence Mr. Forrest participated in or approved of someone engaging in copyright infringement.

> Q.      Do you have any evidence that Steve Forrest participated in or approved of copyright infringement?
> A.      Nothing other than his sworn testimony to that effect.
> (Hudson Aff., Ex. A, p. 211, line 25; p. 212, line 1-5).

During Mr. Forrest's deposition, he certainly did not testify to participating in or approving copyright infringement. Instead, Mr. Forrest testified that he had no involvement with the catalog or website after 2009.

> Q.      Was one of those responsibilities revealing the content of the catalog?
> A.      Well, when Shane came, for the first two years I held his hand and sat down with him and went through the catalogs, went through the copy, went through the pricing, went through the wholesale pricing. And after two years, I didn't do it anymore. I wanted to get out of it. I didn't enjoy doing the – excuse me?
> Q.      No, please finish your answer.
> A.      After I had been through the catalog with him and worked on the catalog for two years, it was totally his baby.
> Q.      And the same with the website?
> A.      He –
> Q.      Actually took over the content and the development of the website?
> A.      Totally. When he was at Betterbee, they – the software that they were using up there had a website that was tied to it. And when he came down, he took that over and he was in charge of all of that. He did the website completely.
> (Hudson Aff., Ex. D, p. 26, lines 3-14 and 23-25; p.27, lines 1-6).

Shane Gebauer started at Brushy Mountain in 2007 (Hudson Aff. Ex. B, p. 6; lines 4-7), meaning Mr. Forrest would have ceased working on the catalog and website in 2009, well before the actions complained of in the present case began.

Fischer further alleges in his Third Amended Complaint that "[i]n March 2011, Defendants infringed upon Plaintiff's rights by ordering, overseeing, participating in, and approving of the

verbatim display of Plaintiff's copyrighted Works." (1304 Third Amended Compl. ¶93). Again, this allegation is completely false.  Fischer admitted he has no evidence Mr. Forrest ordered, oversaw, participated in or approved of the verbatim display of Plaintiff's copyrighted works.

> Q.      Do you have any evidence that Steve Forrest oversaw or participated or approved in the verbatim display of your copyrighted works?
> A.      Other than his management of the company, no.
> (Hudson Aff., Ex. A, p. 143, lines 8-12).

Fischer continued his false allegations in paragraph 99 of the Third Amended Complaint, wherein he alleges "[i]n March 2011, Defendants ordered the intentional display of the infringing Work on Defendants' 2011 online ordering website, knowing the copyright management information had been removed without authority of the copyright owner…." (1304 Third Amended Compl. ¶99).

> Q.      Do you have any evidence that Steve Forrest ordered the verbatim display of your copyrighted works?
> A.      No.
> (Hudson Aff., Ex. A, p. 141, lines 22-25).
> Q.      Do you have any evidence that Steve Forrest removed any metadata from your photos?
> A.      Specifically with his own two hands, no.
> (Hudson Aff., Ex. A, p. 138, lines 13-15).

Fischer alleges "Defendants' website uses Plaintiff's name in a manner that is intended solely to mislead and confuse both customers and web search engines."  (1304 Third Amended Compl. ¶ 204).  Again, this allegation is entirely untrue.  Stephen Forrest does not have a website (Stephen Forrest Aff. ¶6) and all Exhibits attached to Fischer's Complaint clearly evidence the website complained of is Brushy Mountain's website.

To support his False Advertising claim against Stephen Forrest, Fischer alleges "Defendants' statement on their 2011 web page…, created and displayed under the direct orders and personal supervision of Defendants…."  Again, this claim is completely false.  Stephen Forrest

does not have a website (Stephen Forrest Aff. ¶6). Exhibit 7 submitted by Fischer in his Second

Amended Complaint clearly shows the webpage is Brushy Mountain's website and not that of

Stephen Forrest. Stephen Forrest had no responsibility for the website in 2011 and did not write

the text for the description of Natural Honey Harvester. (Hudson Aff., Ex. D, p. 26, lines 3-14 and

23-25; p.27, lines 1-6; p. 37, lines 20-24; Stephen Forrest Aff. ¶ 7).

Fischer has no evidence Stephen Forrest is individually liable for any of the causes of action

brought against him or that he engaged in any of the conduct alleged.

**C.      Fischer Has No Evidence Supporting His Claims That Shane Gebauer Is Individually Liable**

Fischer falsely and maliciously alleges that Shane Gebauer in March 2011 "ordered the

intentional display of the infringing Work on Defendants' 2011 online ordering website, knowing

the copyright management information had been removed without authority of the copyright

owner…." (1304 Third Amended Compl. ¶99).

Q.      Do you have any evidence that Shane Gebauer ordered the verbatim display of your
copyrighted works?
A.      Well, once again, it's like who else would give that order except one of those three.
But no, no specific email, no specific phone call, nothing.
Q.      Do you have any evidence whatsoever to prove that Shane Gebauer ordered the
verbatim display of your copyrighted works?
A.      Pending deposing the entire staff that reported to him, no.
(Hudson Aff., Ex. A, p. 141, lines 10-21).
Q.      What evidence to you have that shows Shane Gebauer removed –
       MR. MICHELEN: Just answer the question.
Q.      -- metadata—
A.      I have no such evidence.
Q.      So we have a clear record, do you have any evidence that Shane Gebauer authorized
anyone to remove metadata from your photographs?
A.      No.
(Hudson Aff., Ex. A, p. 138, lines 3-11).

Fischer alleges "Defendants' website uses Plaintiff's name in a manner that is intended

solely to mislead and confuse both customers and web search engines." (1304 Third Amended

Compl. ¶ 204). Again, this allegation is entirely untrue. Shane Gebauer has never had a website

(Shane Gebauer Aff. ¶4) related to bee keeping/bee supplies and all Exhibits attached to Fischer's Complaint clearly evidence the website complained of is Brushy Mountain's website.

To support his False Advertising claim against Shane Gebauer, Fischer alleges "Defendants' statement on their 2011 web page…, created and displayed under the direct orders and personal supervision of Defendants…." Again, this claim is completely false. Shane Gebauer does not have a website (Shane Gebauer Aff. ¶4). Exhibit 7 submitted by Fischer in his Second Amended Complaint to support this claim clearly shows the webpage is Brushy Mountain's website and not that of Shane Gebauer.

Fischer has no evidence Shane Gebauer is individually liable for any of the causes of action brought against him or that he engaged in any of the conduct alleged.

### D.   Fischer Has No Evidence of Passing-Off His Product By Individual Defendants

Fischer alleges "Defendants' extensive personal efforts at passing-off their own product as Plaintiff's product as described above was a scheme primarily aimed at Defendants' customers-beekeepers…." to support his Unfair Business Practices claim (1304 Third Amended Compl. ¶ 234). Again, Fischer has no proof such a scheme even existed.

> Q.     Has anybody told you that they thought they were buying Fischer's Bee-Quick, but they'd get Natural Honey Harvester?
> A.     No specific individual, no. But as a matter of law, a holdover franchisee, if you will, who continues to use the marks that he's no longer authorized to use is counterfeiting. So, you know, it's the mere use of it that causes the actual confusion.
> (Hudson Aff., Ex. A, p. 150, lines 4-12).

### E.   Fischer Does Not Have A Contract With Defendants Individually

Fischer alleges Defendants had a "Contract of Indefinite Duration" under the Uniform Commercial Code. This is again a falsehood. Fischer admits in his deposition that he never had a written contract with the individual Defendants.

Q.     Did you ever have any written agreement with Sandra Forrest individually regarding Bee-Quick?
A.     No.
(Hudson Aff., Ex. A, p. 177, lines 15-17).

Q.     Did you ever have any written agreement with Steve Forrest regarding Bee-Quick?
A.     Individually?
Q.     Yes.
A.     No.
(Hudson Aff., Ex. A, p. 177, lines 6-10).

Q.     Did you ever have any written agreement with Shane Gebauer individually regarding Bee-Quick?
A.     No.
(Hudson Aff., Ex. A, p. 177, lines 11-13).

**F.     The Individual Defendants Did Not Engage In A Bait-And-Switch Scheme**

Finally, Fischer alleges "Defendants have infringed Plaintiff's rights, and, in doing so, have baited-and-switched customers who before bought only Plaintiff's product, to mistakenly buying Defendants' knock-off" to support his unjust enrichment claim.  (1304 Third Amended Compl. ¶241).  The Defendants state in their declaration they have never passed off Natural Honey Harvester as Bee-Quick (Shane Gebauer Decl. ¶ 4; Stephen Forrest Decl. ¶ 8; Sandra Forrest Aff. ¶ 7).  Fischer has absolutely no proof to support his claim the individual Defendants infringed any of his rights or engaged in a bait-and-switch scheme.

Q.     Are you aware of anybody, sitting here today, by name, that was the victim of a bait and switch with Brushy Mountain Bee Farm?
A.     There's no one sitting here today that has been a victim of the bait and switch –
       MR. MICHELEN: He said as you sit here today –
A.  No, I don't know.  No.
Q.     So we have a clear record, can you tell me the name of anybody who has been the victim of a bait and switch scheme by Brushy Mountain Bee Farm?
A.     Not yet.
       (Hudson Aff., Ex. A, p. 213, lines 11-25; p. 214, lines 1-3).

## II.    Copyright Infringement

### A.  Statutory Damages Are Not Available For Fischer, His Copyright Claims Must Be Dismissed

The only damages Fischer is seeking in this entire lawsuit are statutory damages.  (Exs. 1 and 2; Hudson Aff. Ex. E (Answer to Int. No. 11). However, in order for Fischer to obtain statutory damages for copyright infringement, he must have registered his copyright prior to the alleged infringement.  *See* 17 U.S.C. § 412; *Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1012 (2d Cir. 1995); *See also Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F.Supp. 728, 735-36 (S.D.N.Y. 1996)(dismissing plaintiff's statutory damages claims where plaintiff's complaint alleged infringement prior to registration).  Even "[w]here the alleged infringement begins before registration and continues after registration, statutory damages and attorney fees are still unavailable." *Argentto Sys., Inc. v. Subin Assocs., LLP*, No. 10-CV-8174, 2011 WL 2534896, at *2 (S.D.N.Y. June 24, 2011)(citations omitted); *see also Ez-Tixz*, 919 F.Supp. at 736 ("Under section 412, infringement 'commences' when the first act of infringement in a series of on-going discrete infringements occurs."(citations omitted)).  This district has established a "bright-line rule that precludes recovery of statutory damages where the first act of infringement in a series of ongoing infringements occurred prior to the work's copyright registration, finding such a bright line rule preferable to case-by-case analyses of whether a series of infringements 'has stopped sufficiently such that the restart continues a new set of infringements.'" *Solid Oak Sketches, LLC v. 2k Games, Inc. et al.*, No. 16-CV-724, 2016 WL 4126543, at *2  (S.D.N.Y. August 2, 2016).

In his Complaint, Fischer alleges he gave Defendants specific permission for defendants to use his copyrighted works. (1304 Third Amended Compl. ¶33).  Fischer further alleges on December 10, 2010 "Defendants immediately lost any right, license, or permission to use any of Plaintiff's intellectual property."  (1304 Third Amended Compl. ¶35).  "When Defendants had

announced in their email of Dec 2010 that they would no longer carry Plaintiff's product, any permission to use Plaintiff's copyrighted works was inherently revoked." (1304 Third Amended Compl. ¶61). Brushy Mountain's 2010 webpage containing Fischer's alleged copyrighted works is attached as Exhibit 7 to his Second Amended Complaint. (Ex. 3). This exhibit shows Brushy Mountain's website as it existed on December 26, 2010 as evidenced by the date in the upper right hand corner (a clearer copy of this document is attached as Exhibit 5 hereto and Exhibit F to Mr. Gebauer's Declaration). The effective date is listed as February 7, 2011 on his Copyright Registration certificate attached as an Exhibit to Fischer's Third Amended Complaint. (Ex. 4).

Fischer alleges Defendants lost any "right, license, or permission" to use his copyrighted works on December 10, 2010. Brushy Mountain did not immediately remove its 2010 webpage containing Fischer's alleged copyrighted works on December 10, 2010. (Gebauer Decl. ¶ 13 and as evidenced by Fischer's Ex. 7 to his Complaints). As shown in Exhibit 5, this webpage was still available on December 26, 2010. (Gebauer Decl. ¶ 14). Furthermore, selective pages of Brushy Mountain's 2011 print catalog are attached as Exhibit 6. Amanda Twete of Midstates Printing, the company that printed and mailed Brushy Mountain's 2011 catalog, states in her declaration that Brushy Mountain's 2011 catalog was mailed to the public on January 21, 2011- over two weeks prior to Fischer's effective date of his copyright. (Ex. 7). In her experience, the catalog would have been received by most if not all recipients between 7-14 days after shipment, or at the very latest February 4, 2011. Not coincidentally, Fischer was on the mailing list for the 2011 catalog. (Gebauer Decl. ¶ 17). Additionally, items that were newly available in the 2011 catalog were purchased online and over the phone prior to the February 7, 2011 date further evidencing Brushy Mountain's customers received the catalog prior to the effective date. (Gebauer Decl. ¶ 16).

18

Taking Fischer's allegations as true, Brushy Mountain published Fischer's alleged copyrighted works on its website after Fischer revoked its license to use his Copyrighted works on December 10, 2010 and before the February 7, 2011 effective date of his copyright registration. [2] Further, Brushy Mountain's catalog was published on January 21, 2011, over two weeks prior to Fischer's February 7, 2011 effective date.  As Fischer is only seeking statutory damages for his copyright claims, these claims must be dismissed because he has suffered no damages because the ban on statutory damages stemming from pre-registration infringement controls.[3]

## B. Fischer Failed To Provide A Proper Deposit Copy Resulting In An Invalid Registration Certificate

In Fischer's copyright application, he made an initial submission of materials on February 7, 2011. (Exs. 8 and 9).  This submission was replete with errors.  Even though Fischer alleged the work he attempted to copyright was completed in 2000, he included numerous works produced after 2000.   Fischer admitted his first submission included a number of things in error.

> Q.      Are you aware that on your February 7, 2011, submission to the Copyright Office, you submitted a number of countries' flags?
> A.      As I said, there were a number of things that were included in error due to a tree selection error in the backup, meaning in restoring the backup.
> (Hudson Aff., Ex. A; p. 119 lines 18-24).

The Copyright Office raised these issues with Fischer; therefore, he made an additional submission on September 23, 2011 (Exs. 10 and 11) and a third submission on September 24, 2011 (Exs. 12 and 13).  In his correspondence with the Copyright Office, Fischer alleged his second and third submissions were "subsets" of his first submission and what appeared on his website in 2000. (Ex. 14).  This was materially false.  Fischer submitted a pdf brochure (attached) in his second and third submission, which was not included in his first submission. (Ex. 15).   Furthermore, the

---

[2] All Defendants deny infringing Fischer's copyrighted works.
[3] To be clear, Defendants deny any infringement occurred.

brochure submitted in the second and third submission did not appear on Fischer's website.  In fact, he says it is a "draft copy, "not authentic," and "not the real McCoy" in his deposition testimony:

> Q.      Mr. Fischer, I've placed in front of you what's been marked Defendant's Exhibit 19 (handing).  We've been talking about a Bee-Quick trifold brochure.  Is Defendant's Exhibit 19 a copy of that brochure?
> A.      This is different—a different version. This is a derivative.
> Q.      What do you mean it's a derivative?
> A.      It's a derivative work.
> MR. MICHELEN: May I see?
> THE WITNESS: Notice the bullet points there (handing), below the logo.
> Q.      When you say bullet points—I don't see any bullet points, but I do see a number of sentences.
> MR. MICHELEN: He means the bullet points – no bees are harmed – do you see those?
> MR. HUDSON: I see.
>
> A.      Those are the dead giveaway, the bullet points are different, and so is the text above them.
>
> Q.      When would you have created Defendant's Exhibit 19?
> A.      Well, it purports to be 12/2000, but it doesn't look like the 2000s.  The text is different.  So I don't know what the story is with this.  Where did you get this?
> Q.      What is different on the 2000 trifold brochure you recollect and the one you have that's marked Defendant's Exhibit 19?
> A.      Well, the whole front panel here is different.  This would be the front, with the logo (indicating).
>
> MR. MICHELEN: Let the record reflect that he's done a trifold of Exhibit 19, and he's referring to the right-hand column on the front page.
>
> A.      So everything below the logo is different.  This may have been a draft copy.  I don't know what it is, but it's not authentic.  It's not the real McCoy.
> (Hudson Aff., Ex. A, p. 103, lines 7-25; p. 104, lines 1-24).

A valid copyright registration consists a proper deposit copy, among other things. 17 U.S.C. § 408(a).  The dual purposes of the deposit requirement, which are: (1) to provide the Copyright Office with "sufficient material to identify the work in which the registrant claims a copyright" and (2) "to furnish the Copyright Office with an opportunity to assess the copyrightability of the applicant's work." *Data General Corp. v. Grumman Systems*

*Support Corp.,* 36 F.3d 1147, 1161–62 (1st Cir.1994); *see* 17 U.S.C. § 408(b).  In order to obtain a valid registration, the registrant must have deposited a genuine copy of the work.  § 17:119.Section 410(c) and the scope of the registration, 5 Patry on Copyright § 17:119.  Unless the deposit is a bona fide copy of the work as created (or loss of the copy was due to the Office's error), the certificate is invalid and the infringement claim must be dismissed.  § 9:9.Proper deposit copy, 3 Patry on Copyright § 9:9.

Fischer admitted during his deposition that he did not submit a genuine copy of his website in his third deposit copy that served the basis for Registration No.  TX 7-422-921.  Instead, the only document that contains the four phrases serving the basis of the present lawsuit was "not authentic," and "not the real McCoy."  As such, the certificate for Registration No. TX 7-422-921 is invalid and the infringement claims must be dismissed.

**C.    Fischer Made Material Misrepresentations In His Copyright Application, Resulting in Its Invalidity**

As shown in Ex. 16, Fischer made material misrepresentations to the Registration Specialist concerning his brochure attached hereto as Exhibit 15.  In fact, the Registration Specialist relied upon Fischer's representations about the brochure to issue the registration certificate.  Fischer states "the brochure was integral to the website."  When the Registration Specialist asked if the brochure was published within the website, he answered "Yes, the brochure was to be viewed online, with printing to be optional."  When asked if the brochure and website were published on the same day, Fischer responded "Yes, everything was published at the same date/time and on the same website."  As evidenced by Fischer's sworn deposition testimony, these statements are not true.

As evidenced in Ex. 14, an effective date of 9/24/11 was assigned to Fischer's copyright application. Fischer objected to this effective date and alleged his third deposit copy is a "subset

of the first set of files." This is materially false. The first deposit copy does not contain the brochure ). In reliance upon this misrepresentation, the Registration Specialist erroneously moved the effective date up to February 7, 2011.

Fischer willfully misstates the brochure was published with the website and that the third deposit copy is a subset of the first deposit copy. Because of these misrepresentations, the Registration Specialist granted the application and applied an earlier filing date. As such, the Registration Certificate is invalid. If the claimant willfully misstates or fails to state a fact that, if known, might have caused the Copyright Office to reject the application, then the registration may be ruled invalid. 2 Nimmer on Copyright, § 7.20[A](footnotes omitted).

### D.    No Evidence of Copying of Hi-Key Photo

In Fischer's "5th Complaint," Fischer alleges Defendants copied a hi-key product photo. (1304 Third Amended Compl. ¶ 89). Fischer further alleges "Defendants displayed this work verbatim and without any permission from Plaintiff on their website in 2011, starting in March, to sell their cheap knock-off. (see Exhibits 9, 11, and 12)." (1304 Third Amended Compl. ¶ 90). A copy of the hi-key photo is attached as Exhibit 17, and a comparison of the photos is found as Exhibit H and I in Fischer's complaint and attached hereto as Ex. 18. When one compares the hi-key photo in Exhibit H with the photo of Exhibit I, it is obviously not the same photo and there is no evidence of copying. Clearly Defendants did not copy Fischer's hi-key photo.

### E.    The Four Phrases Do Not Contain An Appreciable Amount of Original Text

"Copyright law does not protect names, titles, or short phrases or expressions." *See* Copyright Protection Not Available for Names, Titles, or Short Phrases, Copyright Circular 34, U.S. Copyright Office (2012) (Ex. 19). Under 17 U.S.C. §1202, copyright protection extends

only to "original works of authorship." *Id.* To be protected by copyright, a work must contain a certain amount of authorship in the form of original literary, musical, pictorial, or graphic expression. *Id.* "Names, titles, and other short phrases do not meet these requirements." *Id.* Though the Copyright Office circulars do not have the force of a statute, they are considered to be, "a fair summary of the law." *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.,* 266 F. 2d 541 (2d Cir. 1959); *Ets-Hokin v. Skyy Spirits, Inc*., 225 F.3d 1068 (9th Cir. 2003).

There is no copyright protection for titles, words or phrases. *Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir1992).  A copyrightable work should contain "an appreciable amount of original text." *Alberto-Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705, 711 (7th Cir. 1972).[4]

The phrase "A Natural, Non-Toxic Blend of Oils and Herbal Extracts" merely describes the product Bee-Quick and is not original text.[5]  Likewise, the phrase "Fischer's Bee-Quick is a safe, gentle, and pleasant way to harvest your honey.  Safe for you, honey, & Bees" merely describes the product Bee-Quick and is not original.[6]  The phrase "Are you tired of using a hazardous product on the bees you love" again lacks any creativity.  Finally, the copyright application contains the phrase "Are you tired of your spouse making you sleep in the garage after using Butyric Anhydride?," but Brushy Mountain did not use this exact phrase.  The only portion the evidence and Fischer alleges it uses are "Are you tired of your spouse making you sleep in the garage."  Everyone knows the joke of the wife making her husband sleep on the couch after a fight.  In this phrase, couch is changed to garage.

---

[4] For example, "couldn't wait no longer" was held to be not copyrightable because the phrase was too short. *Peters v. West*, 776 F. Supp. 2d 742, 750 (N.D. Ill. 2011) (Judge Kendall). Similarly, "most personal sort of deodorant" was held to be not subject to copyright protection because it was merely a short phrase or expression, "which hardly qualifies as an 'appreciable amount of original text.'" *Alberto-Culver Co.*, 466 F.2d at 711.

[5] Hudson Aff., Ex. A, p. 106, lines 5-25; p. 107, lines 1-12.

[6] Hudson Aff., Ex. A, p. 109, lines 3-24.

**F.    The Asserted Phrases Consist of Common Language That Can Only Be Expressed In a Limited Number Of Ways, And Thus Is Not Protectable**

The phrases alleged to be copied consist of common language conveying an idea typically expressed in a limited number of ways, including listing the components of the Bee-Quick product and describing the product. These phrases are therefore not entitled to copyright protection.

There are products marketed by entities other than Defendant that include phrases similar to the four phrases at issue here.  Exhibit 20 shows a product marketed that bears the phrase "safe, gentle, and pleasant."  Exhibit 21 shows another product marketed that bears the phrase "special blend of oils and herbal extracts."  Exhibit 22 shows another product marketed that bears the phrase "Natural, Non-Toxic Oils."  As evidenced, Fischer's phrases consist of common language and not subject to copyright protection.

**G.    Fischer's Asserted Copyright Registration Is Not For The Asserted Short Phrases, But The Entire Bee-Quick.Com Website**

Attached as Exhibit 8 is the full first submission by Fischer on February 7, 2011 to the U.S. Copyright Office.  Attached as Exhibit 12 is the full third submission by Fischer on September 24, 2011 to the U.S. Copyright Office that was registered as TX 7-422-921.   The U.S. Copyright Office did not examine just the 4 short phrases as it did not determine that these short phrases alone were not protectable by copyright.  Rather, registration was made for all pages of the submitted deposit, collectively, which Mr. Fischer characterized as "text and images of Bee-Quick.com Website" as shown in Ex. 4.

Fischer does not allege Defendants copied the entire "text and images of Bee-Quick.com Website."   To succeed on a copyright claim, Fischer must prove, among other elements, a substantial similarity exists between Brushy Mountain's ad and the protectible elements of Fischer's copyright. *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999).  "Substantial similarity exists only when 'it is protected expression in the earlier work that was copied and the amount that

was copied is more than de minimis.'" *Lewinson v. Henry Holt and Co., LLC*, 659 F.Supp.2d 547, 564 (S.D.N.Y. 2009)(*quoting Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 111 (2d Cir. 2003)). The test for substantial similarity between two items, commonly referred to as the ordinary observer test, is whether an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Hamil America*, 193 F.3d at 100 (*quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir.1960)).*

Fischer must show "copying amounts to an improper appropriation by demonstrating that substantial similarity [of] protected material exists between the two works." *Laureyssens v. Idea Group, Inc.,* 964 F.2d 131, 140 (2d Cir. 1992). The plaintiff must show that the defendant copied sufficient protected expression that audiences will perceive substantial similarities between the defendant's work and plaintiff's protected expression. *Walker v. Time Life Films, Inc.,* 784 F.2d 44 (2d Cir.1986). If "the similarities between the protected elements of plaintiff's work and the allegedly infringing work are of small import quantitatively or qualitatively...the defendant will be found innocent of infringement." *Williams v. Crichton,* 84 F.3d 581, 588 (2d Cir. 1996) (internal quotations and citations omitted).

Clearly, a viewer of Brushy Mountain's ads and Fischer's copyright submission could not possibly believe the two works are the same.  Fischer's copyright submission contains thousands of words and at least hundreds of sentences.  The merely four sentences in Brushy Mountain's ad are not exactly the same as the sentences in the brochure and an ordinary observer would not find the two substantially similar.  Further, the sentences are used in conjunction with a picture, catalog number, and trademark of the product.  This combination arrangement was designed by Brushy Mountain-not Fischer.  (Sandra Forrest Decl. ¶¶ 3 and 4).

III.    **Defendants Have Not Engaged In Contributory Copyright Infringement**

Fischer alleges "Defendants have infringed contributorily by intentionally inducing and knowingly encouraging direct infringement by their sub-dealers." (1307 Third Amended Compl. ¶¶ 95, 102,109, 116). The "sub-dealers" are identified as "The Honey Hole" and "C&T Bee Supply." (1307 Third Amended Compl. ¶ 51).

In addition to the four requirements for direct infringement, contributory liability requires Fischer to prove that the Defendants (1) with knowledge of the infringing activity, (2) induced, caused, or materially contributed to the infringing conduct of another. *Banff Ltd. v. Limited, Inc.*, 869 F.Supp. 1103, 1333 (S.D.N.Y. 1994) (*quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). In other words, there must be "personal conduct that encourages or assists the infringement." *Matthew Bender & Co., v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998).

There is no proof any defendant encouraged or assisted "The Honey Hole" or "C&T Bee Supply" with the alleged infringement. Defendants have categorically denied they encouraged or assisted "The Honey Hole" or "C&T Bee Supply" in the use of the Natural Honey Harvester ad, if they in fact used the ad. (Gebauer Decl. ¶ 12; Stephen Forrest Decl. ¶ 11; Sandra Forrest Decl. ¶ 10).

IV.    **DMCA**

Fischer alleges in March 2011 Defendants ordered, oversaw, participated in, and approved the intentional removal of all copyright notices from his copyrighted works. (1304 Third Amended Compl. ¶ 93). Fischer further alleges "In March 2011, Defendants ordered the intentional removal of all of Plaintiff's copyright notices from [his] works" (1304 Third Amended Compl. ¶¶98, 103, 108, 113, 118). Fischer alleges in March 2011 Defendants displayed the infringing work on

Defendants' 2011 website knowing CMI had been removed" (1304 Third Amended Compl. ¶¶ 93, 99, 104, 109, 114, 119), even though "display" is not a violative act set forth in §1202(b).  Fischer alleges the violative act of removing his copyright notices and displaying the works occurred in March 2011.  As the Court is aware any acts that accrued prior to December 28, 2012 for Brushy Mountain and February 3, 2012 for Gebauer have been dismissed.

Fischer has failed to show any works with CMI or provide evidence Defendants removed any CMI.  He vaguely alleges Defendants removed copyright notices in his Complaints, but has absolutely no proof to substantiate these claims.  When asked what copyright notice was removed, Fischer responds by claiming his brochures with copyright notices, but that Defendants didn't remove the copyright notice.  Fischer has also not presented any evidence showing a copyrighted work with a copyright notice and then evidence Defendants reproduced without a copyright notice.

> Q.    You also alleged that all of the defendants removed a copyright notice.
> A.    Yes.
> Q.    What copyright notice?
> A.    The copyright notice attached to the materials that were sent to them.
> Q.    What materials that were sent to them?
> A.    Well, for example, you've provided a couple of copies of the brochure, and they have copyright notices on them, don't they?  And by removing the copyright notice, they continued to use the text without license.  License would be selling the product.
> Q.    Just to be clear, are you alleging that the defendants copied any of your fliers without copyright notices on them?
>       Mr. Michelen: Did they copy your brochure without the copyright notice on it? Without? Did you say without the –
> Q.    Yes.
> A.    No, I'm not alleging that they ever made a copy of my brochure without the copyright notice.
> (Hudson Aff., Ex. A, p. 131, p. 23-25; p. 132, p. 1-11; p. 133, lines 1-7).

The purpose of the DMCA seeks to hamper copyright infringement in the digital age by protecting copyright management information (CMI) in various ways on copyrighted works.[7]  17

---

[7] Damages under the DMCA should compensate and deter "rather than just resulting in a windfall" for plaintiff. Craigslist, Inc. v. Meyer, 2011 WL 1884555 (N.D. Cal. May 18, 2011).

U.S.C. § 1202. To establish a violation under subsection 1202(b), a plaintiff must show "(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally."  *Banxcorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010).

As stated above and attested to by Shane Gebauer, Brushy Mountain took the photographs of Bee-Quick used in its catalog and on its website, meaning Brushy Mountain is the owner of these copyrights- not Mr. Fischer.  (Gebauer Decl. ¶ 6).  Further none of the Defendants removed CMI of anything Mr. Fischer may have provided.  (Gebauer Decl. ¶ 8; Stephen Forrest Decl. ¶ 9; Sandra Forrest Decl. ¶ 8).  Fischer claims Defendants removed metadata from a "hi-key photo" (1304 Third Amended Compl. ¶117).  As attested to by Shane Gebauer (Gebauer Decl. ¶ 7) and Fischer's own evidence (Ex. 18), Defendants never used this "hi-key" photo from at least 2010 to the present.

Even if CMI was removed (which it wasn't and Fischer cannot prove any CMI was removed by Defendants much less when it was removed), §1202 includes an intent requirement. The CMI must have been <u>intentionally removed</u> to satisfy §1202(b)(1) or knowing the CMI has been removed to satisfy §1202(b)(3).  Fischer alleges Defendants displayed the works which is not a violation under 1202(b)(3).   Section §1202(b) requires the removal of CMI <u>knowing</u> it will <u>induce, enable, facilitate, or conceal infringement</u>.  In Fischer's deposition, he states:

> Q.     And who at Brushy Mountain would have removed the metadata?
> A.     Who?
> Q.     Yes.
> A.     I have no idea.  Shane was hired to be the big web expert, so the Forrests are denying anything technical in that regard. So I guess we're left with Shane, because at that time, there was no one else to do that work.
> Q.     Do you have any evidence that Shane Gebauer removed the metadata from your photos?
> A.     No, I have no evidence.  I only have process of elimination.
> (Hudson Aff., Ex. A, p. 137, lines 21-25; p. 138, lines 9-12).

Fischer has no evidence anyone at Brushy Mountain removed metadata, much less anyone at Brushy Mountain intentionally removing metadata or knowing metadata was removed.  There is no evidence any Defendant satisfied the second intent requirement of knowing the removal will induce, enable, facilitate, or conceal infringement.  It defies logic how removal of metadata from a picture that contains Fischer's Bee-Quick and posting to a website to sell a product contained within the picture and allegedly owned by the copyright owner would intentionally induce, enable, facilitate, or conceal infringement.

### V.    Fischer Did Not Allege A Claim for Trademark Infringement

By this Court's Order, Fischer counterfeiting claims have been dismissed.  Fischer's third amended complaint only alleges counterfeiting claims.   Additionally, Fischer, by his own admission, has only brought counterfeiting claims and not trademark infringe claims. (Hudson Aff., Ex. F).  In his Answer to Defendants' Interrogatory No. 8, Fisher states "[t]he action brought by Plaintiff is for Trademark Counterfeiting, not Trademark Infringement. (Hudson Aff., Ex. D).

### VI.    Fischer Has No Evidence of Actual Confusion.  Therefore, Fischer's Right of Publicity Claim Brought under 15 U.S.C. § 1125(a) (§ 43 of the Lanham Act) Should be Dismissed

Fischer alleges "Defendants' actions to willfully violate Plaintiff's Right of Publicity make Defendants liable for (i) violation of 15 USC § 1125(a)…."  (1304 Third Amended Compl. ¶165). Fischer further alleges "Defendants ordered the creation of the website URLS" that included Fischers or Fischers-BeeQuick. (1304 Third Amended Compl. ¶171).   "Defendants' use of Plaintiff's valuable name falsely implies that Plaintiff sponsors, endorses, or is affiliated with Defendants' goods and services."  (1304 Third Amended Compl. ¶185).

"[F]alse endorsement occurs when a defendant uses a celebrity's persona without permission to suggest a false endorsement or association." *Bruce Lee Enter., LLC v. A.V.E.L.A.,*

*Inc.*, No. 10 Civ. 2333(KMW), 2013 WL 822173, at *19 (S.D.N.Y. Mar. 6, 2013) *see also ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 925-26 (6th Cir. 2003)("False endorsement occurs when a celebrity's identity is connected with a product or service in such a way that consumers are likely to be misled about the celebrity's sponsorship or approval of the product or service.").  Fischer is not a celebrity.  This fact is proven by his website under the heading "Who's this 'Fischer' person, anyway" that states "[w]e are nobody  important, and like it that way."  (Ex. 23).

"Essential to [a false endorsement] claim… is a likelihood that the relevant audience will be misled into believing that the plaintiff endorsed the defendant's product or service." *Albert v. Apex Fitness, Inc.*, No. 97 Civ. 1151, 1997 WL 323899, at *1 (S.D.N.Y. June 13, 1997) (use of a picture of plaintiff from *Consumer Reports* did not imply plaintiff personally endorsed its products).  There is nothing about the use of "Fischer" in the URL, implying Mr. Fischer personally endorsed Brushy Mountain's Natural Honey Harvester product.  One, there is no evidence a consumer actually saw the URL and was confused.  Second, there is no conceivable reason why a consumer would believe a person's name appearing in a URL would in any way endorse a product.

To receive an award of damages under the Lanham Act, Fischer "must prove either actual consumer confusion or deception resulting from the violation, or that [Defendants] actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." *Champagne v. Diblasi*, 36 Fed.Appx. 15, 17 (2d Cir. 2002)(*quoting George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992)(other citations omitted).

Fischer has admitted he has no evidence of actual confusion.[8]  See the below Interrogatory Answer and Deposition Answers.

---

[8] Fischer alleges in Paragraph 135 of his Third Amended Complaint there is Actual Confusion, but his Interrogatory response and Deposition Answer indicated this, along with many other statements in his complaint, were false with no justifiable basis to include in a Complaint.

Interrogatory No. 8. Identify any instances of actual confusion involving Plaintiff's Mark and goods or services provided by the Forrests.

Answer: Each and every sale of Defendants' "Natural Honey Harvester" product is a case of actual confusion. The action brought by Plaintiff is for Trademark Counterfeiting, not Trademark Infringement. In counterfeiting actions it is unnecessary to perform an in-depth, step-by-step examination of the likelihood of confusion because "counterfeit marks are inherently confusing". *Philip Morris USA Inc. v. Felizardo*, No. 03 Civ. 5891, 2004 WL 1375277, at \*5 (S.D.N.Y. June 18, 2004). In any event, and over objection, Plaintiff is unaware of any instance of actual consumer confusion.
(Hudson Aff.; Ex. D)

**Fischer Deposition; February 15, 2017**

Q: Has anybody told you that they thought they were buying Fischer's Bee-Quick, but they'd get Natural Honey Harvester?
A: No specific individual, no.  But as a matter of law, a holdover franchisee, if you will, who continues to use the marks that he's no longer authorized to use is counterfeiting.  So, you know, it's the mere use of it that causes the actual confusion.
Q.      Do you know anybody's name who was confused between Bee-Quick and Natural Honey Harvester?
A: Not at this point, no.  Pending discovery.
(Hudson Aff., Ex. A; p. 150, lines 4-12, 25; p.151, lines 1-5).

Brushy Mountains use of "Fischer" in URLs was not intentionally deceptive.  Instead, the use of "Fischer" in the URL was a mistake.  (Gebauer Decl. ¶ 9).  When the webpage was changed from Bee-Quick to Natural Honey Harvester, the URL was mistakenly not changed.  There is no intentional deception here.  Further, Fischer has suffered no damages (Ex. 2) and statutory damages are unavailable for this cause of action.

**VII.    Fischer Has No Evidence of Actual Confusion.  Therefore, Fischer's Right of False Advertising Claims Brought under 15 U.S.C. § 1125(a) (§ 43 of the Lanham Act) Should be Dismissed**

Plaintiff's false advertising claim is based upon the following statement on Brushy Mountain's website and catalog:

"For years we have promoted the use of a natural product to harvest honey but an unreliable supply of such a product has forced us to come out with our own."

In the Second Circuit, a Plaintiff must prove that the Defendants "(1) made a false or misleading representation of fact; (2) in commerce; (3) in connection with goods or services; (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services." *Burck v. Mars, Inc.*, 571 F.Supp.2d 446,571 (S.D.N.Y. 2008). "When a plaintiff seeks money damages in either a product infringement case or a false advertising case asserted under 43(a), the plaintiff must introduce evidence of actual consumer confusion." *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*, 926 F.2d 134, 139 (2d Cir. 1991). First, the statement Fischer claims that gives rise to the false advertising claim was on Brushy Mountain's website, as clearly shown in Fischer Exhibit 8 attached to his complaint. This claim was not on the website of any of the individual defendants, and Fischer has not alleged any individual defendant communicated these words or posted these words on their individual website. Fischer claims "[t]he Defendants' statement on their 2011 web page (see Exhibit 8), created and displayed under direct orders and personal supervision of Defendants…." (1304 Third Amended Compl. ¶210). Fischer has no evidence to support his baseless claim that any of the individual Defendants created and displayed under direct orders and personal supervision this statement. Second, the statement complained of is not likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services. Third, Fischer has no evidence of actual confusion as set forth above and any claim for damages should be dismissed.

Fourth, the statement is true. Fischer alleges in his Third Amended Complaint "[t]he "unreliable supply" claim is a blatant falsehood- Defendants' merely needed to pre-pay to get delivery at any time they pleased." (1304 Third Amended Compl. ¶210). This is blatantly false. On April 28, 2010, Betsy Brey at Brushy Mountain sent the following email message (Ex. 24):

"Hi Jim,

32

Sure do wish you'd respond to my concerns for delivery on the Bee-Quick.  My 1st email was a month ago.  Another one after that and a phone call yesterday.  50 backorders and rising.  Please let me know when we can expect to see the goods.

Thanks,

Betsy.

In response, Fischer wrote:

Sorry, I have been behind on everything…. The bee-quick has not yet been bottled, but will be ASAP.  We had a slow-down on the bottles, had to find a different supplier and a price we could afford and buy MORE bottles, and hope that the other guy comes through in time for the next bottling run."

jim

It was not until  July 31, 2010, after the supply became unreliable, that Fischer began requesting payment in advance.  This is evidenced in an email from Fischer to Betsy Brey at Brushy Mountain, wherein he states "one of the factors that delayed things so long on the first 2010 shipment was money, as none of my suppliers can afford to extend credit terms to a small fish like myself any more.  This means that I cannot extend credit terms either…. So I'll need a check 'with order.'"  (Ex. 25).  Fischer has suffered no damages.   He states "I have been damaged because by besmirching my reputation in a disparaging manner in their false advertising, they have prompted opportunists to come along and make a knockoff just like theirs." (Hudson Aff., Ex. A, p. 170,  lines 5-23).  Statutory damages are unavailable for this cause of action.

## VIII.   Common Law Unfair Competition

The elements of an unfair competition claim under New York common law "closely parallel the elements of unfair competition under the Lanham Act." *Medisim v. BestMed LLC*, 910 F.Supp.2d 591, 606 (S.D.N.Y. 2012).  To prevail in an unjust enrichment claim, Fischer must establish that Defendants "(1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the

origin, sponsorship, or approval of the goods or services." *Burck v. Mars, Inc.*, 571 F.Supp.2d 446, 455 (S.D.N.Y. 2008). "In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 35 (2d Cir.1995).   A claim of unfair competition also requires evidence of defendant's bad faith *See Louis Vuitton Malletier v. Dooney & Bourke, Inc. (Vuitton I)*, 340 F.Supp.2d 425, 436 (S.D.N.Y. 2004), *vacated in part, Vuitton II*, 454 F.3d 108 (2d Cir. 2006).  As set forth above, Fischer has admitted there is no actual confusion.[9]

Fischer alleges "Defendants' website uses Plaintiff's name in a manner that is intended solely to mislead and confuse both customers and web search engines."  (1304 Third Amended Compl. ¶204).  Fischer again misrepresents the facts.  All Defendants do not have a website. Instead, it is Brushy Mountain's website Fischer complains of and attaches as Exhibits to his Complaint.  Fischer provides more specificity to this general statement with "by using Plaintiffs (sic) valuable name in conjunction with multiple website URLs."  (1304 Third Amended Compl. ¶205).  The use of "Fischer" in a URL is not a false or misleading representation of fact, and it is unknown how the mistaken use of "Fischer" in the URL would cause consumer confusion as to the origin, sponsorship, or approval of goods.

As set forth above, Fischer's cease and desist letter, attached as Exhibit 15 to his Third Amended Complaint, never mentions the inclusion of Fischer in the URL.  Instead, Fischer only makes general statements about copyrights, his Bee-Quick logo, and trade secrets.  Exhibit 16 to Fischer's Third Amended Complaint is Brushy Mountain's response which states "If you would

---

[9] Fischer alleges in Paragraph 135 of his Third Amended Complaint there is Actual Confusion, but his Interrogatory response and Deposition Answer indicated this, along with many other statements in his complaint, were false with no justifiable basis to include in a Complaint.

like to provide more specific information as to how you believe we may be infringing your Copyrights and Trademarks, we will certainly review that information."  Mr. Fischer never responded.  (Gebauer Decl. ¶10).

As attested to by Shane Gebauer, the failure to remove the term "Fischer" in the URL was a mistake.  (Gebauer Decl. ¶ 9).  Quite frankly, this is an easy mistake to make and it happens often. The URL was just mistakenly not changed and doesn't amount to bad faith.  When Mr. Gebauer realized the URL contained "Fischer" they were immediately changed.  (Gebauer Decl. ¶ 9).  Fischer has no evidence of actual confusion or evidence Defendants acted in bad faith by knowingly using Fischer to sell Natural Honey Harvester.  Finally, Fischer has no proof of damages and cannot provide any proof of damages as statutory damages are not available for this claim.

## IX.   **Unfair Business Practices**

To prevail on a claim under New York General Business Law § 349, Fischer must prove "first, that the challenged act or practice was consumer oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014)(*quoting Stutman v. Chemical Bank*, 95 N.Y. 2d 24, 29 (2000)).  Fischer again made unsubstantiated allegations that Defendants have engaged in unfair business practices because the Natural Honey Harvester product is an unknown mix of chemicals and a beekeeper could lose organic certification.  (1304 Third Amended Compl. ¶224).  During plaintiff's deposition, he admitted he has not proof to these claims.

> Q.    Are you aware of any beekeeper that has lost their organic certification by using Natural Honey Harvester?
> A.    No.  Because we were able to fix that problem.  You're right.  No. There was a risk of it, yes.  There was a risk of it.  Any actually, that's what I

alleged, was the risk of it, not anyone actually losing it.  So if you're going to ask me questions about what I said, ask about what I freakin' said.  Don't read words into what I said.  Read what I said—
(Hudson Aff., Ex. A, p. 173, lines 5-15).

There is no proof anyone bought Bee-Quick from Brushy Mountain, but were shipped Bee-Quick as Fischer alleges.  As for falsely alleged bait-and-switch scheme, Fischer at deposition stated:

Q.     Are you aware of anybody, sitting here today, by name, that was the victim of a bait and switch with Brushy Mountain Bee Farm?
A.     There's no one sitting here today that has been a victim of the bait and switch –
MR. MICHELEN: He said as you sit here today –
 A.     No, I don't know.  No.
Q.     So we have a clear record, can you tell me the name of anybody who has been the victim of a bait and switch scheme by Brushy Mountain Bee Farm?
A.     Not yet.
(Hudson Aff., Ex. A, p. 142, lines 1-5).

Finally, Plaintiff has not been damaged and can offer no proof as to any damage. (Ex. 2).

## X.     **Breach of Contract**

A claim for breach of contract requires "(1) the existence of an agreement. (2) adequate performance of the contract by the plaintiff, (3) breach of contract by defendant, and (4) damages.  *Hudson & Broad, Inc. v. J.C. Penney Corp.*, 553 F. App'x 37, 38 (2d Cir. 2014)(summary order)(*quoting Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). During his deposition, Fischer admitted the only agreement that existed between any of the Defendants was purchase orders.

Q.     Do you have a written contract with Brushy Mountain Bee Farm?
A.     No, we've never had a written contract.  We drafted up agreements, if you will, or we made agreements about various products at various times, but concerning Bee-Quick, we had purchase orders.  That's it.
Q.     Did you ever have a written contract with Brushy Mountain concerning Bee-Quick?
A.     Yes. Purchase Orders.

Q.      Other than purchase orders, did you have a written agreement with Brushy Mountain regarding Bee-Quick?

A.      Not to my knowledge.

Q.      Did you ever have a written agreement with Steve Forrest regarding Bee-Quick?

A.      As an individual?

Q.      Yes.

A.      No.

Q.      Did you ever have any written agreement with Shane Gebauer individual regarding Bee-Quick?

A.      No.

Q.      Did you ever have a written agreement with Sandra Forrest individually regarding Bee-Quick?

A.      No.

        (Hudson Aff., Ex. A, p. 176, lines 23-25; p. 177, lines 1-17).

Even though Fischer alleged in his complaint he had a contract with all Defendants, Fischer has admitted he has no contract with any of the three individual Defendants. Instead, Fischer the only agreement with Brushy Mountain concerning Bee-Quick is purchase orders.  Brushy Mountain did not breach any of the purchase orders and paid for all product shipped.

Fischer can provide no evidence the parties agreed to provide notice before termination, as he alleges.  Fischer cannot prove Brushy Mountain owes any money under the purchase orders.  Furthermore, Fischer cannot claim or prove he suffered any damages, as statutory damages are not available for this claim. (Ex. 2).

**XI.    Unjust Enrichment**

To support his unjust enrichment claim, plaintiff alleges defendants engaged in a bait and switch scheme where a customer placed an order for Bee-Quick but received defendants' natural honey harvester instead.  There is absolutely no evidence to support this claim.  Mr. Fischer stated in his deposition:

Q.      So we have a clear record, can you tell me the name of anybody who has been the victim of a bait and switch scheme by Brushy Mountain Bee Farm?

A.      Not yet.
(Hudson Aff., Ex. A, p. 213, lines 24-25; p. 214, lines 1-3).

Furthermore, Fischer has suffered no damages as statutory damages are not available for this claim.

(Ex. 2).

**XII.   <u>Conclusion</u>**

For the foregoing reasons, Defendants respectfully request the Court dismiss Fischer's

Complaint in its entirety, and grant such other and further relief as the Court deems just and proper,

including attorneys' fees and costs.

Dated:  April 19, 2017

CLEMENTS BERNARD, PLLC
*Attorneys for Defendant*

By:*/s/ Seth L. Hudson*
Seth L. Hudson (*Admitted Pro Hac Vice*)
4500 Cameron Valley Parkway Suite 350
Charlotte, NC 28211
Phone: (704) 790-3600
Fax:    (704) 366-9744

– and –

Daniel K. Cahn, Esq. (DC9791)
Law Offices of Cahn & Cahn, P.C.
105 Maxess Road, Suite 124
Melville, NY 11747
Phone: (631) 752-1600
Fax:    (631) 574-4401