OSCAR MICHELEN (OM5199)
CUOMO LLC
Attorney for Plaintiff James Fischer
200 Old Country Road
Suite 2 South
Mineola NY 11501
516-741-3222(phone)
516-741-3223(fax)
omichelen@cuomollc.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JAMES H. FISCHER

                                 Plaintiff

        -against-

                                 Case No.:
                                 CV 14-1304

STEPHEN T. FORREST, JR., SANDRA F.
FORREST, SHANE R. GEBAUER and BRUSHY
MOUNTAIN BEE FARM INC.
                               Defendants.
-------------------------------------------------------------------x


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTSMOTION FOR SUMMARY JUDGMENT


Dated: May 8, 2017                            /s/ *Oscar Michelen* /s/

                                                      OSCAR MICHELEN (OM 5199)
                                                      CUOMO LLC
                                                      200 Old Country Road
                                                      Mineola NY 11501
                                                      516-741-3222
                                                      Fax: 516-741-3223
                                                      omichelen@cuomollc.com

To be filed via ECF

# TABLE OF CONTENTS

1. TABLE OF AUTHORITIES …………………..………………….. ii

2. PRELIMINARY STATEMENT ……………………………………….. 1

3. APPLICABLE LEGAL STANDARD ………………………………… 1

5. ARGUMENT ………………………………………………………… 1

    BY VIRTUE OF THEIR CONTROL OVER THIS TIGHTLY HELD
    COMPANY THE INDIVIDUAL DEFENDANTS CAN BE HELD
    PERSONALLY LIABLE……………………….....……………… 1

    THE ANNUAL PRINTING OF A NEW CATALOG AND
    REPUBLICATION OF ITS WEBSITE WAS A NEW
    INFRINGING ACT ………………………………………………… 5

    DEFENDANTS' OBJECTIONS TO PLAINTIFF'S COPYRIGHT
    REGISTRATION DO NOT INVALIDATE THE REGISTRATION
    AS THE ERRORS ALLEGED ARE MINIMAL AND WERE NOT MADE
    WITH FRAUDULENT INTENT …………………………….. 8

    THE WORKS ARE SUFFICIENTLY ORIGINAL AS TO WARRANT
    COPYRIGHT PROTECTION AND THE DEFENDANTS' LANGUAGE IS
    SUBSTANTIALLY SIMILAR ………………………………… 11

    PLAINTIFF HAS ESTABLISHED SUFFICIENT PROOF THAT
    DEFENDANTS REMOVED CMI TO ALLOW THAT CLAIM TO
    PROCEED TO TRIAL …………………………………………….. 14

5. CONCLUSION ………………………………………………………… 16

# TABLE OF AUTHORITIES

**Cases**

*Agence France Press v. Morel,* 934 F.Supp.2d 547, 576 (SDNY 2013) ............................ 15
*Alberto-Culver v. Andrea Dumon, Inc.,* 466 F.2d 705 (7th Cir. 1992) .............................. 11
*Apple Barrel Productions, Inc. v. R.D. Beard,* 730 F.2d 384, 387–88 (5th Cir.1984) ..... 13
*Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir.1992) ....................................... 12
*Artists Music, Inc. v. Reed Publishing (USA), Inc.*, Nos. 93 Civ. 3428, 73163, 1994 WL 191643, *4–6 (S.D.N.Y. May 17, 1994) (Keenan, J.) ................................................ 2
*Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.1976), cert. denied 429 U.S. 857 (1976) .................................................................................................................. 10
*Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ. 3841, 1997 WL 639037, at 11 (S.D.N.Y. Oct.14, 1997) ........................................................................................ 9
*Brattleboro Publishing Co. v. Winmill Publishing Corp.*, 369 F.2d 565 (2d Cir.1966)... 13
*Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir.1985).............. 9
*Comolli v. Huntington Learning Ctrs., Inc.,* 117 F. Supp. 3d at 349 .................................................................................................................. 7
*Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1161–62 (1st Cir.1994) ................................................................................................................ 10
*Durham Indus., Inc. v. Tomy Corp*, 630 F.2d 905, 908 (2d Cir.1980) ............................... 8
*Firth v. State*, 98 N.Y.2d 365, 371, 747 N.Y.S.2d 69, 72 (2002) ....................................... 7
*Folio Impressions, Inc. v. Byer Cal.,* 937 F.2d 759, 763 (2d Cir.1991) ............................. 8
*Giuffre v. DiLeo*, 90 A.D.3d 602, 31 03-04, 934 N.Y.S.2d 449, 451 (2d Dep't 2011) ....... 7
*Goldman v. Barrett*, 15 Civ. 9223, 2016 WL 5942529 at *10 (S.D.N.Y. Aug. 24, 2016) . 7
*H.M. Kolbe Co. v. Shaff*, 240 F.Supp. 588 (S.D.N.Y.), aff'd, 352 F.2d 285 (2d Cir.1965) 2
*Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984) .............................. 10
*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985) ................... 8
*Heim v. Universal Pictures* 154 F.2d 480 (2d Cir 1946) .................................................. 12
*Hoesten v. Best*, 34 A.D.3d 143, 150, 821 N.Y.S.2d 40, 46 (1st Dep't 2006) .................... 7
*Island Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir.2005)15
*Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.* 222 F.2d 541 (2d Cir. 1959) .................. 12
*Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010–11 (2d Cir.1995) ........................... 15
*Lauratex Textile Corp. v. Allton Knitting Mills Inc.,* 517 F.Supp. 900, 904 (S.D.N.Y.1981) ..................................................................................................... 2
*Luft v. Crown Publishers, Inc.*, 772 F.Supp. 1378 (S.D.N.Y.1991) ................................... 2
*MasterCard Intern. Inc. v. Nader 200 Primary Comm., Inc.*, 2004 WL 434404 (SDNY 2004) ................................................................................................................... 13
*Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F.Supp.2d 514, 520 (S.D.N.Y. 2005....................................................................................................................... 10
*Past Pluto Productions Corp. v. Dana, 627 F.Supp.1435 (SDNY 1986)* ........................ 11
*Peters v. West*, 776 F.Supp.2d 742 (N.D. Ill. 2011) ........................................................ 12
*Raffoler, Ltd. v. Peabody & Wright, Ltd.,* 671 F. Supp. 947 (E.D. N.Y. 1987)................ 13
*Rinaldi v. Viking Penguin, Inc.,* 425 N.Y.S.2d 101, 102 (N.Y. App. Div. 1980), *aff'd*, 52 N.Y.2d 422 (N.Y. 1981) ....................................................................................... 6
*Rushton v. Vitale*, 218 F.2d 434, 435 (2d Cir. 1955) ....................................................... 12

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir.1963) ................. 2
*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486-87 (9th Cir.2000) ....................... 10
*Wales Indus. Inc. v. Hasbro Bradley, Inc., 612 F.Supp. 510, 518 (S.D.N.Y.1985)* ............ 2
*Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir.1989) ................... 8

**Statutes**

17 U.S.C. § 410(c) ................................................................................................... 8
17 U.S.C. § 408(b) ................................................................................................. 10

# I. PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to Defendants motion for summary judgment. The facts relevant to the Plaintiff's opposition are set forth in the accompanying affidavit of Plaintiff James H. Fischer ("Fischer").

# II. APPLICABLE LEGAL STANDARD

Plaintiff agrees with the standard of review for summary judgment as delineated at page 6 fn1 of defendants' Memorandum of Law.

# ARGUMENT

# POINT I

# BY VIRTUE OF THEIR CONTROL OVER THIS TIGHTLY-HELD COMPANY THE INDIVIDUAL DEFENDANTS CAN BE HELD PERSONALLY LIABLE

Defendants' motion coyly points out that neither the Forrests nor Gebauer "had a website." See, e.g. page 8 of Defendants' Memorandum of Law. Defendants choose to ignore that the individual defendants' can be held personally liable for the infringement occurring on the corporate defendant's website. In his response to the interrogatories served by the individual defendants asking for the basis for individual liability, plaintiff responded:

> The Forrests, acting both individually and in their capacity as officers of Brushy Mountain Bee Farm Inc., infringed, allowed to be infringed, and/or approved of acts infringing upon several works owned by the Plaintiff, for which the Forrests profited, both individually, and through their ownership of Brushy Mountain Bee Farm Inc. The Forrests collectively designed and/or reviewed and approved each annual catalog and website for Brushy Mountain Bee Farm. They reviewed, selected and approved the text, drawings and photos in each annual catalog and website for Brushy Mountain Bee Farm.

See Plaintiff's Exhibit "A" at page 5 paragraph 16. Defendants' motion fails to address corporate and vicarious liability.

Corporate officers can be held liable for the infringing acts of their corporations if they personally participated in the acts constituting infringement. *See Luft v. Crown Publishers, Inc.,* 772 F.Supp. 1378 (S.D.N.Y.1991) (holding individual who served as president and owned 65 percent of infringing company's stock vicariously liable for copyright infringement); *Lauratex Textile Corp. v. Allton Knitting Mills Inc.,* 517 F.Supp. 900, 904 (S.D.N.Y.1981); Wales Indus. Inc. v. Hasbro Bradley, Inc., *612 F.Supp. 510, 518 (S.D.N.Y.1985)* ("*A*n individual who causes a corporation defendant to infringe copyright and personally participates in the infringing activity is jointly and severally liable with the corporation for the infringement."); *H.M. Kolbe Co. v. Shaff,* 240 F.Supp. 588 (S.D.N.Y.), *aff'd,* 352 F.2d 285 (2d Cir.1965).

Vicarious liability may also exist "[w]hen the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials ... even in the absence of actual knowledge that the copyright monopoly is being impaired...." *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963); *see also Peer Int'l Corp.,* 887 F.Supp. at 565 (quoting *Shapiro* ); *Banff Ltd. v. Limited, Inc.,* 869 F.Supp. 1103, 1107–10 (S.D.N.Y.1994) (Haight, J.) (discussing vicarious liability); *Artists Music, Inc. v. Reed Publishing (USA), Inc.,* Nos. 93 Civ. 3428, 73163, 1994 WL 191643, *4–6 (S.D.N.Y. May 17, 1994) (Keenan, J.) (same). Unlike contributory liability, vicarious liability may exist even if the third party was in no way directly involved in the actual copying. *See Shapiro,* 316 F.2d at 307; *Peer Int'l Corp.,* 887 F.Supp. at 565. Thus, there

are only two elements of vicarious liability: (1) the ability to control the infringer and (2) a financial interest in the infringing activities.

All three of the individual defendants at relevant times had the ability to control defendant Brushy Mountain and had a financial interest in the infringing activities.

Gebauer was employed as Brushy's general manager in 2007. (See, Exhibit "B" at page 6 line 6.) When he first came on, there were only two owners – Stephen and Sandra Forrest. Ex. B at page 10 line 6. Eventually, starting in 2007, he was given some equity in the company. Ex. B at page 9 lines 9-13. As general manager and part owner, he was in charge of the overall operation of the Brushy business. Ex. B at page 10 line 15. Steve Forest was Brushy's president and Sandra Forrest was Brushy's secretary. Ex. B at page 10 lines 19-22. Since 2014, he holds four percent of the equity in BMBF Holdings, the company that owns 100% of Brushy; in 2014, he also became Brushy's president. Ex. B at page 14 lines 1-16; page 19 line 22 through page 20 line 3.

Gebauer admitted at his deposition that prior to hiring a graphic designer it was his responsibility to prepare the layout for the catalog. Ex B. at page 25 lines 22 through 25. Prior to the hiring of the graphic designer, the preparation of the catalog was a "collaborative effort" between himself and the Forrests. Ex. B at page 24 lines 8 through 15 and page 26 line 22 through page 27 line 2. That collaborative effort included selecting the text and images for the catalog. Ex. B. at page 27 line 20 through page 28 line 6; page 45 line 11 through 17.. Similarly, he was responsible for Brushy's website. Ex B. at page 29 lines 13 through 24. The selection of the text and images for the website was also a collaborative effort between him and the Forrests. Ex. B at page 30 line 22 through page 31 line 4. As to the four phrases that are the subject of the action, Gebauer

did not recall where that content came from, but said it would likely have come from the Forrests. Ex. B at page 63 line 18 through page 64 line 9. He further acknowledged that at the time the content involved in this action was used to describe defendants' Natural Honey Harvester product, he and the Forrests were the only persons controlling the company and that therefore the decision to use that language to describe their product had to be a collaborative effort between him and the Forrests. Ex B. page 70 line 23 through page 71 line 13.

While this testimony from defendant Gebauer is on its own enough to establish individual liability on his and the Forrests' part, the Forrests' testimony further supported the factual basis for their liability. Stephen Forrest testified that he and his wife were the sole shareholders of the company when it was first formed. See Exhibit C at page 7 lines 7 through 17. In those years and up to 2007 when Gebauer was brought in , he and his wife defendant Sandy Forrest were responsible for the catalog's and website's content. Ex C. at page 10 line 22 through page 11 line 6; page 22 lines 8 through 11. From the beginning, he testified, the website mirrored the print catalog. Ex C at page 13 line 13 through page 14 line 1. He testified that he and his wife came up with the content that is at issue in the lawsuit. Ex C. 16 line 22 through page 17 line 25. Shane Gebauer was specifically brought over to Brushy because of his expertise with websites and catalogs. Ex. C at page 25 lines 5 through 7. It eventually became "his baby." Ex C at page 26 line 3 through page 27 line 2.

Like her husband, Sandy Forrest also testified that she and her husband were responsible for drafting all of the content of the catalogs annually including drafting the content to describe Bee-Quick in their catalog. See Exhibit D at page 6 lines 5 through

22. Sandy Forrest testified that she was the person who wrote the content that is the subject of this lawsuit. Page 8 line 14 through page 9 line 3

So as to the Forrests, there is an issue of fact as to whether they infringed as plaintiff claims he wrote the four subject phrases listed in the Third Amended Complaint and they claim they drafted them.  As to Gebauer, his testimony and the Forrests' testimony solidly established that they exercised control over the company and the decision-making with respect to the infringing catalogs and websites.

## POINT II

### THE ANNUAL PRINTING OF A NEW CATALOG AND REPUBLICATION OF ITS WEBSITE WAS A NEW INFRINGING ACT

Defendants' next argument is that because the content alleged herein was infringed prior to plaintiff's 2012 registration, plaintiff is not entitled to statutory damages. However, plaintiff has pled and the evidence has shown that each year, the annual catalog and website (which mirrors the catalog) was redesigned and re-drafted by Brushy and the individual defendants.  Ex B. page 86 lines 7-21; page 90 lines 4-17; Ex C. page 11 line 17 through page 14 line 1; Ex D. page 6 line 19 through page 7 line 7. Content would be added and deleted, prices would change; the cover would change; the content would change. Id.  These new catalogs and website pages constitute re-publication and therefore re-infringement.

The issue as to whether multiple publications constitute republication is "difficult to determine, depending on the facts of each particular case." *Rinaldi v. Viking Penguin, Inc.,* 425 N.Y.S.2d 101, 102 (N.Y. App. Div. 1980), *aff'd*, 52 N.Y.2d 422 (N.Y. 1981)(changing cover of hardcover edition for paperback addition along with minor

changes to front legend of book was re-publication of entire book for statute of limitations purposes).

In deciding the defendants' prior motion to dismiss, the court dismissed the plaintiff's Right to Publicity case finding that the claim was not timely brought because the url containing plaintiff's name that formed the basis for the claim was not republished; it found that the plaintiff had only alleged "continuous use" of his name in the url. But that finding was specifically because there was no allegation of the republication of the plaintiff's name in the url (the basis of the claim).

Here, the Third Amended Complaint does sufficiently allege republication for a new tolling period to occur every year by virtue of the catalog and website's annual republication.

For example, the Third Amended Complaint states:

49. The descriptions used on each of Defendants' annual sales websites were assembled from word-for-word verbatim copies of each of the copyrighted works (a) - (d) displayed on Plaintiff's website, as these works were considered by Defendants to be the most effective marketing possible.
50. As each year's website was created, changes would be made, and each year's website would use one or more of Plaintiff's copyrighted Works.

This clearly refers to Plaintiff's copyrighted works. The allegations are supported by the testimony of the defendants cited above. The Third Amended Complaint also alleges that changes would be made to the catalog annually and then those changes would be copied on the defendants' sales website. See Third Amended Complaint 14 cv 1304 at paragraphs 49 & 50). Similarly in the other action, 14 cv 1307, the Third Amended Complaint alleges:

 112. The descriptions used on each of Defendants' annual sales websites and print catalogs were assembled using word-for-word verbatim copies of each of the copyrighted

works (a) - (d) displayed on Plaintiff's website, as these works were agreed by Defendants and Plaintiff to be the most effective marketing possible.

Those allegations are also supported by the testimony of the Forrests and Gebauer. In the prior decision, the court performed a full analysis of the re-publication issue:

"Republication, retriggering the period of limitations, occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original edition.'" *Firth v. State*, 98 N.Y.2d 365, 371, 747 N.Y.S.2d 69, 72 (2002); accord, e.g., *Comolli v. Huntington Learning Ctrs., Inc.,* 117 F. Supp. 3d at 349; *Hoesten v. Best*, 34 A.D.3d 143, 150, 821 N.Y.S.2d 40, 46 (1st Dep't 2006). To determine whether an item has been republished, relevant considerations include: (1) whether "'the subsequent publication is intended to and actually reaches a new audience'"; (2) "whether the second publication is made on an occasion distinct from the initial one"; (3) "whether the republished statement has been modified in form or in content"; and (4) "whether the defendant has control over the decision to republish." *Hoesten v. Best*, 34 A.D.3d at 150-51, 821 N.Y.S.2d at 46; see also, e.g., Firth v. State, 98 N.Y.2d at 371, 747 N.Y.S.2d at 72 ("The justification for this exception to the single publication rule is that the subsequent publication is intended to and actually reaches a new audience."); *Goldman v. Barrett*, 15 Civ. 9223, 2016 WL 5942529 at *10 (S.D.N.Y. Aug. 24, 2016)("'Republication occurs when a subsequent publication: (1) is intended for and reaches a new audience, or (2) materially changes or modifies the original.'"); *Giuffre v. DiLeo*, 90 A.D.3d 602, 31 03-04, 934 N.Y.S.2d 449, 451 (2d Dep't 2011) ("[T]he plaintiff raised a triable issue of fact as to whether a re-posting of the original post was either through a posting of a modified version of the post or through posting of the post on another Web site.")

*See* Docket entry 132. Here the testimony of the defendants cited above makes out all the factors. The catalog was changed annually; they had control over the changes; the republications occurred at distinct times; and the republication was intended to reach a new audience – the updated mailing list. See Ex C at age 21 lines 2 through 16; Ex D. page 10 lines 4 through 15 (mailing list updated annually).

Because each new catalog and website constituted re-publications not merely continuous access to the offending content, every year that the new updated versions

included the infringing language was a re-infringement of plaintiff's registered copyrighted material.

## POINT III

### DEFENDANTS' OBJECTIONS TO PLAINTIFF'S COPYRIGHT REGISTRATION DO NOT INVALIDATE THE REGISTRATION AS THE ERRORS ALLEGED ARE MINIMAL AND WERE NOT MADE WITH FRAUDULENT INTENT

The defendants next argue that the plaintiff's registration of his copyright in the subject material is invalid because a proper deposit copy was not made and as plaintiff allegedly made material representations to the Copyright Office.

It is undisputed that plaintiff received copyright registration TX 7422921 with an effective date of February 7, 2011. A certificate of copyright registration is prima facie evidence that the copyright is valid. 17 U.S.C. § 410(c); *Folio Impressions, Inc. v. Byer Cal.,* 937 F.2d 759, 763 (2d Cir.1991). Moreover, "[p]ossession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable." *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir.1989). Plaintiff's possession of a certificate of copyright registration thus shifts to defendants the burden of proving the invalidity of the copyright. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985).

Generally speaking, the presumption of validity may be rebutted "[w]here other evidence in the record casts doubt on the question.*" Durham Indus., Inc. v. Tomy Corp*, 630 F.2d 905, 908 (2d Cir.1980). For example, the presumption has been overcome on by evidence that the work had been copied from the public domain, see *Folio Impressions, supra*, 937 F.2d at 763, 764, or by evidence that the work was a non-copyrightable

utilitarian article, see *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir.1985).

Defendants allege that plaintiff made material misrepresentations to the Copyright Office to induce it to issue the registration. What they do not allege, and what they offer no evidence in support of, is an allegation that plaintiff made a deliberate and intentional misrepresentation with intent to defraud the Copyright Office. As the affidavit of plaintiff filed in opposition to the defendants' summary judgment attests and establishes, there was no intent to defraud the Copyright Office. There was some initial confusion on his part on how to categorize the works he was filing and some errors in uploaded certain materials that were not part of the materials he was seeking to register, as is demonstrated by the email correspondence that defendants themselves point to in their memo. See defendant's memorandum of law at page 11.

"Errors contained in copyright registration, if committed without deceptive intent, are harmless and do not invalidate the copyright." *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ. 3841, 1997 WL 639037, at 11 (S.D.N.Y. Oct.14, 1997) (citation omitted). Defendants in their Memorandum of Law try to twist the plaintiff's words at his deposition. At his deposition he was stating that he did not believe the exhibit he was shown was the authentic version of "real McCoy" of what was submitted to the copyright Office not that he submitted an inauthentic or fake document to the Copyright Office. Plaintiff's affidavit attests to the nature of the error in the deposit copy and at the very least raises an issue of fact on this issue.

The principle that a lack of intent to defraud will defeat an attempt to invalidate a registered copyright extends as well to incomplete or erroneous deposit materials. See

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486-87 (9th Cir.2000); *Nicholls v. Tufenkian Import/Export Ventures, Inc*., 367 F.Supp.2d 514, 520 (S.D.N.Y. 2005).

Although the Copyright Act requires the owner to deposit a "complete copy" of the work with the Copyright Office, the Federal courts' definition of a "complete copy" is "broad and deferential: 'Absent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement.'" *Three Boys,* supra, citing *Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir.1984). Plaintiff agrees with defendants that the purposes of the deposit requirement are: (1) to provide the Copyright Office with "sufficient material to identify the work in which the registrant claims a copyright" and (2) "to furnish the Copyright Office with an opportunity to assess the copyrightability of the applicant's work." *Data General Corp. v. Grumman Systems Support Corp.,* 36 F.3d 1147, 1161–62 (1st Cir.1994); *see* 17 U.S.C. § 408(b).

The material deposited which included the subject phrases here was evaluated by the Copyright Office and deemed copyrightable. The various emails which defendants referred to at page 11 in their Memorandum of Law also establish that the Copyright Office was aware of what was the subject of the registration. Defendants have not done enough to rebut the presumption afforded to plaintiff by virtue of his copyright registration.

Normally, the evidence needed to be shown to rebut the presumption of validity offered by a certificate of registration is some direct evidence of invalidity of the copyrightable material. For example, In *Batlin & Son, Inc. v. Snyder,* 536 F.2d 486 (2d Cir.1976), *cert. denied* 429 U.S. 857 (1976), the Second Circuit determined that a copyright registration issued to an "Uncle Sam" bank was invalid because of the lack of

significant differences between that bank and an antique Uncle Sam bank which had been popular in the United States since at least 1886. In *Past Pluto Productions Corp. v. Dana,* 627 F.Supp.1435 (SDNY 1986), the district court found that a flat green foam hat inspired by the Statue of Liberty lacked sufficient originality to be the subject of a valid copyright although a copyright registration had been issued. Since the hat, or "Crown of Liberty," was based upon a famous statute indisputably in the public domain, it was a "classic example of a derivative work." *Past Pluto* at 1441.

Defendants raise no similar arguments here and only point to minor errors in plaintiff's registrations in an attempt to invalidate his copyright.

## POINT IV

### THE WORKS ARE SUFFICIENTLY ORIGINAL AS TO WARRANT COPYRIGHT PROTECTION AND THE DEFENDANTS' LANGUAGE IS SUBSTANTIALLY SIMILAR

Defendants next argue that the four phrases that are the subject of the copyright infringement claim herein are of insufficient length and creativity to warrant copyright protection. The court should not entertain this argument *de novo* as it was raised in Defendants' motion to dismiss back in 2015. In denying that portion of defendants' motion this court ruled: [T]he text at issue here is not by any means commonplace….Fischer's work though relatively brief is therefore protectable." See Document entry 65 14 cv 1307. Plaintiff incorporates all of his prior arguments contained in his brief in opposition to that motion by reference herein so as to avoid repetition.

In support of this argument, defendants now rely on *Alberto-Culver v. Andrea Dumon, Inc.,* 466 F.2d 705 (7th Cir. 1992) and *Peters v. West*, 776 F.Supp.2d 742 (N.D.

Ill. 2011). The *Alberto-Culver* case dealt with the phrase "most personal sort of deodorant" in an advertisement, while the *Peters* case dealt with the phrase "couldn't wait no longer" contained in a Kanye West song.

      Neither of these phrases is as creative or expressive as the ones in this case and this court should instead be guided by the principle enunciated by the Second Circuit in *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.* 222 F.2d 541 (2d Cir. 1959) and *Heim v. Universal Pictures* 154 F.2d 480 (2d Cir 1946). This court relied on *Heim* in its prior order.  In *Kitchens of Sara Lee*, the Second Circuit held that courts should look at whether the material in question displays 'some substantial, not merely trivial, originality' *Id.* at 544. At least two of the four phrases here clearly stand out as creative expressions worthy of copyright protection: "Are you tired of your spouse making you sleep in the garage?" and "Are you tired of using a hazardous product on the bees you love?" These are not partial phrases but are thought-out creative expressions evidencing substantial originality. To paraphrase the Second Circuit in *Sara Lee*, "Plaintiff has put time, some creative thought and money" into the language used for Bee-Quick and for the "copying of it is entitled to damages." *Sara Lee*, 266 F.2d at 544.

      A defendant's copying of a phrase is actionable if the phrase amounts to a " 'sequence of thoughts, choice of words, emphasis, and arrangement to satisfy the minimal threshold of required creativity,' " or if the copier has "quote[d] or paraphrase[d a] sequence of creative expression that includes ... a[n ordinary] phrase." *Arica Inst., Inc. v. Palmer,* 970 F.2d 1067, 1072 (2d Cir.1992). The Second Circuit also held in *Rushton v. Vitale*, 218 F.2d 434, 435 (2d Cir. 1955) that "All that is needed to satisfy both the Constitution and the statute is that the 'author' contributed something more than a

'merely trivial' variation, something recognizably his own." Moreover, particularly when dealing with an advertisement, the court should not just look at the phrases separately but view all four as whole in the context of the description of plaintiff's product. *See*, *Raffoler, Ltd. v. Peabody & Wright, Ltd.,* 671 F. Supp. 947 (E.D. N.Y. 1987).

As to the other two short phrases involved in this action, advertisements are generally capable of receiving copyright protection, provided that their material is otherwise copyrightable and falls within one of the categories of copyrightable subject matter set forth in 17 U.S.C. § 102. *Brattleboro Publishing Co. v. Winmill Publishing Corp.,* 369 F.2d 565 (2d Cir.1966). Dissection of the advertising material to determine its copyrightability is inappropriate; that determination must be made by an assessment of the work as a whole, not of its component parts, since there is no requirement that each part be capable of individual copyright protection. *Raffoler, Ltd. , supra; Apple Barrel Productions, Inc. v. R.D. Beard,* 730 F.2d 384, 387–88 (5th Cir.1984).

The Eastern District's analysis in *Raffoler*, *supra*, is directly on point. In that case, a mail order company, which relied primarily upon printed advertisements to generate business, brought an action for copyright infringement against competitors for copying of its advertisement language. The copied language consisted of three phrases: (1)Why are we giving away [product] for only [price]?;" (2)"This is NOT a misprint" and (3) "Hard to believe but true" In denying the defendant's motion to dismiss, the court found that taken together, the short phrases constituted enough of an individual expression of creativity as to warrant copyright protection. In *MasterCard Intern. Inc. v. Nader 200 Primary Comm., Inc.*, 2004 WL 434404 (SDNY 2004), the Southern District

cited *Raffoler* in finding that the phrases "THERE ARE SOME THINGS MONEY CAN'T BUY. FOR EVERYTHING ELSE THERE'S MASTERCARD" and "PRICELESS" were copyrightable, though ultimately ruling that the defendant political candidates use of them was a fair use parody.

The phrases here are more creative and distinct, especially when viewed together, than those in *Rafffoler*. This court should therefore find that they can be afforded copyright protection.

The defendants next argue that because the copyright registration contained materials other than the four phrases, there is no substantial similarity and therefore summary judgment is appropriate. But defendants need not copy all of the material in question and the issue is whether there is substantial similarity between the copied portions of the copyright material and the offending material. *Lewinson v. Henry Holt, Inc.*, 659 f.Supp2d 547 (SDNY 2009). In the *Raffoler* case, the defendant did not take all of the plaintiff's ad content, just the phrases involved.

## POINT V

### PLAINTIFF HAS ESTABLISHED SUFFICIENT PROOF THAT DEFENDANTS REMOVED CMI TO ALLOW THAT CLAIM TO PROCEED TO TRIAL

Defendants argue that because no individual witness confessed to being the person who removed the Content Management Information from plaintiff's content this claim should be dismissed. But the deposition testimony of the defendants cited above shows that these three individuals Steve Forrest, Sandra Forrest and Shane Gebauer exclusively controlled and operated the Brushy Mountain company during the relevant time period and were the sole persons responsible for making decisions regarding the

catalog and website content. No else had the authority to change the copy and images used and therefore one or all of them must have been the ones to do it. Knowledge of infringement need not be proven directly but may be inferred from the defendant's conduct. *See Island Software & Computer Serv. v. Microsoft Corp.,* 413 F.3d 257, 263 (2d Cir.2005); *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1010–11 (2d Cir.1995)

The same rules of vicarious liability apply in assessing DMCA violations as they do in copyright infringement. *See*, *Agence France Press v. Morel,* 934 F.Supp.2d 547, 576 (SDNY 2013). Moreover, that case also held that the requisite intent can be inferred from the circumstances. *Id.* at 577-578. In *Agence France Presse*, the Agence France Presse News service brought an action against photojournalist Daniel Morel, seeking a declaration that it had not infringed Morel's copyrights in certain photographs. Morel counterclaimed asserting willful infringement of his copyrights, and that Agence and its distributor were secondarily liable for infringement of others and violated Digital Millennium Copyright Act (DMCA). In denying Agence's summary judgment motion on Morel's DMCA claim, the court held that Agence's allowing the photos to be distributed with their watermark and name in the caption was sufficient to establish the requisite knowledge for DMCA purposes. *Id.* at 577-578. Here, defendants either together or individually removed plaintiff's CMI and put their name and company watermark on the new ads.

While defendants focus on the brochure, they totally ignore this court's finding in deciding the initial dismissal motions that the product name "Fischer's Bee Quick," by virtue of containing the plaintiff's name, also constituted CMI. This court also held that

by replacing "Fischer's Bee Quick" with Natural Honey Harvester" the plaintiff sufficiently alleged DMCA violations. See Document entry 65 14 cv 1307 at page 16.

Because there is no dispute that defendants replaced "Fischer's Bee Quick" with "Natural Honey Harvester" plaintiff's DMCA claim must proceed to trial.

## CONCLUSION

It is respectfully submitted that the motion should be denied in its entirety.

Dated: May 8, 2017               /s/ *Oscar Michelen  /s/*
                                 OSCAR MICHELEN (OM 5199)
                                 CUOMO LLC
                                 200 Old Country Road
                                 Mineola NY 11501
*To be Filed via ECF*            516-741-3222 fax: 516 741-3223
                                 omichelen@cuomollc.com