```
 1                      UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF NEW YORK
 2


 3    ------------------------------------X
                                          :
 4    JAMES H. FISCHER,                   :   14-CV-01304 (PAE)
                                          :
 5                    Plaintiff,          :   December 18, 2015
                                          :
 6               v.                       :   500 Pearl Street
                                          :   New York, New York
 7    FORREST,                            :
                                          :
 8                    Defendants.         :
      ------------------------------------X
 9
             TRANSCRIPT OF CIVIL CAUSE FOR GENERAL PRETRIAL
10                BEFORE THE HONORABLE HENRY B. PITMAN
                     UNITED STATES MAGISTRATE JUDGE
11
      APPEARANCES:
12
      For the Plaintiff:            OSCAR MICHELEN, ESQ.
13                                  Cuomo LLC
                                    200 Old Country Road
14                                  Mineola, New York 11361

15
      For the Defendants:           SETH HUDSON, ESQ.
16                                  Clements Barnard, PLLC
                                    4500 Cameron Valley Parkway
17                                  Charlotte, North Carolina 28211

18                                  DANIEL CAHN, ESQ.
                                    Cahn & Cahn
19                                  22 High Street
                                    Huntington, New York 11743
20

21
      Court Transcriber:            SHARI RIEMER, CET 805
22                                  TypeWrite Word Processing Service
                                    211 N. Milton Road
23                                  Saratoga Springs, New York 12866

24

25



      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service
```

1                THE CLERK:  Fischer v. Forrest.  Counsel, please
2    state your name for the record.
3                MR. MICHELEN:  For the plaintiff, Oscar Michelen,
4    Cuomo LLC, 200 Old Country Road, Mineola, New York.  Good
5    morning, Your Honor.
6                THE COURT:  Good morning.
7                MR. HUDSON:  Seth Hudson, Clements Bernard for the
8    defendants, 4500 Cameron Valley Parkway, Charlotte, North
9    Carolina.
10               MR. CAHN:  And Daniel Cahn of Cahn & Cahn P.C. for
11   the defendants as well, 105 Maxis Road, Suite 124, Melville,
12   New York.  Thank you.
13               THE COURT:  Good morning.  You're both here for
14   Stephen Forrest, Sandra Forrest and Shane Gebauer.
15               MR. MICHELEN:  Yes, Your Honor.
16               MR. CAHN:  Yes.
17               THE COURT:  Great.  This matter is on today for oral
18   argument on plaintiff's motion to amend.  I will hear from Mr.
19   Michelen first and then I'll hear from defense counsel.  Go
20   ahead.
21               MR. MICHELEN:  Yes, Your Honor.  So the plaintiff
22   here seeks to amend the complaint to join the corporate parent
23   if you will on the individual defendants here who are all
24   former or current shareholders in Brushy Mountain Farms, which
25   is the corporation that we're seeking to add.

```
 1              The second corporation --
 2              THE COURT:  That was the corporation that issued the
 3  catalogs, the accused catalogs?
 4              MR. MICHELEN:  Yes.  And then Hadley Capital, LLC is
 5  a company that engaged in a management buyout of their --
 6              THE COURT:  When you say a management buyout, what
 7  exactly happened?
 8              MR. MICHELEN:  What happened is they give capital to
 9  a member of management, in this case Shane Gebauer --
10              THE COURT:  Give it or lend it?
11              MR. MICHELEN:  They lend it without taking an
12  interest in the company per se but they still do manage and
13  direct the company's operations while the money is shall we
14  say out there.  It's still within the company.
15              THE COURT:  Hadley Capital, they have expertise in
16  beekeeping?
17              MR. MICHELEN:  No.  They have expertise in corporate
18  management and they have a number of small -- their specialty
19  is acquiring small growing agricultural companies.
20              THE COURT:  What specific -- I'm very troubled by
21  the allegation -- there are a couple of things that trouble me
22  about the application but one of the things that troubles me
23  with respect to Hadley is are there facts alleged that would
24  sustain an alter ego claim?
25              MR. MICHELEN:  No, Judge.  I think the --
```

1               THE COURT:  No, there aren't.  You agree there are
2    no facts -- well, then isn't it futile with respect to Hadley?
3               MR. MICHELEN:  No, Your Honor, because they still
4    direct and control the operation of the company while the
5    infringements are going on.
6               THE COURT:  What are the facts -- what facts are
7    alleged in the complaint that support that conclusion?  I mean
8    after Iqbal you got to allege facts to make the claim
9    plausible.
10              MR. MICHELEN:  I understand.
11              THE COURT:  The allegations with respect to Hadley
12   are pretty bare bones.
13              MR. MICHELEN:  They are only in the sense that the
14   only information that we currently have is that Hadley engaged
15   in this -- in the buyout in September of 2014 and has since
16   that time been directing the operation.
17              THE COURT:  How have they directed the operations?
18              MR. MICHELEN:  Well, as part of the funding they
19   have control if you will, central control of the company.
20   They don't just give the money and step aside.
21              THE COURT:  What have they done -- I mean I've got
22   another case where alter ego alleg -- where alter ego
23   liability is alleged and in that case the plaintiff has made
24   specific allegations as to what the defendant did -- what the
25   alter ego defendant did that would justify piercing, how he

1  charged personal expenses on a corporate account.  He got a
2  corporate credit card for his wife.  He leased a car for
3  himself on the corporate credit card.  There are specific
4  allegations there that show that he treated the corporation's
5  bank account as his personal piggy bank and disregarded
6  corporate formalities.
7         With respect to Hadley, the allegations seem fairly
8  conclusory and I'm not sure there are any real facts alleged.
9         MR. MICHELEN:  I understand the Court's concern and
10 I think it's true --
11        THE COURT:  [Inaudible] speak.  I'm sorry for
12 interrupting.
13        MR. MICHELEN:  I'm sorry, Judge.
14        THE COURT:  Ordinarily you don't get discovery to
15 see if you can state a claim.  Ordinarily you've got to stay
16 the claim before you can get discovery.  Having said that, go
17 ahead.
18        MR. MICHELEN:  Yes, Judge.  I think I can see that
19 and perhaps it's better to pursue the claims with the
20 defendants that we do have the sufficient factual allegations
21 against and if we determine that Hadley played the role that
22 we expect it does we can garner those facts.  We can come back
23 and add them if that's appropriate at that time.  I don't
24 think that's -- especially particularly we have -- we're well
25 within our statute of limitations against them anyway since

6

1  they only come in -- came into the company in September of
2  2014.  So I can understand that.
3         With respect to the other defendants, these are just
4  -- the corporate entities perhaps should have been named
5  initially, were not named by Mr. Fischer.  It should come as
6  no surprise to the Forrests or Mr. Gebauer that this corporate
7  entity would be added.  We've since found out through the
8  affidavit of Mr. Gebauer that the corporate entity is a
9  holding company that has a 100 percent of the shares of Brushy
10 Mountain, and so that would be a defendant that we would seek
11 to add as well.
12        THE COURT:  Well, ordinarily -- you can't just add a
13 holding -- you don't a state claim against an entity just
14 because they're a holding company.  Shareholders are not ipso
15 facto liable for the conduct of the corporations in which they
16 hold shares.  The fact that Brushy Mountain is wholly owned by
17 another company doesn't make the other company -- doesn't put
18 the other company on the hook unless you can allege alter ego
19 liability as far as I understand the law.
20        MR. MICHELEN:  Yes, Judge.  Again, this current
21 application doesn't seek BMBF holdings.
22        THE COURT:  Right.
23        MR. MICHELEN:  It's just Brushy Mountain, Inc.  So,
24 again, as discovery moves forward we'll see if the holding
25 company has actually any direction or operation of the

1  company.
2          But the -- my point was that it was only through
3  that affidavit even then that Mr. Fischer learned exactly the
4  structure of the corporate defendant, Brushy Mountain, Inc.
5          THE COURT: Let me ask you one other question which
6  the parties don't really address in their submissions. There
7  was a scheduling order in this case entered on February 10th
8  of this year which set the deadline for motions to amend at
9  April 13. As I recall it, that settlement -- at that
10 scheduling conference Mr. Fischer was a little upset that I
11 was extending the dates. There is a body of case law that
12 says that once a scheduling order sets a deadline for motions
13 to amend a party seeking to amend has to show good cause under
14 Rule 16(b) of the Federal Rules of Civil Procedure. Some
15 cases in that regard are Grochowski v. Phoenix Construction,
16 318 F.3d 80 at 86 (2nd Cir. 2003), Parker v. Columbia
17 Pictures, 204 F.3d 326 at 340 (2nd Cir. 2000), and Cassner v.
18 Second Avenue Delicatessen, 496 F.3d 229 at 243 (2nd Cir.
19 2007).
20         Where is the good cause here only -- let me just
21 cite some other law to you. In the case of Enzymotec Ltd. v.
22 NBTY, and Enzymotec is E-N-Z-Y-M-O-T-E-C, 754 F.Supp.2d 527,
23 536 (E.D.N.Y. 2010). The Court wrote "To satisfy the good
24 cause standard the party must show that despite its having
25 exercised diligence the applicable deadline could not have

1  been reasonably met.  However, the good cause standard is not
2  satisfied when the proposed amendment rests on information
3  that the party knew or should have known in advance of the
4  deadline."  I've omitted the internal citations there.
5           How is good cause shown here given the fact that
6  you're several months past the deadline in the scheduling
7  order?
8           MR. MICHELEN:  Judge, all that we have in that is
9  that -- as Mr. Fischer was a pro se plaintiff he really kind
10 of failed to understand the nature of the corporation and the
11 need to add the corporation.  He didn't have with him any
12 material or discovery to formulate the proper way to figure
13 out who was the right corporate entity to even name.
14          THE COURT:  Didn't the catalog say they were from
15 Brushy Mountain?
16          MR. MICHELEN:  Well, the catalog says that they're
17 from Brushy Mountain but he knew that there was this other
18 company that had come in, both Hadley, that Mr. Gebauer had
19 come in and been added to the company from the purchase of the
20 Forrest's interests and I think it was at a time when he
21 realized that this was getting a little bit more far afield
22 than of his capability and decided to retain counsel and then
23 we had to gather whatever little information he had.
24          In those cases also, Your Honor, I think the length
25 of time beyond the scheduling deadline is a little bit longer.

9

1   We're still within the statute of limitations for the vast
2   majority of the claims and so I think if we're not given leave
3   to amend we can file ab initio against the corporate
4   defendants and then mark it as a related case.
5              So I think that's really all that I can say to the
6   Court to address that is that I wouldn't -- I would ask not to
7   hold Mr. Fischer to the stand in some of those other cases.
8   It's a very brief delay and the parties certainly are not
9   surprised by the addition.  There's no real allegation of
10  facts that have changed now.  It's just merely adding the
11  corporate defendant to the shareholders who are listed on the
12  caption.
13             THE COURT:  Where is the -- just a few more
14  questions.  Where does discovery stand in the case?  Have any
15  depositions been taken?
16             MR. MICHELEN:  They have not, Judge.  We again in
17  discussion with Mr. Hudson the discovery and the depositions
18  we had said -- I had suggested that instead of having
19  duplicative discovery let's just get this defendant added.  I
20  asked him for consent.  He was within his right not to
21  consent.  We made the motion.  I now have everything I need to
22  respond from Mr. Fischer to the admissions, I think
23  interrogatories and everything else but we were trying to get
24  this taken care of and then do all of the discovery at once
25  for all the new defendants.

1    THE COURT:  I've asked you an awful lot of
2 questions.  Maybe there's some other points you wanted to make
3 that you didn't have the opportunity to make.  Go ahead.
4    MR. MICHELEN:  I think that's it, Judge.  Basically
5 the amendment doesn't prejudice the defendants.  The delay is
6 not inordinate and it's more expedient to allow the amendment
7 as opposed to allowing a new action to be filed.
8    THE COURT:  Okay.  It's going to be Mr. Hudson.
9    MR. HUDSON:  Yes, Your Honor.  Your Honor, in this
10 case and in the briefs there's been no reason why there is an
11 unexplained delay.  At the time of --
12    THE COURT:  The fact that Mr. Fischer is pro se,
13 doesn't that give rise to certain implications?
14    MR. HUDSON:  I think it would if he didn't try to
15 amend his complaint back on --
16    THE COURT:  I know.  This is the fourth go-round.
17 This is the fourth iteration of the complaint.  I --
18    MR. HUDSON:  He tried to amend it in April to add
19 Russian Mount Beef Farm, the Hadley Capital company.  Hadley
20 Capital I've been told does not exist from their attorneys.
21 That's why we submitted the affidavit of Shane Gebauer just to
22 point out --
23    THE COURT:  Hadley does not exist?
24    MR. HUDSON:  Hadley Capital is a, to my
25 understanding is essentially a d/b/a and there's different

1  Hadley Capital blank LLC, Hadley Capital something else LLC.
2  That's my -- that's what I've been told from their corporate
3  counsel.
4           THE COURT:  All right.
5           MR. HUDSON:  But, in any event, Mr. Fischer had
6  ample time prior to the deadline that he tried to amend this
7  complaint to add Russian Mount Beef Farm, to add Hadley
8  Capital.  The Court essentially instructed him that he didn't
9  include the amended complaints that he should have and he
10 never did.  There's no explanation of why it's taking so long
11 for him to file these motions.
12          Defense counsel has really been concentrating on
13 these three individual defendants.  It's a high hurdle for the
14 plaintiffs to attach liability to the three independent
15 defendants on behalf of a copyright or a trademark claim
16 without adding the corporate entity.
17          At the time of filing the complaint Mr. Fischer had
18 attached a number of exhibits.  All these exhibits were on
19 Brushy Mountain Beef Farms website.  He knew the corporate
20 entity Brushy Mountain Beef Farm and ordered products from Mr.
21 Fischer.  These products were not ordered directly by the
22 Forrests or Mr. Gebauer.
23          THE COURT:  Given the relationship between the
24 Forrests, Mr. Gebauer and Brushy Mountain, is there any -- is
25 there any prejudice to Brushy Mountain Beef Farm?  I mean I'm

1  looking at all the equities here.  I appreciate that plaintiff
2  is past the deadline set in the pretrial order but I also
3  appreciate that plaintiff has been proceeding pro se.  There
4  have been no depositions and it seems like there's an almost -
5  - it seems like there's a total unity of interest between the
6  Forrests, Mr. Gebauer and Brushy Mountain.  Am I missing
7  something here?
8          MR. HUDSON:  Well, it creates a little bit of an
9  issue.  The Forrests --
10         THE COURT:  I'm sorry.
11         MR. HUDSON:  I'm sorry, Your Honor.  It creates a
12 little bit of an issue because the Forrests are no longer
13 associated with the company.
14         THE COURT:  Right.
15         MR. HUDSON:  They were bought out.  There's some
16 employees at Brushy Mountain who have retired.  This thing has
17 been going on for almost two years.  There's a complete change
18 in management.  Shane Gebauer is still there but BMBF Holdings
19 now controls Brushy Mountain.  I don't represent Brushy
20 Mountain --
21         THE COURT:  BMBF is the shareholder.  I'm not -- I'm
22 not sure you want to concede they control Brushy Mountain.  Do
23 you?
24         MR. HUDSON:  I will say -- thank you.  I will say I
25 don't know what their arrangement is.  I've been hired to

1  represent Gebauer and the Forrests.
2          THE COURT:  It's a wholly unsubsidiary but whether
3  or not they control is thorny question frequently.
4          MR. HUDSON:  Right.
5          THE COURT:  Go ahead.
6          MR. HUDSON:  You're right, Your Honor, but -- so my
7  involvement with how Brushy Mountain is run, my involvement
8  with their dealings have been extremely limited because this
9  suit only names the three individuals.
10         THE COURT:  But then the relationship -- certainly
11 Mr. Gebauer has a close relationship with Brushy Mountain.
12         MR. HUDSON:  Correct.  He's running Brushy Mountain.
13         THE COURT:  All right.  Anything else you want to
14 tell me?
15         MR. HUDSON:  No, Your Honor.  Thank you.
16         MR. MICHELEN:  Judge, if I just may.
17         THE COURT:  Go ahead.
18         MR. MICHELEN:  To make it a little bit easier for
19 the Court.  We'll withdraw our request with respect to Hadley
20 Capital at this time and renew if necessary if discovery calls
21 for it.  So at this point we'd just be asking for the other
22 amendment that's requested.
23         THE COURT:  The standards for motion to -- the
24 standards applicable to a motion to amend are set forth fairly
25 exhaustively in my opinion in <u>Dueling v. Crestedes Operating</u>


1  Corp., which is recorded at 265 F.R.D. 91 (S.D. 2010) and the
2  interplay between Rule 15 and Rule 16 is discussed in an
3  opinion that I issued -- in addition to the case as I cited
4  before it's also discussed in an opinion that I issued earlier
5  this month called Cargian v. Brightline U.S.A., 15-CV-1084.
6  It's an order issued December 8th of this year.  I incorporate
7  the legal standard set forth in those two decisions by
8  reference herein.
9            The motion is untimely to the extent it's past the
10 deadline made in the scheduling -- set forth in the scheduling
11 order entered in this case in February of this year but at the
12 same time I appreciate that Mr. Fischer was proceeding pro se.
13 He, as I understand it, he has no legal training and the delay
14 is not prolonged.
15           In addition, it does not appear that granting the
16 application with respect to Brushy Mountain is going to cause
17 any substantial prejudice or maybe no prejudice at all.  There
18 is certainly a close relationship between Mr. Gebauer and
19 Brushy Mountain.  I think there's a uni of interest of Mr.
20 Gebauer -- certainly Mr. Gebauer and Brushy Mountain who is
21 the -- Mr. Gebauer is the current -- I don't know if he's CEO
22 or general manager of Brushy Mountain.
23           No depositions have been taken.  It seems to me that
24 weighing all the equities, the better course here, the more
25 prudent course is to grant the application with respect to

                                                                  15

1   Brushy Mountain.
2           I appreciate that plaintiff has withdrawn the
3   application with respect to Hadley.  Even if plaintiff had not
4   withdrawn the application with respect to Hadley I have very,
5   very serious reservations as to whether or not a claim is
6   stated against Hadley.  Lending money to an entity or
7   investing money in an entity is a -- through an equity
8   investment does not ipso facto make the lender or the investor
9   liable for the torts of the entity.
10          Frequently plaintiffs attempt to assert an alter ego
11  theory but after Iqbal I think that requires allegations of
12  specific facts to show domination and to show disregard of
13  corporate formalities and to show that the corporate form has
14  been used to perpetrate a fraud which I don't think the
15  proposed amended complaint comes close to doing.
16          So even if the plaintiff had not withdrawn with
17  respect to Hadley I don't think the complaint, the proposed
18  amended complaint states a claim ast o Hadley.
19          Just one other thing I want to note.  This is the
20  fourth iteration of the complaint and I appreciate that Mr.
21  Michelen has come into the case fairly recently and that
22  before that Mr. Fischer was proceeding pro se.  Nevertheless,
23  although I think Mr. Michelen and Mr. Fischer are entitled to
24  some consideration given Mr. Michelen's recent entry into the
25  case it's not unlimited consideration.  This is the fourth

1   iteration of the complaint.  It's the third amended complaint.
2   At some point it has to stop.  So I'm not sure that a fifth
3   iteration of the -- permission to make a fifth iteration of
4   the complaint would be granted regardless of what the -- what
5   a proposed fourth amended complaint would allege.  Enough is
6   enough at some point.  You got to move forward with --
7            MR. MICHELEN:  Understood, Judge.  We'll forward
8   expeditiously on discovery.
9            THE COURT:  So the application is granted with
10  respect to Brushy Mountain.  It's withdrawn with respect to
11  the other proposed defendants.
12           Can you serve -- how quickly can you serve and file
13  the amended complaint, Mr. Michelen?
14           MR. MICHELEN:  Within -- is 20 days too long?
15           THE COURT:  Can you do it by the 31st?
16           MR. MICHELEN:  Yes.  That's fine.
17           THE COURT:  Well, let me ask.  Is counsel going to
18  accept on behalf of Brushy Mountain?
19           MR. HUDSON:  Your Honor, I would need to ask my
20  clients but I would strongly encourage my clients to allow me
21  to accept.  I think it's -- I'll see if I can convince them.
22           MR. MICHELEN:  It would be much shorter --
23           THE COURT:  I'm going to set it right now.  I'm
24  going to set December 31st right now as the deadline to serve
25  and file on the assumption that counsel will accept on behalf

```
 1  of Brushy Mountain.  If it turns out that counsel doesn't
 2  accept on behalf of Brushy Mountain send me a letter and I'll
 3  extend your time to serve.  If you got to go through a formal
 4  service rain dance I'll give you more time but if counsel is
 5  going to accept I think you can do it by the 31st.
 6            MR. MICHELEN:  Definitely.
 7            MR. HUDSON:  Thank you, Judge.
 8            THE COURT:  Anything else we should be considering
 9  today, gentlemen?
10            MR. MICHELEN:  No.
11            MR. HUDSON:  Will there be a new scheduling order
12  entered after --
13            THE COURT:  No one has asked for a new scheduling
14  order.  I extended the discovery deadline several weeks ago.
15  I think you're into --
16            MR. HUDSON:  We have that new deadlines.
17            THE COURT:  Hold on one second.
18            MR. HUDSON:  Got it.  My mistake, Judge.  I have it
19  in my files.
20            MR. MICHELEN:  During that status conference you
21  also mentioned that if you granted this motion you would maybe
22  extend the scheduling, discovery deadline out another month.
23            THE COURT:  One second.
24                   [Pause in proceedings.]
25            THE COURT:  On November 20th I set the deadline for
```

```
 1  conclusion of fact discovery to February 18.  Do you gentlemen
 2  want a different date?
 3            MR. MICHELEN:  I think it would be prudent just to
 4  move it back maybe 30 days from now, Judge.
 5            MR. HUDSON:  Instead of having to keep moving it
 6  back could Mr. Michelen and I speak within the next week or so
 7  and then provide another proposed scheduling order?
 8            THE COURT:  That would be fine.
 9            MR. HUDSON:  Because there's a bunch of [inaudible]
10  back and forth --
11            THE COURT:  That would be perfect.
12            MR. MICHELEN:  Thank you very much, Judge.
13            MR. HUDSON:  Thank you.
14            THE COURT:  Thank you all.  Have a great holiday.
15            There are pending motions to dismiss which I think
16  this -- my ruling today is technically going to moot.  If you
17  want to renew them with respect to the third amended complaint
18  you can do so and just incorporate the briefs by reference.
19  If you just want to file a notice -- if the material
20  allegations don't change, if you just want to file a notice of
21  motion and incorporate the prior briefs by reference you can
22  do that.
23            MR. HUDSON:  Thank you, Your Honor.
24            MR. MICHELEN:  Thank you.
25            THE COURT:  So that's generating more paper.
```

```
                                                                    19
 1   Thanks.
 2             MR. MICHELEN:  Thank you, Judge.
 3                        *  *  *  *  *
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                                    20

 1      I certify that the foregoing is a court transcript from
 2 an electronic sound recording of the proceedings in the above-
 3 entitled matter.
 4
 5                                  _____
 6                                  Shari Riemer, CET-805
 7 Dated:  May 7, 2018
```